IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 06-861 T
(Judge Firestone)

LAWRENCE D. PENNONI,

Plaintiff,

v.

THE UNITED STATES,

Defendant

**MOTION OF THE UNITED STATES TO DISMISS PLAINTIFFS' COMPLAINT**

The United States moves to dismiss the complaint of plaintiff Lawrence D. Pennoni pursuant to RCFC 12(b)(1) on the ground that this Court lacks subject-matter jurisdiction, because plaintiff has failed to file a claim for refund of the amounts he alleges were wrongfully collected to satisfy his individual income tax liabilities. In support of its motion, the United States relies on the following memorandum, the exhibit attached to plaintiff's complaint, and the exhibits attached to the Declaration of Joseph B. Syverson filed simultaneously herewith.

**STATEMENT**

The Internal Revenue Service ("Service") sent plaintiff a letter regarding his individual income tax for the 1998 tax year on February 16, 2001. (Syverson Dec. Ex. 2 at 2.)[1] This letter,

[1]Hereinafter, exhibits attached to the Syverson Declaration will be cited as "Ex. __."

titled "Proposed Individual Income Tax Assessment," explained that the Service had no record of plaintiff having filed an individual income tax return for 1998, and that, as a result, the Service had computed plaintiff's individual income tax liability for the 1998 tax year "based upon income reported to us by your employer(s), bank(s), etc. . . ." (*Ibid.*) According to the computations attached to the letter, plaintiff's tax liability before credits for 1998 was $86,316.00; his liability after allowable credits totaling $75,000.00 was $11,316.00; and he owed $2,465.74 in interest (as of March 18, 2001) and $3,982.79 in penalties, for a total due of $17,764.53 due as of March 18, 2001. (*Id.* at 4.) The letter advised plaintiff that these amounts would be assessed if the Service did not hear from him within 30 days of the date of the letter, and advised him that one way he could respond was by submitting a completed Form 1040 (Individual Federal Income Tax Return) for the 1998 tax year. (*Id.* at 2.)

Plaintiff subsequently filed a Form 1040 for the 1998 tax year that was received by the Service on April 18, 2001, more than 30 days after the February 16, 2001 letter. (Ex. 3 at 2.) This return reported plaintiff's tax liability for 1998 as $71,964.70, and claimed a refund of $3,035.33 after the withholding credit of $75,000.00 was applied. (*Id.* at 3.)

On June 1, 2001, the Service issued plaintiff a Notice of Deficiency for the 1998 tax year. (Ex. 4 at 2.) According to the Notice of Deficiency, the Service determined a deficiency in tax of $86,316.00, and plaintiff owed penalties totaling $3,982.79, the same amounts as in the February 16, 2001 letter. (*Ibid.*)

After receiving this Notice of Deficiency, plaintiff timely filed a petition with the United States Tax Court on July 19, 2001, challenging the Service's determination of his 1998 income tax liability. (Ex. 5 at 2; Ex. 6 at 2.) In his petition, plaintiff alleged that he was entitled to a

refund of $3,035.33 for the 1998 tax year after application of his withholding credit, and that the Service had erred in determining that he was liable for any penalties for the 1998 tax year. (Ex. 6 at 2-3.) The Commissioner of Internal Revenue ("Commissioner") filed an answer to plaintiff's petition on August 23, 2001, denying these allegations. (Ex. 5 at 2; Ex. 7 at 2-3.)

On or about February 14, 2002, plaintiff and the Commissioner entered into a settlement stipulation, which was docketed on February 15, 2002. (Ex. 5 at 2; Ex. 8 at 2-3.) The stipulation contained a draft decision, and stated that the parties consented to the Court's entering this decision. (Ex. 8 at 4-5.) The terms of the draft decision provided that there was a statutory deficiency in plaintiff's income tax for the 1998 tax year of $72,199.00, and that (after application of the withholding credit) there was an overpayment of income tax for the 1998 year of $2,801.00. (Ex. 8 at 4.) The draft decision further provided that plaintiff had filed a timely claim for refund with respect to this amount in the return filed on April 18, 2001. (*Ibid.*) Finally, the draft decision stated that plaintiff was not liable for any of the penalties he was determined to owe in the Notice of Deficiency issued for the 1998 tax year. (*Ibid.*) The United States Tax Court entered the draft decision without alteration on February 15, 2002. (Compl. Ex. A.)

On September 11, 2002, assessment of the deficiency in plaintiff's income tax for the 1998 tax year was made in accordance with the Tax Court decision. (Ex. 1 at 4.)[2] Approximately one month later, on October 14, 2002, plaintiff was issued a refund in the amount of $80,166.57 (*ibid.*)–*i.e.*, $77,365.77 in excess of the amount of the refund plaintiff and the Commissioner had agreed upon in the settlement stipulation adopted by the Tax Court. (*See* Ex.

[2]The Certificate of Assessments, Payments, and Other Specified Matters for plaintiff's 1998 tax year shows that plaintiff was assessed $72,960.00 on September 11, 2002, slightly more than the amount of the deficiency according to the Tax Court decision. (Ex. 1 at 3.)

8 at 2.)

This erroneous refund created a balance due in plaintiff's account for the 1998 tax year, which the Service then set out to recover. (*See* Ex. 1 at 3-5.) On May 29, 2003, the Service issued plaintiff a Final Notice—Notice of Intent to Levy and Notice of Your Right to a Hearing for tax year 1998. (Ex. 1 at 4.) Plaintiff received this notice, but did not exercise his right to a collection due process hearing. (*Id.* at 5.)

