No. 06-861 T
(Judge Firestone)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

LAWRENCE D. PENNONI,

Plaintiff

v.

THE UNITED STATES,

Defendant

**DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE PLAINTIFF'S FIRST AMENDED COMPLAINT**

RICHARD T. MORRISON
Acting Assistant Attorney General

DAVID GUSTAFSON
MARY M. ABATE
JOSEPH B. SYVERSON
Attorneys
Justice Department (Tax)
Court of Federal Claims Section
P.O. Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6508
(202) 514-9440 (facsimile)

# TABLE OF CONTENTS

Page

**Defendant's Motion to Dismiss with Prejudice Plaintiff's First Amended Complaint** . . . . . 1

**Statement** . . . . . 1

1. **Background** . . . . . 1

2. **Plaintiff's "Informal Claim" Allegations** . . . . . 6

**Argument** . . . . . 8

I. **INTRODUCTION** . . . . . 9

II. **ON ITS FACE, PLAINTIFF'S SUIT FOR REFUND IS UNTIMELY** . . . . . 10

III. **THIS COURT LACKS SUBJECT-MATTER JURISDICTION BECAUSE PLAINTIFF DID NOT IN FACT FILE A CLAIM FOR REFUND PRIOR TO FILING THIS SUIT** . . . . . 11

A. **As plaintiff implicitly concedes, he did not file a formal administrative claim** . . . . . 13

B. **The Service did not waive the requirements imposed by the applicable Treasury regulations with respect to plaintiff's purported claim for refund** . . . . . 15

C. **Plaintiff's purported claim for refund fails to satisfy the requirements of the informal claim doctrine as developed in the case law of this Circuit** . . . . . 15

1. **Plaintiff's purported claim is not a valid informal claim for refund because it contains no reference to a refund, but rather merely demands that the Service cease collection of his unpaid liability** . . . . . 16

2. **Plaintiff's purported refund claim is not a valid informal claim for refund because it fails to specify factual and legal grounds for a claim to entitlement to a refund** . . . . . 18

**Page**

**(Continuation):**

**3. Alternatively, assuming *arguendo* that the facsimile in question constituted a valid informal refund claim, plaintiff is barred from prosecuting this suit on the grounds stated in the complaint, under the doctrine of substantial variance** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**Conclusion** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

**Appendix:**

**Declaration of Joseph B. Syverson:**

| **Exhibit** | **Description** |
| --- | --- |
| **1.** | Certificate of Assessments, Payments, and Other Specified Matters (Form 4340) for plaintiff's tax year 1998. |
| **2.** | Letter from the IRS to plaintiff, dated February 16, 2001. |
| **3.** | Plaintiff's individual income tax return (Form 1040) for tax year 1998, dated April 15, 2001, and received by the IRS on April 18, 2001. |
| **4.** | Notice of Deficiency issued to plaintiff for the 1998 tax year, dated June 1, 2001. |
| **5.** | Docket sheet in *Lawrence D. Pennoni v. Commissioner of Internal Revenue*, No. 9104-01 (U.S. Tax Ct.), as of March 16, 2007. |
| **6.** | Petition filed by the plaintiff with the United States Tax Court in *Lawrence D. Pennoni v. Commissioner of Internal Revenue*, No. 9104-01 (U.S. Tax Ct.) on July 19, 2001. |
| **7.** | Answer filed by the Commissioner of Internal Revenue in *Lawrence D. Pennoni v. Commissioner of Internal Revenue*, No. 9104-01 (U.S. Tax Ct.) on August 23, 2001. |
| **8.** | Stipulation entered into by plaintiff and the Commissioner of Internal Revenue in *Lawrence D. Pennoni v. Commissioner of Internal Revenue*, No. 9104-01 (U.S. Tax Ct.), executed by the Commissioner of Internal Revenue on February 14, 2002. |

**9.** Wage and Tax Statement (Form W-2) for 1998 issued to plaintiff by Chamberlain, Hrdlicka, White, Williams & Martin.

**10.** Letter from IRS to plaintiff, dated October 24, 2001.

**TABLE OF AUTHORITIES**

**Cases:**

*Alexander Proudfoot Co. v. United States*, 454 F.2d 1379 (Ct. Cl. 1972).. . . . . . . . . . . . . 16

*American Radiator & Standard Sanitary Corp. v. United States*, 318 F.2d 915 (Ct. Cl. 1963), *appeal dismissed* 56 F.3d 83 (Fed. Cir. 1995). . . . . . . . . . . . . . . 16

*Angelus Milling Co. v. Commissioner*, 325 U.S. 293 (1945).. . . . . . . . . . . . . . . . 12, 13, 15

*Arch Engineering Co. v. United States*, 783 F.2d 190 (Fed. Cir. 1986). . . . . . . . . . . . . . 16

*Burlington N. Inc. v. United States*, 684 F.2d 866 (Ct. Cl. 1982). . . . . . . . . . . . . . . . . . . 19

*In re City Metals Co., Inc.*, 181 B.R. 398 (W.D. Mo. 1995). . . . . . . . . . . . . . . . . . . . . 1, 2
472 F.2d 776 (1st Cir. 1973), *cert. denied* 414 U.S. 864 (1973). . . . . . . . . . . . . . . . . . 11

*Computervision Corp. v. United States*, 445 F.3d 1355 (Fed. Cir. 2006). . . . . . . . . . 15, 16

