IN THE UNITED STATES COURT OF FEDERAL CLAIMS
No. 06-861 T
(Judge Firestone)

LAWRENCE D. PENNONI,

Plaintiff,

v.

THE UNITED STATES,

Defendant

# PLAINTIFF'S RESPONSE IN OPPOSITION TO THE UNITED STATES' MOTION TO DISMISS WITH PREJUDICE PLAINTIFF'S AMENDED COMPLAINT

Jennifer Hunter Walz
Counsel for Plaintiff

P.O. Box 430341
Houston, Texas 77243-0341
(713) 446-7730 – phone
(281) 907-0103 – facsimile

# TABLE OF CONTENTS

PLAINTIFF'S RESPONSE IN OPPOSITION TO THE UNITED STATES' MOTION TO DISMISS WITH PREJUDICE PLAINTIFF'S AMENDED COMPLAINT ....1

BRIEF FOR PLAINTIFF IN SUPPORT OF ITS RESPONSE IN OPPOSITION TO THE UNITED STATES' MOTION TO DISMISS ....2

ISSUE PRESENTED ....2

FACTUAL STATEMENT ....2

SUMMARY OF ARGUMENT ....7

ARGUMENT ....8

A. <u>**28 U.S.C. § 1491 Claims Against the United States Generally**</u> ....9

1. **The IRS acted without authority in seizing Plaintiff's property in direct violation of Congressionally mandated procedures under the Internal Revenue Code for collecting the erroneous refund from Plaintiff** ....9

2. **Plaintiff is entitled to the return of his money because the IRS failed to timely file suit under Code § 7405(b), and the IRS failed to timely assess the erroneous refund under Code § 6501** ....11

3. **Plaintiff's Amended Complaint was Timely Filed within the six-year statute of limitations under Code §§ 2401 and 2501** ....12

B. <u>**Internal Revenue Code § 7422 Does Not Bar this Court's Jurisdiction**</u> ....13

C. <u>**28 U.S.C. § 1346 United States as Defendant**</u> ....18

1. **Informal Claim Doctrine** ....19

2. **Plaintiff's Amended Complaint Timely Filed** ....24

CONCLUSION ....25

APPENDIX:

Declaration of Lawrence D. Pennoni:


| Exhibit | Description |
|---|---|
| 1. | Letter from Dennis Quinn, an appeals officer from the Appeals Division of the Internal Revenue Service ("IRS"), to Plaintiff dated October 24, 2001. |
| 2. | Letter from Dennis Quinn, Appeals Officer, to Plaintiff dated November 1, 2001. |
| 3. | Notice of Intent to Levy issued to Plaintiff for the 1998 tax year dated December 30, 2002. |
| 4. | Final Notice of Intent to Levy issued to Plaintiff for the 1998 tax year dated May 29, 2003. |
| 5. | Notice of Levy issued to Wells Fargo Bank concerning Plaintiff's 1998 tax year dated July 22, 2003. |
| 6. | Notice of Levy issued to Continental Casing Corporation concerning Plaintiff's 1998 tax year dated July 22, 2003. |
| 7. | Facsimile from Plaintiff to IRS-Memphis dated September 9, 2003 along with accompanying documents. |
| 8. | Notice of Levy issued to Wells Fargo Bank concerning Plaintiff's 1998 tax year dated October 30, 2003. |
| 9. | Notice of Levy issued to Continental Casing Corporation concerning Plaintiff's 1998 tax year dated October 30, 2003. |
| 10. | Letter from the IRS to Plaintiff dated November 12, 2003. |
| 11. | Letter from the IRS to Plaintiff dated November 14, 2003. |
| 12. | Reminder Notice issued to Plaintiff from the IRS for the 1998 tax year dated December 13, 2003. |


## TABLE OF AUTHORITIES

**CASES:**


*American Radiator & Standard Sanitary Corp. v. United States*, 318 F.2d 915 (Ct. Cl. 1963) ............ 20, 21

*Arch Engineering Co. v. United States*, 783 F.2d 190 (Fed. Cir. 1986) ....................19

*Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573 (Fed. Cir. 1993) ............................9

*Cohen v. United States*, 995 F.2d 205 (Fed. Cir. 1993)..............................16, 17

*Conley v. Gibson*, 355 U.S. 41 (1957) ..............................................................8

*Computervision Corp. v. United States*, 445 F.3d 1355 (Fed. Cir. 2006)..................19

*Cubic Def. Sys. Inc. v. United States*, 45 Fed. Cl. 239 (1999) ....................................9

*Eastport S.S. Corp. v. United States*, 372 F.2d 1002 (Ct. Cl. 1967)...........................11

*Finkelstein v. Untied States*, 943 F. Supp. 425 (D.N.J. 1996)........................13, 25

*Flora v. United States*, 362 U.S. 145 (1960) ..........................................................13

*Kales v. United States*, 115 F.2d 497 (6th Cir. 1940) ................................................22

*Levitsky v. United States*, 27 Fed. Cl. 235 (1992)...............................20, 21, 22

*Minehan v. United States*, No. 05-924T (Fed. Cl. filed January 26, 2007) ................19

*Moran v. United States*, 953 F. Supp. 354 (N.D. Okl. 1996) ........................15, 16

*New England Electric System v. United States*, 32 Fed. Cl. 636 (1995)...........19, 21

*New York Life Ins. Co. v. United States*, 118 Fed.3d 1553
(Fed. Cir. 1997)................................................................................ 10, 16, 17

*Newton v. United States*, 163 F. Supp. 614 (Ct. Cl. 1958) .........................................21

*Night Hawk Leasing Co. v. United States*, 18 F. Supp. 938 (Ct. Cl. 1937) ................20

*Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746 (Fed. Cir. 1988).................8

*Scheuer v. Rhodes*, 416 U.S. 232 (1974) ....................................................................8

*Stanley v. United States*, 35 Fed. Cl. 493 (1996), aff'd, 140 F.3d 1023
(Fed. Cir. 1998) ........................................................................................ 10

