No. 06-861 T
(Judge Firestone)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

LAWRENCE D. PENNONI,

Plaintiff

v.

THE UNITED STATES,

Defendant

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE PLAINTIFF'S FIRST AMENDED COMPLAINT**

RICHARD T. MORRISON
Acting Assistant Attorney General

DAVID GUSTAFSON
MARY M. ABATE
JOSEPH B. SYVERSON
Attorneys
Justice Department (Tax)
Court of Federal Claims Section
P.O. Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6508
(202) 514-9440 (facsimile)

## TABLE OF CONTENTS

**Page**

**Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss with Prejudice Plaintiff's First Amended Complaint**. . . . . . . . . . . . . . . . . . . . . . . . . 1

1. **Contrary to plaintiff's contention, the "sum" alleged in this case to have been wrongfully collected under the internal revenue laws is a "tax" (the predicate for recovery of which is the timely filing of a refund claim)**. . . . . . . . . . . . . . . 3

2. **Plaintiff's request that the Service stop levying his property to satisfy his tax liability was not a valid informal claim for refund because it did not give notice to the Service that plaintiff was claiming a refund at all, and it did not set forth factual or legal grounds for a claimed refund**. . . . . . . . . . . . . . . . . . . 8

3. **Based on the allegations of the complaint, the complaint was not timely filed**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

4. **In the circumstances, this case is more properly characterized as a wrongful levy suit, over which the Court lacks jurisdiction**. . . . . . . . . . . . . . . . . . . . . . . 14

**Conclusion**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Page

## TABLE OF AUTHORITIES

**Cases:**

*American Radiator & Standard Sanitary Corp. v. United States*, 318 F.2d 915 (Ct. Cl. 1963). . . . . . 9

*Apotex, Inc. v. Thompson*, 347 F.3d 1335. . . . . . 8

*Balkissoon v. Commissioner*, 995 F.2d 525 (4th Cir. 1993). . . . . . 14

*Barenfeld v. United States*, 442 F.2d 371 (Ct. Cl. 1971). . . . . . 9

*Berger v. Commissioner*, 404 F.2d 668 (3d Cir. 1968). . . . . . 14

*Boren v. Riddell*, 241 F.2d 670 (9th Cir. 1957). . . . . . 14

*Bull v. United States*, 295 U.S. 247 (1935). . . . . . 6

*Cherbanaeff v. United States*, No. 06-640 T, (Fed. Cl. July 12, 2007) . . . . . . 14, 15

*Circo Resorts, Inc. v. United States*, 223 Cl. Ct. 787 (1980). . . . . . 12, 13

*Clement v. United States*, 30 A.F.T.R.2d 72-5163, 1971 WL. 3021 (D. Mass August 20, 1971), *vacated on other grounds*, 472 F.2d 776 (1st Cir. 1973), *cert. denied* 414 U.S. 864 (1973). . . . . . 12, 13

*Cohen v. United States*, 995 F.2d 205 (Fed. Cir. 1993). . . . . . 7

*EC Term of Years Trust v. United States*, 127 S. Ct. 1763 (2007). . . . . . 15

*Fellouzis v. United States*, No. 91-1251-CIV-T-21C, 1994 WL. 782232 (M.D. Fla. Nov. 8, 1994). . . . . . 12

*Finkelstein v. United States*, 943 F. Supp. 425 (D.N.J. 1996). . . . . . 11, 12, 14

*Gordon v. United States*, 649 F.2d 837, 843 (Ct. Cl. 1981). . . . . . 15

*In Re Goldston*, 104 F.3d 1198 (10 th Cir. 1997). . . . . . 5

*Kuehn v. United States*, 480 F.2d 1319 (Ct. Cl. 1973). . . . . . 9, 10

**Page**

**Cases (Continuation):**

*Mobil Corp. v. United States*, 67 Fed. Cl. 708 (2005). . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Moran v. United States*, 953 F. Supp. 354 (N.D. Okl. 1996).. . . . . . . . . . . . . . . . . . . . . . 7, 8

*New York Life Insurance Co. v. United States*, 118 F.3d 1553 (Fed. Cir. 1997), *cert denied* 523 U.S. 1094 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Richardson v. Comm'r*, T.C. Memo 1998-139, T.C.M. (CCH) 2142 (1998). . . . . . . . . . 14

*Rocovich v. United States*, 933 F.2d 991 (Fed. Cir. 1991).. . . . . . . . . . . . . . . . . . . . . . . . . 4

