# In the United States Court of Federal Claims

**No. 06-861T**
**(Filed: December 4, 2007)**

```
* * * * * * * * * * * * * * * * * * *   *
                                        *
LAWRENCE D. PENNONI,                    *
                                        *
            Plaintiff,                  *   Subject Matter Jurisdiction, RCFC
                                        *   12(b)(1); Erroneous Refund; Illegal
        v.                              *   Exaction.
                                        *
THE UNITED STATES,                      *
                                        *
            Defendant.                  *
                                        *
* * * * * * * * * * * * * * * * * * *   *
```

*Jennifer Hunter Walz,* Houston, TX for plaintiff.

*Joseph B. Syverson,* U.S. Department of Justice, Washington, DC, with whom were *Richard T. Morrison, Acting Assistant Attorney General* and *Chief, Court of Federal Claims Section, David Gustafson,* for defendant.

## O P I N I O N

**FIRESTONE**, *Judge.*

Pending before the court is the motion of the United States ("government" or "defendant") to dismiss the amended complaint of plaintiff, Lawrence D. Pennoni ("plaintiff"), pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC") for lack of subject matter jurisdiction. In his amended complaint, plaintiff alleges that he is entitled to the return of monies collected by the Internal Revenue Service ("IRS") via levy of his bank account and garnishment of his wages, because the

IRS failed to follow the proper procedures under the Internal Revenue Code ("Code" or "I.R.C.") for recovering an erroneous refund it sent to him.  The government has moved to dismiss the suit on the ground that plaintiff's action is untimely under the criteria established for tax refund cases in 26 U.S.C. §§ 7422(a) (2000), 6511(a) (2001) and 6532(a) (2000).  Plaintiff argues, in response, that he is not seeking a "tax refund," and therefore he did not have to comply with the prerequisites for a tax refund action under 26 U.S.C. § 7422 and its related provisions.  Instead, plaintiff contends that this is an action challenging an "illegal exaction" and is timely under the general six-year statute of limitations set forth in 28 U.S.C. §§ 2401 (2000) and 2501 (2004).  For the reasons discussed in more detail below, the government's motion to dismiss is **DENIED**.

## BACKGROUND

The background jurisdictional facts are taken from the first amended complaint, the Statement in the government's motion to dismiss, and the factual statement in plaintiff's response brief, as well as the exhibits filed by plaintiff and the government.

In 1998, plaintiff received $247,072.02 in income, from which $75,000.00 in federal income tax was withheld.  Def.'s Ex. 9 at 2.  However, plaintiff did not file a 1998 federal income tax return by the filing deadline.[1]  Def.'s Mot. to Dismiss at 2.  As a consequence, on February 16, 2001, the IRS sent plaintiff a letter entitled "Proposed

---

[1]According to IRS records, on April 15, 1999, plaintiff was granted an extension of time to file until August 15, 1999.  Def.'s Ex. 1 at 3.

Individual Income Tax Assessment," in which the IRS calculated plaintiff's individual income tax liability, including penalties and interest, for 1998 and indicated a balance due in the amount of $17,764.53, to be assessed if he did not respond within thirty days. Def.'s Ex. 2.  The letter advised plaintiff that one of the responses available to him was to submit a Form 1040, U.S. Individual Income Tax Return, for 1998 within the thirty-day period.  Id. at 2.  More than thirty days later, on April 18, 2001, the IRS received a Form 1040 for 1998 from plaintiff, in which he claimed he was owed a refund of $3,035.33. Def.'s Ex. 3 at 3.

On June 1, 2001, the IRS sent plaintiff a Notice of Deficiency indicating the same tax deficiency and penalties as calculated in the Proposed Individual Income Tax Assessment of February 16, 2001.  Def.'s Ex. 4.  This Notice also specified that plaintiff could contest the determinations therein by petitioning the Tax Court within ninety days. Id. at 2.  Plaintiff timely filed such a petition on July 19, 2001.  Def.'s Ex. 5 at 2.  The Appeals Division of the IRS then worked with plaintiff to settle the matter, and a decision codifying the terms of their settlement stipulation was entered by the Tax Court on February 15, 2002 (Tax Court Docket No. 9104-1).  First Am. Compl., Ex. C, A at 7; see also Pl.'s Resp., Ex. 2.  Neither party sought to modify that decision, and it became final on or about May 15, 2002.  First Am. Compl. ¶ 6.  This decision declared that plaintiff's statutory income tax deficiency for 1998 was $72,199.00.  First Am. Compl., Ex. C. Because plaintiff had a withholding credit of $75,000.00, he was owed a refund of $2,801.00.  Id.

The IRS Certificate of Assessments, Payments, and Other Specified Matters ("Certificate") regarding plaintiff's 1998 individual income taxes indicates that a $72,960.00 deficiency was assessed on September 11, 2002.[2,3] Def.'s Ex. 1 at 4. Notwithstanding this assessment, on or about October 14, 2002, "[p]laintiff received an unsolicited, erroneous refund check in the amount of $80,166.57,"[4] First Am. Compl. at 3 ¶ 7, which was "$77,365.77 in excess of the amount of the refund plaintiff and the Commissioner had agreed upon in the settlement stipulation adopted by the Tax Court." Def.'s Mot. to Dismiss at 4.  It is not disputed that plaintiff negotiated the check.  Def.'s Mot. to Dismiss at 4; Pl.'s Resp. at 3.

