IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 06-861 T
(Judge Firestone)

LAWRENCE D. PENNONI,

Plaintiff,

v.

THE UNITED STATES,

Defendant

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION**

Defendant, the United States, respectfully submits this reply to plaintiff's opposition to defendant's motion for reconsideration.[1]

**1. With only one exception, all of plaintiff's arguments purportedly addressing the issue whether the interest and penalties at issue are subject to Code § 7422 are irrelevant**

The Court's December 18, 2007, order expressly required plaintiff to address the jurisdictional issue "whether the interest and penalties plaintiff seeks to recover are subject to the administrative claim requirements of the refund suit provisions in the Internal Revenue Code." With one exception (discussed below), plaintiff's brief concentrates on the *merits* of the interest

[1]Under the Court's December 18, 2007, order, plaintiff's opposition was due by January 8, 2008. Plaintiff's brief, however, was not filed until January 9, 2008. As the Court has issued no orders regarding the untimeliness of plaintiff's filing, defendant is submitting its reply in accordance with the schedule set forth in the December 18 order.

and penalty assessments, positing various theories to support his allegation that they were invalid.[2] The issue of the validity of the assessments has no bearing on the jurisdictional issue before the Court, however, because (as discussed in our motion at 4-5) it is beyond dispute that an administrative claim for refund is a prerequisite for suit regardless whether the suit is grounded on an allegation that an assessment was erroneous or illegal. *See, e.g., Rosenman v. United States*, 323 U.S. 658, 661 (1945). Indeed, § 7422(a) *assumes* that refund suits will be based on such allegations, and requires that the factual and legal bases of such allegations be presented to the IRS prior to filing suit.[3]

Plaintiff's only argument that comes close to complying with the Court's order is his contention that the assessed interest and penalties are not subject to § 7422 because they do not come within the "any sum" language of that provision. (Plt. Opp. at 12-15.) This contention is spurious. In terms, § 7422(a) applies, in the disjunctive, to "any *penalty* claimed to have been

---

[2]Plaintiff's "invalidity" theories appear to be based on the following contentions:

• The IRS never assessed the erroneous tax refund, and, under Code § 6212(c)(1), it was prohibited from making that assessment. (Plt. Opp. at 5-10, 16.)

• "The Code only allows the IRS to impose penalties on 'tax' amounts"; and interest on an erroneous refund of tax can be collected "only if the government timely file[s] suit under Code Section 7405." (Plt. Opp. at 11.)

• Because the penalties and interest were (allegedly) illegally assessed, it follows that they were not in fact assessed and that they "can never be assessed." (Plt. Opp. at 11.)

• Plaintiff is not required to file a claim for refund for amounts collected to satisfy assessed deficiency interest and penalties because he is prohibited by § 6512(a) from filing a suit for refund with respect to any of the amounts at issue in this case. (Plt. Opp. at 12-13.)

[3]If this were not the case, the entire statutory refund claim scheme would be rendered nugatory, as it would follow that "meritorious" claims would not be subject to § 7422, and thus, in order to determine whether it lacked jurisdiction over a refund suit in which no refund claim had been filed, a court would first be required to address the merits of a taxpayer's "illegal assessment" allegation.

collected without authority (emphasis added); and, as discussed in our motion (at 8), the Supreme Court has explicitly posited *interest* as an example of a "sum," within the meaning of § 7422(a), that is neither "tax" nor "penalty." 362 U.S. 145, 149 (1960).

Although plaintiff's irrelevant "invalidity" theories require no response, we note that they are based principally on misinterpretations of Code §§ 6212(c)(1) and 6512(a). The effect of those provisions is to preclude the IRS from issuing deficiency notices or assessing additional tax, or making refunds or credits of tax, and to preclude the taxpayer from filing a refund suit, with respect to the same tax year for which the taxpayer has already filed a petition in the Tax Court. The purpose of these provisions is to lodge in the Tax Court the authority to make final determinations of tax liability, overpayments, and deficiencies for the tax year before it (as did the Tax Court with respect to the tax year at issue in this case), and to preclude either the IRS or the taxpayer from attempting to alter that determination independently. These provisions do not (and do not purport to) preclude the IRS from timely reassessing an erroneous refund or the taxpayer from filing a proper refund suit to recover, *inter alia*, amounts "collected in excess of an amount computed in accordance with the decision of the Tax Court which has become final." Sec. 6512(a)(2). The fallacy of plaintiff's interpretations (expressed for the first time in this litigation) is underscored by the fact that they are at odds with the cases that plaintiff has relied upon to support his claim on the merits,[4] which hold that an erroneous refund of the sort plaintiff

