UNITED STATES, PETITIONER
v.
CLINTWOOD ELKHORN MINING COMPANY et al.
**No. 07-308**

United States Supreme Court.
Argued March 24, 2008
Decided **April 15**, **2008**

Syllabus[FN*]

FN*The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.*, 200 U. S. 321, 337.

The Internal Revenue Code requires a taxpayer seeking a refund of taxes unlawfully assessed to file an administrative claim with the Internal Revenue Service (IRS) before filing suit against the Government, see 26 U. S. C. §7422(a). Such claim must be filed within three years of the filing of a tax return or two years of the tax's payment, whichever is later, see §6511(a). In contrast, the Tucker Act allows claims to be brought against the Government within six years of the challenged conduct. Respondent coal companies paid taxes on coal exports under a portion of the Code later invalidated under the Export Clause of the Constitution. They filed timely administrative claims and recovered refunds of their 1997-1999 taxes, but sought a refund of their 1994-1996 taxes in the Court of Federal Claims without complying with the Code's refund procedures. Nevertheless, the court allowed them to proceed directly under the Export Clause and the Tucker Act. Affirming in relevant part, the Federal Circuit ruled that the companies could pursue their Export Clause claim despite their failure to file timely administrative refund claims.

*Held:* The plain language of 26 U. S. C. §§7422(a) and 6511 requires a taxpayer seeking a refund for a tax assessed in violation of the Export Clause, just as for any other unlawfully assessed tax, to file a timely administrative refund claim before bringing suit against the Government. Pp. 4-12.

(a) Because the companies did not file a refund claim with the IRS for the 1994-1996 taxes, they may, under §7422(a), bring "[n]o suit" in "any court" to recover "any internal revenue tax" or "any sum" alleged to have been wrongfully collected "in any manner." Moreover, §6511's time limits for filing administrative refund claims-set forth in an "unusually emphatic form," *United States* v. *Brockamp*, 519 U. S. 347, 350-apply to "*any* tax imposed by [Title 26]," §6511(a) (emphasis added). Contrary to the companies' claim that these statutes are ambiguous, the provisions clearly state that taxpayers must comply with the Code's refund scheme before bringing suit, including the filing of a timely administrative claim. Indeed, this question was all but decided in *United States* v. *A. S. Kreider Co.*, 313 U. S. 443, where the Court held that the limitations period in the Revenue Act then in effect, not the Tucker Act's longer period, applied to tax refund actions. As was the case there, the current Code's refund scheme would have "no meaning whatever," *id.*, at 448, if taxpayers failing to comply with it were nonetheless allowed to bring suit subject only to the Tucker Act's longer time bar. Pp. 4-6.

(b) The companies nonetheless assert that their claims are exempt from the Code provisions' broad sweep because the claims derive from the Export Clause. The principles that a "constitutional claim can become time-barred just as any other claim can," *Block* v. *North Dakota ex rel. Board of Univ. and School Lands*, 461 U. S. 273, 292, and that Congress has the authority to require administrative exhaustion before allowing a suit against the Government, even for a constitutional violation, see, *e.g.,Ruckelshaus* v. *Monsanto Co.*, 467 U. S. 986, 1018, are fully applicable to unconstitutional taxa-

