No. 06-861 T
(Judge Firestone)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

LAWRENCE D. PENNONI,

Plaintiff

v.

THE UNITED STATES,

Defendant

**MOTION OF THE UNITED STATES FOR SUMMARY JUDGMENT AND BRIEF FOR THE UNITED STATES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

NATHAN J. HOCHMAN
Assistant Attorney General

DAVID GUSTAFSON
MARY M. ABATE
JOSEPH B. SYVERSON
Attorneys
Justice Department (Tax)
Court of Federal Claims Section
P.O. Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6508
(202) 514-9440 (facsimile)

# TABLE OF CONTENTS

**Page**

Motion of the United States for Summary Judgment. . . . . viii

Brief for the United States in Support of its Motion for Summary Judgment. . . . . 1

Questions Presented. . . . . 3

Statement. . . . . 4

1. Background. . . . . 4

2. Plaintiff's "Informal Claim" Allegations. . . . . 9

3. Procedural History. . . . . 11

Argument. . . . . 15

1. The Supreme Court's Decision in *Clintwood Elkhorn* Confirms That Plaintiff Was Required by § 7422 to File a Claim for Refund Prior to Bringing Suit; Because He Failed to Do So the Court Lacks Subject-Matter Jurisdiction over the Complaint. . . . . 15

A. Under *Clintwood Elkhorn*, plaintiff was required to file a claim for refund prior to filing suit. . . . . 15

B. Plaintiff did not file a claim for refund prior to bringing suit. . . . . 20

1. Plaintiff's claim for refund was inadequate because it failed to meet the requirements imposed by the regulations, which the IRS did not waive. . . . . 20

a. As plaintiff implicitly concedes, he did not file a formal administrative claim. . . . . 21

b. The IRS did not waive the requirements imposed by the applicable Treasury regulations with respect to plaintiff's purported claim for refund. . . . . 23

2. Plaintiff's purported informal claim for refund fails to satisfy the requirements of the informal claim doctrine as developed in the case law of this Circuit. . . . . 23

**(Continuation):**

**Page**


a. Plaintiff's purported claim is not a valid informal claim for refund because it does not claim a refund, but rather merely demands that the IRS cease collection of his unpaid liability. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

b. Plaintiff's purported refund claim is not a valid informal claim for refund because it fails to specify factual and legal grounds for a claim to entitlement to a refund. . . . . 26

c. Alternatively, assuming *arguendo* that the facsimile in question constituted a valid informal refund claim, plaintiff is barred from prosecuting this suit on the grounds stated in the complaint, under the doctrine of substantial variance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

II. Alternatively, Even If the Court Determines That it Has Jurisdiction over the Complaint, Plaintiff Still Is Not Entitled to Recover Any of the Amounts He Seeks. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

A. Defendant is entitled to retain the funds collected by levy with respect to the erroneous refund, and, in any event, plaintiff is not entitled to interest on his claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

1. Because plaintiff acknowledged in writing that he was not entitled to the amount he was eventually refunded by stipulating in Tax Court to the amount of refund he was owed, the United States is entitled to retain the amounts collected from him. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

2. In any event, plaintiff is not entitled to interest on his claim. . . . . 31

B. If, as this Court previously held, plaintiff's liability to the United States created by the erroneous refund was not a tax liability, then the United States is entitled to recoup that refund by counterclaim in this suit. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

1. The United States has a cause of action to recover a debt created by issuance of an erroneous refund that exists independent of statute. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

**(Continuation):**

**Page**

2. The right of the United States to assert a cause of action to recover an erroneous refund by way of recoupment is not limited by the statute of limitations applicable to affirmative suits to collect erroneous refunds.. . . . . . . . . . . . . . . . . . . . . . . . . 34

3. The United States is entitled to recoupment of the erroneous refund made to plaintiff to the extent that plaintiff recovers on his claim in this suit for recovery of amounts previously collected from him with respect to the erroneous refund.. . . . . . . 36

C. Because plaintiff did not file a claim for refund of the amounts collected to satisfy assessments of penalties and interest made after the erroneous refund was issued, the Court lacks subject-matter jurisdiction over the suit to the extent it seeks refund of such payments.. . . . . . . . . . . . . . . . . . . . . 37

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

**TABLE OF AUTHORITIES**

**Page**

**Cases:**

*Alexander Proudfoot Co. v. United States*, 454 F.2d 1379 (Ct. Cl. 1972).. . . . . . . . . . . . . 24

*American Radiator & Standard Sanitary Corp. v. United States*, 318 F.2d 915 (Ct. Cl. 1963). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Angelus Milling Co. v. Commissioner*, 325 U.S. 293 (1945).. . . . . . . . . . . . . . . . . . . 20, 21

*Arch Engineering Co. v. United States*, 783 F.2d 190 (Fed. Cir. 1986). . . . . . . . . . . . . . 24

*Barrett Refining Corp. v. United States*, 242 F.3d 1055 (Fed. Cir. 2001). . . . . . . . . . . . . 33

*Bull v. United States*, 295 U.S. 247 (1935). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Burlington N. Inc. v. United States*, 684 F.2d 866 (Ct. Cl. 1982). . . . . . . . . . . . . . . . . . . 28

*Clintwood Elkhorn v. United States*, 473 F.3d 1373 (Fed. Cir. 2007).. . . . . . . . . . . . . . . . 16

*Computervision Corp. v. United States*, 445 F.3d 1355 (Fed. Cir. 2006). . . . . . . . . . 24, 38

*Cyprus Amax Coal Co. v. United States*, 205 F.3d 1369 (Fed. Cir. 2000), *cert. denied,* 532 U.S. 1065 (2001).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1 (1962).. . . . . . . . . . . . . . . . . 17

*Furst v. United States*, 678 F.2d 147 (Ct. Cl. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Goldstein, Baron & Lewis, Chartered v. United States*, 995 F.2d 35 (4th Cir. 1993), *cert. denied*, 510 U.S. 1041 (1994). . . . . . . . . . . . . . . . . . . . . . . . 29, 30

*Kuehn v. United States*, 480 F.2d 1319 (Ct. Cl. 1973). . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Library of Congress v. Shaw*, 478 U.S. 310 (1986).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Lockheed Martin Corp. v. United States*, 210 F.3d 1366 (Fed. Cir. 2000). . . . . . . . . . . . 27

*Miller v. Standard Nut Margarine Co.*, 284 U.S. 498 (1932). . . . . . . . . . . . . . . . . . . . . . 18

**Cases (Continuation):**

**Page**

*Mobil Corp. v. United States*, 67 Fed. Cl. 708 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*New England Electric System v. United States*, 32 Fed. Cl. 636 (1995), *appeal dismissed* 156 F.3d 83 (Fed. Cir. May 17, 1995) (Table). . . . . . . . . . . . . . . 24, 26

*Ottawa Silica Co. v. United States*, 699 F.2d 1124 (Fed. Cir. 1983). . . . . . . . . . . . . . . 24, 28

*Pennoni v. United States*, 79 Fed. Cl. 552 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . 2, 13, 38

*Poretto v. Usry*, 295 F.2d 499 (5th Cir. 1961). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Ranger Fuel Corp. v. United States*, 33 F. Supp. 2d 466 (E.D. Va. 1998). . . . . . . . . . . . . 16

*Reiter v. Cooper*, 507 U.S. 258 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34, 35, 36

*W. Co. of N. America v. United States*, 323 F.3d 1024 (Fed. Cir. 2003). . . . . . . . . . . . . . . 38

*Stanley v. United States*, 35 Fed. Cl. 493 (1996), *aff'd*, 140 F.3d 1023 (Fed. Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 30, 32, 37

*Tucker v. Alexander*, 275 U.S. 228 (1927).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Bank of the Metropolis*, 40 U.S. (15 Pet.) 377 (1841). . . . . . . . . . . . . . . . 33

*United States v. Clintwood Elkhorn Mining Co*., 128 S. Ct. 1511 (2008).1, 3, 11-12, 14-19

*United States v. Dalm*, 494 U.S. 596 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Memphis Cotton Oil Co*., 288 U.S. 62 (1933). . . . . . . . . . . . . . . . . . . . . . 21

*United States v. N.Y. Rayon Importing Co*., 329 U.S. 654 (1947).. . . . . . . . . . . . . . . . . . . 31

*United States v. Nashville, C. & St. L. Railway Co*., 118 U.S. 120 (1886). . . . . . . . . . . . 34

*United States v. Western Pacific Railroad Co*., 352 U.S. 59 (1956). . . . . . . . . . . . . . . 35, 36

*United States v. Wurts*, 303 U.S. 414 (1938). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33, 34, 36

*W. Co. of N. Am. v. United States*, 323 F.3d 1024, 1033-35 (Fed. Cir. 2003). . . . . . . . . . 38

*Wis. Central R.R. v. United States*, 164 U.S. 190 (1896).. . . . . . . . . . . . . . . . . . . . . . . . . 33

**Statutes**:


**Page**

Revenue Act of 1928, 45 Stat. 791, § 610 (1928). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Internal Revenue Code of 1986 (26 U.S.C.):

§ 4121.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 18

§ 6015.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

§ 6212.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

§ 6213.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

§ 6402.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

§ 6246.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

§ 6621.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

§ 6330.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 23

§ 6331.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

§ 6532.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 33

§ 6672.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

§ 6694.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

§ 7405.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

§ 7421.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18, 19

§ 7422.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *Passim*

§ 7426.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

§ 7429.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

§ 7436.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**(Continuation):**

**Page**

28 U.S.C.

§ 1346.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

§ 1491.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 16

§ 1961.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31, 32

§ 2516(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

49 U.S.C. § 16(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

**Miscellaneous:**

I.R.S. Notice 2000-28. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Treasury Regulations (26 C.F.R.):

§ 301.6402-2(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22, 27

§ 301.6402-3(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 06-861 T
(Judge Firestone)

---

LAWRENCE D. PENNONI,

Plaintiff,

v.