The Service then began to collect plaintiff's outstanding liability for the 1998 tax year. On August 4 and August 25, 2003, the Service levied plaintiff's property in the amounts of $4,167.41 and $2,921.98, respectively. (Ex. 1 at 5.) Subsequently, during 2003 and 2004, a series of payments were credited to plaintiff's account for the 1998 tax year, the last of which, in the amount of $3,781.12, was credited to plaintiff's account on September 2, 2004. (*Id.* at 5-9.)[3] Plaintiff was then issued a refund in the amount of $468.36 on September 27, 2004. (*Id.* at 9.) Plaintiff's account for the 1998 tax year currently has a zero balance. (*Id.* at 10.)

Plaintiff filed his complaint with this Court on December 15, 2006. In his complaint, plaintiff alleges that the Service wrongfully collected approximately $104,461.04 from plaintiff, and asks for return of this amount with interest. (Compl. ¶¶ 2, 8, 11-12.) Plaintiff alleges that this "sum was erroneously and illegally taken by Defendant under the guise of collecting an allegedly assessed income tax liability, together with interest and penalties, for the year 1998." (*Id.* ¶ 2.) Plaintiff avers that this Court has subject-matter jurisdiction over his complaint

---

[3]The transcript of plaintiff's account for the 1998 tax year reflects that he entered into an installment agreement to repay the outstanding balance, on May 19, 2004. (Ex. 1 at 7.) Thereafter, plaintiff was also assessed interest and failure to pay tax penalties for the 1998 tax year during June to September of 2004. (*Id.* at 7-8.)

"pursuant to 28 U.S.C. §§ 1346 and 1491." (*Id.* ¶ 3.) The complaint does not allege, however, that plaintiff has filed a claim for refund with the Service for the 1998 tax year with respect to the payments plaintiff seeks to have refunded. (*See id.*) In addition, plaintiff has not attached a copy of any claim for refund for these payments to his complaint, (*see id.*), and there is no claim for refund of these payments in the Service's administrative files for this case. (*See* Syverson Decl. ¶ 4.)

**ARGUMENT**

**THIS COURT LACKS SUBJECT-MATTER JURISDICTION OVER THE COMPLAINT**

This Court lacks subject-matter jurisdiction over plaintiff's complaint because plaintiff has failed to file a timely administrative claim for refund of the amounts he claims were wrongfully collected. The requirement to file an administrative claim for refund prior to filing suit for refund is imposed by Section 7422(a) of the Internal Revenue Code:

> *No suit prior to filing claim for refund.* — No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

*See also Computervision Corp. v. United States*, 445 F.3d 1355, 1363 (Fed. Cir. 2006). Plaintiff's suit plainly seeks "recovery of . . . [an] internal revenue tax alleged to have been erroneously or illegally assessed or collected," and seeks recovery of a "sum alleged to have been . . . wrongfully collected." *See* Compl. ¶¶ 2, 7-12. Plaintiff, however, has not filed an administrative claim for refund for the amounts he claims were wrongfully collected, and has

failed to plead all the necessary jurisdiction facts for maintaining an action for refund in this Court. *See* RCFC 9(h)(6) (complaint for tax refund must include "date and place the claim for refund was filed," and "[a] copy of the claim for refund shall be annexed to the complaint"). Consequently, plaintiff's complaint should be dismissed for lack of subject-matter jurisdiction.[4]

Plaintiff's failure to file a timely claim for refund, furthermore, is not excused simply because plaintiff alleges that the Service wrongfully collected from him to recover an erroneous refund. Even in cases where courts have held that the Service collected erroneous refunds in an improper fashion, either the taxpayer had filed a timely administrative claim for refund in order to invoke the jurisdiction of the court, or the suit was based on jurisdictional grounds that did not require the filing of a refund claim. *See Stanley v. United States*, 35 Fed. Cl. 493, 495 (1996) (taxpayer filed claim for refund that was denied by Service); *Clark v. United States*, 63 F.3d 83, 85 (1st Cir. 1995) (same); *O'Bryant v. United States*, 49 F.3d 340, 341 (7th Cir. 1995) (action initiated by taxpayer as quiet title action); *United States v. Wilkes*, 946 F.2d 1143, 1145 (5th Cir. 1991) (action initiated by United States as suit to reduce assessments to judgment).[5]

---

[4]Furthermore, it is worthy of note that plaintiff is unable at this point to file a timely administrative claim for refund and then file a new refund suit. An administrative claim for refund for a tax year must be filed within 3 years of the time the taxpayer files a return for that year or 2 years after the taxpayer has made the payment that the taxpayer is requesting be refunded, whichever is later. I.R.C. § 6511(a). Plaintiff filed his return for the 1998 tax year on April 18, 2001, and made his most recent payment of his 1998 tax liability on September 2, 2004. Therefore, any future administrative claim by the plaintiff for refund of the payments sought in this case would be untimely.

[5]We believe that the cited cases were incorrectly decided, and, in any event, each is factually distinguishable from this case. We note also that the grounds on which the *O'Bryant* and *Wilkes* cases were brought in district court are not available in this Court.

## CONCLUSION

For the reasons stated, the complaint should be dismissed for lack of subject-matter jurisdiction.

Respectfully submitted,

April 16, 2007

s/ Joseph B. Syverson
JOSEPH B. SYVERSON
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6508

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
MARY M. ABATE
Assistant Chief

s/ Mary M. Abate
Of Counsel

April 16, 2007