*Furst v. United States*, 678 F.2d 147 (Ct. Cl. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Henke v. United States*, 60 F.3d 795 (Fed. Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Holt v. United States*, 46 F.3d 1000 (10th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Kuehn v. United States*, 480 F.2d 1319 (Ct. Cl. 1973). . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Lockheed Martin Corp. v. United States*, 210 F.3d 1366 (Fed. Cir. 2000). . . . . . . . . . . . 19

*Melnik v. Comm'r*, T.C. Memo 2006-25, 2006 WL 345846, (U.S. Tax. Ct. Feb. 15, 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Mobil Corp. v. United States*, 67 Fed. Cl. 709 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Moyer v. United States*, 190 F.3d 1314 (Fed. Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . 9

**Page**

**Cases (Continuation):**

*New England Electric System v. United States*, 32 Fed. Cl. 636 (1995). . . . . . . . . . . . . . . 16

*Ottawa Silica Co. v. United States*, 699 F.2d 1124 (Fed. Cir. 1983).. . . . . . . . . . . . . . 16, 19

*Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746 (Fed. Cir.1988). . . . . . . . . . . . . 9

*Stanley v. United States*, 35 Fed. Cl. 493 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Tomaseo v. Estate of Tomaseo*, 2004 WL 549739 (Tex. App. Houston 2004). . . . . . . . . . 2

*Tchakarski v. United States*, 69 Fed. Cl. 218 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Tucker v. Alexander*, 275 U.S. 228 (1927).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Dalm*, 494 U.S. 596 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Memphis Cotton Oil Co.*, 288 U.S. 62 (1933). . . . . . . . . . . . . . . . . . . . . 13

**Statutes:**

Internal Revenue Code of 1986 (26 U.S.C.):

§ 6330.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 15

§ 6402.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

§ 6511.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

§ 6532.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 11

§ 7405.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

§ 7422.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9, 10, 10, 12, 13, 15, 19

Judiciary and Judicial Procedures (28 U.S. C.):

§ 1346.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

§ 1491.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**Page**

**Miscellaneous:**

Rules of United States Court of Federal:
R. 12(b)(l). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 9

R. 15(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Treasury Regulation (26 C.F.R.):

§ 301.6402-2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

§ 301.6402-3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 15

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 06-861 T
(Judge Firestone)

---

LAWRENCE D. PENNONI,

Plaintiff,

v.

THE UNITED STATES,

Defendant

---

**DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE PLAINTIFF'S FIRST AMENDED COMPLAINT**

---

Defendant, the United States, moves to dismiss, with prejudice, the first amended complaint of plaintiff Lawrence D. Pennoni pursuant to RCFC 12(b)(1) on the ground that this Court lacks subject-matter jurisdiction. In support of its motion, the United States relies on the following memorandum, the exhibits attached to plaintiff's amended complaint, and the exhibits attached to the Declaration of Joseph B. Syverson filed simultaneously herewith.

**STATEMENT**

**1. Background**

Plaintiff is an attorney.[1] (Syverson Dec. Ex. 3 at 3.)[2] For the 1998 tax year, plaintiff

---

[1]In a different proceeding, the United States Tax Court has found that plaintiff "practiced in the areas of tax, international tax, and corporate mergers and acquisitions." *Melnik v. Comm'r*, T.C. Memo 2006-25, 2006 WL 345846, at *3 (U.S. Tax. Ct. Feb. 15, 2006); *see also In re City*
(continued...)

received $247,072.02 in income from the the law firm of Chamberlain, Hrdlicka, White, Williams and Martin, located in Houston, Texas, of which $75,000.00 was withheld to satisfy his federal income tax liability. (Ex. 9 at 2.) Despite this income and withholding, plaintiff failed to file a federal individual income tax return for 1998 by August 15, 1999, the filing deadline he requested and received for the filing of his 1998 return. (Ex. 1 at 3.)

As a result of plaintiff's nonfiling, the Internal Revenue Service ("Service") mailed plaintiff a letter regarding his individual income tax for the 1998 tax year, on February 16, 2001. (Ex. 2 at 2.) This letter, titled "Proposed Individual Income Tax Assessment," explained that the Service had no record of plaintiff's having filed an individual income tax return for 1998, and that, as a result, the Service had computed plaintiff's individual income tax liability for the 1998 tax year "based upon income reported to us by your employer(s), bank(s), etc. . . ." (*Ibid.*) According to the computations attached to the letter, plaintiff's tax liability before credits for 1998 was $86,316.00; his liability after allowable credits totaling $75,000.00 was $11,316.00; and he owed $2,465.74 in interest (as of March 18, 2001) and $3,982.79 in penalties, for a total of $17,764.53 due as of March 18, 2001. (*Id.* at 4.) The letter advised plaintiff that these amounts would be assessed if the Service did not hear from him within 30 days of the date of the letter, and advised him that one way he could respond was by submitting a completed Form 1040 (Individual Federal Income Tax Return) for the 1998 tax year. (*Id.* at 2.)

Plaintiff subsequently filed a Form 1040 for the 1998 tax year that was received by the

---

[1](...continued)
*Metals Co., Inc.*, 181 B.R. 398 (W.D. Mo. 1995); *Tomaseo v. Estate of Tomaseo*, 2004 WL 549739 (Tex. App. Houston 2004).