*Stelco Holding Co. v. United States*, 42 Fed. Cl. 101 (1998) ....................................19

*United States v. Testan*, 424 U.S. 392 (1976) ) ......................................... 11

*Usibelli Coal Mine v. United* States, 54 Fed. Cl. 373 (2002) .................................... 14

*Wall Industries, Inc. v. United States*, 10 Cl.Ct. 82 (1986) ..................................20, 21

**OTHER:**

Tech. Adv. Mem. 2004-46-021 (August 6, 2006) ......................................................14

**STATUTES:**

Judiciary and Judicial Procedures (28 U.S.C.):

§ 1346 ........................................................................8, 18, 25

§ 1491 ..............................................................................8, 9

§ 2401 ...................................................................7, 8, 12, 25

§ 2501 ...................................................................7, 8, 12, 25

Internal Revenue Code of 1986 (26 U.S.C.):

§ 6203 ....................................................................................6

§ 6212 ..............................................................................6, 10

§ 6213 ..................................................................................10

§ 6303 ................ ..................................................................6, 10

§ 6402 ..................................................................................24

§ 6501 ..........................................................................8, 11, 12

§ 6513 ....................................................................................8

§ 6532 ...................................................6, 7, 8, 9, 10, 12, 13, 24

§ 7405 ...........................................6, 7, 8, 9, 10, 11, 12, 17, 18

§ 7422 ........................................................................13, 15, 17, 18

**MISCELLANOUS:**

Treasury Regulations (26 C.F.R.):

§ 301.6402-2 .......... .15

§ 301.6402-3 .......... .15

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
No. 06-861 T
(Judge Firestone)

---

LAWRENCE D. PENNONI,

Plaintiff,

v.

THE UNITED STATES,

Defendant

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO THE UNITED STATES' MOTION TO DISMISS WITH PREJUDICE PLAINTIFF'S AMENDED COMPLAINT**

---

Plaintiff, Lawrence D. Pennoni, opposes the United States' Motion to Dismiss With Prejudice Plaintiff's Amended Complaint for lack of subject-matter jurisdiction. Plaintiff requests that this Court deny the United States' Motion to Dismiss because the United States' assertions that Plaintiff either failed to file a refund claim or that Plaintiff's refund claim was untimely are both without merit. In support of Plaintiff's request, Plaintiff relies on the accompanying brief and the exhibits attached to the Declaration of Lawrence D. Pennoni filed simultaneously herewith.

WHEREFORE, Plaintiff prays that his Amended Complaint should not be dismissed for lack of subject-matter jurisdiction.

Respectfully submitted,
<u>s/ Jennifer Hunter Walz</u>
JENNIFER HUNTER WALZ
P.O. Box 430341
Houston, Texas 77243-0341
(713) 446-7730 – phone
(281) 907-0103 - facsimile
COUNSEL FOR PLAINTIFF

Dated: August 2, 2007

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
No. 06-861 T
(Judge Firestone)

LAWRENCE D. PENNONI,

Plaintiff,

v.

THE UNITED STATES,

Defendant

**BRIEF FOR PLAINTIFF IN SUPPORT OF HIS RESPONSE IN OPPOSITION TO THE UNITED STATES' MOTION TO DISMISS WITH PREJUDICE PLAINTIFF'S AMENDED COMPLAINT**

This is a suit in which Plaintiff seeks the return of a sum of money wrongfully taken by the Internal Revenue Service under the guise of collecting assessed income taxes. The United States seeks to have this Court dismiss Plaintiff's case for lack of subject-matter jurisdiction.

ISSUE PRESENTED

Whether this Court has subject-matter jurisdiction with respect to Plaintiff's claim for the return of his money seized by the Internal Revenue Service in violation of the internal revenue laws?

FACTUAL STATEMENT

Plaintiff's 1998 income tax liability was the subject of a Tax Court case, *Lawrence D. Pennoni v. Commissioner of Internal Revenue*, No. 9204-01 (U.S. Tax Ct.). Plaintiff's case was sent to the Houston Appeals Office where appeals officer, Dennis

Quinn, was assigned to handle it. (Pennoni Dec. Ex. 1 at 2.)[1] A Stipulation was reached by the parties on February 14, 2002, which culminated in a Tax Court decision on February 15, 2002. (Ex. 7 at 5-6; Ex. 7 at 4.) The Tax Court incorporated the Stipulation into its decision and held that there was no additional tax due for Plaintiff's 1998 tax year. (Ex. 7 at 4.) The Tax Court decision stated that the income tax due for Plaintiff's 1998 tax year was paid on April 15, 1999 and, in fact, overpaid by $2,801. (*Id.*) The Internal Revenue Service ("IRS") assessed Plaintiff's 1998 tax liability on September 11, 2002 in accordance with the Tax Court Decision and such assessment was deemed satisfied in full on April 15, 1999 by the withholding credit.[2]

On October 14, 2002, Plaintiff received an unsolicited, refund check from the IRS in the approximate amount of $80,166. Plaintiff negotiated the refund check. On December 30, 2002, the IRS sent Plaintiff a notice of intent to levy to collect allegedly unpaid taxes for the tax period ending 12-31-1998. It stated:

> Our records indicate that you haven't paid the amount you owe. The law requires that you pay your tax at the time you file your return.

(Ex. 3 at 2.) The account summary contained therein stated that the current balance for Plaintiff's 1998 tax year was $83,818.35 of income tax, penalty and interest. (*Id.* at 3.) Plaintiff contacted the IRS at the phone number set forth in the notice of intent to levy and explained to the IRS that no tax was due as tax had already been assessed after a Tax Court decision was rendered and the tax had been fully paid by withholding tax. The IRS, however, stated they could do nothing to stop the levy unless Plaintiff paid the full

---

[1] Hereinafter, exhibits attached to the Pennoni Declaration will be cited as "Ex. __."