*Rosenman v. United States*, 323 U.S. 658 (1945). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Smith v. United States*, 478 F.2d 398 (5th Cir. 1973). . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Stanley v. United States*, 35 Fed. Cl. 493 (1996), *aff'd* 140 F.3d 1023 (Fed. Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 15

*United States v. Latham*, 754 F.2d 747 (7th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Union Pac. R. R. v. United States*, 389 F.2d 437 (Ct. Cl. 1968). . . . . . . . . . . . . . . . . . . . . 9

**Statutes:**

American Jobs Creation Act of 2004, Pub. L. No. 108-357, 118 Stat. 1418.. . . . . . . . . . . 7

Internal Revenue Code of 1986 (26 U.S.C.):

§ 6201.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 7

§ 6212.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

§ 6213.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

§ 6330.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

§ 6511.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

§ 6532.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 11, 12, 13

§ 6602.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**Page**

**Statues (Continuation):**

§ 6603.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

§ 6621.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

§ 7405.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 6

§ 7422.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 7

Judiciary and Judicial Procedures, 28 U.S.C., § 1491. . . . . . . . . . . . . . . . . . . . . . . . . 7

**Miscellaneous:**

Treasury Regulation (26 C.F.R.):

§ 301.6402-2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

§ 301.6402-3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 06-861 T
(Judge Firestone)

LAWRENCE D. PENNONI,

Plaintiff,

v.

THE UNITED STATES,

Defendant

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE PLAINTIFF'S FIRST AMENDED COMPLAINT**

Plaintiff seems to be having a great deal of difficulty deciding just what kind of suit he has brought in this Court, and what relief he is seeking here. For example, his original complaint alleged (¶¶ 2, 11; *see* Am. Compl. ¶¶ 2, 12) that this is a suit to recover a "sum [that] was erroneously and illegally taken by Defendant," and that "amounts levied from Plaintiff's bank account and his wages were wrongfully collected by the Internal Revenue Service under the internal revenue laws of Title 26 of the United States Code"; yet the complaint did not allege that plaintiff had filed a refund claim with respect to those sums. Only after defendant filed a motion to dismiss, based on plaintiff's failure to file a refund claim as required by Code § 7422(a),[1] did

[1]Section 7422(a) provides:

(continued...)

plaintiff allege, in his amended complaint (¶ 4), that he had filed an "informal" refund claim that had been "rejected" by the Internal Revenue Service (IRS). Then, only after we demonstrated, in our motion to dismiss the *amended* complaint, that the purported informal refund claim did not meet the standards for such a claim and that the purported disallowance of the claim was sent by IRS more than two years prior to the filing of the suit, so that the suit was untimely under Code § 6532(a),[2] did plaintiff raise contentions (in his opposition to our motion to dismiss, at 13-18)[3] that a refund claim is not required because he is not seeking a refund of "tax," and that the purported claim disallowance does not count as such (and thus presumably does not start the running of the statute of limitations for filing suit) because it was not "unequivocal," and not sent by certified or registered mail.

Now that the dust appears to have settled, what becomes clear is that the gravamen of

---

[1](...continued)
No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

[2]Section 6532(a)(1) provides:

No suit or proceeding under section 7422(a) for the recovery of any internal revenue tax, penalty, or other sum, shall be begun before the expiration of 6 months from the date of filing the claim required under such section unless the Secretary renders a decision thereon within that time, nor after the expiration of 2 years from the date of mailing by certified mail or registered mail by the Secretary to the taxpayer of a notice of the disallowance of the part of the claim to which the suit or proceeding relates.

[3]Hereinafter, references to defendant's motion to dismiss and to plaintiff's opposition thereto are to the motion (and opposition) to dismiss the amended complaint, unless otherwise specified.

plaintiff's complaint (and the only consistent theme throughout) is his contention that the IRS wrongfully levied plaintiff's funds in order to recoup the tax that was erroneously refunded–the relief that he actually asked for in his facsimile to the IRS (*i.e.*, the purported informal refund claim). In other words, aside from the fact that, viewed as a tax refund suit, this action is jurisdictionally defective (as discussed in our opening brief), this suit actually is more properly characterized as a wrongful levy action, over which the Court lacks jurisdiction, as we will discuss after commenting on points made in plaintiff's opposition to our motion.