Once the IRS realized its mistake, it sent plaintiff a "Notice of Balance Due" on November 25, 2002, Def.'s Ex. 1 at 9, and a "Notice of Intent to Levy" on December 30, 2002.  Pl.'s Resp., Ex. 3 at 2.  The latter notice stated, "Our records indicate that you

---

[2]This amount is $761.00 more than the $72,199.00 deficiency determined by the Tax Court decision.  Def.'s Mot. to Dismiss at 4, n.3; Pl.'s Resp. at 3, n.2.  IRS Appeals Officer Dennis A. Quinn later conceded in a letter to plaintiff that "the assessed deficiency amount of $72,960.00 is wrong.  We reduced your deficiency from $72,960.00 to $72,199.00 in Appeals."  First Am. Compl., Ex. B at 3.

[3]A Certificate of Assessments, Payments, and Other Specified Matters is "presumptive proof of a valid assessment" where the taxpayer "has produced no evidence to counter this presumption."  Rocovich v. United States, 933 F.2d 991, 994 (Fed. Cir. 1991) (internal quotations omitted).

[4]By contrast, Appeals Officer Quinn indicated that the deficiency amount was assessed one week after the withholding credit was assessed and the erroneous refund was issued.  First Am. Compl., Ex. B at 2; see infra, p. 6.  While the precise timing and/or cause of the error are not material to the disposition of this motion, they may be at issue on the merits.

haven't paid the amount you owe." Id.  According to plaintiff, he then called the IRS and "explained . . . that no tax was due as tax had already been assessed after [the] Tax Court decision was rendered and the tax had been fully paid by withholding tax.  The IRS, however, stated that they could do nothing to stop the levy unless Plaintiff paid the full amount claimed." Pl.'s Resp. at 3-4.  The IRS issued a "Final Notice of Intent to Levy and Notice of Your Right to a Hearing" on May 29, 2003, which gave notice of the IRS' intent to levy plaintiff's property, including bank accounts and wages, "30 days after the date of this letter." Pl.'s Resp., Ex. 4.  The final notice also explained, "If you've paid already or think we haven't credited a payment to your account, please send us proof of that payment.  You may also appeal our intended actions" by "requesting a Collection Due Process hearing within 30 days from the date of this letter." Id.  Plaintiff did not request such a hearing, but he claims he "again contacted the IRS seeking to stop the levy but again the IRS refused." Pl.'s Resp. at 4.

From approximately August 4, 2003 through September 2, 2004, the IRS garnished plaintiff's wages in a series of levies ranging in amounts from $3,807.09 to $5,862.58, Def.'s Ex. 1 at 5-9, and totaling approximately $101,539.06, according to plaintiff.[5]  First Am. Compl. at 3 ¶ 9.  In addition, on August 25, 2003, the IRS levied plaintiff's bank account in the amount of $2,921.98.  Id.

---

[5]Based on the IRS Certificate, the sum of the wage garnishment payments (listed as "subsequent payment[s]" and not including the $2,921.98 levy on his bank account) is $93,976.82.  Def.'s Ex. 1 at 5-9.  It is unclear how plaintiff arrived at his $101,539.06 wage garnishment figure.

According to plaintiff, "[a]fter again contacting the IRS and demanding that the levies be stopped and funds already taken from [his] bank account be returned," on September 9, 2003, plaintiff faxed documents relating to the Tax Court decision to the IRS Memphis Service Center, "Attn: Reconsideration," along with the following "staunch written objection," First Am. Compl. at 2, hand-written on the fax cover sheet:  "Attached are Tax Court decision documents establishing that there was no deficiency for 1998. Thus, Levy on Bank and garnishment of wages is wrongful and should be withdrawn ASAP!!"  First Am. Compl., Ex. A at 2.

The IRS Memphis Service Center apparently forwarded the letter to IRS Appeals Officer Dennis A. Quinn, in Houston, Texas.  First Am. Compl., Ex. B at 2; see infra, note 6.  Mr. Quinn had worked on the earlier settlement of plaintiff's tax liability for 1998.  See, e.g., Pl.'s Resp., Exs. 1 & 2.  After reviewing the matter, Mr. Quinn wrote back to plaintiff in a letter dated November 14, 2004, stating, "[y]ou have said that the Tax Court decision documents show that 'there was no deficiency for 1998'.  That is not correct.  There was a statutory tax deficiency (agreed to by the parties) of $72,199.00."  First Am. Compl., Ex. B at 2.  Mr. Quinn then explained that "a problem was created, it seems, when the deficiency amount was assessed AFTER the withholding credit amount," resulting in an erroneous refund being mailed to plaintiff in the window of time between the two assessments.  Id.  Mr. Quinn concluded that, "based on the file and transcript

records here, it would seem that you clearly have an amount owing.  If so, the levy action

would not appear to be wrong."[6]  Id. at 3.