[4] In plaintiff's opposition to defendant's motion to dismiss, he argued that "[t]he IRS cannot use any of its collection powers to recover an erroneous refund unless and until it either (1) files suit under Code § 7405 . . . or (2) *institutes deficiency and assessment procedures under the Code relating to the erroneous refund within the limitations period for assessment applicable to the return for the tax year which the erroneous refund relates to*." Plt. Resp. to Def. Mot. to Dismiss at 9-10 (emphasis added) (citing *Stanley*, 35 Fed. Cl. at 496).

received can be (timely) reassessed. *See O'Bryant v. United States*, 49 F.3d 340, 342-44 (7th Cir. 1995); *Stanley v. United States*, 35 Fed. Cl. 493, 496 (1996), *aff'd*, 140 F.3d 1023 (Fed. Cir. 1998).

Plaintiff's contention that, because the interest and penalties (allegedly) "can never be assessed," the penalties and interest "were never assessed" commits the fallacy of equivocation.[5] (Plt. Opp. at 11). This argument trades on two distinct senses of "can never be assessed": (1) in the sense that assessment of penalties and interest would be illegal; and (2) in the sense that penalties and interest of the sort at issue "can never be assessed" as a matter of fact–*i.e.*, if for some factual reason the IRS is incapable of recording assessments of the sort at issue. Plaintiff, however, has offered no argument to support his position that the penalties and deficiency interest at issue "can never be assessed" in this latter sense, nor has he offered any evidence to rebut the presumption, reflected on the Certificate of Assessments, Payments, and Other Specified Matters, that the IRS in fact made these assessments. *See Rocovich v. United States*, 933 F.2d 991, 994 (Fed. Cir. 1991) (Certificate of Assessments, Payments, and Other Specified Matters is presumptive proof of matters specified therein, and is a sufficient basis for factual findings in the absence of countervailing evidence offered by taxpayer).

We note as well that plaintiff does not attempt to rebut our contention that his purported informal claim for refund of the tax that was erroneously refunded did not constitute an informal

[5]This fallacy is committed "when the conclusion of an argument depends on the fact that a word or phrase is used, either explicitly or implicitly, in two different senses in the argument." Patrick J. Hurley, A CONCISE INTRODUCTION TO LOGIC 164 (7th ed. 2000). Both this Court and other courts have expressly rejected this kind of misleading argument. *See Consol. Eng'g Servs., Inc. v. United States*, 64 Fed. Cl. 617, 635 (2005); *Allied Erecting & Dismantling, Co. v. USX Corp.*, 249 F.3d 191, 202 (3d Cir. 2001).

claim for recovery of the assessed penalties and deficiency interest.[6] Thus, the Court should reconsider its opinion, and grant defendant's motion to dismiss to the complaint to the extent it seeks refund of amounts collected to satisfy assessed deficiency interest and penalties.

**2. Plaintiff's brief does not undermine defendant's arguments that the Court should reconsider its holding regarding the "any sum" language of § 7422(a)**

At the outset, it should be observed that plaintiff agrees that the Court erred insofar as it relied on Technical Advice Memorandum ("TAM") 200446021 to reach its holding that plaintiff's suit is not one for the return of "any sum alleged to have been . . . wrongfully collected" within the meaning of § 7422(a). *See* Plt. Opp at 14 (stating that "a TAM is merely an expression of the legal opinion of the IRS"[7] and is "not considered definitive authority"). As this Court has held, under § 6110(k)(3), "technical advice memoranda . . . may not be used or cited in any precedential way and thus, *a fortiori*, may not be used to support, in any fashion, an argument that one interpretation of the Code is more authoritative than another." *Vons Cos., Inc. v. United States*, 51 Fed. Cl. 1, 12 (2001).

Eschewing its prior reliance on the now-revoked TAM, plaintiff contends that the Court's holding is correct because "there is ample direct authority on the issues at hand as cited in this

---

[6]Indeed, plaintiff's new contention that he is prohibited by § 6512(a) from filing a claim for refund with respect to any of the amounts at issue in this case, and his failure to offer any rebuttal to our contention that the Court should dismiss the suit for lack of subject-matter jurisdiction if it concludes that plaintiff's suit is subject to the administrative claim requirements of § 7422(a), indicate that he has now abandoned the entire "informal refund claim" theory.