GOVERNMENT EXHIBIT
A

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

tion claims. The companies' attempt to distinguish Export Clause claims on the ground that the Clause is not simply a limitation on taxing authority but a prohibition carving particular economic activity out of Congress's power is without substance and totally manipulable. There is no basis for treating taxes collected in violation of that Clause differently from taxes challenged on other grounds. Because the companies acknowledge that their claims are subject to the Tucker Act's time bar, the question is not whether their refund claim can be limited, but rather which limitation applies. Their argument that, despite explicit and expansive statutory language, the Code's refund scheme does not apply to their case as a matter of statutory interpretation is unavailing. They claim that Congress could not have intended it to apply a "constitutionally dubious" refund scheme to taxes assessed in violation of the Export Clause, but the statutory language emphatically covers the facts of this case. In any event, there is no constitutional problem. Congress's detailed scheme is designed "to advise the appropriate officials of the demands or claims intended to be asserted, so as to insure an orderly administration of the revenue," *United States* v. *Felt & Tarrant Mfg. Co.*, 283 U. S. 269, 272, to provide that refund claims are made promptly, and to allow the IRS to avoid unnecessary litigation by correcting conceded errors. Even when a tax's constitutionality is challenged, taxing authorities have an "exceedingly strong interest in financial stability," *McKesson Corp.* v. *Division of Alcoholic Beverages and Tobacco, Fla. Dept. of Business Regulation*, 496 U. S. 18, 37, that they may pursue through provisions of the sort at issue. There is no reason why invoking the Export Clause would deprive Congress of the power to protect this interest. The companies' claim that the Code procedures are excessively burdensome is belied by their own invocation of those procedures for taxes paid within the Code's limitations period, which resulted in full refunds with interest. Pp. 6-10.

(c) The companies' fallback argument-that even if the refund scheme applies to Export Clause cases generally, it does not apply when taxes are unconstitutional on their face-is rejected.*Enochs* v. *Williams Packing & Nav. Co.*, 370 U. S. 1, distinguished. Pp. 10-12.

473 F. 3d 1373, reversed.

ROBERTS, C. J., delivered the opinion for a unanimous Court.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

CHIEF JUSTICE ROBERTS delivered the opinion of the Court.

The Internal Revenue Code provides that taxpayers seeking a refund of taxes unlawfully assessed must comply with tax refund procedures set forth in the Code. Under those procedures, a taxpayer must file an administrative claim with the Internal Revenue Service before filing suit against the Government. Such a claim must be filed within three years of the filing of a return or two years of payment of the tax, whichever is later. The Tucker Act, in contrast, is more forgiving, allowing claims to be brought against the United States within six years of the challenged conduct. The question in this case is whether a taxpayer suing for a refund of taxes collected in violation of the Export Clause of the Constitution may proceed under the Tucker Act, when his suit does not meet the time limits for refund actions in the Internal Revenue Code. The answer is no.

I

A taxpayer seeking a refund of taxes erroneously or unlawfully assessed or collected may bring an action against the Government either in United States district court or in the United States Court of Federal Claims. 28 U. S. C. §1346(a)(1); *EC Term of Years Trust* v. *United States*, 550 U. S. ___, ___, and n. 2 (2007) (slip op., at 2, and n. 2). The Internal Revenue Code specifies that before doing so, the taxpayer must comply with the tax refund scheme

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

established in the Code.*United States* v. *Dalm*, 494 U. S. 596, 609-610 (1990). That scheme provides that a claim for a refund must be filed with the Internal Revenue Service before suit can be brought, and establishes strict timeframes for filing such a claim.

In particular, 26 U. S. C. §7422(a) specifies:

"No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the [IRS]."

The Code further establishes a time limit for filing such a refund claim with the IRS: To receive a "refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return," a refund claim must be filed no later than "3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later." §6511(a). And §6511(b)(1) mandates that "[n]o credit or refund shall be allowed or made" if a claim is not filed within the time limits set forth in §6511(a). "Read together, the import of these sections is clear: unless a claim for refund of a tax has been filed within the time limits imposed by §6511(a), a suit for refund … may not be maintained in any court." *Dalm*, *supra*, at 602.

In 1978, Congress levied a tax "on coal from mines located in the United States sold by the producer," 26 U. S. C. §4121(a)(1), and specifically applied this tax to coal exports, see §4221(a) (1994 ed.) (excepting from the general ban on taxing exports those taxes imposed under, *inter alia*, §4121). In 1998, a group of companies challenged the tax in the District Court for the Eastern District of Virginia, contending that it violated the Export Clause of the Constitution. That Clause provides that "No Tax or Duty shall be laid on Articles exported from any State." Art. I, §9, cl. 5. The District Court agreed and held the tax unconstitutional.*Ranger Fuel Corp.* v. *United States*, 33 F. Supp. 2d 466, 469 (1998). The Government did not appeal, and the IRS acquiesced in the District Court's holding. See IRS Notice 2000-28, 2000-1 Cum. Bull. 1116, 1116-1117 (IRS Notice).