THE UNITED STATES,

Defendant

---

**MOTION OF THE UNITED STATES FOR SUMMARY JUDGMENT**

---

Defendant, the United States, respectfully requests that the Court grant summary judgment pursuant to RCFC 56 in favor of defendant and against plaintiff. In support of its motion, defendant relies on the attached Brief, plaintiff's amended complaint and the documents attached thereto, the declarations of Joseph B. Syverson and Lawrence D. Pennoni, filed previously with the Court in this case, and defendant's Proposed Findings of Uncontroverted Fact.

Respectfully submitted,

May 2, 2008

s/ Joseph B. Syverson

JOSEPH B. SYVERSON
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
TELEPHONE (202) 307-6508
FACSIMILE (202) 514-9440
Joseph.B.Syverson@usdoj.gov

NATHAN J. HOCHMAN
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
MARY M. ABATE
Assistant Chief, Court of Federal Claims Section

s/ Mary M. Abate

May 2, 2008

Of Counsel

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**No. 06-861 T**
**(Judge Firestone)**

---

**LAWRENCE D. PENNONI,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant**

---

**BRIEF FOR THE UNITED STATES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

---

One threshold jurisdictional issue and three potential issues remain for the Court to resolve in this case. First, the Court must decide whether, under the recent decision in *United States v. Clintwood Elkhorn Mining Co.*, 128 S. Ct. 1511 (2008), plaintiff was required to file a claim for refund with the Internal Revenue Service ("IRS") for the amounts levied with respect to the erroneous refund for his 1998 tax year before filing suit. If so, the Court must determine whether the document belatedly characterized by plaintiff as an informal claim for refund of those amounts constituted a valid claim for refund. If it did not, then the Court lacks subject-

matter jurisdiction and the complaint must be dismissed.[1]

As will be discussed in more detail below, in *Clintwood Elkhorn*, the Supreme Court expressly addressed the scope of the conditions on suit imposed by the "any sum" language of § 7422(a) of the Internal Revenue Code[2], and concluded that it requires the filing of a claim for refund with the IRS prior to bringing suit even when a claimant seeks to recover amounts that are paid to satisfy asserted tax liabilities which are imposed merely "in the guise of a tax," and hence are illegal exactions. Thus, given this Court's previous conclusion that the complaint in this case states a cause of action under an illegal exaction theory, *Pennoni v. United States*, 79 Fed. Cl. 552, 560-562 (2007),[3] it follows from *Clintwood Elkhorn* that this Court's jurisdiction over the complaint is subject to the refund claim requirements imposed by § 7422(a).[4]

Second, if the Court nonetheless were to conclude that it has jurisdiction, it then must determine whether the United States is entitled to retain the funds collected by levy with respect to the erroneous refund, and, if so, whether plaintiff is entitled to interest. Third, if the Court

---

[1]As the Court is aware, the issue of the Court's subject-matter jurisdiction may be raised at any time in the proceedings. RCFC 12(b)(1), (h)(3).

[2]Unless otherwise noted, the section symbol ("§") or the word "section" refers to the Internal Revenue Code, codified in Title 26 of the United States Code, as amended and in effect during the relevant period.

[3]For purposes of its motion for summary judgment, the United States does not contest here the Court's earlier determination that this suit is not a suit for refund of taxes, but rather a suit for return of an illegal exaction. For the purpose of any potential appeal, however, we do not intend to abandon our contention (asserted in the briefs supporting our motion to dismiss the complaint) that this is a suit for refund of federal income tax, subject to the requirements of Code §§ 6532 and 7422.

[4]As we will demonstrate, plaintiff did not file a refund claim with the IRS for the amounts he seeks that were collected by levy to recover the erroneous refund for his 1998 tax year.

were to conclude that plaintiff is entitled to recover any portion of the levied funds, then it must address the issue whether defendant is entitled to recover a concomitant amount by counterclaim in this suit. Finally, in the event that the Court determines that it has jurisdiction over the complaint, the Court must also decide whether plaintiff was required to file a claim for refund of the amounts collected to satisfy the assessments of deficiency interest and penalties for the 1998 tax year prior to bringing suit to recover those amounts.

**QUESTIONS PRESENTED**

(1) Whether, in light of *United States v. Clintwood Elkhorn Mining Co.*, 128 S. Ct. 1511 (April 15, 2008), plaintiff was required under § 7422(a) to file a claim for refund with the IRS for the amounts collected by levy with respect to the erroneous refund prior to bringing suit, and whether he failed to do so;

(2) Alternatively, assuming, *arguendo*, that the Court determines that it has jurisdiction over the complaint in this case—

(a) Whether the United States is entitled to retain the funds collected by levy with respect to the erroneous refund, and whether in any event plaintiff is not entitled to interest on his claim;

(b) Whether defendant is entitled to recover by counterclaim in this suit an amount concomitant to the amount of any recovery by plaintiff; and

(c) Whether plaintiff was required by § 7422 to file a claim for refund, prior to bringing suit, to recover the amounts collected to satisfy deficiency interest and penalties for his 1998 taxable year that were assessed after the date of the erroneous refund.

## STATEMENT

### 1. Background

Plaintiff is an attorney, who has practiced in the areas of tax, international tax, and corporate mergers and acquisitions. (DPF ¶ 1.)[5] For the 1998 tax year, plaintiff received $247,072.02 in income from the law firm of Chamberlain, Hrdlicka, White, Williams and Martin, located in Houston, Texas, of which $75,000.00 was withheld to satisfy his federal income tax liabilities, and credited to plaintiff's account for his 1998 individual income tax year on April 15, 1999. (DPF ¶¶ 2-4, 45.) Despite this income and withholding, plaintiff failed to file a federal individual income tax return for 1998 by August 15, 1999, the extended filing deadline he requested and received for the filing of his 1998 return. (DPF ¶¶ 5-6.)

As a result of plaintiff's nonfiling, the IRS mailed plaintiff a letter regarding his individual income tax for the 1998 tax year, on February 16, 2001. (DPF ¶¶ 7-11.) This letter, titled "Proposed Individual Income Tax Assessment," explained that the IRS had no record of plaintiff's having filed an individual income tax return for 1998, and that, as a result, the IRS had computed plaintiff's individual income tax liability for the 1998 tax year "based upon income reported to us by your employer(s), bank(s), etc. . . ." (DPF ¶¶ 8-9.) According to the computations attached to the letter, plaintiff's tax liability before credits for 1998 was $86,316.00; his liability after allowable credits totaling $75,000.00 was $11,316.00; and he owed $2,465.74 in interest (as of March 18, 2001) and $3,982.79 in penalties, for a total of $17,764.53 due as of March 18, 2001. (DPF ¶ 10.) The letter advised plaintiff that these amounts would be

---

[5]"DPF" refers to Defendant's Proposed Findings of Uncontroverted Fact.

assessed if the IRS did not hear from him within 30 days of the date of the letter, and advised him that one way he could respond was by submitting a completed Form 1040 (Individual Federal Income Tax Return) for the 1998 tax year. (DPF ¶ 11.)

Plaintiff subsequently filed a Form 1040 for the 1998 tax year that was received by the IRS on April 18, 2001, more than 30 days after the IRS's February 16, 2001 letter. (DPF ¶ 12.) This return reported plaintiff's tax liability for 1998 as $71,964.70, and claimed a refund of $3,035.33 after the withholding credit of $75,000.00 was applied. (DPF ¶ 13.)

On June 1, 2001, the IRS issued plaintiff a Notice of Deficiency for the 1998 tax year. (DPF ¶ 14.) According to the Notice of Deficiency, the IRS determined a deficiency in tax of $86,316.00, and plaintiff owed penalties totaling $3,982.79–the same amounts as in the February 16, 2001 letter. (DPF ¶¶ 10, 15.)

After receiving this Notice of Deficiency, plaintiff, representing himself, timely filed a petition with the United States Tax Court ("Tax Court") on July 19, 2001, challenging the IRS's determination of his 1998 income tax liability. (DPF ¶¶ 16-17.) In his petition, plaintiff alleged that he was entitled to a refund of $3,035.33 for the 1998 tax year after application of a withholding credit, and that the IRS had erred in determining that he was liable for any penalties for the 1998 tax year. (DPF ¶ 18.) The Commissioner of Internal Revenue ("Commissioner") filed an answer to plaintiff's petition on August 23, 2001, denying these allegations. (DPF ¶¶ 19-20.)

After plaintiff had filed his petition with the Tax Court, plaintiff worked with IRS Appeals in an effort to negotiate a settlement. (DPF ¶ 21.) On or about February 14, 2002, plaintiff and the Commissioner entered into a settlement stipulation, which was docketed on

February 15, 2002. (DPF ¶¶ 22-23.) The stipulation contained a draft decision, and stated that the parties consented to the Court's entering this decision. (DPF ¶ 24.) The terms of the draft decision provided that there was a statutory deficiency in plaintiff's income tax for the 1998 tax year of $72,199.00, and that (after application of the withholding credit) there was an overpayment of income tax for the 1998 year of $2,801.00. (DPF ¶¶ 25-26.) The draft decision further provided that plaintiff had filed a timely claim for refund with respect to this amount in the return filed on April 18, 2001. (DPF ¶ 27.) Finally, the draft decision stated that plaintiff was not liable for any of the penalties he was determined to owe in the Notice of Deficiency issued for the 1998 tax year. (DPF ¶ 28.) The Tax Court entered the draft decision without alteration on February 15, 2002. (DPF ¶ 29.)