[2]Hereinafter, exhibits attached to the Syverson Declaration will be cited as "Ex. __."

Service on April 18, 2001, more than 30 days after the Service's February 16, 2001 letter. (Ex. 3 at 2.) This return reported plaintiff's tax liability for 1998 as $71,964.70, and claimed a refund of $3,035.33 after the withholding credit of $75,000.00 was applied. (*Id.* at 3.)

On June 1, 2001, the Service issued plaintiff a Notice of Deficiency for the 1998 tax year. (Ex. 4 at 2.) According to the Notice of Deficiency, the Service determined a deficiency in tax of $86,316.00, and plaintiff owed penalties totaling $3,982.79–the same amounts as in the February 16, 2001 letter. (*Ibid.*)

After receiving this Notice of Deficiency, plaintiff, representing himself, timely filed a petition with the United States Tax Court on July 19, 2001, challenging the Service's determination of his 1998 income tax liability. (Ex. 5 at 2; Ex. 6 at 2.) In his petition, plaintiff alleged that he was entitled to a refund of $3,035.33 for the 1998 tax year after application of his withholding credit, and that the Service had erred in determining that he was liable for any penalties for the 1998 tax year. (Ex. 6 at 2-3.) The Commissioner of Internal Revenue ("Commissioner") filed an answer to plaintiff's petition on August 23, 2001, denying these allegations. (Ex. 5 at 2; Ex. 7 at 2-3.)

After plaintiff had filed his petition with the Tax Court, plaintiff worked with IRS Appeals in an effort to negotiate a settlement. (Ex. 10 at 1; First Am. Compl. Ex. A at 7.) On or about February 14, 2002, plaintiff and the Commissioner entered into a settlement stipulation, which was docketed on February 15, 2002. (Ex. 5 at 2; Ex. 8 at 2-3.) The stipulation contained a draft decision, and stated that the parties consented to the Court's entering this decision. (Ex. 8 at 4-5.) The terms of the draft decision provided that there was a statutory deficiency in plaintiff's income tax for the 1998 tax year of $72,199.00, and that (after application of the

withholding credit) there was an overpayment of income tax for the 1998 year of $2,801.00. (Ex. 8 at 4.) The draft decision further provided that plaintiff had filed a timely claim for refund with respect to this amount in the return filed on April 18, 2001. (*Ibid.*) Finally, the draft decision stated that plaintiff was not liable for any of the penalties he was determined to owe in the Notice of Deficiency issued for the 1998 tax year. (*Ibid.*) The United States Tax Court entered the draft decision without alteration on February 15, 2002. (First Am. Compl., Ex. C.)

On September 11, 2002, assessment of the $72,199.00 deficiency in plaintiff's income tax for the 1998 tax year was made in accordance with the Tax Court decision. (Ex. 1 at 4.)[3] Approximately one month later, on October 14, 2002, plaintiff was issued a refund in the amount of $80,166.57 (*ibid.*)–*i.e.*, $77,365.77 in excess of the amount of the refund plaintiff and the Commissioner had agreed upon in the settlement stipulation adopted by the Tax Court. (*See* Ex. 8 at 2.) Plaintiff received this refund in the form of a check, which he cashed upon receipt. (Pl.'s Resp. to Def.'s Mot. to Dismiss Pl.'s Compl. at 3.)

This erroneous refund created a balance due in plaintiff's account for the 1998 tax year. (*See* Ex. 1 at 3-5.) On November 25, 2002, the Service sent plaintiff notice that he had a balance due on his account for the 1998 tax year. (*Id.* at 9.) Subsequently, plaintiff was sent a statutory notice of intent to levy on December 30, 2002. (*Ibid.*) Finally, on May 29, 2003, the Service issued plaintiff a Final Notice—Notice of Intent to Levy and Notice of Your Right to a Hearing for tax year 1998. (*Id.* at 4.) Plaintiff received this notice, but did not timely exercise his right to a collection due process hearing within the 30 day period after receipt of this notice, as provided

---

[3]The Certificate of Assessments, Payments, and Other Specified Matters for plaintiff's 1998 tax year shows that plaintiff was assessed $72,960.00 on September 11, 2002, slightly more than the amount of the deficiency according to the Tax Court decision. (Ex. 1 at 3.)

for in Section 6330 of the Internal Revenue Code.[4] (*Id.* at 5.)

The Service then began to collect plaintiff's outstanding liability for the 1998 tax year. On August 4 and August 25, 2003, the Service levied plaintiff's property in the amounts of $4,167.41 and $2,921.98, respectively. (Ex. 1 at 5.) Subsequently, during 2003 and 2004, a series of payments were credited to plaintiff's account for the 1998 tax year, the last of which, in the amount of $3,781.12, was credited to plaintiff's account on September 2, 2004. (*Id.* at 5-9.) Plaintiff was then issued a refund in the amount of $468.36 on September 27, 2004. (*Id.* at 9.) Plaintiff's account for the 1998 tax year currently has a zero balance. (*Id.* at 10.)