[2] As noted in the United States' Motion to Dismiss at n.3, the IRS assessed $72,960 on September 11, 2002, slightly more than the amount of deficiency of $72,199 set forth in the Tax Court decision.

amount claimed. On May 29, 2003, the IRS, in a further attempt to collect Plaintiff's allegedly unpaid 1998 income tax liability, issued a Final Notice of Intent to Levy to Plaintiff. (Ex. 4 at 2-3.) Plaintiff again contacted the IRS seeking to stop the levy but again the IRS refused to do so. On July 22, 2003, the IRS sent Notices of Levy to Wells Fargo Bank and Continental Casing Corporation, Plaintiff's employer. (Ex. 5 at 2; Ex. 6 at 2.) These notices clearly indicate that the IRS intended to collect the erroneous refund as a "tax." The IRS levied on Plaintiff's property from approximately August 4, 2003 through September 2, 2004. (Def. Mot. at 5.)

After again contacting the IRS and demanding that the levies be stopped and funds already taken from Plaintiff's bank account be returned, on September 9, 2003, Plaintiff filed with the IRS Memphis Service Center, a staunch written objection to the IRS's wrongful levy on his bank account and garnishment of his wages, which read as follows:

> Attached are Tax Court decision documents establishing that there was no deficiency for 1998, thus, levy on bank and garnishment of wages is wrongful and should be withdrawn ASAP!

(Ex. 7 at 2.) Attached to Plaintiff's demand that the IRS cease its wrongful conduct were the following documents:

1. Docket Sheet in *Lawrence D. Pennoni v. Commissioner of Internal Revenue,* No. 9204-01 (U.S. Tax Ct.), as of July 30, 2003. (Ex. 7 at 3.)

2. Tax Court Decision entered on February 15, 2002 in *Lawrence D. Pennoni v. Commissioner of Internal Revenue,* No. 9204-01 (U.S. Tax Ct.). (*Id.* at 4.)

3. Stipulation entered into by Plaintiff and the Commissioner of Internal Revenue in *Lawrence D. Pennoni v. Commissioner of Internal Revenue*, No. 9204-01 (U.S. Tax Ct.), executed by the Commissioner of Internal Revenue on February 14, 2002. (*Id.* at 5-6)

4. Letter from the IRS to Plaintiff dated December 14, 2001. (*Id.* at 7.)

5. Settlement Computation. (*Id.* at 8.)

6. Personal Exemption Worksheet. (*Id.* at 9.)

7. Explanation of the Estimated Tax Penalty. (*Id.* at 10.)

8. Statement of Account, and (*Id.* at 11.)

9. Audit Statement dated October 22, 2001. (*Id.* at 12.)

As stated in Plaintiff's Declaration at paragraph four, "Exhibit 7 above was a demand to the IRS to cease its wrongful conduct in levying on my bank account and garnishing my wages and for the return of monies taken from me as a result of the IRS' unlawful activity."

On October 30, 2003, the IRS sent another Notice of Levy to Wells Fargo Bank and Continental Casing Corporation. (Ex. 8 at 2; Ex. 9 at 2.) On December 13, 2003, the IRS sent Plaintiff a Reminder Notice that he had overdue tax for his 1998 tax year. (Ex. 12 at 2.) All of these types of notices sent to Plaintiff plainly state that the IRS intended to collect, through levy, overdue 1998 income taxes, penalties and interest. There is no mention of recovering a refund erroneously sent to Plaintiff.

On November 12, 2003, the IRS sent Plaintiff a letter acknowledging receipt of his case for consideration in the Houston Appeals Office on October 23, 2003. (Ex. 10 at 2.) However, on November 14, 2003, Appeals Officer, Dennis Quinn, informed Plaintiff

that he had no authority to consider Plaintiff's demand and that only the Memphis Service Center had authority to address his claim, stating:

> Since your case was previously closed with signed decision documents in Tax Court, neither Appeals nor District Counsel really have any jurisdiction over this case.
>
> * * *
>
> In any event, the matter of collection, and the matter of the October 2002 refund to you are items that need to be resolved between you and the Memphis Service Center. The Houston Appeals Office has no jurisdiction or standing on this affair.

(Ex. 11 at 2-3.) Thereafter, the IRS did nothing to resolve Plaintiff's claim.

At no time after the IRS issued the erroneous refund to Plaintiff did the IRS (1) file suit under Internal Revenue Code (the "Code") § 7405(b) for its recovery, or (2) send Plaintiff a notice of deficiency under Code § 6212 or a notice of assessment and demand for tax under Code §§ 6203 and 6303 with respect to any underpayments created by the erroneous refund. (Pennoni Dec. ¶ 3.) It is also plain from the IRS' transcript that the IRS did not assess the erroneous refund amount as a tax and that the IRS did not assess penalties and interest until after collection amounts were in excess of the erroneous refund and never gave Plaintiff a notice of assessment of either penalties or interest. (Syverson Dec. Ex. 1.)

The statute of limitations for the United States to recover an erroneous refund by suit under Code § 7405(b) expired on or about October 14, 2004. Code § 6532(b). In addition, the statute of limitations for the IRS to make a new assessment with respect to any alleged underpayment created by the erroneous refund for Plaintiff's 1998 tax year expired on or about April 18, 2004 (i.e., 3 years from the date the return was received by the IRS). Code § 6501.

On December 15, 2006, Plaintiff filed his Complaint in this Court. On May 17, 2007, Plaintiff amended his Complaint. Plaintiff asserted in his complaints that his original claim of September 9, 2003 for the return of monies wrongfully taken from Plaintiff by the IRS gives this Court subject matter jurisdiction under the informal claim doctrine.

Plaintiff never received a notice of disallowance by certified or registered mail from the IRS expressly (1) disallowing his claim for the return of his monies wrongfully taken by the IRS, nor (2) informing Plaintiff that his only means of recovering these monies was to file a refund suit in the United States District Court or the United States Court of Federal Claims. Plaintiff did not waive his rights to a notice of disallowance. (Pennoni Dec. ¶ 7.)