1. *Contrary to plaintiff's contention, the "sum" alleged in this case to have been wrongfully collected under the internal revenue laws is a "tax" (the predicate for recovery of which is the timely filing of a refund claim)*

In his opposition, plaintiff asserts that "[t]he facts of this case do not give rise to a refund claim of taxes." Pl.'s Opp. at 14. This is simply not the case, and plaintiff provides no factual or legal support for his contention that the erroneous refund he received did not create a balance of tax, assessed interest, and penalties owing for plaintiff's 1998 tax year. As explained in our motion to dismiss, after plaintiff and the Commissioner reached a settlement in litigation in Tax Court over plaintiff's 1998 individual income tax liability, the Tax Court entered a decision in accordance with this settlement. Def.'s Mot. to Dismiss Pl.'s Am. Compl. at 3-4. Under the Tax Court decision, plaintiff had overpaid his 1998 income tax by $2,801.00. *Ibid.* Consequently, plaintiff was entitled to a refund of this amount for 1998, plus interest on the overpayment. Plaintiff, however, received a refund of $80,166.57 with respect to his 1998 tax year, well in excess of the amount he was entitled to. *Id.* at 4. This refund resulted in a balance due for plaintiff's account for the 1998 year (*ibid.*), and it was this balance that the Service, after sending

the required notices and demand to plaintiff, began to collect by levy. *Id.* at 4-5.[4]

Plaintiff admits that he was owed a refund as a result of the Tax Court decision, and he admits that he received an erroneous refund in an amount in excess of the amount he was entitled to under that decision. *See* Pl.'s Opp. at 3. Furthermore, the Certificate of Payments, Assessments, and Other Specified Matters (Form 4340) for plaintiff's 1998 individual income tax account establishes that the refund check plaintiff received in the amount of $80,166.57 was a refund of individual income tax for the 1998 tax year. Syverson Dec. Ex. 1 at 4.[5] *See Rocovich v. United States*, 933 F.2d 991, 994 (Fed. Cir. 1991) (Certificate of Assessments, Payments, and Other Specified Matters is presumptive proof of the matters specified therein, and is a sufficient basis for a Court to make a factual finding in the absence of countervailing evidence offered by the taxpayer).

Moreover, plaintiff implicitly admits that the refund he received was a refund of "tax," insofar as he alleges that the erroneous refund could have been recovered by means of a suit under § 7405. *See* Pl.'s Am. Compl. ¶ 12; Pl's Opp. at 10. That section provides that erroneous refunds *of tax* may be recovered by means of a civil action brought by the United States:

> (a) REFUNDS AFTER LIMITATION PERIOD. — Any portion *of a tax imposed by this title*, refund of which is erroneously made, within the meaning of section 6514,

[4]Plaintiff, it appears, disagrees with the foregoing only insofar as he claims that the erroneous refund did not create a balance due with respect to plaintiff's 1998 individual income tax. *See* Pl.'s Opp. at 14 (asserting that "[t]he Tax Court decision effectively closed Plaintiff's 1998 tax year); *see also id.* at 3 (asserting that the assessment of plaintiff's tax liability made in accordance with the Tax Court decision was "deemed satisfied in full on April 15, 1999 by the withholding credit"). Thus, plaintiff argues, the erroneous portion of the refund that plaintiff received was not "tax," and, as a result, the amounts that the Service collected from plaintiff to recover the erroneous portion of the refund were not payments of tax. *See id.* at 13-18.

[5]Hereinafter, exhibits attached to the Syverson Declaration will be cited as "Ex. __."

> may be recovered by civil action brought in the name of the United States.
>
> (b) REFUNDS OTHERWISE ERRONEOUS.— Any portion *of a tax imposed by this title* which has been erroneously refunded (if such refund would not be considered as erroneous under section 6514) may be recovered by civil action brought in the name of the United States.

§ 7405 (emphases added); *see also* § 6602 (providing that "any portion of an *internal revenue tax* . . . which has been erroneously refunded, and which is *recoverable* by suit pursuant to section 7405, shall bear interest at the underpayment rate established under section 6621 from the date of the payment of the refund" (emphases added)). Thus, to the extent that plaintiff is claiming that the Service could have collected the erroneous refund he is claiming under § 7405, plaintiff must also, on pain of inconsistency, be contending that the refund he received was a refund of tax.