Plaintiff filed a complaint in this court on December 15, 2006, and a first amended

complaint on May 17, 2007, seeking a judgment in the amount of $104,461.04 plus

interest, costs, and attorney's fees.  Plaintiff contends that he is entitled to this amount

because the IRS failed to follow the proper procedures for recouping an erroneous refund

under the Code when it levied plaintiff's bank account and garnished his wages to recover

the erroneous refund from him.  Accordingly, plaintiff argues that he is entitled to a return

of the funds under the Federal Circuit's ruling in Stanley v. United States, 140 F.3d 1023

(Fed. Cir. 1998), aff'g 35 Fed. Cl. 493 (1996).[7]  More specifically, plaintiff asserts that, as

the Federal Circuit held in Stanley, the government may either file suit under 26 U.S.C. §

7405(b) (2000) to recover the erroneous refund within two years as laid out in 26 U.S.C. §

6532(b) (2000), or the government may reassess the deficiency created by the erroneous

_____

[6]Mr. Quinn also noted that, "[i]n any event, the matter of collection, and the matter
of the October 2002 refund to you are items that need to be resolved between you and the
Memphis Service Center.  The Houston Appeals Office has no jurisdiction or standing
on this affair."  First Am. Compl., Ex. B at 3.  In fact, plaintiff had faxed his "objection"
to the Memphis Service Center, "Attn: Reconsideration."  First Am. Compl., Ex. A at 2.
It is not clear how the matter was forwarded to Houston.  See, e.g., Def.'s Mot. to
Dismiss at 7,  n.5; Pl.'s Resp., Ex. 10 at 2 (November 12, 2003 letter to plaintiff from
Houston Appeals Office indicating that "we received your case for consideration . . . on
October 28, 2003").

[7]In Stanley, the Federal Circuit held that a taxpayer was entitled to recover funds
returned to the government following an erroneous refund because the government had
failed to employ either of the two recognized options available for recovering an
erroneous refund.  140 F.3d at 1030.

refund within three years of the filing of the tax return for the relevant tax year, as laid out in 26 U.S.C. §§ 2604 (2001), 6501(a) (2005), and 6502(a)(1) (2000), and then seek to "recover the reassessed tax liability by levy or other court proceeding." Stanley, 140 F.3d at 1027. Taking plaintiff's allegations as true, at the time the government undertook the levy in this case, it had not reassessed plaintiff's tax liability for 1998 to account for the erroneous refund. Nor did the IRS bring suit under 26 U.S.C. § 7405(b) within two years of the erroneous refund. Consequently, plaintiff claims that this court has jurisdiction over his claim as one for the recovery of money "illegally exacted" in contravention of the Code. See New York Life Ins. v. United States, 118 F.3d 1553, 1558 (Fed. Cir. 1997).[8]

On July 2, 2007, the government moved to dismiss the amended complaint pursuant to RCFC 12(b)(1), on the ground that this court lacks subject matter jurisdiction to consider plaintiff's claim. Specifically, the government argues that, regardless of whether the IRS erred in the procedures it used to recover the erroneous refund from plaintiff, plaintiff's suit is properly characterized as a civil action for refund under 26 U.S.C. § 7422 and that plaintiff's case is barred because he failed to satisfy the criteria for such a refund suit, including the requirement in 26 U.S.C. §§ 7422 and 6511 that he first file a timely and sufficient administrative refund claim and the requirement in

---

[8]In New York Life, the Federal Circuit held that a taxpayer's action to recoup a "deposit" the IRS had applied to an alleged deficiency was not a refund suit but was an action for money "improperly exacted," and therefore the taxpayer did not have to satisfy the prerequisites for a refund action under 26 U.S.C. § 7422(a) and related provisions. 118 F.3d at 1556 (quoting United States v. Testan, 424 U.S. 392, 401 (1976)).

26 U.S.C. § 6532(a) that he bring suit within two years of the IRS' disallowance of that claim. In such circumstances, the government argues, plaintiff's action must be dismissed. Moreover, the government argues that because plaintiff's claim is covered by the tax refund suit requirements, plaintiff cannot establish jurisdiction based solely on the "illegal exaction" theory accepted in New York Life. See 118 F.3d at 1554, 1558.

Supplemental briefing was completed on September 24, 2007, and oral argument was held on November 14, 2007.

## DISCUSSION

### I.    Standard of Review

In considering a motion under RCFC 12(b)(1) to dismiss for lack of subject matter jurisdiction, the court is generally "obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor." Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995). However, if in a motion to dismiss for lack of subject matter jurisdiction, the defendant disputes the jurisdictional facts alleged in the complaint, the trial court may consider evidence outside the pleadings to determine whether it has jurisdiction over the case. Moyer v. United States, 190 F.3d 1314, 1318 (Fed. Cir. 1999) (citing Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 747 (Fed. Cir. 1988)); see also, e.g., Rocovich v. United States, 933 F.2d 991, 993 (Fed. Cir. 1991).

Ultimately, the burden is on plaintiff to prove that the court has jurisdiction to hear its claims. See, e.g., Rocovich, 933 F.2d at 993 ("A party seeking the exercise of

jurisdiction in its favor has the burden of establishing that such jurisdiction exists."). However, plaintiff need only prove subject matter jurisdiction by a preponderance of the evidence in order for his claim to survive a motion to dismiss under RCFC 12(b)(1). Nelson Const. Co. v. United States, No. 05-1205C, ___ Fed. Cl. ____, 2007 WL 3299161, at *3 (Fed. Cl. Oct. 29, 2007) (quoting Reynolds, 846 F.2d at 748).