[7]This observation is actually inaccurate, as the principal reason that technical advice memoranda are not authoritative is that they are not official legal opinions of the IRS (but rather are opinions of the individual drafters), since they are not subject to high-level review within the IRS and are not reviewed at all by the Treasury Department. H.R. Rep. No. 94-658, at 322-23 (1975), *reprinted in* 1976-3 C.B. 695, 1014.

Court's Opinion . . . ." (Plt. Opp. at 14.) Plaintiff, however, has failed to meet any of the arguments defendant advanced in its motion for reconsideration showing that the "direct authority" cited in the Opinion was misapplied, and that other binding precedent was not considered. Instead, plaintiff argues that the policy considerations underlying § 7422 counsel in favor of the Court's conclusions regarding the "any sum" language of § 7422(a). (Plt. Opp. at 15-16.) This argument is unavailing.

First, plaintiff's argument baldly assumes the correctness of the conclusion the argument is putatively offered to prove: Plaintiff argues that the policy considerations underlying § 7422 do not apply to his suit because he is "bringing an action under the Tucker Act," and thus "is not . . . bringing a suit for 'tax refund' . . . ." (Plt. Opp. at 15.) Of course, whether plaintiff is "bringing an action under the Tucker Act" that is not subject to 26 U.S.C. § 7422 is just the issue that is before the Court. Thus, plaintiff's argument simply begs the question, and should be rejected. *See, e.g., Blinderman Constr. Co. v. United States*, 39 Fed. Cl. 529, 540 n.7 (1997) (rejecting party's argument because it "begs the question").

Second, the policy considerations that plaintiff identifies as favoring a determination that this suit is not one for recovery of "any sum alleged to have been . . . wrongfully collected" actually support the *opposite* conclusion. As plaintiff correctly points out, one of the principal purposes behind the administrative claim requirement embodied in § 7422(a) is to permit administrative resolution of disputes, in order to avoid the time and expense of litigation. *See, e.g., Alexander Proudfoot Co. v. United States*, 454 F.2d 1379, 1383 (Ct. Cl. 1972) (one purpose of administrative claim requirement is to "give adequate notice to the Service of the nature of the claim and the specific facts upon which it is predicated, thereby permitting an administrative

investigation and determination"). This purpose would clearly be furthered by requiring claims such as plaintiff's to be submitted to the IRS prior to suit. Assuming, *arguendo*, that plaintiff is correct that the IRS collection activities were contrary to law, the IRS would have had an opportunity to rectify its error if plaintiff had submitted his claim to the IRS prior to bringing suit in this Court.

In addition, the purpose underlying § 7422(a) that plaintiff identifies of "'protect[ing] the Treasury by providing strict periods of limitation'" is furthered by applying its administrative claim requirement here. *See* Plt. Opp. at 15 (quoting *Brennan v. Southwest Airlines Co.*, 134 F.3d 1405, 1411 (9th Cir. 1998)). Not to do so would unquestionably imperil the Treasury, as the judgment plaintiff seeks in this case would be paid from the Treasury, and, as even the authorities that plaintiff relies upon recognize, such a judgment would constitute a "windfall" for plaintiff. *See Stanley*, 140 F.3d at 1030 ("Our decision awards Stanley a windfall of some $600,000."); *O'Bryant*, 49 F.3d at 346 (observing that "our holding gives the O'Bryants a windfall").

As a final point, a conclusion that the erroneous refund amounts sought to be recovered in this suit come within the language of § 7422(a) (whether "tax," "penalty," or "sum") is fully consistent with this Court's holding in *Stanley* that "the erroneous refund to Stanley was nevertheless a 'refund with respect to 'a tax imposed by this title,' thereby implicating § 7405."[8] *See Stanley v. United States*, 36 Fed. Cl. 196, 197 (1996), *aff'd*, 140 F.3d 1023 (Fed. Cir. 1998) (noting that the Court had found in its earlier opinion that the erroneous refund was a "refund

[8]Section 7405, authorizing the Government to sue for recovery of erroneous refunds, applies to erroneous refunds of "[a]ny portion of a tax imposed by this title."

with respect to 'a tax imposed by this title,'" but concluding that no overpayment interest was allowable because Stanley had made a cash bond, not a "payment," of the tax).