The respondents here, three coal companies, had all paid taxes on coal exports under §4121(a) "[s]ince as early as 1978." App. to Pet. for Cert. 36a. After §4121(a) was held unconstitutional as applied to coal exports, the companies filed timely administrative claims in accordance with the refund scheme outlined above, seeking a refund of coal taxes they had paid in 1997, 1998, and 1999. The IRS refunded those taxes, with interest.

The companies also filed suit in the Court of Federal Claims seeking a refund of $1,065,936 in taxes paid between 1994 and 1996. They did not file any claim for those taxes with the IRS; any such claim would of course have been denied, given the limits set forth in §6511. See IRS Notice, at 1117 ("Claims [for a refund of taxes paid under §4121] must be filed within the period prescribed by §6511"). Notwithstanding the failure of the companies to file timely administrative refund claims, the Court of Federal Claims allowed the companies to pursue their suit directly under the Export Clause. Jurisdiction rested on the Tucker Act, 28 U. S. C. §1491(a)(1), and the companies limited their claim to taxes paid within that statute's 6-year limitations period, §2501 (2000 ed. and Supp. V).

In allowing the companies to proceed outside the confines of the Internal Revenue Code refund procedures, the court relied on the decision of the Court of Appeals for the Federal Circuit in *Cyprus Amax Coal Co.* v. *United States*, 205 F. 3d 1369 (2000).*Andalex Resources, Inc.* v. *United States*, 54 Fed. Cl. 563, 564 (2002). The Court of Federal Claims did not, however, allow the companies to recover interest on the taxes paid under 28 U. S. C. §2411. That provision requires the Government to pay interest "for any overpayment in respect of any

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

internal-revenue tax," but the court held that the statute applied only to refund claims brought under the Code, not to claims brought directly under the Export Clause. 54 Fed. Cl., at 566.

The Court of Appeals affirmed in part and reversed in part. It first refused to revisit its holding in *Cyprus Amax*, and therefore upheld the ruling that the companies could pursue their claim under the Export Clause, despite having failed to file timely administrative refund claims. 473 F. 3d 1373, 1374-1375 (CA Fed. 2007). The Court of Appeals reversed the Court of Federal Claims interest holding, however, finding that the Government was required to pay the companies interest on the 1994-1996 amounts under §2411.*Id.*, at 1376.

We granted certiorari, 552 U. S. __ (2007), and now reverse.

## II

### A

The outcome here is clear given the language of the pertinent statutory provisions. Title 26 U. S. C. §7422(a) states that "*[n]o suit* … shall be maintained in *any court* for the recovery of *any internal revenue tax* alleged to have been erroneously or illegally assessed or collected, or of *any penalty* claimed to have been collected without authority, or of *any sum* alleged to have been excessive or *in any manner* wrongfully collected, until a claim for refund … has been duly filed with" the IRS. (Emphasis added.) Here the companies did not file a refund claim with the IRS for the 1994-1996 taxes, and therefore may bring "[n]o suit" in "any court" to recover "any internal revenue tax" or "any sum" alleged to have been wrongfully collected "in any manner." Five "any's" in one sentence and it begins to seem that Congress meant the statute to have expansive reach.

Moreover, the time limits for filing administrative refund claims in §6511-set forth in an "unusually emphatic form," *United States* v. *Brockamp*, 519 U. S. 347, 350 (1997)-apply to "*any* tax imposed by this title," 26 U. S. C. §6511(a) (emphasis added). The statute further provides that "[n]o credit or refund shall be allowed or made after the expiration of the period of limitation prescribed in subsection (a) … unless a claim for credit or refund is filed by the taxpayer within such period." §6511(b)(1). Again, this language on its face plainly covers the companies' claim for a "refund" of "tax[es] imposed by" Title 26, specifically 26 U. S. C. §4121. The companies argue that these statutory provisions are ambiguous, Brief for Respondents 43-45, but we cannot imagine what language could more clearly state that taxpayers seeking refunds of unlawfully assessed taxes must comply with the Code's refund scheme before bringing suit, including the requirement to file a timely administrative claim.