On September 11, 2002, plaintiff was assessed $72,960.00 in income tax for the 1998 tax year. (DPF ¶ 30.)[6] Approximately one month later, on October 14, 2002, plaintiff was issued a refund in the amount of $80,166.57. (DPF ¶ 31.) Prior to the issuance of the refund, a total of $3,511.85 was transferred as an overpayment credit from plaintiff's account for his 1998 individual income tax year to plaintiff's account for his 1999 individual income tax year. (DPF ¶ 46.) Because of this transfer, plaintiff had received the refund he was owed under the Tax Court decision prior to issuance of the refund. (DPF ¶ 72.) In addition, $0.78 of interest due was credited to plaintiff's account for his 1998 individual income tax year. (*Ibid.*) Plaintiff received the $80,166.57 refund in the form of a check, which he cashed upon receipt. (DPF ¶ 32.) This refund was not the result of a redetermination of plaintiff's income tax liability for 1998 by the

---

[6]The Certificate of Assessments, Payments, and Other Specified Matters for plaintiff's 1998 tax year shows that plaintiff was assessed $72,960.00 on September 11, 2002, slightly more than the amount of the deficiency according to the Tax Court decision. (Ex. 1 at 3.)

IRS. (DPF ¶ 33.)

The IRS treated plaintiff's refund as creating a balance due in plaintiff's account for his 1998 individual income tax year in the amount of $81,637.64. (DPF ¶ 34.) On November 25, 2002, the IRS sent plaintiff notice that he had a balance due on his account for the 1998 tax year. (DPF ¶ 35.) Subsequently, plaintiff was sent a statutory notice of intent to levy on December 30, 2002. (DPF ¶ 36.) This notice stated that plaintiff's then current balance due was $83,818.35, including $736.95 in penalties, and $1,443.76 in interest. (DPF ¶ 37.)

Finally, on May 29, 2003, the IRS issued plaintiff a Final Notice of Intent to Levy and Notice of Your Right to a Hearing for tax year 1998. (DPF ¶ 38.) This notice also contained a statement of plaintiff's current balance due, stating that plaintiff had a then current total balance of $89,884.06 for his 1998 individual income tax year, including $8,246.42 of statutory additions of penalties and interest. (DPF ¶ 40.) In addition, this notice informed plaintiff that he had a right to "[a]ppeal the intended levy on [his] property by requesting a Collection Due Process hearing within 30 days from the date of this letter." (DPF ¶ 39.) Plaintiff received this notice, but did not timely exercise his right to a collection due process hearing within the 30 day period after receipt of this notice, as provided for in Section 6330 of the Internal Revenue Code.[7] (DPF ¶ 41.)

After plaintiff failed to exercise his collection due process rights, the IRS then began to collect on the balance due on the account for plaintiff's 1998 individual income tax year, crediting the collected amounts to plaintiff's outstanding liability for the 1998 tax year. (DPF ¶

[7]All subsequent statutory references will be to the Internal Revenue Code of 1986 (26 U.S.C.), unless otherwise indicated.

43-45.) Plaintiff's 1998 tax account was credited with amounts of $4,167.41 and $2,921.98 levied from a bank account he held with Wells Fargo Bank, N.A., on August 4 and August 25, 2003, respectively. (DPF ¶¶ 43-44.) The IRS also levied plaintiff's wages from Continental Casing Corporation, with levied amounts being applied to plaintiff's account for his 1998 individual income tax liability on the following dates in the following amounts:

| **Date Applied to Account** | **Amount Levied** |
| --- | --- |
| August 25, 2003 | $3,807.09 |
| September 2, 2003 | $4,167.41 |
| September 17, 2003 | $4,167.41 |
| October 6, 2003 | $4,167.41 |
| October 20, 2003 | $4,167.41 |
| November 3, 2003 | $4,167.41 |
| November 17, 2003 | $4,167.41 |
| December 5, 2003 | $4,167.41 |
| December 22, 2003 | $5,862.58 |
| January 8, 2004 | $4,167.41 |
| January 18, 2004 | $3,781.12 |
| April 5, 2004 | $5,208.14 |
| April 19, 2004 | $3,781.12 |
| May 4, 2004 | $3,781.12 |
| May 17, 2004 | $3,781.12 |
| June 1, 2004 | $3,781.12 |
| June 18, 2004 | $3,781.12 |
| July 6, 2004 | $3,781.12 |
| July 19, 2004 | $3,781.12 |

| | |
|---|---|
| August 2, 2004 | $3,781.12 |
| August 17, 2004 | $3,781.12 |
| September 2, 2004 | $3,781.12 |

(DPF ¶ 45.) On September 27, 2004, plaintiff's account for his 1998 individual income tax year was credited with interest owed to plaintiff in the amount of $0.61. (DPF ¶ 48.) On the same day, plaintiff was then issued a refund in the amount of $468.36. (DPF ¶ 49.) After issuance of this refund, plaintiff's account for the 1998 tax year has a zero balance. (DPF ¶ 50.)

In addition to the September 11, 2002, assessment of tax, plaintiff was assessed deficiency interest and failure to pay tax penalties with respect to his 1998 individual income tax. (DPF ¶ 42.) These assessments of deficiency interest and failure to pay tax penalties were made on the following dates and in the following amounts:

| **Date of Assessment** | **Type of Assessment** | **Amount of Assessment** |
|---|---|---|
| August 2, 2004 | Failure to Pay Tax Penalty | $114.68 |
| August 9, 2004 | Failure to Pay Tax Penalty | $3,781.12 |
| August 23, 2004 | Failure to Pay Tax Penalty | $3,781.12 |
| September 6, 2004 | Failure to Pay Tax Penalty | $1,416.44 |
| September 6, 2004 | Interest | $2,364.68 |
| September 27, 2004 | Interest | $3,313.37 |
| | **TOTAL:** | **$14,771.47** |

(*Ibid.*)

### 2. Plaintiff's "Informal Claim" Allegations

After plaintiff had failed to exercise his collection due process rights, and after the IRS had begun to collect on plaintiff's outstanding tax liability for 1998, plaintiff sent a facsimile to

"IRS Memphis" on September 9, 2003. (DPF ¶¶ 51-52.) The facsimile cover sheet indicated that the facsimile was from plaintiff, "Larry Pennoni," included plaintiff's social security number, and stated "Attn: Reconsideration." (DPF ¶¶ 53-54.) The message portion of the cover sheet contained only a two-sentence hand-written note stating the following:

> Attached are Tax Court decision documents establishing that there was no deficiency for 1998. Thus, levy on bank and garnishment of wages is wrongful and should be withdrawn ASAP!!

(DPF ¶¶ 55-56.)

Attached to this facsimile were a number of documents relating to the proceedings in the Tax Court regarding plaintiff's 1998 federal individual income taxes. (DPF ¶¶ 57-61.) The attachments consisted of copies of the Tax Court docket sheet (DPF ¶ 56), the decision entered by the Tax Court (DPF ¶ 58), the stipulation entered in the Tax Court proceeding between plaintiff and the Commissioner (DPF ¶ 59), a letter to plaintiff from the IRS attorney who represented the Commissioner in the Tax Court case, enclosing draft copies of the stipulation and decision for plaintiff's review and signature (DPF ¶ 60), and five sheets of computations related to plaintiff's 1998 individual income tax that plaintiff had received from the IRS. (DPF ¶ 61.)

The facsimile and attachments were forwarded from Memphis to the Houston Appeals Office. (DPF ¶ 63.)[8] On October 14, 2003, the IRS Appeals Officer who worked on plaintiff's Tax Court case for the 1998 tax year, Dennis A. Quinn (DPF ¶ 64), sent a letter to plaintiff in response to the facsimile plaintiff sent to Memphis on September 9. (DPF ¶ 65.) In this letter, Mr. Quinn informed plaintiff that Appeals had received the case as an "audit reconsideration"

[8]The facsimile number to which plaintiff directed the facsimile had a 901 area code, which includes Memphis, Tennessee. (DPF ¶ 62.)

case, but that neither it nor District Counsel had any jurisdiction over the case as an audit reconsideration case because the amount of plaintiff's individual income tax liability for 1998 had already been finally decided by the decision of the Tax Court. (DPF ¶¶ 66-67.) Consequently, Mr. Quinn's letter stated that "the matter of collection" of plaintiff's unpaid liability for 1998 that resulted from the refund, and "the matter of the October 2002 refund to you," were "items that need to be resolved between you and the Memphis Service Center," which was responsible for the collection of the outstanding liability. (DPF ¶ 68.)

Mr. Quinn's letter also informed plaintiff that Appeals had "looked at [his] file, transcript data, etc.," and concluded that "levy action would not appear to be wrong." (DPF ¶ 69.) The letter went on to explain that the proposition plaintiff had offered in support of its position that the IRS's collection efforts were wrongful was factually mistaken:

> You have said that the Tax Court decision documents show that "there was no deficiency for 1998." That is not correct. There was a statutory tax deficiency (agreed to by the parties) of $72,199.00. However, with the application of the withholding credit amount of $75,000.00 to you, the net amount owed was $2,801.00.

(DPF ¶ 70.)