Approximately two years later, after the Service had collected plaintiff's outstanding liability for the 1998 tax year resulting from the refund, on December 15, 2006, plaintiff filed his original complaint with this Court. In this complaint, plaintiff alleged that the Service wrongfully collected approximately $104,461.04 from plaintiff, and asked for return of this amount with interest. (Orig. Compl. ¶¶ 2, 8, 11-12.) Plaintiff alleged that this "sum was erroneously and illegally taken by Defendant under the guise of collecting an allegedly assessed income tax liability, together with interest and penalties, for the year 1998." (*Id.* ¶ 2.) Plaintiff further alleged that this Court had subject-matter jurisdiction over this complaint "pursuant to 28 U.S.C. §§ 1346 and 1491." (*Id.* ¶ 3.) The complaint, however, did not allege that plaintiff had filed a claim for refund with the Service for the 1998 tax year with respect to the payments plaintiff seeks to have refunded (*i.e.,* the levied amounts). (*See id.*)

On April 16, 2007, defendant moved to dismiss plaintiff's original complaint for lack of

---

[4]All subsequent statutory references will be to the Internal Revenue Code of 1986 (26 U.S.C.), unless otherwise indicated.

subject-matter jurisdiction, arguing that the Court lacked jurisdiction because plaintiff failed to file an administrative claim for refund prior to filing suit, as required by Section 7422(a) of the Internal Revenue Code. On May 17, 2007, plaintiff filed an amended complaint, and, on the same day, filed a response to defendant's motion to dismiss. Defendant then filed, on May 25, 2007, a motion for clarification and enlargement of time, requesting that the Court clarify that plaintiff's filing of an amended complaint rendered the motion to dismiss the original complaint moot, obviating any need for defendant to reply to plaintiff's response, and requesting an enlargement of the time provided for in RCFC 15(a) for responding to plaintiff's amended complaint. The Court granted this motion by order of May 31, 2007, ordering defendant to respond to plaintiff's amended complaint on or before July 2, 2007.

Plaintiff's amendment added one new paragraph, which makes new allegations purporting to establish jurisdiction. (*See* First Am. Compl. ¶ 4.) Plaintiff's complaint now alleges that "[s]ubject-matter jurisdiction also exists for this Court to hear Plaintiff's case under the informal claim doctrine." (*Ibid.*) Plaintiff now alleges that a September 9, 2003 facsimile from plaintiff to the Service constituted plaintiff's claim for refund of the $104, 461.04 payments he seeks refund of in his amended complaint. (*See id.* ¶ 4, Ex. A; ¶¶ 9, 13.)

In addition, plaintiff's amended complaint now alleges that the Service disallowed plaintiff's alleged informal claim for refund. (*Id.* ¶ 4.) Plaintiff alleges that this disallowance took place on November 14, 2003, and was effected by a letter of that date from an IRS Appeals Officer to plaintiff. (*See id.* ¶ 4, Ex. B.)

**2. Plaintiff's "Informal Claim" Allegations**

After plaintiff had failed to exercise his collection due process rights, and after the

Service had begun to collect on plaintiff's outstanding tax liability for 1998, plaintiff sent a facsimile to "IRS Memphis" on September 9, 2003. (First Am. Compl. Ex. A at 2, 13.) The facsimile cover sheet indicated that the facsimile was from plaintiff, "Larry Pennoni," and stated "Attn: Reconsideration." (*See id.* at 2.) The message portion of the cover sheet contained only a two-sentence hand-written note stating the following:

> Attached are Tax Court decision documents establishing that there was no deficiency for 1998. Thus, *levy* on bank and garnishment of wages is *wrongful* and should be withdrawn ASAP!!

(*Ibid.* (emphasis added).)

Attached to this facsimile were a number of documents relating to the proceedings in the United States Tax Court regarding plaintiff's 1998 federal individual income taxes. (*See id.* at 3-12.) The attachments consisted of copies of the Tax Court docket sheet (*id.* at 3), the decision entered by the Tax Court (*id.* at 4), the stipulation entered in the Tax Court proceeding between plaintiff and the Commissioner (*id.* at 5-6), a letter to plaintiff from the Service attorney who represented the Commissioner in the Tax Court case, enclosing draft copies of the stipulation and decision for plaintiff's review and signature (*id.* at 7), and five sheets of computations related to plaintiff's 1998 individual income tax that plaintiff received from the Service (*id.* at 8-12).

The facsimile and attachments apparently were forwarded from Memphis to the Houston Appeals Office. (*See* First Am. Compl. Ex. B at 2-3.)[5] On October 14, 2003, the IRS Appeals Officer who worked on plaintiff's Tax Court case for the 1998 tax year, Dennis A. Quinn (*see*

---

[5]The facsimile number to which plaintiff directed the facsimile had a 901 area code. (*See* First Am Compl., Ex. A at 2.) This area code includes Memphis, and does not include Houston. (*See* http://en.wikipedia.org/wiki/List_of_North_American_area_codes (last visited June 30, 2007).)

*id.*, Ex. A at 7), sent a letter to plaintiff in response to the facsimile plaintiff sent to Memphis on September 9. (*Id.*, Ex. B at 2-3.) In this letter, Mr. Quinn informed plaintiff that Appeals had received the case as an "audit reconsideration" case, but that neither it nor District Counsel had any jurisdiction over the case as an audit reconsideration case because the amount of plaintiff's individual income tax liability for 1998 had already been finally decided by the decision of the United States Tax Court. (*Id.* at 2.) Consequently, Mr. Quinn's letter stated that "the matter of collection" of plaintiff's unpaid liability for 1998 that resulted from the refund, and "the matter of the October 2002 refund to you," were "items that need to be resolved between you and the Memphis Service Center," which was responsible for the collection of the outstanding liability. (*Id.* at 3.)