## SUMMARY OF ARGUMENT

**Defendant has mischaracterized Plaintiff's action as a simple tax refund case and argues that the statute of limitations for seeking a tax refund expired before Plaintiff filed this case. However, Plaintiff is not seeking a tax refund. Plaintiff's 1998 taxes were paid in full on April 15, 1999 and assessed on September 11, 2002. Plaintiff is requesting the return of his money taken by the IRS without legal authority to recovery a refund erroneously made to Plaintiff on October 14, 2002.**

Plaintiff timely filed a civil action against the United States within the six-year statute of limitations under 28 U.S.C. §§ 2401 and 2501 for the return of approximately $104,461.04 wrongfully taken from Plaintiff by the IRS in violation of the internal revenue laws. The monies taken from Plaintiff through levies amounted to an unauthorized recovery of a refund erroneously issued to Plaintiff by the IRS. The IRS

seized Plaintiff's property without any legal authority. The IRS is limited to recovering an erroneous refund by (1) timely filing suit under Code §§ 7405(b) and 6532(b), or (2) instituting deficiency and assessment procedures under the Code. This Court has subject-matter jurisdiction over Plaintiff's case under Title 28, Section 1491 of the United States Code because (1) the IRS took Plaintiff's property in direct violation of Congressionally mandated procedures, and (2) the Defendant has no defense to Plaintiff's demand for the return of his money under Code § 6532(b) because the two-year statute of limitations expired for the IRS to file suit under Code § 7405(b) for the return of the erroneous refund, nor under Code § 6501 because the three-year statute of limitations expired for the IRS to assess the erroneous refund in accordance with the Code.

In the alternative, subject-matter jurisdiction exists for this Court to hear Plaintiff's case under Title 28, Section 1346 of the United States Code, and the informal claim doctrine. Plaintiff timely filed the present suit within the six-year statute of limitations under 28 U.S.C. §§ 2401 and 2501. As Plaintiff alleged in his Amended Complaint, Plaintiff's claim of September 9, 2003 constituted a valid claim for the return of his money under the informal claim doctrine. Plaintiff timely filed it, in writing, with the IRS in a manner that gave the IRS adequate notice of Plaintiff's basis for his claim.

## ARGUMENT

On a motion to dismiss for lack of subject-matter jurisdiction, this Court must presume all undisputed factual allegations to be true, and construe all reasonable inferences in favor of Plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236-37 (1974); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988). Further, a motion to dismiss should not be granted "unless it appears beyond doubt that the

plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Finally, if Plaintiff can establish subject-matter jurisdiction by a preponderance of the evidence, this Court must deny the United States' motion to dismiss. *Cubic Def. Sys., Inc. v. United States*, 45 Fed. Cl. 239, 245 (1999) (citing *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993)).

This Court has subject-matter jurisdiction to hear Plaintiff's Amended Complaint as set forth herein:

## A. <u>28 U.S.C. § 1491 Claims Against the United States Generally</u>

Title 28, Section 1491 (a)(1), of the United States Code states:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulations of an executive department, or upon any express or implied contract with the United States, or for the liquidated or unliquidated damages in cases not sounding in tort.

### 1. The IRS acted without authority in seizing Plaintiff's property in direct violation of Congressionally mandated procedures under the Internal Revenue Code for collecting the erroneous refund from Plaintiff.

The United States Court of Federal Claims has jurisdiction over Plaintiff's claim for the return of his money taken through levies by the IRS without authority in direct violation of Congressionally mandated procedures under Title 26 of the United States Code. The IRS levied on Plaintiff's property to recover an erroneous refund issued to Plaintiff by the IRS. The IRS cannot use any of its collection powers to recover an erroneous refund unless and until it either (1) files suit under Code § 7405(b) within the two-year limitations period under Code § 6532(b), or (2) institutes deficiency and

assessment procedures under the Code relating to the erroneous refund within the limitations period for assessment applicable to the return for the tax year which the erroneous refund relates to. *See Stanley v. United States,* 35 Fed. Cl. 493, 496 (1996), *aff'd*, 140 F.3d 1023 (Fed. Cir. 1998). The IRS ignored these statutory requirements that were prerequisites to using its collection powers to recover the erroneous refund from Plaintiff when it failed to timely file suit under Code §§ 7405(b) and 6532(b) for its recovery and employed tax deficiency collection procedures without first assessing the erroneous refund under the Code. The government, in its Motion to Dismiss, does not deny these facts.

Collection procedures cannot be undertaken until the IRS first satisfies the deficiency and assessment procedures of Code §§ 6212, 6213 and 6303. The IRS had no authority to collect the erroneous refund from Plaintiff under the tax deficiency collection procedures without first assessing the refund amount as a tax deficiency, i.e., an underpayment of tax. No notice of deficiency concerning the erroneous refund was sent to Plaintiff nor was the erroneous refund assessed as a tax. The United States acknowledges the only assessment was made on September 11, 2002. (Def. Mot. at 4). This assessment cannot be an assessment of the erroneous refund amount because the refund was not issued to Plaintiff until October 14, 2002. The United States Court of Appeals for the Federal Circuit made it clear that "[t]he erroneous refund cannot, however, be recovered on the basis of the original assessment." *Stanley,* 35 Fed. Cl. at 496.

Case law clearly states that the United States Court of Federal Claims has "jurisdiction over suits seeking the return of money improperly paid to, exacted or

retained by the government." *See New York Life Ins. Co. v. United States,* 118 F.3d 1553, 1556 (Fed. Cir. 1997); *see also Eastport S.S. Corp. v. United States,* 372 F.2d 1002, 1007 (Ct. Cl. 1967).

In *Eastport,* the Court of Claims provided guidance in determining its jurisdiction under 28 U.S.C. § 1491. The court stated:

> But it is not every claim involving or invoking the Constitution, a federal statute, or a regulation which is cognizable here. The claim must, of course, be for money. Within that sphere, the non-contractual claims we consider under Section 1491 can be divided into two somewhat overlapping classes---those in which the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum; and those demands in which money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury. In the first group (where money or property has been paid or taken), the claim must assert that the value sued for was improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation.