Further, to the extent that plaintiff may be contending that, as a matter of law, an erroneous refund, even if it is an erroneous refund of tax for a particular tax period in excess of the amount the taxpayer is lawfully entitled to, does not result in a deficit of tax with respect to that period, plaintiff is also mistaken. *See* Pl.'s Opp. at 15 (asserting that plaintiff's suit is "not one for a refund of taxes but one for the return of monies . . . seized by the United States for the recovery of an erroneous refund"). In so contending, plaintiff apparently has conflated tax liabilities with tax assessments. It is well-established that the making of a valid assessment is not a prerequisite for the existence of a tax liability. *See, e.g., In Re Goldston*, 104 F.3d 1198, 1200-01 (10 th Cir. 1997); *United States v. Latham*, 754 F.2d 747, 750 (7th Cir. 1985) (rejecting as "novel and ridiculous" the defendant's theory that "an assessment under 26 U.S.C. § 6201 is a legal necessity before an individual can have an income tax liability"). This is so because an assessment under § 6201 is merely "an administrative determination that a certain amount is currently due and owing as a tax . . . ." *Latham*, 754 F.2d at 750. As such, the tax liability itself

arises from the substantive provisions of the Code, not from the administrative act of assessment. *See* § 6201(a) (Secretary authorized to assess "all taxes . . . imposed by this title"); *Bull v. United States*, 295 U.S. 247, 259 (1935) (contrasting statutory provisions, which "prescribe the rule of taxation," with assessments, which are actions of an administrative agency by which the agency "ascertain[s] the amount [of tax] due").

Finally, this Court's holding in *Stanley v. United States*, 35 Fed. Cl. 493, 496 (1996), *aff'd*, 140 F.3d 1023 (Fed. Cir. 1998), (relied upon by plaintiff (at 9-10) to support his contention on the merits that the levies in the instant case were unlawful) supports the position that an erroneous refund of tax with respect to a given tax period results in a tax underpayment for that period. Although *Stanley* held that an erroneous refund of tax for a given tax period can be recovered only by means of a suit under § 7405, or by ordinary collection methods after the amount of the erroneous refund has been timely reassessed for that tax period, the *Stanley* court took pains to point out that its holding did *not* mean that "payment of a tax liability extinguishes the assessment." *Stanley*, 35 Fed. Cl. at 500. Rather, in the case of an erroneous refund (*ibid.*)–

> [t]he original assessment is simply not available as a basis upon which to recover the erroneous refund.
>
> Although the erroneous refund cannot be collected based on the original assessment, the erroneous refund to Stanley was nevertheless a refund with respect to "a tax imposed by this title," thereby implicating § 7405.

Indeed, *Stanley's* view that the making of an erroneous refund of tax with respect to a particular tax period does not somehow transform the nature of the liability of the taxpayer who receives such a refund into a nontax liability is consistent with the fact that an underpayment of this liability can be reassessed under the assessment provisions of the Code (provided that the statute of limitations for the tax period at issue remains open). Section 6201(a) gives the

Secretary authority to "make . . . assessments of all taxes (including interest, additional amounts, additions to tax, and assessable penalties) imposed by this title, or accruing under any former internal revenue law. ..." Thus, to the extent that an amount is assessable under § 6201(a), it must be a "tax" that is "imposed by" Title 26 or a predecessor thereof. Consequently, if an erroneous refund is assessable under § 6201(a), as *Stanley* and similar cases hold, then the erroneous refund amount must be a "tax" that is "imposed by" the Code.[6]

---

[6]In support of his position, plaintiff relies upon two inapposite Federal Circuit cases-- *Cohen v. United States*, 995 F.2d 205 (Fed. Cir. 1993); *New York Life Insurance Co. v. United States*, 118 F.3d 1553 (Fed. Cir. 1997), *cert. denied* 523 U.S. 1094 (1998); and a district court case (*Moran v. United States*, 953 F. Supp. 354 (N.D. Okl. 1996)) that simply assumed, based on no legal rationale, that the erroneous refund at issue was not a "tax." *See* Pl.'s Opp. at 15-18.

In *New York Life*, the Federal Circuit explained that, following the Supreme Court's decision in *Rosenman v. United States*, 323 U.S. 658 (1945), the courts have distinguished between tax payments and tax deposits. *New York Life*, 118 F.3d at 1556-57; *see also Cohen*, 995 F.2d at 207-08 (discussing *Rosenman*). Under *Rosenman* and its progeny, tax payments are subject to the administrative claim requirements of § 6511(a) and § 7422(a), but tax deposits are not. *New York Life*, 118 F.3d at 1558. Consequently, under this line of authority, a suit for return of a tax deposit, unlike a suit for return of a tax payment, is subject only to the general jurisdictional restrictions of the Tucker Act, 28 U.S.C. § 1491. *Id.* at 1555-59. This is so because, at the time these cases were decided, "the Code [did] not deal with deposits of taxes or provide procedures for their making or recovery." *Id.* at 1556. (Congress has subsequently amended the Code to specifically provide for the making of deposits of tax that are other than payments of tax. *See* American Jobs Creation Act of 2004, Pub. L. No. 108-357, 118 Stat. 1418, § 842 (2004) (codified at § 6603).) The issue in these cases was not whether the remittances were remittances of tax, but rather whether the remittances of tax were "payments" (subject to §§ 6511 and 7422) or "deposits" (not subject to those provisions).