As noted above, the government has moved to dismiss plaintiff's claim on the ground that plaintiff failed to meet the prerequisites of a suit under 26 U.S.C. § 7422 and related provisions, which ordinarily govern suits for tax refunds.  In particular, the government contends that plaintiff failed to timely file a sufficient formal or informal administrative claim for a refund as required by the tax refund suit provisions.  The government further argues that even if plaintiff satisfied the claim requirement, the subsequent suit was not filed within two years of the IRS' rejection of the claim, and therefore the suit is untimely under 26 U.S.C. § 6532(a).

In response, plaintiff argues that this is not a tax refund action subject to the procedural requirements of 26 U.S.C. § 7422 and related provisions but is rather a claim for the return of monies wrongfully taken in contravention of Congressionally-mandated procedures for collecting erroneous refunds under 26 U.S.C. §§ 7405(b) and/or 6501(a). Plaintiff contends that this case does not involve the "overpayment of tax," and therefore the tax refund suit provisions do not apply to his claim.  Rather, he argues that the erroneous refund created a debt on the part of plaintiff that was wrongfully collected by

the IRS and is recoverable as an "illegal exaction" under <u>New York Life</u>.  118 F.3d at 1558.

Resolution of this motion to dismiss therefore turns on whether plaintiff's claim for the return of the erroneous refund he received is properly characterized as an action for the recovery of an overpayment of tax, subject to the procedural requirements set forth in 26 U.S.C. § 7422 and related tax refund suit provisions, or is instead an action for the return of an "illegal exaction."

## II.    Plaintiff's Claim for the Return of an Erroneous Refund Wrongfully Collected by the IRS Is Not a Claim for the Recovery of an Overpayment of Tax, and Therefore It Is Not Subject to the Code Provisions Concerning Tax Refund Suits.

Whether plaintiff's claim is properly characterized as a suit for the refund of an overpayment of tax requires a careful analysis of the interplay among the requirements of 26 U.S.C. §§ 7422(a), 6511(a), and 6532(a).  The relevant statutory language is as follows: 26 U.S.C. § 7422(a) requires that an administrative claim for refund precede any suit "for the recovery of any internal revenue tax . . . or of <u>any sum</u> alleged to have been . . . wrongfully collected" (emphasis added); 26 U.S.C. § 6511(a) sets forth the statute of limitations on filing administrative claims for "refund of an <u>overpayment of any tax</u> imposed by this title in respect of which tax the taxpayer is required to file a return" (emphasis added); and 26 U.S.C. § 6532(a) prescribes a statute of limitations on suits "for the recovery of any internal revenue tax . . . or <u>other sum</u>" of two years from the date the

IRS sends the taxpayer a notice of disallowance of the administrative refund claim (emphasis added).

The government contends that, because plaintiff is seeking return of a "sum wrongfully collected" as provided for in 26 U.S.C. § 7422(a), he is bound by the requirements for a tax refund suit.  Plaintiff argues that he is not seeking the return of a "sum" covered by the refund provisions, because the term "sum" in 26 U.S.C. §§ 7422(a) and 6532(a) must be read in light of the language of 26 U.S.C. § 6511(a), which limits the term "sum" to amounts involving the "overpayment of any tax."  Plaintiff argues that this case does not involve the overpayment of a tax, because his tax liability for 1998 was extinguished by his withholding credit and the erroneous refund did not revive it.

A.    The "Sum" Language in 26 U.S.C. §§ 7422(a) and 6532(a) Must Be Read in Tandem with the "Overpayment" Language in 26 U.S.C. § 6511(a), So the Tax Refund Suit Provisions Only Cover Suits for the Recovery of Overpayments of Tax.

While the plain language of 26 U.S.C. §§ 7422(a) and 6532(a), quoted above, which use the term "any sum" and "other sum," respectively, might appear broad enough to encompass suits such as plaintiff's, the Federal Circuit has held that the language in 26 U.S.C. § 7422(a) is limited by the language in 26 U.S.C. § 6511(a) to suits for the recovery of <u>tax payments</u>, and specifically of "<u>overpayment of any tax</u> imposed by [U.S.C. Title 26] in respect of which the taxpayer is required to file a return."  26 U.S.C. § 6511(a) (emphasis added); <u>New York Life</u>, 118 F.3d at 1558.  In particular, in <u>New York Life</u>, the Federal Circuit found that

-12-

since the administrative claim required by I.R.C. § 6511(a) is a claim for an "overpayment," and that recovery is limited by I.R.C. § 6511(b)(2) to amounts "paid" within specified periods prior to the claim, a refund suit is necessarily predicated on the existence of a tax "payment." <u>Accordingly, the requirement in section 7422(a) that no suit for the "recovery of any internal revenue tax" "shall be maintained" until a refund claim has been filed, does not apply to [suits that are] not . . . for the return of a tax payment.</u>

118 F.3d at 1558 (emphasis added) (internal quotation omitted).

The interplay of these provisions has also been discussed in a decision from this court, which held in a different context that 26 U.S.C. §§ 7422(a) and 6532(a) must be read in light of 26 U.S.C. § 6511(a). <u>Usibelli Coal Mine v. United States</u>, 54 Fed. Cl. 382, 384 (2002). In <u>Usibelli Coal Mine</u>, the court explored at length the history of use of the terms "sum" and "overpayment" in the refund suit provisions, concluding:

> [T]he court simply cannot attach talismanic significance to the fact that the Congress at one point or another used the word "overpayment" versus the language currently found in § 7422(a). A stroll through the pages of history reveals no such recondite distinction, but instead suggests that Congress believed that the two phrases were either synonymous or, at least, not significantly different.