**3. If this Court is not inclined to grant defendant's motion for reconsideration in full, it should suspend proceedings pending resolution of *Clintwood Elkhorn* by the Supreme Court**

In the event that this Court is not inclined to grant our motion for reconsideration in full, it should suspend proceedings, and defer ruling on defendant's motion pending the Supreme Court's resolution of *United States v. Clintwood Elkhorn Mining Co.*, 128 S. Ct. 710 (2007) (No. 07-308) (granting *certiorari*). The issue before the Supreme Court in *Clintwood Elkhorn* is whether a taxpayer may bring a suit for refund of coal excise taxes paid pursuant to § 4121(a) directly under the Tucker Act, or whether such a suit is subject to the refund claim provisions of the Internal Revenue Code, and the shorter statutes of limitation that apply under those provisions. Petition for Writ of Certiorari, *Clintwood Elkhorn*, 2007 WL 2608817, at *I. The taxpayers in *Clintwood Elkhorn* brought suit in this Court alleging that § 4121(a), as applied, violates the Export Clause of the United States Constitution. *Clintwood Elkhorn v. United States*, 473 F.3d 1373, 1374 (Fed. Cir. 2007).[9] In *Clintwood Elkhorn*, the taxpayers successfully argued, before this Court and the Federal Circuit, that they could bring their refund suits directly under the Tucker Act as a "claim against the United States founded . . . upon the Constitution," 28 U.S.C. § 1491(a)(1), and thus were not required to file claims for refund with the IRS prior to bringing suit, notwithstanding § 7422(a). *Clintwood Elkhorn*, 473 F.3d at 1374-75. In reaching this holding, the Federal Circuit followed its earlier decision in the earlier case, *Cyprus Amax*

[9]In *Ranger Fuel Corp. v. United States*, 33 F. Supp. 2d 466 (E.D. Va. 1998), the court held that § 4121(a) as applied violated the Export Clause. The IRS subsequently acquiesced in this result. I.R.S. Notice 2000-28.

*Coal Co. v. United States*, 205 F.3d 1369 (Fed. Cir. 2000), *cert. denied*, 532 U.S. 1065 (2001), addressing the same issue. *Clintwood Elkhorn*, 473 F.3d at 1374-75.

Defendant believes that the arguments advanced above and in its motion for reconsideration provide sufficient grounds to grant the motion, notwithstanding the ultimate result in *Clintwood Elkhorn*, and thus believes that the Court should suspend proceedings in this case only if the Court is not fully persuaded by defendant's motion for reconsideration. Even if the Supreme Court were to affirm in full the Federal Circuit's holdings in *Clintwood Elkhorn*, there would still be grounds to grant defendant's motion for reconsideration, because the Federal Circuit holdings in *Clintwood Elkhorn* and *Cyprus Amax* are distinguishable. In *Cyprus Amax*, the Federal Circuit held that the Export Clause provided a "self-executing" remedy, meaning that "a party can recover for payment of taxes under the Export Clause independent of the tax refund statute." *Cyprus Amax*, 205 F.3d at 1374. Here, by contrast, there is no self-executing constitutional provision or statutory provision outside the Internal Revenue Code upon which plaintiff can premise Tucker Act jurisdiction; thus, unlike the *Cyprus Amax* taxpayers, plaintiff does not have an "alternative avenue[]" to jurisdiction in this Court that is "not subject to compliance with the tax refund statute." *Id.* at 1375.

Notwithstanding this difference, however, there are sufficient similarities between *Clintwood Elkhorn* and this case to warrant suspension if the Court is not otherwise to dismiss this suit. Like the taxpayers in *Clintwood Elkhorn*, plaintiff in this case attempts to premise jurisdiction directly on the Tucker Act and dispense with filing an administrative claim for refund prior to bringing suit, notwithstanding that his claim for refund of payments he made to the IRS is founded upon a provision of the Internal Revenue Code. Given these similarities, it is

entirely possible that the Supreme Court could resolve *Clintwood Elkhorn* in such a way as to undermine this Court's holding that plaintiff's action can proceed directly under the Tucker Act. Thus, if the Court is not inclined to grant defendant's motion for reconsideration, it should withhold ruling on the motion until the Supreme Court decides *Clintwood Elkhorn*, so that the parties and the Court do not unnecessarily expend resources litigating the merits, only to later conclude that the Court lacked subject-matter jurisdiction.

**CONCLUSION**

For the reasons stated, the Court should grant defendant's motion for reconsideration, and dismiss plaintiff's complaint for lack of subject-matter jurisdiction.

Respectfully submitted,

January 18, 2008

s/ Joseph B. Syverson
JOSEPH B. SYVERSON
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
TELEPHONE (202) 307-6508
FACSIMILE (202) 514-9440
Joseph.B.Syverson@usdoj.gov

RICHARD T. MORRISON
Acting Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
MARY M. ABATE
Assistant Chief

s/ Mary M. Abate
Of Counsel

January 18, 2008