Indeed, we all but decided the question presented over six decades ago in *United States* v. *A. S. Kreider Co.*, 313 U. S. 443 (1941). Section 1113(a) of the Revenue Act of 1926, like the refund claim provision in §7422(a) of the current Code, prescribed that "[n]o suit or proceeding shall be maintained in any court for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected until a claim for refund or credit has been duly filed with the Commissioner of Internal Revenue," and established a time limit for bringing suit once the claim-filing requirement had been met. 44 Stat. 116. Like the companies here, A. S. Kreider had failed to file a tax-refund action within that limitations period. See 313 U. S., at 446. And, like the companies here, A. S. Kreider argued that it was instead subject only to the longer 6-year statute of limitations under the Tucker Act.*Id.*, at 447.

We rejected the claim, holding that the Tucker Act

limitations period "was intended merely to place an outside limit on the period within which all suits must be initiated" under that Act, and that "Congress left it open to provide less liberally for particular actions which, because of special considerations, required different treatment." *Ibid.* We held that the limitations period in §1113(a) was "precisely that type of provision," finding that Congress created a shorter statute of limitations for tax claims because "suits against the United States for the recovery of taxes impeded effective administration of the revenue laws." *Ibid.* If such suits were allowed to be brought subject only to the 6-year limitations period in the Tucker Act, we explained, §1113(a) would have "no meaning whatever." *Id.*, at 448. So too here. The refund scheme in the current Code would have "no meaning whatever" if taxpayers failing to comply with it were nonetheless allowed to bring suit subject only to the Tucker Act's longer time bar.

B

The companies gamely argue for a different result here because the coal tax at issue was assessed in violation of the Export Clause of the Constitution. They spend much of their brief arguing that the Export Clause itself creates a cause of action against the Government, which can be brought directly under the Tucker Act. See Brief for Respondents 8-25. We need not decide this question here, because it does not matter. If the companies' claims are subject to the Code provisions, those claims are barred whatever the source of the cause of action. We there- fore turn to the companies' assertion that their claims are somehow exempt from the broad sweep of the Code provisions.

The companies do not argue for such an exemption simply because their claims are based on a constitutional violation. As they acknowledge, *id.*, at 34, a "constitutional claim can become time-barred just as any other claim can," *Block* v. *North Dakota ex rel. Board of Univ. and School Lands*, 461 U. S. 273, 292 (1983). Further, Congress has the authority to require administrative exhaustion before allowing a suit against the Government, even for a constitutional violation. See, *e.g.*,*Ruckelshaus* v. *Monsanto Co.*, 467 U. S. 986, 1018 (1984); *Christian* v. *New York State Dept. of Labor*, 414 U. S. 614, 622 (1974); *Aircraft & Diesel Equipment Corp.* v. *Hirsch*, 331 U. S. 752, 766-767 (1947).

These principles are fully applicable to claims of unconstitutional taxation, a point highlighted by what we have said in other cases about the Anti-Injunction Act. That statute commands that (absent certain exceptions) "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court." 26 U. S. C. §7421(a). The "decisions of this Court make it unmistakably clear that the constitutional nature of a taxpayer's claim … is of no consequence" to whether the prohibition against tax injunctions applies.*Alexander* v. *"Americans United" Inc.*, 416 U. S. 752, 759 (1974). This is so even though the Anti-Injunction Act's prohibitions impose upon the wronged taxpayer requirements at least as onerous as those mandated by the refund scheme-the taxpayer must succumb to an unconstitutional tax, and seek recourse only after it has been unlawfully exacted. We see no reason why compliance with straightforward administrative requirements and reasonable time limits to seek a refund once a tax has been paid should lead to a different result.