**3. Procedural History**

On December 15, 2006, plaintiff filed his original complaint with this Court. In this complaint, plaintiff alleged that the IRS wrongfully collected approximately $104,461.04 from plaintiff, and asked for return of this amount with interest. (Orig. Compl. ¶¶ 2, 8, 11-12.) Plaintiff alleged that this "sum was erroneously and illegally taken by Defendant under the guise of collecting an allegedly assessed income tax liability, together with interest and penalties, for the year 1998." (*Id.* ¶ 2.) Plaintiff further alleged that this Court had subject-matter jurisdiction

over this complaint "pursuant to 28 U.S.C. §§ 1346 and 1491." (*Id.* ¶ 3.) The complaint, however, did not allege that plaintiff had filed a claim for refund with the IRS for the 1998 tax year with respect to the payments plaintiff seeks to have refunded (*i.e.,* the levied amounts). (*Id.*)

On April 16, 2007, defendant moved to dismiss plaintiff's original complaint for lack of subject-matter jurisdiction, arguing that the Court lacked jurisdiction because plaintiff failed to file an administrative claim for refund prior to filing suit, as required by Section 7422(a) of the Internal Revenue Code. On May 17, 2007, plaintiff filed an amended complaint, and, on the same day, filed a response to defendant's motion to dismiss. Defendant then filed, on May 25, 2007, a motion for clarification and enlargement of time, requesting that the Court clarify that plaintiff's filing of an amended complaint rendered the motion to dismiss the original complaint moot, obviating any need for defendant to reply to plaintiff's response, and requesting an enlargement of the time provided for in RCFC 15(a) for responding to plaintiff's amended complaint. The Court granted this motion by order of May 31, 2007, ordering defendant to respond to plaintiff's amended complaint on or before July 2, 2007.

Plaintiff's amendment added one new paragraph, which makes new allegations purporting to establish jurisdiction. (*See* First Am. Compl. ¶ 4.) Plaintiff's complaint now alleges that "[s]ubject-matter jurisdiction also exists for this Court to hear Plaintiff's case under the informal claim doctrine." (*Ibid.*) Plaintiff now alleges that the September 9, 2003 facsimile from plaintiff to the IRS constituted plaintiff's claim for refund of the $104, 461.04 payments he seeks to recover. (*See id.* ¶ 4, Ex. A; ¶¶ 9, 13; *supra*, p. 10.)

In addition, plaintiff's amended complaint now alleges that the IRS disallowed plaintiff's alleged informal claim for refund. (*Id.* ¶ 4.) Plaintiff alleges that this disallowance took place on

November 14, 2003, and was effected by the letter of that date from the IRS Appeals Officer to plaintiff. (*See id.* ¶ 4, Ex. B; *supra*, pp. 11-12.)

On July 2, 2007, defendant moved to dismiss plaintiff's amended complaint for lack of subject-matter jurisdiction. After briefing and oral argument on the motion, the Court denied defendant's motion to dismiss on December 4, 2007. *Pennoni v. United States*, 79 Fed. Cl. 552 (2007). In its opinion, the Court held that it had jurisdiction over plaintiff's suit under the Tucker Act as a suit for recovery of an illegal exaction. *Id.* at 560-62. The Court reached this holding on the basis of its conclusion that the payment of plaintiff's assessed income tax liability for 1998 by application of his withholding credit "extinguished" plaintiff's income tax liability for 1998, and that, as a result "the taxpayer's obligation to return the funds [received as a result of erroneous refund] is not based on any tax that is owing but is instead based on unjust enrichment." *Id.* at 558. In addition, the Court held that plaintiff's suit, at least to the extent that it seeks return of amounts collected with respect to the erroneous refund of tax, is not subject to § 7422(a) by virtue of being a suit for recovery of "any sum alleged to have been . . . in any manner wrongfully collected." *Id.* at 557-58.

On December 17, 2007, defendant moved for reconsideration of the Court's December 4, 2007, opinion and order, on two grounds. First, defendant argued that the Court's opinion did not address whether the assessed interest and penalties that plaintiff seeks to recover are subject to the administrative claim requirement of § 7422(a). Second, defendant moved for reconsideration of the Court's holding that plaintiff's suit was not subject to § 7422(a) as a suit for recovery of "any sum . . . wrongfully collected," regardless of whether plaintiff sought to recover payments of tax. Defendant subsequently argued in briefing on this motion that

proceedings in this case should be stayed in light of the Supreme Court's grant of certiorari in *United States v. Clintwood Elkhorn Mining Co.*, No. 07-308, 128 S. Ct. 710 (2007), after the Court ordered the parties to address this issue.

The Court denied defendant's motion for reconsideration on January 24, 2008. In its order, the Court stated that it intended to resolve the issue of the assessed penalties and interest later in the proceedings. In addition, the Court indicated that it would consider the impact of *Clintwood Elkhorn* on "the jurisdictional issues in this case" if the Supreme Court's decision was available prior to resolution of proceedings in this case before this Court.

On February 8, 2008, defendant filed an answer to plaintiff's amended complaint and counterclaim. Defendant counterclaimed for "any portion of the amounts collected by the IRS from plaintiff to recover the $80,166.57 erroneous refund" that the Court concludes plaintiff is entitled to recover on its claim, "plus interest and other costs thereon as allowed by law." (Def.'s Ans. and Counterclaim ¶ 23.) Plaintiff filed an answer to defendant's counterclaim on February 25, 2008.

On March 20, 2008, the Court, per the suggestion of defendant in the parties' joint preliminary status report, ordered defendant to file a summary judgment motion on or before May 2, 2008. On April 18, 2008, the Court granted defendant's unopposed motion to amend the Court's March 20 scheduling order to permit defendant to address *Clintwood Elkhorn* in this motion.

## ARGUMENT

## I.

## THE SUPREME COURT'S DECISION IN *CLINTWOOD ELKHORN* CONFIRMS THAT PLAINTIFF WAS REQUIRED BY § 7422 TO FILE A CLAIM FOR REFUND PRIOR TO BRINGING SUIT; BECAUSE HE FAILED TO DO SO THE COURT LACKS SUBJECT-MATTER JURISDICTION OVER THE COMPLAINT

The Supreme Court's recent decision in *United States v. Clintwood Elkhorn Mining Co.*, 128 S. Ct. 1511 (2008), confirms the Government's position in this case that the plain language of § 7422(a) required plaintiff to file an administrative refund claim prior to bringing suit to recover the amounts levied with respect to the erroneous refund for plaintiff's 1998 tax year. It affirmatively establishes that the scope of § 7422(a) is expansive, and it explicitly rejects the conclusion reached in this Court's prior decision in this case that § 7422(a) applies only to "taxes." For these reasons, in addition to those set forth in our previous filings, the Court should dismiss this case for lack of jurisdiction.

### A. Under *Clintwood Elkhorn*, plaintiff was required to file a claim for refund prior to filing suit

In *Clintwood Elkhorn*, the Court addressed the issue whether the respondents, domestic coal producers ("the coal companies"), were required to file claims for refund prior to bringing suit to recover amounts paid as coal excise taxes imposed under § 4121(a). *Clintwood Elkhorn*, 128 S.Ct. at 1514.[9] After a federal district court held that § 4121(a) was unconstitutional as

[9]The Court also granted certiorari on the question whether the coal companies were entitled to interest in the event they were not required to file claims for refund, as the Federal Circuit had held. *Clintwood Elkhorn*, 128 S.Ct. at 1520. Given its holding, the Court did not reach this issue. *Ibid.*

applied,[10] the coal companies filed timely refund claims for some years and were granted refunds by the IRS. They then brought suit in this Court seeking refunds for earlier years for which they could not file timely refund claims because the statute of limitations had expired, alleging that § 4121(a), as applied, violates the Export Clause of the United States Constitution. *Clintwood Elkhorn v. United States*, 473 F.3d 1373, 1374 (Fed. Cir. 2007); *see* 128 S.Ct. at 1515. Before this Court and the Federal Circuit, the coal companies argued, and both Courts held, that they could bring their refund suits directly under the Tucker Act as a "claim against the United States founded . . . upon the Constitution," 28 U.S.C. § 1491(a)(1), and thus were not required to file claims for refund with the IRS prior to bringing suit, notwithstanding § 7422(a). *Clintwood Elkhorn*, 473 F.3d at 1374-75.[11] The Supreme Court rejected this notion, observing (*Clintwood Elkhorn*, 128 S.Ct. at 1517):

> [The coal companies] spend much of their brief arguing that the Export Clause itself creates a cause of action against the Government, which can be brought directly under the Tucker Act. . . . We need not decide this question here, because it does not matter. If the companies' claims are subject to the Code provisions, those claims are barred whatever the source of the cause of action.

In its unanimous opinion, written by Chief Justice Roberts, the Supreme Court reversed the Federal Circuit, holding that the plain language of § 7422(a) required the coal exporters to file claims for refund with the IRS prior to bringing suit. *Id.* at 1516. The Court observed that the "outcome [was] clear" in light of the all-encompassing, expansive language of § 7422(a):

---

[10]In *Ranger Fuel Corp. v. United States*, 33 F. Supp. 2d 466 (E.D. Va. 1998), the district court held that § 4121(a) as applied violated the Export Clause. The IRS subsequently acquiesced in this result. I.R.S. Notice 2000-28.

[11]In reaching this holding, the Federal Circuit followed its earlier decision in the earlier case, *Cyprus Amax Coal Co. v. United States*, 205 F.3d 1369 (Fed. Cir. 2000), *cert. denied*, 532 U.S. 1065 (2001), addressing the same issue. *Clintwood Elkhorn*, 473 F.3d at 1374-75.

> [Section] 7422(a) states that "*[n]o suit* . . . shall be maintained in *any court* for the recovery of *any internal revenue tax* alleged to have been erroneously or illegally assessed or collected, or of *any penalty* claimed to have been collected without authority, or of *any sum* alleged to have been excessive or *in any manner* wrongfully collected, until a claim for refund . . . has been duly filed with" the IRS. . . . Here the companies did not file a refund claim with the IRS for the 1994-1996 taxes, and therefore may bring "[n]o suit" in "any court" to recover "any internal revenue tax" or "any sum" alleged to have been wrongfully collected "in any manner." Five "any's" in one sentence and it begins to seem that Congress meant the statute to have expansive reach.

*Ibid.* (emphasis and alteration in original).