Mr. Quinn's letter also informed plaintiff that Appeals had "looked at [his] file, transcript data, etc.," and concluded that "levy action would not appear to be wrong." (*Id.* at 2-3.) The letter went on to explain that the proposition plaintiff had offered in support of its position that the Service's collection efforts were wrongful was factually mistaken:

> You have said that the Tax Court decision documents show that "there was no deficiency for 1998." That is not correct. There was a statutory tax deficiency (agreed to by the parties) of $72,199.00. However, with the application of the withholding credit amount of $75,000.00 to you, the net amount owed was $2,801.00.

(*Id.* at 2.)

**ARGUMENT**

This Court lacks subject-matter jurisdiction over plaintiff's complaint[6] for two

[6]Hereinafter, "complaint" will refer to plaintiff's first amended complaint, unless otherwise indicated.

independently sufficient reasons. First, taking the allegations in the complaint as true (for purposes of this motion), this Court lacks jurisdiction because plaintiff's suit for refund is, on its face, untimely under § 6532(a), because it was brought more than 2 years after November 14, 2003, the date plaintiff alleges that its purported informal claim for refund was disallowed by the Service. Second, this Court lacks jurisdiction because plaintiff has not in fact filed a claim for refund, formal or informal, with respect to the payments he seeks to have refunded, as required by § 7422(a), notwithstanding his allegation to the contrary.[7]

## I.

## INTRODUCTION

Challenges to this Court's subject-matter jurisdiction under RCFC 12(b)(1) generally take two forms. First, a defendant may contend that a plaintiff's complaint has failed to make allegations which, if true, would confer jurisdiction on the Court, in which case the Court is "obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor." *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995). However, the plaintiff bears the ultimate burden of establishing the Court's subject-matter jurisdiction by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir.1988). Consequently, if a defendant disputes the truth of an allegation upon which

---

[7]Plaintiff is unable at this point to cure the jurisdictional defects in this suit by filing a timely administrative claim for refund and then filing a new refund suit. An administrative claim for refund for a tax year must be filed within 3 years of the time the taxpayer files a return for that year or 2 years after the taxpayer has made the payment that the taxpayer is requesting be refunded, whichever is later. § 6511(a). Plaintiff filed his return for the 1998 tax year on April 18, 2001, and made his most recent payment of his 1998 tax liability on September 2, 2004. Therefore, any future administrative claim by the plaintiff for refund of the payments sought in this case would be untimely, since the latest deadline for filing a claim for refund of any of the payments at issue would be September 2, 2006.

subject-matter jurisdiction depends, then the Court may consider evidence outside the pleadings to determine whether the plaintiff has established the predicate jurisdictional facts. *Moyer v. United States*, 190 F.3d 1314, 1318 (Fed. Cir. 1999). When this second type of challenge is raised, the court "may not presume the truthfulness of the complaint's factual allegations." *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).

In this case, defendant's motion to dismiss presents both types of challenge to the Court's subject-matter jurisdiction over the complaint. As a threshold matter, the Court lacks jurisdiction over plaintiff's complaint, even assuming that all its allegations are true, because plaintiff has alleged that his purported informal claim for refund was denied on November 14, 2003–a date that is more than two years before plaintiff filed this suit for refund--and the suit is thus untimely. Second, as plaintiff apparently concedes, he never filed a formal refund claim; and, looking behind plaintiff's bare allegation that he filed an *informal* claim for refund, this Court lacks subject-matter jurisdiction because plaintiff's purported informal claim does not meet the requirements of the informal claim doctrine, in that it does not request a refund of money paid to the Service, and it does not specify factual and legal grounds adequate to apprise the Service of the basis of the claim.

## II.

## ON ITS FACE, PLAINTIFF'S SUIT FOR REFUND IS UNTIMELY

Section 6532(a)(1) specifies the time period in which a taxpayer must file a suit for tax refund after filing an administrative claim for refund with the Service:

> *General rule.* — No suit or proceeding under section 7422(a) for the recovery of any internal revenue tax, penalty, or other sum, shall be begun before the expiration of 6 months from the date of filing the claim required under such

> section unless the Secretary renders a decision thereon within that time, nor after the expiration of 2 years from the date of mailing by certified mail or registered mail by the Secretary to the taxpayer of a notice of the disallowance of the part of the claim to which the suit or proceeding relates.

Thus, under § 6532(a)(1), a suit for refund is untimely if it is brought more than 2 years after the Secretary mails a taxpayer an adequate notice of disallowance of the portion of the taxpayer's administrative claim for refund to which the taxpayer's refund suit relates.

Plaintiff's allegations, if assumed to be true, establish that plaintiff's suit was not filed within the two-year period specified in § 6532(a)(1). Plaintiff alleges that he filed an informal administrative claim for refund that satisfies the requirements of Section 7422(a) for the payments he seeks to recover in this suit, on September 9, 2003. *See* First Am. Compl ¶ 4, Ex. A. Plaintiff further alleges that this purported informal claim was disallowed by the Service by means of a letter sent to plaintiff on October 14, 2003. *See id.* ¶ 4, Ex. B ("In a letter to Plaintiff dated November 14, 2003, the IRS rejected Plaintiff's claim for the return of his money, a true and correct copy of which is attached hereto as Exhibit B."). Plaintiff, however, did not file his suit with this Court until December 15, 2006. Thus, according to his own allegations, plaintiff waited more than three years after having been notified of the disallowance of his administrative claim for refund, well beyond the time period for bringing suit prescribed by § 6532(a)(1).