*Id.* at 1007.

**2. Plaintiff is entitled to the return of his money because the IRS failed to timely file suit under Code § 7405(b), and the IRS failed to timely assess the erroneous refund under Code § 6501.**

The court in *Eastport* made it clear that a taxpayer's claim must be for money. *Id.* The United States Supreme Court in *United States v. Testan,* 424 U.S. 392, 401-02 (1976), looked to whether any federal statute "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." *Id.* at 400.

In the present case, Plaintiff seeks the return of approximately $104,461.04 taken from him without authority in violation of the statutory procedures set forth in Title 26 of the United States Code for recovering an erroneous refund. Congress made it clear under Code § 6532(b) that if the government does not file suit within the two-year limitations period to recover an erroneous refund, it is barred from collecting it under Code § 7405.

Likewise, the IRS is prohibited from employing collection procedures under the Code without first making an assessment of tax within the three-year statute of limitations under Code § 6501. Just as a taxpayer may not obtain a refund from the IRS of a tax payment after the statute of limitations has expired, the IRS loses it rights to collect and retain an erroneous refund after the limitations periods have expired for recovering it. Therefore, Plaintiff is entitled to the return of his money under Code §§ 6532(b) and 6501 because the government has no rights to retain it after the statute of limitations has expired for properly recovering an erroneous refund.

Furthermore, the IRS is not entitled to collect penalties on an erroneous refund. The Code only allows the IRS to impose penalties on "tax" amounts. The erroneous refund issued to Plaintiff was never assessed as any underpayment of "tax." Code § 6602 only permits the government to collect interest on an erroneous refund amount if the government timely filed suit under Code § 7405(b) to recover the erroneous refund. The United States did not file suit against Plaintiff to recover the erroneous refund under Code § 7405(b). Therefore, Plaintiff is entitled to the return of monies illegally taken from him that include penalties and interest.

### 3. Plaintiff's Amended Complaint was Timely Filed within the six-year statute of limitations under Code §§ 2401 and 2501

Plaintiff has six years to bring suit against the United States under 28 U.S.C. §§ 2401 and 2501 from the date the IRS first seized Plaintiff's property in violation of statutory procedures to properly recover an erroneous refund. Plaintiff's action against the United States first accrued in approximately August 2003 when the IRS first unlawfully levied on Plaintiff's bank account for the recovery of the erroneous refund.

(Syverson Dec. Ex. 1 at 5). Plaintiff timely filed his Amended Complaint on May 17, 2007.

The general six-year statute of limitations governs when no specific statute of limitations is applicable. *See Finkelstein v. United States*, 943 F. Supp. 425, 432 (D.N.J. 1996). In the present case, the United States inaccurately presumes in its Motion to Dismiss that the two-year statute of limitations under Code § 6532(a) bars Plaintiff's present suit. (Def. Mot at 11.) Code § 6532(a) only applies to suits for refund claims made under Code § 7422. As stated herein, Code § 7422 is not applicable to the present case because Plaintiff did not file this suit seeking a refund of any taxes but for the return of monies confiscated by the IRS to recover a refund it erroneously issued to Plaintiff.

**B. Internal Revenue Code § 7422 Does Not Bar this Court's Jurisdiction**

Internal Revenue Code § 7422 does not bar this Court from exercising its jurisdiction to adjudicate Plaintiff's claim for the return of his money unlawfully taken from him by the IRS to recover an erroneous refund.

Internal Revenue Code § 7422(a) provides:

> (a) no suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

Internal Revenue Code § 7422 limits this Court's jurisdiction only if a taxpayer was first required to file a claim for refund before filing a suit. As Plaintiff has set forth herein, Plaintiff is not seeking a refund of any "internal revenue tax" nor can the amount he seeks be characterized as "any sum." Neither the Internal Revenue Code nor the treasury

regulations define "any sum." The United States Supreme Court in *Flora v. United States*, 362 U.S. 145, 151 (1960), *aff'g* 362 U.S. 63 (1958), described "any sum" as a catchall phrase but "to say this is not to define what it catches." The Court also found the term "any sum" to be ambiguous yet noted that one example of "any sum" is interest. *Id.* at 149. In Tech. Adv. Mem. 2004-46-021 (August 6, 2006), the IRS "found nothing in the ancestry of the 'any sum' language to indicate that the phrase applies to nontax claims." The IRS also looked to the United States Court of Federal Claims' interpretation of this and other language in *Usibelli Coal Mine v. United States*, 54 Fed. Cl. 373 (2002). The IRS believes this case "suggests Congress has viewed the 'tax, penalty and any sum' language as either synonymous with, or at least not significantly different from, an overpayment of tax." *Id.* at 385.

In the present case, Plaintiff is not requesting a refund of any overpaid tax or any penalty or sum tantamount to a tax for his 1998 tax year. It is plain from the language in Plaintiff's Amended Complaint that Plaintiff is seeking the "return of a sum of money wrongfully taken from Plaintiff in the approximate amount of $104,461.04. The foregoing sum was erroneously and illegally taken by Defendant under the guise of collecting an allegedly assessed income tax liability, together with interest and penalties, for the year 1998." (Amend. Compl. at 1).

The facts of this case do not give rise to a refund claim of taxes. Plaintiff's 1998 income tax liability was paid in full on April 15, 1999 and subsequently assessed on September 11, 2002 in accordance with the United States Tax Court decision rendered on February 14, 2002. The Tax Court decision effectively closed Plaintiff's 1998 tax year. On approximately October 14, 2002, Plaintiff received an erroneous refund from the IRS,

which is undisputed by the United States. (Def. Mot. at 4). Thereafter, the IRS conducted unauthorized levies to recover the erroneous refund, including penalties and interest. There can be no doubt that the IRS seized Plaintiff's property in connection with the erroneous refund and not in connection with Plaintiff's 1998 tax liability.