In *Moran*, the district court held that the taxpayer's suit for recovery of an erroneous refund was not a suit for tax refund subject to the requirements of § 6511(a). *See Moran*, 953 F. Supp. at 356-57. *Moran* reached this holding by means of the following reasoning:

> [Section 6511(a)] of the Code, however, is inapposite. As emphasized above, Plaintiff's original payment in 1987 was applied to the outstanding tax liability for taxable year 1985, not to the erroneous tax refund. Thus, the taxpayer in the

(continued...)

2. *Plaintiff's request that the Service stop levying his property to satisfy his tax liability was not a valid informal claim for refund because it did not give notice to the Service that plaintiff was claiming a refund at all, and it did not set forth factual or legal grounds for a claimed refund*

Plaintiff has clearly failed to establish that his purported claim for refund satisfies the informal claim doctrine as developed in the case law of this Circuit. In our opening brief, we demonstrated that plaintiff's purported claim for refund did not satisfy the requirements of the informal claim doctrine because, *inter alia*, it did not give notice to the Service that plaintiff was claiming a right to refund.[7] *See* Def.'s Mot. to Dismiss at 15-18. Plaintiff does not dispute that

---

[6](...continued)
> instant case does not seek a "claim for credit or refund of an overpayment of any tax." Rather, Plaintiff seeks the return of funds confiscated by the United States to repay an erroneous refund payment made to the taxpayer by the United States nearly four years earlier. Therefore, the statute of limitations contained in Section 6511 does not bar the present action.

*Id.* at 357. The *Moran* court's only premise was the fact that a previous payment that the taxpayer made to the Service by check was applied to the taxpayer's 1985 tax liability. Thus, the *Moran* court simply assumed, without any supporting analysis, that, as a matter of law, an erroneous refund does not result in a tax liability, and thus its conclusion begs the question that is before the Court in this case. *Cf., Apotex, Inc. v. Thompson*, 347 F.3d 1335, 1349 (rejecting party's argument because it "beg[ged] the question" that was before the Court).

[7]We also argued that plaintiff did not file a valid claim for refund because he failed to comply with the regulations governing administrative claims for refund, and the Service did not waive these requirements in this case, as binding Supreme Court precedent establishes that it must in order to excuse a taxpayer's failure to comply with the applicable regulations. *See* Def.'s Mot. to Dismiss at 11-15. Plaintiff's response to this argument is that he was not required to comply with *any* of the applicable regulations because they do not specifically provide a form for the making of a claim for refund of an erroneous refund amount. *See* Pl.'s Opp. at 15, 19. First, the regulations do prescribe a particular form: plaintiff is seeking a refund of individual income tax for the 1998 tax year, and hence was required by Treas. Reg. § 301.6402-3(a)(2) to file a claim for refund with the Service using Form 1040X. Second, even if the regulations were silent on this point, they impose additional requirements that plaintiff failed to comply with. *See* Def.'s Mot. to Dismiss at 13-14 (explaining that plaintiff's purported claim for refund does not comply
(continued...)

his facsimile (the purported informal claim) did not give actual notice to the Service that he was claiming a right to refund. Rather, plaintiff contends that "any reasonable IRS agent *would* understand that Plaintiff's demand implicitly was a request for the return of the monies previously or thereafter taken . . . ." Pl.'s Opp. at 22. That is, plaintiff's position is that the Service should have inferred that plaintiff was "implicitly" claiming a right to refund, notwithstanding that the only request in his purported informal claim was that the Service cease its collection activity.