<u>Id.</u> at 384-85 (emphasis added) (footnote omitted) (citing <u>Jones v. Liberty Glass Co.</u>, 332 U.S. 524 (1947)).

This view is reiterated in I.R.S. Technical Advice Memorandum 04-46-021,[9] which

---

[9]The government suggested at oral argument that "since the briefing has taken place in this case, [this] technical advice memorandum has actually been revoked by the IRS" and that "the party involved has been notified of the revocation." Oral Arg. Tr. 9:12-23, Nov. 14, 2007. However, the government stated that "the revocation has not yet been published," and the government did not provide any evidence of the revocation. <u>Id.</u> at 9:15-10:4.

states that the "sum" language, as contained in 26 U.S.C. §§ 7422(a) and 6532(a), is not so broad as to extend to "nontax claims" and that the "sum" language should be constrained to be roughly synonymous with "overpayment of tax," as contained in 26 U.S.C. § 6511(a). I.R.S. Tech. Adv. Mem. 04-46-021 (Nov. 12, 2004) (finding that "nothing in the ancestry of the 'any sum' language . . . indicate[s] that the phrase applies to nontax claims" and "Congress has viewed the 'tax, penalty and any sum' language as either synonymous with, or at least not significantly different from, an overpayment of tax") (citing Usibelli Coal Mine, 54 Fed. Cl. at 385).

Thus, the "any sum" language in 26 U.S.C. § 7422(a) and the "other sum" language in 26 U.S.C. § 6532(a) notwithstanding, the language in 26 U.S.C. § 6511 limits the scope of the statutory framework regarding tax refund suits to only suits for recovery of "overpayment of any tax." Consequently, the court must determine whether plaintiff's suit in this case is for the recovery of such an overpayment of tax.

**B.  Erroneous Non-Rebate Refunds Recouped by the IRS via Levy Do Not Constitute Overpayments of Tax, and Therefore Plaintiff's Case Is Not Covered by the Tax Refund Suit Provisions.**

Although "overpayment of tax" is not explicitly defined in the Code, the Supreme Court in Jones v. Liberty Glass Co. defined "overpayment" as follows:

> [W]e read the word "overpayment" in its usual sense, as meaning any payment in excess of that which is properly due. Such an excess payment may be traced to an error in mathematics or in judgment or in interpretation of facts or law. And the error may be committed by the taxpayer or by the revenue agents. Whatever the reason, the payment of more than is rightfully due is what characterizes an overpayment.

332 U.S. at 531 (emphasis added).  It is axiomatic that the term "overpayment of tax"
refers to tax payments and not nontax payments.  See, e.g., Michael I. Saltzman, IRS
Practice and Procedure ¶ 11.02, 11-8 ("an overpayment is a payment in excess of what
properly should have been assessed or collected as tax" (emphasis added)).

Whether the erroneous refund paid to plaintiff and recouped by the IRS via levy
and wage garnishment involved the overpayment of a "tax" that was then subject to the
refund suit requirements turns on the nature of the debt created when the erroneous refund
was sent to plaintiff.  The government contends that the erroneous refund in this case was
a refund of a "tax," and therefore to recover the "tax," plaintiff was required to use the tax
refund process.  In support of this view, the government relies on the language of 26
U.S.C. § 7405, which expressly uses the word "tax" to describe the scope of the provision.
The statute states that "[a]ny portion of a tax imposed by this title which has been
erroneously refunded . . . may be recovered by civil action brought in the name of the
United States."  26 U.S.C. § 7405(b) (emphasis added).  The government contends that in
such circumstances, plaintiff's liability for the tax remains and that plaintiff's claim for
recovery of the monies taken by levy and wage garnishment must be for recovery of a "tax
overpayment."

Despite the superficial appeal of the government's "plain language" argument, a
review of the relevant case law demonstrates that the issue is not so simple.  Rather, as
discussed below, the question turns on whether the original tax liability had been

extinguished or whether tax liability remained as a result of the erroneous refund.  The

courts that have examined this issue, including the Federal Circuit, have determined that,

where the assessed tax liability has been paid in full, the tax liability is extinguished and

the taxpayer's obligation to return the funds is not based on any tax that is owing but is

instead based on unjust enrichment.  As such, to the extent plaintiff's 1998 tax liability

was extinguished by the withholding credit, the erroneous refund did not give rise to a tax

owed, and the IRS levy and wage garnishment to recover that refund did not constitute the

payment of a tax.