The companies assert that Export Clause claims in particular must be treated differently from constitutional claims in general. This is so, they argue, because the Clause is not simply a limitation on the taxing authority but a prohibition that "carves one particular economic activity completely out of Congress's power." Brief for Respondents 11. That distinction is without substance and totally manipulable: If the pertinent authority is regarded as the power to tax exports, the Clause is indeed a complete prohibition on congressional power. But if the pertinent authority is instead viewed as the "Power To lay and collect Taxes," U. S. Const., Art. I, §8, cl. 1, then the Clause is properly regarded as a lim-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

itation on that power. We do not question the importance of the Export Clause to the success of the enterprise in Philadelphia in 1787, see Brief for Respondents 11-13, but we see no basis for treating taxes collected in violation of its terms differently from taxes challenged on other grounds.

Indeed, the companies more or less give up the game when they acknowledge that their claims are subject to the Tucker Act's statute of limitations. See *id*., at 34. The question is thus not whether the companies' refund claim under the Export Clause can be limited, but rather which limitation applies. The companies are therefore left to argue that, despite the explicit and expansive statutory language described above, the refund scheme in Title 26 does not apply to their case as a matter of statutory interpretation. We find this ambitious argument unavailing.

The companies seek to support it by characterizing the refund scheme set out in the Code as "pro-government and revenue-protective," and therefore "constitutionally dubious" as applied to Export Clause cases.*Id*., at 28-29. Given this potential constitutional infirmity, the companies argue, Congress could not have intended the refund scheme to apply to taxes assessed in violation of the Export Clause. See *Ashwander* v. *TVA*, 297 U. S. 288, 341 (1936) (Brandeis, J., concurring). We disagree. To begin with, any argument that Congress did not mean to require those in the companies' position to comply with the tax refund scheme runs into a powerful impediment, for "[t]he 'strong presumption' that the plain language of the statute expresses congressional intent is rebutted only in 'rare and exceptional circumstances.' " *Ardestani* v. *INS*, 502 U. S. 129, 135 (1991) (quoting *Rubin* v. *United States*, 449 U. S. 424, 430 (1981)). As we have already explained, the language of the relevant statutes emphatically covers the facts of this case.

In any event, we see no constitutional problem at all. Congress has indeed established a detailed refund scheme that subjects complaining taxpayers to various requirements before they can bring suit. This scheme is designed "to advise the appropriate officials of the demands or claims intended to be asserted, so as to insure an orderly administration of the revenue," *United States* v. *Felt & Tarrant Mfg. Co.*, 283 U. S. 269, 272 (1931), to provide that refund claims are made promptly, and to allow the IRS to avoid unnecessary litigation by correcting conceded errors. Even when the constitutionality of a tax is challenged, taxing authorities do in fact have an "exceedingly strong interest in financial stability," *McKesson Corp.* v. *Division of Alcoholic Beverages and Tobacco, Fla. Dept. of Business Regulation*, 496 U. S. 18, 37 (1990), an interest they may pursue through provisions of the sort at issue here.

We do not see why invocation of the Export Clause would deprive Congress of the power to protect this "exceedingly strong interest." Congress may not impose a tax in violation of the Export Clause (or any other constitutional provision, for that matter). But it is certainly within Congress's authority to assure that allegations of taxes unlawfully assessed-whether the asserted illegality is based upon the Export Clause or any other provision of law-are processed in an orderly and timely manner, and that costly litigation is avoided when possible. The companies' claim that the Code procedures are themselves excessively burdensome is belied by the companies' own invocation of those procedures for taxes paid within the Code's limitations period, which resulted in full refunds with interest.

C

As a fallback argument, the companies maintain that even if the refund scheme applies to Export Clause cases generally, it does not "apply to taxes that are, on their face, unconstitutional." Brief for Respondents 39. They rely for this proposition on *Enochs* v. *Williams Packing & Nav. Co.*, 370 U. S. 1 (1962), a case dealing with the Anti-Injunction Act, 26 U. S. C. §7421(a). Despite that Act's broad and mandatory language, we explained that "if it is

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

clear that under no circumstances could the Government ultimately prevail, … the attempted collection may be enjoined if equity jurisdiction otherwise exists. In such a situation the exaction is merely in 'the guise of a tax.' " 370 U. S., at 7 (quoting *Miller* v. *Standard Nut Margarine Co. of Fla.*, 284 U. S. 498, 509 (1932)). See also *Bob Jones Univ.* v. *Simon*, 416 U. S. 725, 745-746 (1974) (reaffirming the "under no circumstances" rule of *Williams Packing*).