In the course of reaching its holding, the Court specifically addressed the import of the "any sum" language of § 7422(a). Before the Supreme Court, the coal companies argued*, inter alia*, that they were not required to file a claim for refund under § 7422(a) because § 4121(a), as applied to coal exports, was so facially in violation of the Export Clause that it was not really a "tax" at all for purpose of the tax refund statutes, but instead was merely an exaction imposed "in the guise of a tax." *Clintwood Elkhorn*, 128 S.Ct. at 1519. To support this position, the coal companies relied on *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1 (1962). *Ibid.*

In *Williams Packing*, the Court addressed the issue of the scope of the prohibition on injunctive relief in tax cases under § 7421(a), the Anti-Injunction Act.[12] *Williams Packing*, 370 U.S. at 2. In so doing, the Court explained that "if it is clear that under no circumstances could the Government ultimately prevail," then § 7421(a) does not apply, because "the central purpose of the [Anti-Injunction] Act is inapplicable." *Id.* at 7. In such a situation, the *Williams Packing*

[12]Section 7421(a) states that "[e]xcept as provided in sections 6015(e), 6212(a) and (c), 6213(a), 6225(b), 6246(b), 6330(e)(1), 6331(i), 6672(c), 6694(c), 7426(a) and (b)(1), 7429(b), and 7436, no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed."

Court observed, "the exaction is merely in 'the guise of a tax.'" *Ibid.* (quoting *Miller v. Standard Nut Margarine Co.*, 284 U.S. 498, 509 (1932)). Attempting to draw an analogy between the *Williams Packing* Court's treatment of the Anti-Injunction Act and the issue before the Court of the scope of the refund claim statute, the coal companies argued that § 4121(a) as applied to coal exports was so plainly in violation of the Export Clause that it should not be treated as a tax for purposes of applying § 7422(a). *Clintwood Elkhorn*, 128 S. Ct. at 1519.

The Court rejected this argument on grounds that the language of § 7422(a) was broader than that of § 7421(a), because only the former applies to "any sum . . . in any manner wrongfully collected." *Clintwood Elkhorn*, 128 S. Ct. at 1519-20. As the Court noted, the language of § 7421(a), which applies to suits "restraining the assessment or collection of any tax," finds an analogue in § 7422(a), which prohibits suit "for recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected." *Ibid.* The § 7422(a) prohibition, however, applies, in addition, to suits for the recovery of "any sum . . . in any manner wrongfully collected," so the issue of whether an exaction has been made under color of an internal revenue law that is facially invalid is immaterial in the context of § 7422(a):

> But § 7422(a) goes on to apply its prohibition against suit absent a proper refund claim to " *any sum* alleged to have been excessive or in any manner wrongfully collected." Even if we agreed that a facially unconstitutional tax for purposes of the tax refund scheme is "merely in 'the guise of a tax,' " and therefore not a "tax alleged to have been erroneously or illegally assessed or collected," it would nevertheless clearly fall into the broader category of "any sum . . . in any manner wrongfully collected."

*Ibid.* (emphasis in original) (citations omitted).

Under *Clintwood Elkhorn*, the "any sum" language of § 7422(a) is equally applicable to plaintiff's suit. *Clintwood Elkhorn* makes clear that the "any sum" language of § 7422(a)

represents a "broader category" than the "any internal revenue tax" language in the same section. *Clintwood Elkhorn*, 128 S. Ct. at 1519. Furthermore, *Clintwood Elkhorn* expressly interprets the provision in § 7422(a) applying to "any sum . . . in any manner wrongfully collected" to amounts collected "merely in the guise of a tax," *i.e.*, amounts collected by the IRS on the presupposition that the type of liability for which the amounts are collected is a tax liability, even when in fact it is not a tax liability. *Id.* at 1519-20 (internal quotations omitted).

Thus, even if, as this Court has previously held, the liability created when plaintiff was issued an erroneous refund was a nontax liability, it nonetheless follows under *Clintwood Elkhorn* that plaintiff was required to file a refund claim to recover the amounts collected by the IRS by tax levy to satisfy this liability. The amounts collected from plaintiff by levy were unquestionably collected by the IRS on the presupposition that they were being collected to satisfy a tax liability: after the issuance of the erroneous refund, the IRS first sent plaintiff a notice of balance due on his 1998 individual income tax, and then proceeded to follow procedures provided for in the Internal Revenue Code for recovering a tax liability, up to and including levying funds from plaintiff's accounts and wages. Thus, the amounts collected from plaintiff were, at minimum, collected "in the guise of a tax," and hence, under *Clintwood Elkhorn*, are subject to the refund claim requirement of § 7422(a).

As discussed above, however, the Supreme Court clearly concluded that the expansive reach of § 7422(a), unlike § 7421(a), extends beyond taxes to a much "broader category" than "taxes." Therefore, whether the amounts at issue are characterized as "taxes," amounts collected "in the guise of a tax," or merely "any sum" alleged to have been wrongfully assessed or collected under the internal revenue laws, *Clintwood Elkhorn* confirms that they are subject to

the refund claim requirements of § 7422(a).

**B. Plaintiff did not file a claim for refund prior to bringing suit**

It is axiomatic that the United States may be sued only to the extent that it consents to being sued, and that the terms of that consent define the scope of the court's jurisdiction over a suit against the United States. *United States v. Dalm*, 494 U.S. 596, 608-10 (1990). As the Supreme Court reaffirmed in *Clintwood Elkhorn*, the United States' consent to be sued for refund of amounts collected under the Internal Revenue Code is conditioned upon satisfaction of the requirement to file an administrative refund claim prior to filing suit imposed by § 7422(a). This section plainly requires that such a claim be "duly filed with the Secretary, according to the provisions of law in that regard, *and the regulations of the Secretary established in pursuance thereof*." *Ibid.* (emphasis added.) Plaintiff has failed to file a claim for refund in accordance with applicable law and regulation, and for that reason alone has not filed a valid claim for refund. In addition, plaintiff's purported *informal* claim for refund fails to satisfy the requirements for informal claims under Federal Circuit caselaw, and, in any event, plaintiffs' purported informal claim for refund is inadequate under the doctrine of substantial variance.

**1. Plaintiff's claim for refund was inadequate because it failed to meet the requirements imposed by the regulations, which the IRS did not waive**

Section 6402 authorizes the Secretary to make credits and refunds. The regulations promulgated under this section set out requirements for a claim for refund or credit. Binding Supreme Court precedent establishes that these requirements impose conditions on the waiver of sovereign immunity, unless the IRS chooses to waive them.

In *Angelus Milling Co. v. Commissioner*, 325 U.S. 293 (1945), the Supreme Court, in unequivocal language, explained that compliance with the regulations applicable to refund claims

is a prerequisite to a suit for tax refund:

> Petitioner's claim for recovering processing taxes paid by it was properly rejected by the Commissioner if it did not satisfy the conditions which Congress directly *and through the rule-making power given to the Treasury* laid down as a prerequisite for such refund.

*Id.* at 295-96 (emphasis added).

*Angelus Milling* went on to explain that there is a difference between the requirements on claims for refund imposed by statute, and those imposed by regulation. Requirements imposed by statute cannot be waived by the IRS: "Insofar as Congress has made explicit statutory requirements, they must be observed and are beyond the dispensing power of Treasury officials." *Id.* at 296 (citations omitted). By contrast, the IRS may, if it chooses, waive the requirements on claims for refund imposed by regulation. *Ibid.* However, as *Angelus Milling* makes clear, the Commissioner "may insist upon full compliance with his regulations." *Ibid.*; *see also United States v. Memphis Cotton Oil Co.*, 288 U.S. 62, 71-72 (1933)*; Tucker v. Alexander*, 275 U.S. 228, 231 (1927) (the Treasury, through its delegate, the IRS, can waive the formalities of the regulation).

**a. As plaintiff implicitly concedes, he did not file a formal administrative claim**

The Treasury regulations applicable to claims for refund impose several necessary conditions that must be satisfied in order for a claim to be valid for purposes of § 7422(a). First, Treas. Reg. § 301.6402-2(b)(1) provides:

> The claim must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof. The statement of the grounds and facts must be verified by a written declaration that it is made under the penalties of perjury. A claim which does not comply with this paragraph will not be considered for any purpose as a claim for refund or credit.

Second, the treasury regulations also specify the forms upon which claims for refund of income taxes must be made, providing that "[i]n general, in the case of an overpayment of income taxes, a claim for credit or refund of such overpayment shall be made on the appropriate income tax return," Treas. Reg. § 301.6402-3(a)(1), and, with respect to claims for refund of individual income taxes, providing that:

> In the case of an overpayment of income taxes for a taxable year of an individual for which a Form 1040 or 1040A has been filed, a claim for refund shall be made on Form 1040X ("Amended U.S. Individual Income Tax Return").

Treas. Reg. § 301.6402-3(a)(2).

Plaintiff's purported claim for refund plainly does not satisfy either of these regulatory requirements. Leaving aside for now the question of whether plaintiff's purported claim for refund satisfies the requirement in Treas. Reg. § 301.6402-2(b)(1) to "set forth in detail each ground upon which a . . . refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof," it is beyond dispute that, to the extent that plaintiff's handwritten note contains any such statement at all, that statement is not "verified by a written declaration that it is made under the penalties of perjury," as the regulation plainly requires.

Likewise, it is plain that plaintiff's purported claim for refund does not satisfy Treas. Reg. § 301.6402-3(a). Plaintiff is seeking a refund of individual income tax for the 1998 tax year. Consequently, under Treas. Reg. § 301.6402-3(a)(2), his claim for refund must be submitted on Form 1040X. Plaintiff's purported claim for refund, however, is nothing more than a facsimile cover sheet containing two handwritten sentences, and several attachments, none of which is a Form 1040X.

Thus, in his amended complaint, plaintiff rightly does not allege that he filed a refund

claim that meets the requirements of the regulations, but instead alleges that the facsimile he sent to the IRS in Memphis constitutes an *informal* claim. As will be explained *infra*, that allegation does not withstand scrutiny.