## III.

## THIS COURT LACKS SUBJECT-MATTER JURISDICTION BECAUSE PLAINTIFF DID NOT IN FACT FILE A CLAIM FOR REFUND PRIOR TO FILING THIS SUIT

It is axiomatic that the United States may be sued only to the extent that it consents to being sued, and that the terms of that consent define the scope of the court's jurisdiction over a

suit against the United States. *United States v. Dalm*, 494 U.S. 596, 608-10 (1990). Among other conditions, the United States's consent to be sued for tax refund is conditioned upon satisfaction of the requirement to file an administrative claim for refund prior to filing suit, a requirement that is imposed by § 7422(a) (emphasis added):

> *No suit prior to filing claim for refund.* — No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been *duly filed* with the Secretary, according to the provisions of law in that regard, *and the regulations of the Secretary established in pursuance thereof*.

*See also Computervision Corp. v. United States*, 445 F.3d 1355, 1363 (Fed. Cir. 2006), *cert. denied*, 127 S. Ct. 2033 (2007).

Section 6402 authorizes the Secretary to make credits and refunds. The regulations promulgated under this section set out requirements for a claim for refund or credit. Binding Supreme Court precedent establishes that these requirements impose conditions on the waiver of sovereign immunity, unless the Service chooses to waive them.

In *Angelus Milling Co. v. Commissioner*, 325 U.S. 293 (1945), the Supreme Court, in unequivocal language, explained that compliance with the regulations applicable to refund claims is a prerequisite to a suit for tax refund:

> Petitioner's claim for recovering processing taxes paid by it was properly rejected by the Commissioner if it did not satisfy the conditions which Congress directly *and through the rule-making power given to the Treasury* laid down as a prerequisite for such refund.

*Id.* at 295-96 (emphasis added).

*Angelus Milling* went on to explain that there is a difference between the requirements on

claims for refund imposed by statute, and those imposed by regulation. Requirements imposed by statute cannot be waived by the Service: "Insofar as Congress has made explicit statutory requirements, they must be observed and are beyond the dispensing power of Treasury officials." *Id.* at 296 (citations omitted). By contrast, the Service may, if it chooses, waive the requirements on claims for refund imposed by regulation. *Ibid.* However, as *Angelus Milling* makes clear, the Commissioner "may insist upon full compliance with his regulations." *Ibid.*; *see also United States v. Memphis Cotton Oil Co.*, 288 U.S. 62, 71-72 (1933); *Tucker v. Alexander*, 275 U.S. 228, 231 (1927) (the Treasury, through its delegate, the Service, can waive the formalities of the regulation).

**A. As plaintiff implicitly concedes, he did not file a formal administrative claim**

The Treasury regulations applicable to claims for refund impose several necessary conditions that must be satisfied in order for a claim to be valid for purposes of § 7422(a). First, Treas. Reg. § 301.6402-2(b)(1) provides:

> The claim must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof. The statement of the grounds and facts must be verified by a written declaration that it is made under the penalties of perjury. A claim which does not comply with this paragraph will not be considered for any purpose as a claim for refund or credit.

Second, the treasury regulations also specify the forms upon which claims for refund of income taxes must be made, providing that "[i]n general, in the case of an overpayment of income taxes, a claim for credit or refund of such overpayment shall be made on the appropriate income tax return," Treas. Reg. § 301.6402-3(a)(1), and, with respect to claims for refund of individual income taxes, providing that:

> In the case of an overpayment of income taxes for a taxable year of an individual for which a Form 1040 or 1040A has been filed, a claim for refund shall be made on Form 1040X ("Amended U.S. Individual Income Tax Return").

Treas. Reg. § 301.6402-3(a)(2).

Plaintiff's purported claim for refund plainly does not satisfy either of these regulatory requirements. Leaving aside for now the question of whether plaintiff's purported claim for refund satisfies the requirement in Treas. Reg. § 301.6402-2(b)(1) to "set forth in detail each ground upon which a . . . refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof," it is beyond dispute that, to the extent that plaintiff's handwritten note contains any such statement at all, that statement is not "verified by a written declaration that it is made under the penalties of perjury," as the regulation plainly requires. *See* First Am. Compl., Ex. A.

Likewise, it is plain that plaintiff's purported claim for refund does not satisfy Treas. Reg. § 301.6402-3(a). Plaintiff is seeking a refund of individual income tax for the 1998 tax year. Consequently, under Treas. Reg. § 301.6402-3(a)(2), his claim for refund must be submitted on Form 1040X. Plaintiff's purported claim for refund, however, is nothing more than a facsimile cover sheet containing two handwritten sentences, and several attachments, none of which is a Form 1040X. *See* First Am. Compl., Ex. A.

Thus, in his amended complaint, plaintiff rightly does not allege that he filed a refund claim that meets the requirements of the regulations, but instead alleges that the facsimile he sent to the IRS in Memphis constitutes an *informal* claim. As will be explained in Part C, *infra*, that allegation does not withstand scrutiny.