Code § 7422 also states that a claim for refund must be filed in accordance with the law and treasury regulations. Treasury Regulation § 301.6402-2(c) states "all claims by taxpayers for the refunding of taxes [other than income taxes], interest, penalties and additions to tax shall be made on Form 843." The form itself only provides for refund claims of employment, estate, gift and excise taxes. Treasury Regulation § 301.6402-3(a)(2) states that "[i]n the case of an overpayment of income taxes for a taxable year of an individual for which Form 1040 or 1040A has been filed, a claim for refund shall be made on Form 1040X..."

Plaintiff is not seeking a refund of any of the taxes covered by IRS Forms 843 nor a refund of overpaid income taxes covered by IRS Form 1040X. Plaintiff is requesting the return of monies unlawfully taken by the IRS to effect a recovery of a refund the IRS erroneously made to Plaintiff.

Congress has not mandated any administrative preconditions that a taxpayer must exhaust prior to filing a suit for the return of monies taken by the IRS in violation of statutory procedures to recover an erroneous refund.

Case law provides additional support for Plaintiff's position that the present suit was not one for a refund of taxes but one for the return of monies illegally seized by the United States for the recovery of an erroneous refund. In *Moran v. United States*, 953 F. Supp. 354 (N.D. Okl. 1996), the court distinguished a request for the return of money

from a refund claim. In this case, the taxpayer amended her 1985 income tax return and sent the IRS a cashier's check instructing that it be used to satisfy her 1985 income tax liability. In the same year, the taxpayer received an erroneous refund. The IRS subsequently recovered the erroneous refund through levies on the taxpayer's accounts. The taxpayer brought suit in a United States District Court for the return of these monies. The pivotal issue to be decided by the court was whether the funds seized through the levies were applied to the taxpayer's 1985 tax liability or the erroneous refund.

In deciding this issue, the court relied on a proposed Pretrial Order stating that "[t]he IRS' documents show that the cashier's check was applied to the tax liability, as Plaintiff directed, not to the erroneous refund." *Moran,* 953 F. Supp. at 356. The court concluded, "the taxpayer...does not seek a 'claim for credit or refund of an overpayment of any tax.' Rather, Plaintiff seeks the return of funds confiscated by the United States to repay an erroneous refund payment made to the taxpayer by the United States..." *Id.* at 357.

In *New York Life Ins. Co.*, the court decided whether the taxpayer could recover its remittance without having to file a refund claim. The determination hinged upon whether the remittance by the taxpayer constituted a "tax payment." The court deemed the following as "significant operational facts" in determining how the remittance should be treated. The taxpayer received a notice of deficiency, the taxpayer remitted money under protest reserving the right to seek the return of the money, and the IRS' failed to make a tax assessment. *New York Life Ins. Co.*, 118 F.3d at 1559.

The court applied its earlier ruling in *Cohen v. United States,* 995 F.2d 205 (Fed. Cir. 1993), to find that the taxpayer's remittance was not a payment but a deposit. *Id.* In

*Cohen,* the court concluded, "[t]he remittance made by the [taxpayers], under protest, after a notice of deficiency but in clear circumstances of contest prior to expiration of the period of assessment, was a deposit as a matter of law." *Cohen,* 995 F.2d at 209. Therefore, the court in *New York Life Ins. Co.* held that "the requirement in Section 7422(a) that no suit for 'recovery of any internal revenue tax' 'shall be maintained' until a refund claim has been filed, does not apply to the suit brought by [the taxpayer] since it was not a suit for the return of a tax payment." *New York Life Ins. Co.*, 118 F.3d at 1558.

Based on the foregoing cases, this Court must determine whether the funds Plaintiff is seeking the return of constitute "tax payments." Code § 7422 does not preempt this Court's jurisdiction in this case unless the funds Plaintiff is seeking the return of were "tax payments." Plaintiff is not seeking the recovery of any "tax payment" but, as in *Moran* and *Cohen,* is seeking the return of money seized by the IRS to recover an erroneous refund. The IRS failed to issue Plaintiff a notice of deficiency and make a tax assessment; thus, it cannot be said that the IRS collected a tax.

The government in *New York Life Ins. Co.* argued the fairness of the court's decision because it permitted the taxpayer to recover its remittance without consideration of the merits of the case. The court stated "[t]he government can avoid this situation by making a timely assessment for the tax deficiency, which would assure it the right to litigate the merits of the deficiency." *New York Life Ins. Co.*, 118 F.3d at 1560. The court's rationale is equally applicable to Plaintiff's case. The IRS had ample opportunity to lawfully recover the erroneous refund by either filing suit under Code § 7405(b) or instituting deficiency and assessment procedures under Title 26 of the United States Code

concerning the erroneous refund. The statute of limitations did not expire until April 18, 2004 for the IRS to make an assessment with respect to the erroneous refund.

Further, the statute of limitations for filing suit under Code § 7405(b) to recover the erroneous refund did not expire until October 14, 2004. It is obvious from Appeals Officer, Dennis Quinn's, letter of November 14, 2003 that he was familiar with all of the facts of Plaintiff's case and could have easily rectified the situation to recover the erroneous refund properly and timely. (Ex. 11 at 2-3.) Nonetheless, the IRS failed to act in a manner prescribed by law to recover the erroneous refund.

### C. <u>28 U.S.C. § 1346 United States as Defendant</u>

Title 28, Section 1346(a)(1), of the United States Code states:

> The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws.

As discussed above, there was no extant tax assessment for which the IRS could collect monies from Plaintiff. Therefore, Plaintiff is not seeking a return of any tax and 28 U.S.C. § 1346 does not apply in this case. Even if, for the sake of argument, 28 U.S.C. § 1346 does apply in this case, and therefore, pursuant to Code § 7422, Plaintiff was required to first file a claim for the return of his money prior to filing suit under 28 U.S.C. § 1346, Plaintiff did file such claim. Plaintiff filed a claim on September 9, 2003 for the return of his money seized by the IRS in violation of statutory procedures for the recovery of an erroneous refund. Therefore, this Court has subject matter jurisdiction to hear Plaintiff's suit under 28 U.S.C. § 1346(a)(1).