The line of cases relied on by plaintiff for the proposition that a reasonably knowledgeable responsible IRS employee can be charged with constructive notice that a taxpayer is seeking a refund stems from the decision of the Court of Claims in *American Radiator & Stand. Sanitary Corp. v. United States*, 318 F.2d 915, 162 Ct. Cl. 106 (1963). In that case, the taxpayer had indicated in writing in three different places on the return that certain amounts were refundable, and the IRS agent who audited the return was intimately knowledgeable of the details. In a subsequent opinion, the Court of Claims explained why *American Radiator* did not dictate the same result in that case. In *Kuehn v. United States*, 480 F.2d 1319, 1322 (Ct. Cl. 1973) (quoting *Barenfeld v. United States*, 442 F.2d 371, 375 (Ct. Cl. 1971), and *Union Pac. R. R. v. United States*, 389 F.2d 437, 445 (Ct. Cl. 1968)), the Court stated:

> The crucial point [in *American Radiator*] was that the 1949 return made it clear, at that time, that the plaintiff was claiming credit for a tax refund. The same is not true in this case. Here, the plaintiff's attempt to take the deduction in 1968 did not provide notice to the defendant that it was also seeking, in the alternative, a refund applicable to 1962 and 1963, although the IRS may have known that this

---

[7](...continued)
with Treas. Reg. § 301.6402-2(b)(1)).

> was likely. It has been held on numerous occasions that, simply because the IRS has access to information that could make it think the taxpayer might desire to claim a refund, "the Internal Revenue Service is not required to weigh circumstantial evidence in order to determine whether a taxpayer is asking for a tax refund." . . . "Availability of information is not equivalent to notice that a claim is asserted based on that information. That claim must somehow be communicated to the Service."

At best, plaintiff's facsimile, coupled with the information available to the Service regarding plaintiff's 1998 individual income tax liability, might have given the Service information "that could make it think" that he might desire a refund of his 1998 individual income taxes. This, however, is not sufficient to satisfy the notice prong of the informal claim doctrine. To the contrary, plaintiff's claim had to "somehow be communicated to the Service," because plaintiff was not entitled to rely on the mere "availability of information" to the Service regarding a potential claim for refund that he might have had.

Moreover, plaintiff apparently does not dispute that he failed to set forth in his purported informal claim for refund the legal and factual grounds upon which he relies before this Court. Instead, plaintiff simply contends that his purported informal claim was adequate because Appeals Officer Quinn should have known the factual and legal grounds for his claim, given his prior involvement with plaintiff's 1998 tax year when it was in litigation before the Tax Court. *See* Pl.'s Opp. at 22-24. Although a taxpayer may rely upon the knowledge of the taxpayer's case that Service employees have gained from prior involvement with the case, prior involvement with the taxpayer's case by Service employees does not relieve the taxpayer of its obligation to "describe the legal and factual basis for the refund" in the taxpayer's claim for refund. *See Mobil Corp. v. United States*, 67 Fed. Cl. 708, 718 (2005). As defendant explained in its opening brief, plaintiff's purported claim for refund fails entirely to describe any legal grounds upon which the

purported claim could be based, and fails to adequately describe the factual grounds underpinning the purported claim. Def.'s Mot. to Dismiss at 18.[8]

3. *Based on the allegations of the complaint, the complaint was not timely filed*

In our opening brief, we demonstrated that the complaint was, on its face, untimely under § 6532(a)(1), because plaintiff alleged in his amended complaint that his purported claim for refund had been disallowed by an IRS letter sent more than two years prior to the date plaintiff filed the instant suit. *See* Def.'s Mot. to Dismiss at 10-11. Plaintiff's only response to this contention, other than to attempt to deny what he already admitted to in his amended complaint, is that the letter he received from the IRS did not begin the running of the limitations period because it was not sent by certified or registered mail. *See* Pl.'s Opp. at 24.

Plaintiff does not dispute, however, that he received the purported disallowance letter. Several courts have held that § 6532(a)(1) does not require a notice of disallowance to be sent by certified or registered mail when the taxpayer does not dispute receipt of the notice. For instance, in *Finkelstein v. United States*, 943 F. Supp. 425, 430-31 (D.N.J. 1996), the court held that a taxpayer's suit for refund was untimely under § 6532(a), notwithstanding that the notice of disallowance the taxpayer received was not sent by certified or registered mail. As *Finkelstein* explained, the "certified mail or registered mail" language in § 6532(a)(1) was intended to protect the Service in the event that the taxpayer disputes the date of mailing, and consequently is immaterial when, as in this case, the taxpayer does not dispute receipt of the notice of

---

[8]In our opening brief, we argued, in the alternative, that even if plaintiff had filed a valid informal claim, his suit should be dismissed because the grounds for refund he relies upon in this Court substantially vary from the grounds he stated in his claim for refund with the Service. Def.'s Mot. to Dismiss at 19-20. Plaintiff has not responded to this argument.

disallowance:

> The requirement of notice by certified mail or registered mail in § 6532 may be characterized as a protective measure for the I.R.S. to use to prove that the Notice of Disallowance was indeed mailed. The fact that the Notice of Disallowance may not have been mailed by certified or registered mail is of no moment in this case. [The taxpayer's] actual receipt proves that the Notice of Disallowance was delivered.