    This distinction between extinguished tax liability and remaining tax liability has

been most thoroughly addressed by the Seventh Circuit in O'Bryant v. United States, 49

F.3d 340 (7th Cir. 1995), which has been favorably relied upon by the Federal Circuit in

Stanley, 140 F.3d at 1027-30, and Pacific Gas and Electric Company v. United States, 417

F.3d 1375, 1382 (Fed. Cir. 2005).  In O'Bryant, the Seventh Circuit explained that

"erroneous refunds and tax liabilities are simply not of the same ilk," and that when a

taxpayer has paid his assessed tax liability in full, "any erroneous, unsolicited refund that

the IRS happens to send the taxpayer must be handled on its own terms, not under the

rubric of the assessed liability."  49 F.3d at 347.  Like the plaintiff in this case, the

O'Bryant plaintiffs had received a nonrebate erroneous refund – one "unrelated to a

recalculation of tax liability" but rather "because of an accounting error" – sent "after the

taxpayers had already paid the amount the IRS' assessment said they owed."[10] Id. at 342,

345. The O'Bryant plaintiffs "sued in federal district court to . . . recoup the money the

IRS had collected" by levy, and in the course of that challenge, they argued that the levies

"were invalid because the original assessment of [their] tax liability [for that year] was

extinguished by their . . . payment and the IRS did not make another assessment of taxes

due for [that year]." Id. at 341. The Seventh Circuit agreed with the plaintiffs, explaining:

> [B]ecause a refund is not, properly speaking, a tax amount, the act of sending
> a refund cannot of itself revive or continue a pre-existing tax liability. At
> most, an erroneous refund results in an underpayment that the IRS can seek to
> recover through deficiency procedures. . . . [T]he payment of the entire
> assessed amount extinguished the obligation, and it could not be revived by
> subsequent erroneous and unsolicited refunds.

Id. at 345 (emphasis added) (internal quotations omitted) (citing Rodriguez v. United

States, 629 F.Supp. 333 (N.D. Ill. 1986); Karp v. United States, 868 F.Supp. 235 (N.D. Ill.

1994)).

The government in O'Bryant had argued, much like the government in this case,

that "a non-rebate erroneous refund simply gives back to the taxpayer a part of the

taxpayer's assessed tax and the assessed balance due may be collected by ordinary

---

[10]The plaintiffs in O'Bryant paid their taxes in full for the tax year in question
after reaching an agreement with the IRS regarding the amount due, an amount that was
then assessed. 49 F.3d at 341. A few months later, the IRS sent them an erroneous
refund check roughly equivalent to the assessed amount. Id. After unsuccessfully
requesting payment from the plaintiffs, the IRS "used its levy power" under the
"summary collection procedures authorized by 26 U.S.C. § 6502(a)(1) – procedures that
are available only if the IRS has made an assessment of liability." Id.

collection procedures."  49 F.3d at 345-46 (internal quotation omitted).  The <u>O'Bryant</u>

court disagreed, stating:

> There is some appeal to the IRS' argument that because it properly assessed
> the O'Bryants' tax liability and is still missing that amount, it should be able
> to attempt to collect the money in any way it normally could – that all the
> transactions related to the O'Bryants' 1984 tax liability should be taken
> together.  But that approach would overlook the <u>fundamental difference in
> character between the money that the O'Bryants now possess (a refund caused
> by the IRS' error) and the money they originally owed the IRS (their tax
> liability).</u>  The money the O'Bryants have now is not the money that the IRS'
> original assessment contemplated, since that amount was already paid. . . .
> <u>They owe it to the government because they have been unjustly enriched by it,
> not because they have not paid their taxes.</u>

<u>Id.</u> at 346 (emphasis added); <u>see also</u> <u>United States v. Russell Mfg. Co.</u>, 349 F.2d 13, 16

(2nd Cir. 1965) ("An action to recover a tax refund is an action for restitution. . . .");

<u>United States v. Reagan</u>, 651 F.Supp. 387, 389 (D.Mass. 1987) ("An action to recover a

tax refund is essentially an action for restitution, which is governed by principles of

equity." (citing <u>Russell Mfg.</u>, 349 F.2d at 16; <u>Equilease Corp. v. Hentz</u>, 634 F.2d 850,

853 (5th Cir. 1981)).  Thus, the Seventh Circuit concluded that, when the IRS seeks to

recover a nonrebate erroneous refund, it may not rely upon the original assessment of the

plaintiff's tax liability for that year, because "the liability has already been satisfied and

cannot be sued on to collect a refund that results not from that liability or any

reevaluation thereof but from a simple mistake."  <u>O'Bryant</u>, 49 F.3d at 346.

    The Federal Circuit has expressly endorsed the <u>O'Bryant</u> approach, finding in

<u>Pacific Gas and Electric</u> that, "[a]s stated in <u>O'Bryant</u>, mistaken nonrebate refunds are

-18-

owed to the government by reason of unjust enrichment."  417 F.3d at 1383 (citing

O'Bryant, 49 F.3d at 346), 1382 (citing Crocker First Nat'l Bank of S.F. v. United

States, 137 F.Supp. 573, 574 (N.D. Cal. 1955), for the proposition that "a suit to recover

an erroneous refund is not a suit 'in respect of any liability in respect of any tax,'

because any tax liability was satisfied when the tax was originally paid" (emphasis

added)).  In Pacific Gas and Electric, the taxpayer had argued, much the same as the

plaintiff in this case, that "when a taxpayer received an erroneous refund of statutory

interest it is not a tax liability but an ordinary debt obligation to the government" and

that therefore "such erroneous interest mistakenly paid cannot be assessed or collected

by the IRS in the same manner as a tax liability."  417 F.3d at 1379.  Finding for the

taxpayer, the Federal Circuit declared that "statutory interest [cannot be] part of, or even

related to, a taxpayer's tax liability. . . . As stated in O'Bryant, mistaken nonrebate

refunds are owed to the government by reason of unjust enrichment."  Pacific Gas &

Elec., 417 F.3d at 1383 (citing O'Bryant, 49 F.3d at 346).  Though the statutory interest

context in Pacific Gas and Electric is slightly different from the present case, the Federal

Circuit's reasoning – relying directly on O'Bryant, in which the facts were very similar

to this case – is equally applicable here.