On the force of *Williams Packing*, the companies argue that the refund scheme should similarly be read as inapplicable to situations in which there are "no circumstances" under which the tax imposed could be held valid under the Export Clause. The trouble with this is that §7422, the primary statute governing the refund process, is written much more broadly than §7421(a), the statute at issue in *Williams Packing*. Section §7422(a) states that "[n]o suit … shall be maintained in any court for the recovery of any *internal revenue tax* alleged to have been erroneously or illegally assessed or collected … until a claim for refund or credit has been duly filed with the" IRS. (Emphasis added.) This language generally tracks that of the Anti-Injunction Act, which also applies to suits "restraining the assessment or collection of any *tax*." §7421(a) (emphasis added). But §7422(a) goes on to apply its prohibition against suit absent a proper refund claim to "*any sum* alleged to have been excessive or in any manner wrongfully collected." (Emphasis added.) Even if we agreed that a facially unconstitutional tax for purposes of the tax refund scheme is "merely in 'the guise of a tax,' " *Williams Packing*, *supra*, at 7 (quoting *Standard Nut Margarine*, *supra*, at 509), and therefore not a "tax alleged to have been erroneously or illegally assessed or collected," §7422(a), it would nevertheless clearly fall into the broader category of "any sum … in any manner wrongfully collected," *ibid.*

Moreover, even if we were to accept the companies' argument that the "under no circumstances" limitation on the Anti-Injunction Act applies to the refund scheme, they still would not prevail. We made clear in *Williams Packing* that "the question of whether the Government has a chance of ultimately prevailing is to be determined on the basis of the information available to it at the time of suit. Only if it is then apparent that, under the most liberal view of the law and the facts, the United States cannot establish its claim, may the suit for an injunction be maintained." 370 U. S., at 7. A tax injunction suit, of course, is brought at the time the Government attempts to assess a tax on the taxpayer. Thus, if we applied the *Williams Packing* "under no circumstances" rule to the refund scheme, we would judge the Government's chances of success as of the time the tax was assessed.

In this case, the companies seek refunds for taxes paid between 1994 and 1996. At that time, the scope of the Export Clause was sufficiently debatable that we granted certiorari in 1996, see *United States* v. *International Business Machines Corp.*, 517 U. S. 843, and again in 1998, see *United States* v. *United States Shoe Corp.*, 523 U. S. 360, to clear it up. What is more, the District Court that struck down the application of §4121(a) to coal exports partially relied on these cases in arriving at its decision, *Ranger Fuel Corp.*, 33 F. Supp. 2d, at 469, and the IRS cited, *inter alia*, *International Business Machines*, *supra*, in its acquiescence notice, see IRS Notice, at 1116. Indeed, we would think that if the unconstitutionality of the coal export tax were so obvious that the Government had no chance of prevailing, someone paying the tax-such as these companies-would have successfully challenged it earlier than 20 years after its enactment.

We therefore hold that the plain language of 26 U. S. C. §§7422(a) and 6511 requires a taxpayer seeking a refund for a tax assessed in violation of the Export Clause, just as for any other unlawfully assessed tax, to file a timely administrative refund claim before bringing suit against the Government. Because we find that the Court of Appeals erred in allowing the companies to bring suit seeking a refund for the 1994-1996 taxes, we do not reach the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

question whether the Court of Appeals also erred in awarding the companies interest on those amounts under 28 U. S. C. §2411. The judgment of the Court of Appeals is reversed.

It is so ordered.

U.S., 2008
UNITED STATES, PETITIONER v. CLINT-WOODELKHORN MINING COMPANY et al.
--- S.Ct. ----, 2008 WL 1721530 (U.S.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.