**b. The IRS did not waive the requirements imposed by the applicable Treasury regulations with respect to plaintiff's purported claim for refund**

Examination of the Service's response to plaintiff's purported claim for refund makes it apparent that the IRS did not waive the regulations' requirements. Plaintiff's purported claim for refund was directed by plaintiff to "IRS Memphis," and stated "Attn: reconsideration." After Appeals Officer Quinn received plaintiff's handwritten facsimile cover sheet and attachments, he explained in a letter to plaintiff that Appeals and District Counsel no longer had jurisdiction to reconsider his 1998 tax year because the Tax Court had already entered a decision with respect to that year, determining plaintiff's tax liability for 1998. Accordingly, instead of making any determination with respect to plaintiff's facsimile as though it were a claim for refund, the letter directed plaintiff to the Memphis Service Center, which (as plaintiff apparently also believed) had jurisdiction over *collection* of plaintiff's outstanding liability for 1998.[13] Consequently, under *Angelus Milling*, plaintiff has failed to file a claim for refund in accordance with § 7422(a).

**2. Plaintiff's purported informal claim for refund fails to satisfy the requirements of the informal claim doctrine as developed in the case law of this Circuit**

Notwithstanding the import of *Angelus Milling* (and other cases cited above) that the requirements imposed by the applicable Treasury Regulations are conditions of the waiver of

[13]If anything, plaintiff's facsimile could be interpreted as a belated attempt to assert his collection due process rights under § 6330. This interpretation is likely, in view of the statement therein that the "levy" was "wrongful."

sovereign immunity for a refund suit, cases in this Circuit have held that a claim for refund can be valid for purposes of § 7422(a) even if it fails to meet all of the requirements imposed by regulation. *See, e.g., Computervision*, 445 F.3d at 1363-65; *Furst v. United States*, 678 F.2d 147, 152 (Ct. Cl. 1982); *Kuehn v. United States*, 480 F.2d 1319, 1320-22 (Ct. Cl. 1973). As developed in this Circuit's caselaw, the doctrine has three requirements. First, "an informal claim must have a written component . . . ." *Arch Eng'g Co. v. United States*, 783 F.2d 190, 192 (Fed. Cir. 1986). Second, a valid informal claim must "adequately apprise the Internal Revenue Service that a refund is sought and for certain years." *American Radiator & Standard Sanitary Corp. v. United States*, 318 F.2d 915, 920 (Ct. Cl. 1963), *quoted in Computervision*, 445 F.3d at 1365. Third, a valid informal claim must "describe the legal and factual basis for the refund." *New England Elec. Sys. v. United States*, 32 Fed. Cl. 636, 641 (1995), *appeal dismissed* 156 F.3d 83 (Fed. Cir. May 17, 1995) (Table); *see also Ottawa Silica Co. v. United States*, 699 F.2d 1124, 1138 (Fed. Cir. 1983); *Mobil Corp. v. United States*, 67 Fed. Cl. 708, 716 (2005). These requirements are "designed both to prevent surprise and to give adequate notice to the Service of the nature of the claim and the specific facts upon which it is predicated, thereby permitting an administrative investigation and determination." *Alexander Proudfoot Co. v. United States*, 454 F.2d 1379, 1383 (Ct. Cl. 1972).[14]

Assuming *arguendo* that the facsimile satisfies the "writing" requirement, plaintiff's

---

[14] As discussed above, the original complaint filed in this case did not allege (as required by RCFC 9(h)(6)) that plaintiff had filed a timely refund claim prior to bringing his suit. It was not until after defendant filed a motion to dismiss on jurisdictional grounds, because no such claim had been filed, that plaintiff sought to amend the complaint adding an allegation that the facsimile message he sent to the IRS Appeals Office was a refund claim.

purported claim for refund fails to meet the other two requirements. Plaintiff's purported refund claim did not "adequately apprise the I.R.S. that a refund was sought" of the amounts collected from him by levy, for the simple reason that his purported claim did not, in fact, request a refund at all, but rather simply objected to the IRS's collection activities. Further, no legal or factual grounds for any refund were described in the purported claim.

**a. Plaintiff's purported claim is not a valid informal claim for refund because it does not claim a refund, but rather merely demands that the IRS cease collection of his unpaid liability**

Plaintiff's purported claim for refund does not satisfy the requirements of the informal claim doctrine, because it did not put the IRS on notice that plaintiff was claiming a right to a refund with respect to his 1998 individual income tax. This is so because plaintiff's purported claim for refund actually demands a different form of relief. In the handwritten note on the facsimile cover sheet that plaintiff now maintains constitutes an informal refund claim, plaintiff merely told the IRS that the "levy on bank and garnishment of wages is wrongful and should be withdrawn ASAP!!" Far from being a demand for a refund of tax paid, this is nothing more than a request that the IRS cease collecting on plaintiff's outstanding liability by means of levy.

Indeed, the facsimile that plaintiff now alleges was a claim for refund of the total amount collected from him that is the subject of this suit–*i.e.*, $104,461.04–was sent on September 9, 2003, a date by which the Service had made only four levies, totaling less than $16,000.

Consideration of the response that IRS Appeals Officer Quinn sent to plaintiff confirms that he did not regard plaintiff's facsimile as constituting a claim for refund. First, nowhere in Mr. Quinn's letter is there any indication that he regarded plaintiff's facsimile as requesting a refund with respect to the 1998 tax year. Second, the letter affirmatively indicates that Mr.

Quinn regarded plaintiff's facsimile as requesting relief from collection activity, not as requesting a refund. The letter states that Mr. Quinn reviewed plaintiff's file and his transcript of account for his 1998 individual income tax, and found that plaintiff "clearly [had] an amount owing," and that, as a consequence, "the levy action would not seem to be wrong." Accordingly, the letter from Appeals Officer Quinn, having concluded that Appeals and District Counsel lacked jurisdiction over the case, directed plaintiff to take up "the matter of collection" with the "Memphis Service Center," which was responsible for collection of plaintiffs' outstanding liability with respect to his 1998 individual income tax.

**b. Plaintiff's purported refund claim is not a valid informal claim for refund because it fails to specify factual and legal grounds for a claim to entitlement to a refund**

Even if, somehow, plaintiff's purported claim for refund, did, in fact, satisfy the requirement that it notify the IRS that plaintiff was requesting a refund with respect to the 1998 tax year (it does not), it fails the third prong of the informal claim doctrine, because it did not apprise the IRS of factual and legal grounds for a claim for entitlement to a refund.

The only arguable ground stated in plaintiff's purported claim was plaintiff's allegation that the attached documents "establish[ed] that there was no deficiency for 1998." This allegation is inadequate for two reasons. First, it offers no legal ground whatsoever, however liberally construed. For this reason alone, it is inadequate. *See, e.g., New England Elec. Sys*, 32 Fed. Cl. at 641 (valid informal claim must "describe the legal . . . basis for the refund"). Second, it does not provide an adequate factual ground, because, as Appeals Officer Quinn pointed out in his letter of October 14, 2003, the documents attached to the facsimile cover sheet established that plaintiff did in fact have a deficiency for the 1998 tax year, which was decided by the Tax

Court to be in the amount of $72,199.00.

**c. Alternatively, assuming *arguendo* that the facsimile in question constituted a valid informal refund claim, plaintiff is barred from prosecuting this suit on the grounds stated in the complaint, under the doctrine of substantial variance**

In the complaint filed in this Court, plaintiff alleges that "The amounts levied from Plaintiff's bank account and his wages were wrongfully collected by the Internal Revenue Service under the internal revenue laws of Title 26 of the United States Code and contrary to the provisions of Section 7405 of Title 26 of the United States Code and the deficiency and assessment procedures under Title 26 of the United States Code." Am. Compl. ¶ 12. Under the doctrine of substantial variance, plaintiff is barred from prosecuting this suit on those grounds, because those grounds were not raised in any prior refund claim filed with the IRS. Thus, even assuming for the sake of argument that the facsimile in question did constitute a valid informal claim for refund, it is not a sufficient basis for this suit for refund.

Under the substantial variance doctrine, a plaintiff is barred from "from presenting claims in a tax refund suit that 'substantially vary' the legal theories and factual bases set forth in the tax refund claim presented to the IRS." *Lockheed Martin Corp. v. United States*, 210 F.3d 1366, 1371 (Fed. Cir. 2000). The doctrine is grounded in § 7422(a) and Treas. Reg. § 301.6402-2(b). *Ibid.* A substantial variance arises in the event that either the legal theories or the factual grounds specified in the taxpayer's claim for refund are varied. *See ibid.* The doctrine bars consideration of any legal theory not "either expressly or impliedly contained in the application for refund" by the taxpayer in a subsequent suit for refund. *Burlington N. Inc. v. United States*, 684 F.2d 866, 868 (Ct. Cl. 1982). Similarly, the doctrine prevents a taxpayer from relying upon factual bases at trial that are not presented in the claim for refund. *Ottawa Silica Co.*, 699 F.2d at 1138.

Presumably, plaintiff's contention is that he is entitled to a refund of the amounts collected from him with respect to his 1998 income tax liability after the October 14, 2002, erroneous refund because the United States did not initiate a suit in District Court to recover an erroneous refund pursuant to § 7405, and collected the erroneously refunded amount by levy, even though the date of the refund was after the date of the original assessment for 1998, and the Service did not reassess his 1998 liability after the date of the erroneous refund. *See Stanley v. United States*, 35 Fed. Cl. 493, 495 (1996) (holding that, when Service issues post-assessment erroneous refund after assessed amount has been fully paid, Service must either make new assessment or refer case for suit under § 7405 in order to collect amount of erroneous refund), *aff'd*, 140 F.3d 1023 (Fed. Cir. 1998). Whatever the underlying merits of such a contention, plaintiff is barred from asserting it here, because he never asserted it in a valid refund claim filed with the IRS.