**B. The Service did not waive the requirements imposed by the applicable Treasury regulations with respect to plaintiff's purported claim for refund**

Examination of the Service's response to plaintiff's purported claim for refund makes it apparent that the Service did not waive the regulations' requirements. Plaintiff's purported claim for refund was directed by plaintiff to "IRS Memphis," and stated "Attn: reconsideration." *See* First Am. Compl., Ex. A at 2. After Appeals Officer Quinn received plaintiff's handwritten facsimile cover sheet and attachments, he explained in a letter to plaintiff that Appeals and District Counsel no longer had jurisdiction to reconsider his 1998 tax year because the Tax Court had already entered a decision with respect to that year, determining plaintiff's tax liability for 1998. *See id.*, Ex. B at 2. Accordingly, the letter, rather than making any determination with respect to the plaintiff's facsimile as though it were a claim for refund, directed plaintiff to the Memphis Service Center, which (as plaintiff apparently also believed) had jurisdiction over *collection* of plaintiff's outstanding liability for 1998.[8] *Id.*, Ex. B. at 3.

**C. Plaintiff's purported claim for refund fails to satisfy the requirements of the informal claim doctrine as developed in the case law of this Circuit**

Notwithstanding the import of *Angelus Milling* (and other cases cited above) that the requirements imposed by the applicable Treasury Regulations are conditions of the waiver of sovereign immunity for a refund suit, cases in this Circuit have held that a claim for refund can be valid for purposes of § 7422(a) even if it fails to meet all of the requirements imposed by regulation. *See, e.g., Computervision*, 445 F.3d at 1363-65; *Furst v. United States*, 678 F.2d 147, 152 (Ct. Cl. 1982); *Kuehn v. United States*, 480 F.2d 1319, 1320-22 (Ct. Cl. 1973). As

[8]If anything, plaintiff's facsimile could be interpreted as a belated attempt to assert his collection due process rights under § 6330. This interpretation is likely, in view of the statement therein that the "levy" was "wrongful."

developed in this Circuit's caselaw, the doctrine has three requirements. First, "an informal claim must have a written component . . . ." *Arch Eng'g Co. v. United States*, 783 F.2d 190, 192 (Fed. Cir. 1986). Second, a valid informal claim must "adequately apprise the Internal Revenue Service that a refund is sought and for certain years." *American Radiator & Standard Sanitary Corp. v. United States*, 318 F.2d 915, 920 (Ct. Cl. 1963), *quoted in Computervision*, 445 F.3d at 1365. Third, a valid informal claim must "describe the legal and factual basis for the refund." *New England Elec. Sys. v. United States*, 32 Fed. Cl. 636, 641 (1995), *appeal dismissed* 156 F.3d 83 (Fed. Cir. May 17, 1995) (Table); *see also Ottawa Silica Co. v. United States*, 699 F.2d 1124, 1138 (Fed. Cir. 1983); *Mobil Corp. v. United States*, 67 Fed. Cl. 708, 716 (2005). These requirements are "designed both to prevent surprise and to give adequate notice to the Service of the nature of the claim and the specific facts upon which it is predicated, thereby permitting an administrative investigation and determination." *Alexander Proudfoot Co. v. United States*, 454 F.2d 1379, 1383 (Ct. Cl. 1972).

Assuming *arguendo* that the facsimile satisfies the "writing" requirement, plaintiff's purported claim for refund fails to meet the other two requirements. Plaintiff's purported refund claim did not "adequately apprise the I.R.S. that a refund was sought" of the amounts collected from him by levy, for the simple reason that his purported claim did not, in fact, request a refund at all, but rather simply objected to the Service's collection activities. Further, no legal or factual grounds for any refund were described in the purported claim.

**1. Plaintiff's purported claim is not a valid informal claim for refund because it contains no reference to a refund, but rather merely demands that the Service cease collection of his unpaid liability**

Plaintiff's purported claim for refund does not satisfy the requirements of the informal

claim doctrine, because it did not put the Service on notice that plaintiff was claiming a right to a refund with respect to his 1998 individual income tax. This is so because plaintiff's purported claim for refund actually demands a different form of relief. In the handwritten note on the facsimile cover sheet that plaintiff now maintains constitutes an informal refund claim, plaintiff merely told the Service that the "levy on bank and garnishment of wages is wrongful and should be withdrawn ASAP!!" First. Am. Compl., Ex. A at 2. Far from being a demand for a refund of tax paid, this is nothing more than a request that the Service cease collecting on plaintiff's outstanding tax liability by means of levy.

Indeed, the facsimile that plaintiff now alleges was a claim for refund of the total amount collected from him that is the subject of this suit–*i.e.*, $104,461.04–was sent on September 9, 2003, a date by which the Service had made only four levies, totaling less than $16,000.

Consideration of the response that IRS Appeals Officer Quinn sent to plaintiff confirms that he did not regard plaintiff's facsimile as constituting a claim for refund. First, nowhere in Mr. Quinn's letter is there any indication that he regarded plaintiff's facsimile as requesting a refund with respect to the 1998 tax year. *See* First Am. Compl., Ex. B at 2-3. Second, the letter affirmatively indicates that Mr. Quinn regarded plaintiff's facsimile as requesting relief from collection activity, not as requesting a refund. The letter states that Mr. Quinn reviewed plaintiff's file and his transcript of account for his 1998 individual income tax, and found that plaintiff "clearly [had] an amount owing," and that, as a consequence, "the levy action would not seem to be wrong." *See id.*, Ex. B at 3. Accordingly, the letter from Appeals Officer Quinn,

having concluded that Appeals and District Counsel lacked jurisdiction over the case,[9] directed plaintiff to take up "the matter of collection" with the "Memphis Service Center," which was responsible for collecting the then-unpaid portion of plaintiff's 1998 individual income tax liability. *See ibid.*

### 2. Plaintiff's purported refund claim is not a valid informal claim for refund because it fails to specify factual and legal grounds for a claim to entitlement to a refund

Even if, somehow, plaintiff's purported claim for refund, did, in fact, satisfy the requirement that it notify the Service that plaintiff was requesting a refund with respect to the 1998 tax year (it does not), it fails the third prong of the informal claim doctrine, because it did not apprise the Service of factual and legal grounds for a claim for entitlement to a refund.