As discussed above in Section B, there is no specifically mandated form prescribed under the treasury regulations that must be filed to claim the return of illegally collected monies that are not tax payments. Therefore, Plaintiff's written demand of September 9, 2003 that the IRS cease its wrongful levies is a valid claim for the return of any money seized, levied, or collected prior thereto or thereafter. Furthermore, even where there is a specifically mandated form prescribed under the treasury regulations for making a specific type of claim, the informal claim doctrine has long been used by the courts to support jurisdiction of such courts in cases involving defective or absent claims.

**1. Informal Claim Doctrine**

The informal claim doctrine has long been recognized and applied by the courts in exercising jurisdiction over cases in which the taxpayer's formal refund claim failed but the facts and circumstances of taxpayer's informal claim, viewed in their totality, evidenced adequate and timely notice to the IRS of taxpayer's claim for a refund. *Stelco Holding Co. v. United States,* 42 Fed. Cl. 101, 109 (1998).

This Court cites *Computervision Corp. v. United States,* 445 F.3d 1355, 1364 (Fed. Cir. 2006), as well settled law that formal compliance with the statute and regulations is excused if the refund claim qualifies under the informal claim doctrine. *See Minehan v. United States,* No. 05-924T (Fed. Cl. filed January 26, 2007). The United States Court of Appeals for the Federal Circuit and this Court have not imposed strict guidelines for determining whether a taxpayer has made a valid informal refund claim other than the claim must be in writing submitted to the IRS prior to the expiration of the statute of limitations. *Arch Engineering Co. v. United States,* 783 F.2d 190, 192 (Fed. Cir. 1986); *Stelco Holding*, 42 Fed. Cl. at 109; *see New England Elec. System v. United*

*States*, 32 Fed. Cl. 636, 641 (1995) ("* * * no set rules can be elucidated as to what constitutes an adequate informal claim; rather, each case must be determined based on its own unique set of facts. Of primary importance, however, is the existence of *some* written component."); *see also Wall Industries, Inc. v. United States,* 10 Cl. Ct. 82, 98 (1986) ("[T]he cases in this court emphasize that there is no preconceived set of universal facts and circumstances which otherwise define an efficacious informal claim…each case is to be decided on its own merits, paying particular attention to the combined effect of the unique facts and circumstances known to the government at the time the alleged informal claim is made.").

"Various notations and figures" on a timely filed income tax return has constituted a valid informal refund claim. *American Radiator & Standard Sanitary Corp. v. United States,* 318 F.2d 915, 920 (Ct.Cl. 1963). The Court of Claims ruled that a taxpayer's objection written on the back of a check paying the tax qualified as an informal refund claim. The taxpayer stated: "This check is accepted as paid under protest pending final decision of the higher courts." *Night Hawk Leasing Co. v. United States,* 18 F. Supp. 938, 941-42 (Ct.Cl. 1937).

The justification for allowing a claim under the informal claim doctrine can be found when the claim, although informally made, put the IRS on notice as to the taxpayer's argument for the refund. The United States Court of Appeals for the Federal Circuit in *Computervision,* 445 F.3d at 1364, stated "a timely filed claim with purely formal defects is permissible if it fairly apprises the IRS of the basis for the claim within the limitations period." This Court, in *Levitsky v. United States,* 27 Fed. Cl. 235, 241 (1992), found that an informal claim is valid if "the IRS knew of the facts underlying the

claim and understood that a claim was being made based upon them." The court looked beyond the claim and examined other written communication between the taxpayer and the IRS to determine if the IRS had adequate notice. *Id.*; *see also New England Elec. System*, 32 Fed. Cl. at 645 ("A court must examine the facts and circumstances to discern whether the total mix of the written component and the particular facts indicate that the IRS knew or should have known that the taxpayer was asserting a right to a refund."); *see also Newton v. United States*, 163 F. Supp. 614, 619 (Ct. Cl. 1958) ("It made no difference that the informal claim was made prior to the time the tax was actually paid since the Commissioner knew or should have known that the plaintiff was claiming a refund, Crenshaw v. Hrcka, supra."); *see also American Radiator & Standard Sanitary Corp.*, 318 F.2d at 920 ("* * *the writing should not be given a crabbed or literal reading, ignoring all the surrounding circumstances which give it body and content. The focus is on the claim as a whole, not merely the written component.").

Of particular importance to the courts in determining whether the IRS had sufficient notice of the claim is whether "the agent's knowledge gained in auditing the taxpayer's returns sufficed to inform the I.R.S. of the grounds underlying the claim." *Levitsky*, 27 Fed. Cl. at 242; *Wall Industries, Inc.*, 10 Cl. Ct. at 100; *American Radiator & Standard Sanitary Corp.*, 318 F.2d at 921 ("There can therefore be no doubt that * * * a responsible employee of the Internal Revenue Service had 'notice fairly advising the Commissioner of the nature of the taxpayer's claim.'"). In *New England Elec. System*, the court believed that the IRS Agent "knew that the plaintiff disagreed with that assessment, that the plaintiff expected a refund, why the plaintiff expected a refund, and the exact sum for which the plaintiff desired a refund." *New England Elec. System*, 32

Fed. Cl. at 646. The court held that "[t]he informal claim doctrine was developed for precisely this instance when the entire basis of the plaintiff's refund claim was within the knowledge of the IRS from the very beginning." *Id.* at 647.

This Court in *Levitsky*, 27 Fed. Cl. at 240, also clearly stated its perspective on the "notice" issue, by quoting *Kales v. United States,* 115 F.2d 497, 500 (6th Cir. 1940):

> In the administration of Internal Revenue Laws, we are concerned with substance and not form. The prerequisite refunding statutes requiring claim for refund before suit, should receive a practical construction to effectuate their purpose.