*Id.* at 430 (citations omitted); *see also Smith v. United States*, 478 F.2d 398, 399-400 (5th Cir. 1973) ("So long as the taxpayer receives adequate notice of the Commissioner's disallowance, no particular form of notice is necessary to start the running of the period of limitations."); *Fellouzis v. United States*, No. 91-1251-CIV-T-21C, 1994 WL 782232, at *5 (M.D. Fla. Nov. 8, 1994) (where there was an issue of whether taxpayer's suit for refund was timely under § 6532(a), holding that it was not a material issue of fact whether notices of disallowance were sent to taxpayer by registered or certified mail because "the existence of the notice in the hands of the Plaintiffs is not in dispute, and there is no dispute concerning the date of the mailing of the notice"); *Clement v. United States*, 30 A.F.T.R.2d 72-5163, 1971 WL 3021 (D. Mass August 20, 1971) (concluding that taxpayers' suit was barred by § 6532(a) to the extent their claim was disallowed in notice of disallowance, notwithstanding that notice was not sent by certified or registered mail, because "[h]aving received the notice promptly, [taxpayers] have not been injured by any want of ceremony), *vacated on other grounds*, 472 F.2d 776 (1st Cir. 1973), *cert. denied* 414 U.S. 864 (1973); *cf. Circo Resorts, Inc. v. United States*, 223 Cl. Ct. 787, 788-89 (1980) (Order) (rejecting taxpayer's argument that refund suit was timely under § 6532(a) notwithstanding that notices of disallowance were mailed more than 25 months before taxpayer filed suit because notices were not dated, and observing that "[t]he statutory requirement . . . is

that the suit be filed within 2 years of the *mailing* of the notice, and if the suit was not so filed, it is immaterial whether the notice was dated").

Furthermore, in *Clement*, the court, faced with a similar situation to the case at bar, highlighted the inconsistency in the position of a taxpayer who seeks relief from the requirements for making a formal claim for refund, but who would nonetheless insist that the Service be bound by the formality that the taxpayer claims entitlement to disregard. After concluding that the taxpayers' return for the 1964 tax year constituted an informal claim for refund, the court went on to explain why the equities of the case required treating a letter sent to the taxpayers regarding this return as a notice of disallowance under § 6532(a), notwithstanding that it was not sent by certified or registered mail:

> However, if the taxpayers are to have the benefit of such a broad construction of what they filed, the government ought to be treated with equal latitude. Admittedly, the letter the IRS sent on June 13, 1967 did not constitute a deficiency notice within the description of 26 U. S. C. § 6213(a). Nor was it, as contemplated by 26 U. S. C. § 6532(a), sent by certified or registered mail by the Secretary of the Treasury or his delegate as a 'notice of the disallowance of the part of the claim' to which this suit relates. Yet if plaintiffs' 1964 tax return may be regarded as a sufficient claim of a refund of an overpayment of $22+ thousand, it seems fair to regard the government's response as a disallowance of $20,875.86 of that claim and an allowance of $1,547.61 of the claim.

*Clement*, 1971 WL 3021 at *2.[9]

---

[9]In addition. several Circuit Courts of Appeal, interpreting statutory language that is similar to the language at issue here, have held that a notice of deficiency need not be sent by certified or registered mail in order to meet the statutory requirements if it was actually received by the taxpayer. Section 6212(a), which concerns notices of deficiency, provides as follows:

> *In general.* — If the Secretary determines that there is a deficiency in respect of any tax imposed by subtitles A or B or chapter 41, 42, 43, or 44, he is authorized to send notice of such deficiency to the taxpayer by certified mail or registered

(continued...)

4. *In the circumstances, this case is more properly characterized as a wrongful levy suit, over which the Court lacks jurisdiction*

In any event, plaintiff failed to follow the proper procedures for obtaining the relief that he actually asked for in his facsimile to the IRS (cessation of levy action). Regardless of plaintiff's *post hoc* contention that his facsimile was "implicitly" requesting a refund, the facsimile itself only asked the Service to stop levying plaintiff's property. Plaintiff had ample opportunity to challenge the propriety of this collection activity by requesting a collection due process hearing, which he chose not to pursue. *See* § 6330(b) (providing for hearing before IRS Appeals prior to levy if such a hearing is timely requested); *Cherbanaeff v. United States*, No. 06-640 T, Slip Op. at 5 n.4 (Fed. Cl. July 12, 2007) (explaining collection due process rights). As plaintiff himself admits, he received a letter from the Service, a Final Notice of Intent to Levy and Notice of Your Right to a Hearing, informing him of his right to request a Collection Due

---

[9](...continued)

mail. Such notice shall include a notice to the taxpayer of the taxpayer's right to contact a local office of the taxpayer advocate and the location and phone number of the appropriate office.