　　Similarly, in Stanley, the Federal Circuit relied upon the O'Bryant decision.

Stanley, 140 F.3d at 1027, 1028, 1029, 1030.  In Stanley, the government had argued

unsuccessfully before the trial court that an erroneous refund could be recovered on the

basis of an earlier assessment that did not account for the erroneous refund.  Id. at 1027

(citing Stanley, 35 Fed. Cl. at 496).  Noting that every court to examine that argument

had rejected it, including the Seventh Circuit in O'Bryant, the Federal Circuit in Stanley

stated that, "[i]n the face of this overwhelming authority, the Government on appeal

wisely does not pursue this argument."  Id. at 1027-28.  Indeed, as the Federal Circuit

noted in Stanley, every other circuit to review the question has reached the same

conclusion, including the First, Fifth, and Eleventh Circuits.  See id.; Bilzerian v. United

States, 78 A.F.T.R.2d 96-5201, 96-5203 (11th Cir. 1996) ("once a tax liability is paid, no

erroneous refund – whether rebate or non-rebate – can revive it"); Clark v. United States,

63 F.3d 83, 87-88 (1st Cir. 1995) (holding that tax assessments are extinguished upon

payment and are not revived by non-rebate refunds); United States v. Wilkes, 946 F.2d

1143, 1152 (5th Cir. 1991) ("as a taxpayer makes payment against a tax assessment, the

assessment is extinguished in the amount paid and cannot be revived by the IRS's giving

the taxpayer an unsolicited, erroneous refund").

        In view of these cases, and most importantly the Federal Circuit's endorsement of

O'Bryant, the court agrees with plaintiff that this case does not involve the overpayment

of a tax.[11]  As a consequence, the action is not subject to the tax refund suit provisions of

_____

        [11]See also Moran v. United States, 953 F.Supp. 354, 357 (N.D. Okla. 1996)
("[T]he taxpayer in the instant case does not seek a 'claim for credit or refund of an
overpayment of any tax.' Rather, Plaintiff seeks the return of funds confiscated by the
United States to repay an erroneous refund payment made to the taxpayer by the United
States . . . . Therefore, the statute of limitations contained in Section 6511 does not bar
the present action.").

the Code and cannot be dismissed on that basis.[12]

### III. This Court Has Subject Matter Jurisdiction over Plaintiff's Suit as a Claim for the Recovery of an Illegal Exaction Under New York Life.

Having determined, supra, that plaintiff's claim is not subject to the prerequisites to filing suit under the tax refund suit provisions, the court must now consider whether plaintiff is entitled to maintain this action as one for "illegal exaction" under the theory articulated in New York Life. In that case, the Federal Circuit found that a taxpayer could sue under an "illegal exaction" theory for the recovery of a tax deposit (in contrast to a tax payment) alleged to be improperly withheld or applied to tax liability by the IRS in contravention of a statutory scheme." New York Life, 118 F.3d at 1556 (citing Testan, 424 U.S. 392, and Eastport S.S. Corp. v. United States, 372 F.2d 1002 (Ct. Cl. 1967)). In finding a right to sue, the Federal Circuit reasoned as follows: first, the Circuit held that tax deposits do not come within the tax refund suit provisions of the Code because that statutory scheme only covers suits for the return of tax payments and the Circuit has determined that tax deposits are not tax payments. Id. at 1554, 1558.

---

[12]Some of the above-cited cases were brought as refund suits following administrative refund claims. See, e.g., Stanley, 35 Fed. Cl. at 495; O'Bryant, 845 F.Supp. at 1273, aff'd 49 F.3d at 347, n.11. However, to the extent that the taxpayers in those cases brought suit within the statute of limitations for refund suits, see 26 U.S.C. §§ 6511(a) & 6532(a), their suits were necessarily also timely under the general six-year statute of limitations in the Tucker Act. In any event, the question of whether the refund claim provisions are the appropriate means of challenging erroneous refund recoveries by the IRS was not decided in those cases.

Second, the Circuit explained that the Court of Federal Claims had jurisdiction on the ground that a suit for the return of a tax deposit constitutes a suit for the return of money improperly retained by the government as an "illegal exaction." Id. at 1556-57.