## II.

## ALTERNATIVELY, EVEN IF THE COURT DETERMINES THAT IT HAS JURISDICTION OVER THE COMPLAINT, PLAINTIFF STILL IS NOT ENTITLED TO RECOVER ANY OF THE AMOUNTS HE SEEKS

### A. Defendant is entitled to retain the funds collected by levy with respect to the erroneous refund, and, in any event, plaintiff is not entitled to interest on his claim

The IRS is entitled to retain the amounts it collected from plaintiff after it issued him an erroneous refund because plaintiff effectively acknowledged that he was not entitled to this refund by entering into a stipulation in the Tax Court that he was entitled only to a much smaller refund with respect to his 1998 individual income tax. Furthermore, in any event, plaintiff is not entitled to interest on any amount he might recover on his claim, as no statute waives the United States's sovereign immunity with respect to such interest.

#### 1. Because plaintiff acknowledged in writing that he was not entitled to the amount he was eventually refunded by stipulating in Tax Court to the amount of refund he was owed, the United States is entitled to retain the amounts collected from him

It is beyond dispute that, in proceedings in the Tax Court, plaintiff stipulated that he was owed a refund of exactly $2,801.00, and that the Tax Court entered a decision to this effect. In light of these undisputed facts, plaintiff is not entitled to recover in this case, under the rationale of *Goldstein, Baron & Lewis, Chartered v. United States*, 995 F.2d 35 (4th Cir. 1993), *cert. denied*, 510 U.S. 1041 (1994).

In *Goldstein*, as in this case, the taxpayer received a non-rebate erroneous refund (*i.e.*, a refund made from inadvertence, not from a redetermination of tax liability). *Goldstein*, 995 F.2d at 36. After receiving a demand for return of the refund, the taxpayer paid the IRS under protest.

*Ibid.* The taxpayer, like plaintiff in this case, then filed suit, arguing that he was entitled to the return of his payment, because the IRS had failed to reassess the liability, and had not brought suit under § 7405, within the applicable statutes of limitations. *Ibid.* The district court agreed, and granted summary judgment in the taxpayer's favor. *Id.* at 36-37.

The Fourth Circuit, however, disagreed, and reversed the district court. In so doing, the *Goldstein* court relied on the fact that the taxpayer had acknowledged that he was not entitled to the refund he received:

> The critical fact that leads us to reverse the district court in this case, however, is the fact that *the taxpayer acknowledged in writing that it was not entitled to the refund*. Indeed, no one contests the fact that the taxpayer owed the money; the taxpayer's sole contention is that the IRS should be required to follow its established procedures for collecting erroneous refunds.

*Goldstein*, 995 F.2d at 37 (emphasis added.) Consequently, *Goldstein* concluded that "the taxpayer's acknowledgement" of the legitimacy of the debt owed to the IRS "waived any objection it may have had to collection of the erroneous refund." *Ibid.*

The reasoning of *Goldstein* is equally applicable to this case. By stipulating to the amount of the refund he was due in the Tax Court, plaintiff unquestionably "acknowledged in writing" that he was *not* entitled to a refund in excess of the amount to which he stipulated. *Goldstein*, 995 F.2d at 37. Consequently, following *Goldstein*, he has waived whatever objection he might have had to the IRS's collection of the erroneous refund.

The reasoning of *Goldstein*, furthermore, has been endorsed by the Federal Circuit in *Stanley*. There, the United States, relying in part on *Goldstein*, argued that it was entitled to keep a deposit that a taxpayer had made with the IRS after it issued the taxpayer a non-rebate erroneous refund. *Stanley*, 140 F.3d at 1028-30. *Stanley* rejected this argument because it found

that the taxpayer there had *not* acknowledged the erroneous nature of the refund. In so doing, the Federal Circuit expressly recognized that *Goldstein* was correctly decided, stating that "under [the] circumstances [of *Goldstein*], the IRS need not resort to an erroneous refund suit, as so held in *Goldstein*." *Id.* at 1029.

**2. In any event, plaintiff is not entitled to interest on his claim**

In the event that the Court should conclude that plaintiff is entitled to recover on part or all of his claim, plaintiff is not entitled to interest on the amount recovered, because no statute provides for such interest. In plaintiff's amended complaint, he asks for "interest" on the amount of the judgment to which he is entitled, "to the extent that interest is allowed on such amount." Am. Compl. ¶ 2. For a claim in this Court, "[i]nterest on a claim against the United States is allowed . . . only under a contract or Act of Congress expressly providing for payment thereof." 28 U.S.C. § 2516(a); *see also Library of Congress v. Shaw*, 478 U.S. 310, 317 (1986) ("In creating the Court of Claims, Congress retained the Government's immunity from awards of interest, permitting it only where expressly agreed to under contract or statute"); *United States v. N.Y. Rayon Importing Co.*, 329 U.S. 654, 659 (1947) (waiver of sovereign immunity by United States permitting recovery of interest must be express). Plaintiff's claim is not based on an alleged contract between him and the United States, and plaintiff has yet to point to any "Act of Congress" that entitles him to interest in this case.

As plaintiff's claim is premised on the assumption that his suit is not a tax refund suit, to the extent that the Court agrees with that assumption, 28 U.S.C. § 1961 does not entitle plaintiff to interest. This section provides for interest in *internal revenue tax* cases, not "illegal exaction" cases:

> This section shall not apply in any judgment of any court with respect to *any internal revenue tax case*. Interest shall be allowed in such cases at the underpayment rate or overpayment rate (whichever is appropriate) established under section 6621 of the Internal Revenue Code of 1986.

28 U.S.C. § 1961(c)(1) (emphasis added).[15] Consequently, plaintiff cannot rely on this section to provide an "Act of Congress" entitling him to interest.

Furthermore, in *Stanley*, the Federal Circuit rejected the interest claim of a plaintiff who had recovered on his claim for refund of funds he had remitted to the IRS that were applied by the IRS to satisfy an amount he was erroneously refunded. *Stanley*, 140 F.3d at 1030. The court reached this conclusion by first pointing out that the taxpayer's argument was, in essence, "that he overpaid his taxes and is therefore entitled to interest at the 'overpayment rate,'" as provided for in 28 U.S.C. § 1961(c)(1) (by reference to § 6621). *Ibid.* On this basis, the *Stanley* court rejected the taxpayer's argument, because the taxpayer's recovery on his claim was premised on a conclusion that his remittance was not an overpayment of tax. *Ibid.* (observing that the Court "would necessarily have to conclude that [the taxpayer's] remittance was a payment"). Consequently, plaintiff's claim for interest is foreclosed by the Federal Circuit's opinion in *Stanley*, because it is likewise premised on the assumption that plaintiff's suit is not one for recovery of an overpayment of tax.

**B. If, as this Court previously held, plaintiff's liability to the United States created by the erroneous refund was not a tax liability, then the United States is entitled to recoup that refund by counterclaim in this suit**

If, as this Court previously held, the liability of plaintiff to the United States created by

[15] In addition, 28 U.S.C. § 1961(c)(3) provides that "[i]nterest shall be allowed, computed, and paid on judgments of the United States Court of Federal Claims only as provided in paragraph (1) of this subsection or in any other provision of law."

the erroneous refund was not a tax liability, then, under controlling Supreme Court precedent, the United States has a cause of action to recoup this liability. This cause of action, furthermore, exists independent of statute, and can be asserted as a counterclaim in this suit regardless of whether the United States would be time-barred from initiating an affirmative action in district court to recover the erroneous refund.

**1. The United States has a cause of action to recover a debt created by issuance of an erroneous refund that exists independent of statute**

The Supreme Court has long held that the United States has a right to "recover funds which its agents have wrongfully, erroneously, or illegally paid." *United States v. Wurts*, 303 U.S. 414, 415 (1938) (citing *Wis. Cent. R.R. v. United States*, 164 U.S. 190, 212 (1896)); *see also Barrett Refining Corp. v. United States*, 242 F.3d 1055, 1064 (Fed. Cir. 2001) (citing *Wurts*, 303 U.S. at 415). The United States, furthermore, can exercise this right by suit, regardless of whether there is a statute authorizing such a suit:

> "No statute is necessary to authorize the United States to sue in such a case. The right to sue is independent of statute."

*Wurts*, 303 U.S. at 415 (quoting *United States v. Bank of the Metropolis*, 40 U.S. (15 Pet.) 377, 401 (1841)).

In *Wurts*, the Supreme Court made abundantly clear that the enactment of the provisions in the Internal Revenue Code governing suits to recover erroneous refunds of tax did not create a new right to sue, but merely placed restrictions on the preexisting right held by the United States to bring suit to recover erroneous payments. There, the Court had occasion to consider whether the predecessor of § 6532(b), first enacted in the Revenue Act of 1928, 45 Stat. 791, 875, § 610 (1928), began to run on the date an erroneous refund was approved, or on the date the refund

check was actually issued to the taxpayer. *Wurts*, 303 U.S. at 415. In the course of addressing this question, the Court explained the effect of the enactment of the erroneous refund suit provisions in the Internal Revenue Code:

> Section 610 of the 1928 Act, relied upon [by respondent] as barring recovery of this erroneous and unwarranted tax refund, does not grant the Government a new right, but is a limitation of the Government's long-established right to sue for money wrongfully or erroneously paid from the public treasury.

*Id.* at 416.

The *Wurts* court went on to explain that the existence of a statutory limitation on the nonstatutory right of the United States to recover funds erroneously paid is not to be lightly inferred:

> Ordinarily, recovery of Government funds, paid by mistake to one having no just right to keep the funds, is not barred by the passage of time. . . . The Government's right to recover funds, from a person who received them by mistake and without right, is not barred unless Congress has "clearly manifested its intention" to raise a statutory barrier.