The only arguable ground stated in plaintiff's purported claim was plaintiff's allegation that the attached documents "establish[ed] that there was no deficiency for 1998." First. Am. Compl., Ex. A at 2. This allegation is inadequate for two reasons. First, it offers no legal ground whatsoever, however liberally construed. For this reason alone, it is inadequate. *See, e.g., New England Elec. Sys*, 32 Fed. Cl. at 641 (valid informal claim must "describe the legal . . . basis for the refund"). Second, it does not provide an adequate factual ground, because, as Appeals Officer Quinn pointed out in his letter of October 14, 2003, the documents attached to the facsimile cover sheet established that plaintiff did in fact have a deficiency for the 1998 tax year, which was decided by the Tax Court to be in the amount of $72,199.00. *See* First Am. Compl., Ex. B at 2, Ex. C at 2.

---

[9] *See supra*, § III.B., for further discussion of this point.

**3. Alternatively, assuming *arguendo* that the facsimile in question constituted a valid informal refund claim, plaintiff is barred from prosecuting this suit on the grounds stated in the complaint, under the doctrine of substantial variance**

In the complaint filed in this Court, plaintiff alleges that "The amounts levied from Plaintiff's bank account and his wages were wrongfully collected by the Internal Revenue Service under the internal revenue laws of Title 26 of the United States Code and contrary to the provisions of Section 7405 of Title 26 of the United States Code and the deficiency and assessment procedures under Title 26 of the United States Code." First Am. Compl. ¶ 12. Under the doctrine of substantial variance, plaintiff is barred from prosecuting this suit on those grounds, because those grounds were not raised in any prior refund claim filed with the Service. Thus, even assuming for the sake of argument that the facsimile in question did constitute a valid informal claim for refund, it is not a sufficient basis for this suit for refund.

Under the substantial variance doctrine, a plaintiff is barred from "from presenting claims in a tax refund suit that 'substantially vary' the legal theories and factual bases set forth in the tax refund claim presented to the IRS." *Lockheed Martin Corp. v. United States*, 210 F.3d 1366, 1371 (Fed. Cir. 2000). The doctrine is grounded in § 7422(a) and Treas. Reg. § 301.6402-2(b). *Ibid.* A substantial variance arises in the event that either the legal theories or the factual grounds specified in the taxpayer's claim for refund are varied. *See ibid.* The doctrine bars consideration of any legal theory not "either expressly or impliedly contained in the application for refund" by the taxpayer in a subsequent suit for refund. *Burlington N. Inc. v. United States*, 684 F.2d 866, 868 (Ct. Cl. 1982). Similarly, the doctrine prevents a taxpayer from relying upon factual bases at trial that are not presented in the claim for refund. *Ottawa Silica Co.*, 699 F.2d at 1138.

Presumably, plaintiff's contention is that he is entitled to a refund of the amounts collected from him with respect to his 1998 income tax liability after the October 11, 2002 refund to plaintiff because the United States did not initiate a suit in District Court to recover an erroneous refund pursuant to § 7405, and collected the erroneously refund amount by levy, even though the date of the refund was after the date of the original assessment for 1998, and the Service did not reassess his 1998 liability after the date of the erroneous refund. *See Stanley v. United States*, 35 Fed. Cl. 493, 495 (1996) (holding that, when Service issues post-assessment erroneous refund after assessed amount has been fully paid, Service must either make new assessment or refer case for suit under § 7405 in order to collect amount of erroneous refund), *aff'd*, 140 F.3d 1023 (Fed. Cir. 1998).[10] Whatever the underlying merits of such a contention, plaintiff is barred from asserting it here, because he never asserted it in a valid refund claim filed with the Service.

---

[10]Plaintiff's response to the motion to dismiss the original complaint makes clear that this is plaintiff's contention. *See* Pl.'s Resp. to Mot. to Dismiss at 8 (citing *Stanley*). The plaintiff in *Stanley* had filed a valid refund claim, raising the same grounds that were raised in the complaint in that case. It should be noted that defendant believes that *Stanley* was incorrectly decided, and, in any event, that it is factually distinguishable from this case.

## CONCLUSION

For the reasons stated, the complaint should be dismissed with prejudice for lack of subject-matter jurisdiction.

Respectfully submitted,

July 2, 2007

s/ Joseph B. Syverson

JOSEPH B. SYVERSON
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
TELEPHONE (202) 307-6508
FACSIMILE (202) 524-9440
Joseph.B.Syverson@usdoj.gov

RICHARD T. MORRISON
Acting Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
MARY M. ABATE
Assistant Chief

s/ Mary M. Abate

July 2, 2007

Of Counsel