In the present case, Plaintiff made a written claim to the IRS Memphis Office on September 9, 2003, shortly after the IRS began unlawfully seizing his money. (Ex. 7.) Plaintiff's claim stated that there was at that time no deficiency for his 1998 tax year as a result of the Tax Court decision attached thereto which decided that Plaintiff had actually overpaid his 1998 tax liability and was due a refund. (*Id.*) Plaintiff demanded that the IRS immediately withdraw its wrongful levy on his bank account and garnishment of his wages. (*Id.*) Plaintiff attached other relevant documents concerning Plaintiff's 1998 tax year, such as, the audit statement, settlement computations and Stipulation between Plaintiff and the IRS. (*Id.*) Any reasonable IRS agent would understand that Plaintiff's demand implicitly was a request for the return of the monies previously or thereafter taken pursuant to the wrongful levies.

On November 12, 2003, the Houston Appeals Office of the IRS acknowledged receipt of Plaintiff's claim and assigned it to Dennis Quinn, the appeals officer who had handled Plaintiff's 1998 tax case since October 2001. Mr. Quinn was instrumental in reaching the Stipulation between the IRS and Plaintiff, the terms of which culminated into a Tax Court Decision on February 15, 2002. It is undisputable that Mr. Quinn knew

from these documents that Plaintiff owed no deficiency in taxes for his 1998 tax year, and, in fact, had overpaid his 1998 taxes by $2,801 through his withholding credits.

Mr. Quinn did not have to infer or even predict that Plaintiff was making a claim for the return of his monies seized by the IRS in direct violation of the internal revenue laws. He was intimately familiar with the facts of Plaintiff's case, that is, that there was no deficiency for Plaintiff's 1998 taxes as the tax assessment had been discharged in full through application of withholding credits. As stated in his letter to Plaintiff on November 14, 2003, Mr. Quinn was aware that Plaintiff received a refund of approximately $80,166 on October 14, 2002.

Further, by Mr. Quinn's own admissions in his letter to Plaintiff of November 14, 2003, he examined Plaintiff's "file, transcript data, etc." Thus, Mr. Quinn also knew or should have known that no new assessment had been made nor any deficiency notice issued to Plaintiff with respect to the erroneous refund. As an Appeals Officer, Mr. Quinn should have known the proper procedures available to the IRS in collecting an erroneous refund from a taxpayer. In fact, Mr. Quinn could easily have rectified the situation by instructing the IRS collection division to withdraw the unauthorized levies on Plaintiff's bank account and wages and to proceed in the correct manner for collecting an erroneous refund.

Without a doubt, Plaintiff's claim of September 9, 2003 more than adequately put the IRS on notice of his basis for the return of his money. In accordance with the above-cited authorities, Plaintiff's written claim must be viewed in light of all the circumstances, including his prior case with Mr. Quinn. Taken as a whole with the accompanying documents and Mr. Quinn's prior involvement in the case, the IRS should

have understood that Plaintiff's claim of September 9, 2003 was a claim for the return of Plaintiff's money taken by the IRS in violation of the internal revenue laws.

As set forth herein, Plaintiff's claim of September 9, 2003 for the return of his money unlawfully seized by the IRS met the guidelines established by this Court for a valid claim under the informal claim doctrine:

a. It was in writing;

b. It was submitted to the IRS prior to the running of any applicable statute of limitations; and

c. It constituted more than adequate notice to the IRS of Plaintiff's basis for his claim.

**2. Plaintiff's Amended Complaint was Timely Filed**

Internal Revenue Code § 6532(a)(1) states, in part, that:

> No suit or proceeding under section 7422(a) for the recovery of any internal revenue tax, penalty, or other sum, shall be begun…after the expiration of 2 years from the date of mailing by certified mail or registered mail by the Secretary to the taxpayer of a notice of the disallowance of the part of the claim to which the suit or proceeding relates.

The two-year limitations period under Code § 6532(a) never began to run against Plaintiff for filing the present suit. The running of the limitations period is not triggered until the IRS issues a notice of disallowance by certified or registered mail in accordance with Code § 6532(a). Plaintiff never received a notice of disallowance from the IRS unequivocally disallowing his claim for the return of his money wrongfully taken by the IRS, nor did the IRS inform Plaintiff that his only recourse for recovering those monies was to file a civil action for a refund in the United States District Court or the United States Court of Federal Claims. (Pennoni Dec. ¶ 7.) Code § 6402(k) states "[i]n the case

of a disallowance of a claim for refund, the Secretary shall provide the taxpayer with an explanation for such disallowance." Plaintiff did not waive his right to receive a notice of disallowance. (Pennoni Dec. ¶ 7.)

Because the specific two-year statute of limitations has not been triggered in the present case, Plaintiff's suit to recover his informal claim must be governed by the general six-year statute of limitations under 28 U.S.C. §§ 2401 and 2501. *See Finkelstein,* 943 F. Supp. at 432. Plaintiff filed his informal claim on September 9, 2003 for the return of monies unlawfully taken from him. Plaintiff timely filed the present suit with his Amended Complaint on May 17, 2007 seeking the return of his monies under 28 U.S.C. § 1346 and the informal claim doctrine.

CONCLUSION

For the reasons stated, Plaintiff's Amended Complaint should not be dismissed for lack of subject-matter jurisdiction. If this Court concludes Plaintiff's suit will be dismissed for lack of subject-matter jurisdiction, Plaintiff respectfully requests that it be dismissed without prejudice based upon the merits of Plaintiff's arguments presented herein.

Respectfully submitted,

s/ Jennifer Hunter Walz
JENNIFER HUNTER WALZ
P.O. Box 430341
Houston, Texas 77243-0341
(713) 446-7730 – phone
(281) 907-0103 - facsimile

Dated: August 2, 2007

COUNSEL FOR PLAINTIFF