Notwithstanding the use of "certified mail or registered mail" in § 6212(a), courts have held that a notice of deficiency need not be sent by certified or registered mail, so long as the taxpayer actually received the notice. *See Balkissoon v. Comm'r*, 995 F.2d 525, 527-29 (4th Cir. 1993); *Berger v. Comm'r*, 404 F.2d 668, 672-73 (3d Cir. 1968) (Section 6212(a) "authorizes a notice of deficiency to be sent by registered or certified mail," but "[i]n authorizing such method of notice it does not forbid any other method"); *Boren v. Riddell*, 241 F.2d 670, 672-74 (9th Cir. 1957); *Richardson v. Comm'r*, T.C. Memo 1998-139, T.C.M. (CCH) 2142 (1998). These cases have adopted a similar rationale to that of *Finkelstein*, interpreting the "certified mail or registered mail" language in § 6212(a) to provide a method for the Commissioner to prove mailing of the notice, but not imposing a requirement to prove mailing by certified or registered mail in a case where there is proof that taxpayer actually received the notice. *See Balkissoon*, 995 F.2d at 528 ("If the taxpayer actually does receive notice of deficiency by some method of delivery, the Commissioner's failure to comply with the authorization in section 6212(a) inviting use of registered or certified mail proves to be a technical, but harmless violation.").

Process hearing under § 6330. *See* Pl.'s Opp. at 4; Pennoni Decl., Ex. 4 at 2. Although plaintiff asserts that he "contacted the IRS seeking to stop the levy" after receipt of this letter, he failed to exercise his right under § 6330 to a collection due process hearing. *See id.* at 4; Ex. 1 at 3-9. Having forfeited his rights to such review, plaintiff cannot now complain that he lacks a forum in which to challenge the Service's collection activities.[10] *See Cherbanaeff*, Slip Op. at 12 n.8 (noting that plaintiffs who brought suit challenging Service levy action as wrongful but failed to exercise their collection due process rights "were not without a remedy when they first received notice from the IRS that it intended to levy their property").

Section 6330(d) provides for judicial review of a determination after a collection due process hearing in the United States Tax Court, *not* in the Court of Federal Claims.[11] The only wrongful levy actions over which this Court arguably has jurisdiction are suits brought by third party nontaxpayers for recovery of their property levied to satisfy the tax liabilities of others. *See Gordon v. United States*, 649 F.2d 837, 843 (Ct. Cl. 1981); *Cherbanaeff*, Slip Op. at 9-12.[12] And even in such suits, a claim for refund must have been filed by the third party within 9 months of the levy. *Gordon*, 649 F.2d at 843-44. Thus, this Court lacks jurisdiction over plaintiff's

---

[10] *Stanley* did not involve a wrongful levy issue, since in that case the taxpayer repaid the erroneous refund amount voluntarily and then claimed a refund. *Stanley*, 35 Fed. Cl. at 495.

[11] At the time plaintiff received notice of his collection due process right, § 6330(d) provided for review either in Tax Court or federal district court, depending on the issues raised at the taxpayer's collection due process hearing, but § 6330(d) did not provide for any review in this Court.

[12] In *Cherbanaeff*, the Court noted that "the continued viability" of *Gordon*'s holding that this Court has subject-matter jurisdiction over third party wrongful levy claims "is uncertain," given the Supreme Court's recent decision in *EC Term of Years Trust v. United States*, 127 S. Ct. 1763 (2007). *Cherbanaeff*, Slip Op. at 10 n.7.

wrongful levy "claim."

## CONCLUSION

For the reasons stated, the complaint should be dismissed with prejudice for lack of subject-matter jurisdiction.

Respectfully submitted,

August 20, 2007

s/ Joseph B. Syverson
JOSEPH B. SYVERSON
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
TELEPHONE (202) 307-6508
FACSIMILE (202) 514-9440
Joseph.B.Syverson@usdoj.gov

RICHARD T. MORRISON
Acting Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
MARY M. ABATE
Assistant Chief

s/ Mary M. Abate
Of Counsel

August 20, 2007