Since issuing its decision in New York Life, the Federal Circuit in Norman v. United States has had an opportunity to further explain the basis of the Court of Federal Claims' jurisdiction over illegal exaction claims. Norman v. United States, 429 F.3d 1081, 1095-96 (Fed. Cir. 2005). In Norman, the Circuit explained the rationale for "illegal exaction" jurisdiction as follows:

> An "illegal exaction" . . . involves money that was "improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation." Eastport S.S. Corp.[], 372 F.2d [at] 1007[]. . . . [It] involves a deprivation of property without due process of law, in violation of the Due Process Clause of the Fifth Amendment to the Constitution. See, e.g., Casa de Cambio Comdiv[ v. United States], 291 F.3d [1356,] 1363[ (Fed. Cir. 2002)]. The Court of Federal Claims ordinarily lacks jurisdiction over due process claims . . . but has been held to have jurisdiction over illegal exaction claims "when the exaction is based upon an asserted statutory power." Aerolineas Argentinas v. United States, 77 F.3d 1564, 1573 (Fed. Cir. 1996); see also Eastport, 372 F.2d at 1008 (Court of Claims had jurisdiction over exaction "based upon a power supposedly conferred by a statute"). To invoke Tucker Act jurisdiction over an illegal exaction claim, a claimant must demonstrate that the statute or provision causing the exaction itself provides, either expressly or by "necessary implication," that "the remedy for its violation entails a return of money unlawfully exacted." Cyprus Amax Coal Co. v. United States, 205 F.3d 1369, 1373 (Fed. Cir. 2000) . . . .

Norman, 429 F.3d 1081, 1095 (Fed. Cir. 2005) (emphasis added) (some internal quotations and citations omitted). The court in Norman also stressed that the plaintiff's property must have been "exacted due to" – or "as a direct result of" – "a misapplication of" the law

claimed to have been violated.  Id. at 1095-96 (emphasis in original) (internal quotation omitted).  Thus, following Norman, a plaintiff claiming jurisdiction based on an illegal exaction must demonstrate that 1) the exaction was directly caused by a misapplication of a statute, and 2) the remedy implicit in the statute is the return of the funds.  Id.

Applying this standard, the court finds that plaintiff has sufficiently pled an illegal exaction claim in this case.  Here, plaintiff has made a prima facie case that the exaction at issue was the direct result of a "misapplication of" the law and that the remedy for such violation is a return of the money unlawfully exacted.  As discussed above, plaintiff's claim is based on the IRS' alleged misapplication of the statutory erroneous refund collection procedures.  The Federal Circuit, in Stanley, held that where the taxpayer has paid the assessed tax, the IRS must either file suit under 26 U.S.C. § 7405(b) to recoup the refund or reassess the liability for the relevant tax year under 26 U.S.C. §§ 2604 and 6501(a), taking into account the erroneous refund, after which it may recover the reassessed liability under 26 U.S.C. § 6502(a)(1).  Stanley, 140 F.3d at 1027.  Here, taking plaintiff's allegations as true, the IRS did not reassess plaintiff's tax liability to account for the erroneous refund, as laid out in 26 U.S.C. §§ 2604, 6501(a), and 6502(a)(1), nor did the IRS file suit under 26 U.S.C. § 7405(b), as it was arguably required to do.[13]  Because the IRS did not follow the erroneous refund procedures, but instead took the refund

_____

[13]Questions such as the propriety of the challenged levy and wage garnishment and the procedures available to the IRS to recover the erroneous refund in this particular case are matters to be resolved on the merits.

through levy and wage garnishment, the IRS appears to have "illegally exacted" the refund.

Where this has happened in similar cases, the courts have ordered that the money be returned to the taxpayer, even where the courts have recognized that this results in a windfall to the taxpayer.  See, e.g., Stanley, 140 F.3d at 1024-25 ("While we recognize that the taxpayer in this case will receive a windfall, we nonetheless affirm because the IRS failed to act in a manner prescribed by law."); O'Bryant, 49 F.3d at 346 ("[A]lthough it may seem unjust that the IRS cannot recover its erroneous refund in this case (after all, our holding does give the O'Bryants a windfall) . . . Congress gave the IRS specifically delineated collection authority, and the IRS must act within that authority.").  Underlying these cases is the understanding that return of the refund is the "necessarily implicit" remedy when the government violates the erroneous refund statute.  See Norman, 429 F.3d at 1095, 1096.  In light of this authority, the court now finds that the taxpayer here may maintain a suit for illegal exaction based on violations of the statutory erroneous refund procedures.

## IV.   Having Filed His Suit Within Six Years of the Action Accruing, Plaintiff Has Met the Jurisdictional Requirements for Bringing an Illegal Exaction Suit.

Because plaintiff's claim for an illegal exaction is not governed by the specific statutes of limitations pertaining to the court's tax refund jurisdiction, plaintiff's action is governed instead by the ordinary six-year statute of limitations in the Tucker Act, 28

U.S.C. § 2501.  See, e.g., Bath Iron Works Corp. v. United States, 27 Fed. Cl. 114, 124

(1992) ("Absent a specific statute of limitations, a suit in the [Court of Federal Claims] is

controlled by 28 U.S.C. § 2501 . . . ." (emphasis in original)), aff'd, 20 F.3d 1567 (Fed.

Cir. 1994).  Here, plaintiff filed his suit on December 15, 2006, within six years of the

alleged illegal exactions, the earliest of which allegedly took place on August 4, 2003.

Accordingly, plaintiff has met the jurisdictional prerequisites for maintaining this suit.

## CONCLUSION

For the foregoing reasons, the government's motion to dismiss is **DENIED**.  The

parties shall file a joint status report by **December 17, 2007**, setting forth a proposed

schedule for resolving this case on the merits.

**IT IS SO ORDERED**.


s/Nancy B. Firestone
NANCY B. FIRESTONE
Judge