*Wurts*, 303 U.S. at 416 (quoting *United States v. Nashville, C. & St. L. Ry. Co.*, 118 U.S. 120, 125 (1886)).

**2. The right of the United States to assert a cause of action to recover an erroneous refund by way of recoupment is not limited by the statute of limitations applicable to affirmative suits to collect erroneous refunds**

As recently as 1993, the Supreme Court has reaffirmed the principle that a cause of action for "recoupment" is not barred by a statute of limitations. As defined by the Supreme Court, "recoupment" is the "setting off against asserted liability of a counterclaim arising out of the same transaction." *Reiter v. Cooper*, 507 U.S. 258, 264 (1993). When a counterclaim seeks recoupment, it is "generally not barred by a statute of limitations so long as the main action is timely." *Ibid.* (citing *Bull v. United States*, 295 U.S. 247, 262 (1935)).

This principle concerning the applicability of statutes of limitation in counterclaims seeking recoupment applies with at least equal force to counterclaims by the United States as it does to counterclaims by private parties. In fact, in *United States v. Western Pacific Railroad Co.*, 352 U.S. 59 (1956), the Supreme Court applied this principle to permit the United States to bring a counterclaim that would have been barred by the applicable statute of limitations if it had been brought in an affirmative suit. *See Reiter*, 507 U.S. at 264 (discussing *Western Pacific*, and rejecting attempt to distinguish it). In *Western Pacific*, the United States was sued under the Tucker Act, 28 U.S.C. § 1491, by a number of railroads that had shipped goods for the United States Army for the difference between the amount of the tariffs actually charged on the goods and the amounts the railroads charged the United States for tariffs. *Western Pacific*, 352 U.S. at 60. The United States responded by, *inter alia*, contending that, if the railroads were correct, the tariff charged was unreasonable, and thus the case should be suspended and the matter of the tariff rate referred to the Interstate Commerce Commission. *Id.* at 61-62. The Court of Claims held that such a referral was time-barred by § 16(3) of the Interstate Commerce Act (then codified at 49 U.S.C. § 16(3)).[16] *Id.* at 62. The Supreme Court disagreed, explaining that this result unfairly prohibited the United States from raising a defense merely because of the time at which the railroads chose to bring suit:

> We may assume, without deciding, that the Government would have been barred by § 16(3) from filing an affirmative suit before the Commission to recover overcharges from a carrier. Nevertheless we do not think that the statute operates to bar reference to the Commission of questions raised by way of defense in suits

[16]This section provided that "all actions at law by carriers subject to this chapter for recovery of their charges . . . shall be begun within two years from the time the cause of action accrues, and not after." *Western Pacific*, 352 U.S. at 70 (quoting § 16(3)(a) of the Interstate Commerce Act)).

> which are themselves timely brought. Respondents in effect ask us to hold that a suit may be brought for six years but that certain defenses thereto may be raised only for two years. *Only the clearest congressional language could force us to a result which would allow a carrier to recover unreasonable charges with impunity merely by waiting two years before filing suit*.

*Id.* at 71 (emphasis added).

**3. The United States is entitled to recoupment of the erroneous refund made to plaintiff to the extent that plaintiff recovers on his claim in this suit for recovery of amounts previously collected from him with respect to the erroneous refund**

Applying the principles enunciated in *Wurts*, *Reiter*, and *Western Pacific*, it follows straightforwardly that the United States is entitled to recoup whatever amounts plaintiff recovers on his claim, up to the amount of the deficit created in his account for his 1998 individual income tax year by the erroneous refund. Plaintiff's receipt of an erroneous refund gave rise to a liability on his part to the United States, and a liability on which the United States could bring suit independent of statute. *Wurts*, 303 U.S. at 415. Defendant's counterclaim in this case for recovery of this liability, furthermore, arises out of the same transaction as does plaintiff's claim, *i.e.*, the erroneous refund of plaintiff's 1998 individual income tax and the subsequent collection of the resulting liability by tax levy. Consequently, defendant's *counterclaim* is timely, notwithstanding that a suit by defendant to recover the erroneous refund under § 7405 would be untimely under § 6532(b). *Reiter*, 507 U.S. at 264; *Western Pacific*, 352 U.S. at 71.

This result, furthermore, is consistent with the Federal Circuit's opinion in *Stanley*. There, as discussed *infra*, the court held that the IRS could not keep a deposit that a taxpayer had made with the IRS after it issued the taxpayer a nonrebate erroneous refund, because the deposit did not constitute a voluntary repayment of the erroneous refund. *Stanley*, 140 F.3d at 1029-30. In so holding, the Court held that the voluntariness of the payment was necessary under the facts

of *Stanley* because the United States had failed to either reassess the liability or to "sue . . . for recovery of an erroneously made refund." *Id.* at 1030. Here, by contrast to *Stanley*, the United States *has* brought suit, by filing a counterclaim in this case.[17]

**C. Because plaintiff did not file a claim for refund of the amounts collected to satisfy assessments of penalties and interest made after the erroneous refund was issued, the Court lacks subject-matter jurisdiction over the suit to the extent it seeks refund of such payments**

Even under the Court's opinion in *Pennoni*, this Court lacks subject-matter jurisdiction over the complaint to the extent it seeks refund of amounts collected to satisfy deficiency interest[18] and penalties that were assessed *after* the erroneous refund was made to plaintiff. Plaintiff was assessed a total of $5,678.05 of deficiency interest, and a total of $9,093.36 in penalties for failure to pay tax.[19] Further, there is no dispute that the deficiency interest and penalties collected from plaintiff with respect to his 1998 tax year were *assessed after* the date the erroneous refund check was issued–*i.e.*, the interest and penalty amounts were all assessed during 2004, on August 2, August 9, August 23, September 6, and September 27, well after the date of the erroneous refund (October 14, 2002). Thus, the Court's prior holding that the September 11, 2002, assessment of *tax* was extinguished by the payment made before the

[17]The *Stanley* court found that the payment was voluntary because it did not find support in the record for the conclusion that the taxpayer "knew that he was not entitled to the refund." *Id.* at 1028. As explained *supra*, whether plaintiff had knowledge of the erroneous nature of the refund at the time of receipt is immaterial to whether the United States can recover this debt by counterclaim. Further, in any event, plaintiff was unquestionably aware of the erroneous nature of the refund at the time of receipt. *See supra*, § II.A.

[18]"Deficiency interest" refers to interest on an underpayment of tax provided for in § 6601(a). The Internal Revenue Code expressly provides that such interest "shall be assessed, collected, and paid in the same manner as taxes." § 6601(e)(1).

[19]The failure to pay tax penalties that plaintiff was assessed are provided for in § 6651.

erroneous refund (*Pennoni*, 79 Fed. Cl. at 558) has no application to the later assessments of deficiency interest and penalties.

It is beyond dispute that a suit to recover assessed deficiency interest and assessed penalties is subject to the refund claim requirement of § 7422. Section § 7422(a) expressly provides that "[n]o suit shall be maintained . . . for the recovery . . . of any *penalty* claimed to have been collected without authority . . . until a claim for refund or credit has been duly filed with the Secretary." (Emphasis added.) *See also W. Co. of N. Am. v. United States*, 323 F.3d 1024, 1033-35 (Fed. Cir. 2003) (recognizing requirement pursuant to § 7422(a) of filing administrative claim for refund of a penalty prior to bringing suit to recover payment of such penalty); *Poretto v. Usry*, 295 F.2d 499, 500-01 (5th Cir. 1961) (upholding lower court's dismissal of suit against IRS District Director to compel abatement of assessed penalty, on grounds that court lacked jurisdiction because plaintiffs failed to file claim for refund of the penalty, and observing that "[s]ection 7422 specifically includes within its coverage suits for recovery of 'any penalty claimed to have been collected without authority'").

Similarly, it is well-established that a suit for refund of assessed deficiency interest cannot be maintained in the absence of the filing of a prior administrative claim for refund of the assessed deficiency interest. *See, e.g., Computervision Corp. v. United States*, 445 F.3d 1355, 1359-60 (Fed. Cir. 2006) (upholding trial court's dismissal of suit for refund of assessed deficiency interest on grounds that taxpayer had failed to file a timely claim for refund with respect to such interest).

Plaintiff, furthermore, has not filed a claim for refund of any of the payments he seeks to recover in this case, let alone the payments of the assessed deficiency interest and penalties.

Indeed, plaintiff's contention that his purported informal claim for refund constitutes an adequate informal claim for the amounts collected to satisfy the assessed interest and penalties is even less plausible than his contention that it constitutes an adequate informal claim with respect to the amounts collected with respect to the amount he was erroneously refunded. Plaintiff's purported informal claim for refund makes no reference whatsoever to the amounts collected from him to satisfy the assessed deficiency interest and penalties. In fact, this purported claim for refund was faxed to the IRS well before *any* of the penalties or interest at issue had been assessed.

Thus, the undisputed facts establish that plaintiff has failed to file a claim for refund with respect to the amounts collected to satisfy the assessed deficiency interest and penalties. Since plaintiff did not file a claim for refund of these amounts, as he was required to by § 7422(a), the Court lacks jurisdiction over his suit to the extent that it seeks refund of the amounts collected to satisfy these assessments.

## CONCLUSION

For the reasons stated herein, defendant respectfully requests that the Court enter judgment in its favor, dismissing the complaint with prejudice, with costs assessed against the plaintiff.

Respectfully submitted,

May 2, 2008

s/ Joseph B. Syverson
JOSEPH B. SYVERSON
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
TELEPHONE (202) 307-6508
FACSIMILE (202) 514-9440
Joseph.B.Syverson@usdoj.gov

NATHAN J. HOCHMAN
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
MARY M. ABATE
Assistant Chief, Court of Federal Claims Section

s/ Mary M. Abate
Of Counsel

May 2, 2008