IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 06-861 T
(Judge Firestone)

LAWRENCE D. PENNONI,

Plaintiff,

v.

THE UNITED STATES,

Defendant

**DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT**

1. Plaintiff is an attorney, who has practiced in the areas of tax, international tax, and corporate mergers and acquisitions. (Syverson Decl. Ex. 3 at 3; *Melnik v. Comm'r*, T.C. Memo 2006-25, 2006 WL 345846, at *3 (U.S. Tax. Ct. Feb. 15, 2006).)[1]

2. During 1998, plaintiff was employed by the law firm of Chamberlain, Hrdlicka, White, Williams and Martin ("Chamberlain Hrdlicka"), located in Houston, Texas. (Syverson Decl. Ex. 9 at 2.)

3. During 1998, plaintiff received wage income of $247,072.02 from Chamberlain Hrdlicka. (*Ibid.*)

4. Plaintiff's wages from Chamberlain Hrdlicka in 1998 were withheld in the

[1]The Syverson Declaration was attached to Defendant's Motion to Dismiss with Prejudice Plaintiff's First Amended Complaint, filed with this Court on July 2, 2007.

amount of $75,000.00 to satisfy his federal income tax liabilities. (*Ibid.*)

5. Plaintiff requested and received an extension of time to August 15, 1999, to file his federal individual income tax return for 1998. (Syverson Decl. Ex. 1 at 3.)

6. Plaintiff did not file a federal income tax return for 1998 on or before August 15, 1999. (*Ibid.*)

7. On February 16, 2001, the Internal Revenue Service ("IRS") mailed plaintiff a letter titled "Proposed Individual Income Tax Assessment." (Syverson Decl. Ex. 2 at 2.)

8. In its February 16, 2001, letter to plaintiff, the IRS stated that it had no record of plaintiff having filed an individual income tax return for 1998. (*Ibid.*)

9. In its February 16, 2001, letter to plaintiff, the IRS stated that it had computed plaintiff's individual income tax liability for the 1998 tax year "based upon income reported to us by your employer(s), bank(s), etc. . . ." (*Ibid.*)

10. In an attachment to its February 16, 2001, letter to plaintiff, the IRS computed plaintiff's individual income tax liability for 1998, before credits, as $86,316.00; his liability after allowable credits totaling $75,000.00 as $11,316.00; his total interest owed as of March 18, 2001, as $2,465.74; his total penalties owed as of March 18, 2001, as $3,982.79. (*Id.* at 4.)

11. The IRS's February 16, 2001, letter to plaintiff advised him that he would be assessed in accordance with the attached computations if the IRS did not hear from him within 30 days of the date of the letter, and advised plaintiff that one way he could respond was by submitting a completed Form 1040 (Individual Federal Income Tax Return) for the 1998 tax year. (*Id.* at 2.)

12. Plaintiff filed a Federal Individual Income Tax Return (Form 1040) for the 1998

tax year that was received by the IRS on April 18, 2001. (Syverson Decl. Ex. 3 at 2.)

13. Plaintiff's 1998 Federal Individual Income Return reported plaintiff's income tax liability for 1998 as $71,964.70, and claimed a refund of $3,035.33 after a withholding credit of $75,000.00 was applied. (*Id.* at 3.)

14. On June 1, 2001, the IRS issued plaintiff a notice of deficiency for his 1998 federal individual income tax year. (Syverson Decl. Ex. 4 at 2.)

15. In the notice of deficiency issued to plaintiff for his 1998 federal individual income tax year, the IRS determined a deficiency in tax of $86,316.00, and also determined that plaintiff owed penalties totaling $3,982.79. (*Ibid.*)

16. Plaintiff, representing himself, filed a petition with the United States Tax Court on July 19, 2001 ("plaintiff's petition"). (Syverson Decl. Ex. 5 at 2, Ex. 6 at 2.)

17. In plaintiff's petition, plaintiff challenged the IRS's determination of his 1998 income tax liability in the notice of deficiency issued to plaintiff for his 1998 federal individual income tax year. (Syverson Decl. Ex. 6 at 2.)

18. In plaintiff's petition, plaintiff alleged that he was entitled to a refund of $3,035.33 for the 1998 tax year after application of his withholding credit, and that the IRS had erred in determining that he was liable for any penalties for the 1998 tax year. (*Id.* at 2-3.)

19. The Commissioner of Internal Revenue ("Commissioner") filed an answer to plaintiff's petition to the United States Tax Court on August 23, 2001 ("Commissioner's answer"). (Syverson Decl. Ex. 5 at 2, Ex. 7 at 1.)

20. The Commissioner's answer denied plaintiff's allegations that plaintiff was entitled to a refund of $3,035.33 for the 1998 tax year after application of his withholding credit,

and that the IRS had erred in determining that plaintiff was liable for any penalties for the 1998 tax year. (Syverson Decl. Ex. 7 at 2-3.)

21. After plaintiff's petition was filed, plaintiff worked with IRS Appeals in an effort to negotiate a settlement. (Syverson Decl. Ex. 10 at 1; Am. Compl. Ex. A at 7.)

22. On or about February 14, 2002, plaintiff and the Commissioner entered into a settlement stipulation concerning plaintiff's petition ("settlement stipulation"). (Syverson Decl. Ex. 5 at 2, Ex. 8 at 2-3.)

23. The settlement stipulation was docketed with the United States Tax Court on February 15, 2002. (*Ibid.*)

24. The settlement stipulation contained a draft decision ("draft decision"), and stated that the parties consented to the Court's entering this decision. (Syverson Decl. Ex. 8 at 4-5.)

25. The terms of the draft decision provided that there was a statutory deficiency in plaintiff's federal income tax for the 1998 tax year of $72,199.00. (*Id.* at 4.)

26. The terms of the draft decision provided that, after application of a $75,000.00 withholding credit, plaintiff had made an overpayment of his federal income tax liability for 1998 of $2,801.00. (*Ibid.*)

27. The terms of the draft decision provided that plaintiff had filed a timely claim for refund of the $2,801.00 overpayment in the Form 1040 he filed on April 18, 2001. (*Ibid.*)

28. The terms of the draft decision provided that plaintiff was not liable for any of the penalties he was determined to owe in the Notice of Deficiency issued for the 1998 tax year. (*Ibid.*)

29. The United States Tax Court entered the draft decision without alteration on

February 15, 2002 ("the Tax Court decision"). (Am. Compl., Ex. C.)

30. On September 11, 2002, plaintiff was assessed $72,960.00 in income tax for the 1998 tax year. (Syverson Decl. Ex. 1 at 4.)

31. On October 14, 2002, the IRS issued plaintiff a refund in the amount of $80,166.57 ("plaintiff's refund"). (*Ibid.*)

32. Plaintiff's refund was received by plaintiff in the form of a check, which he cashed upon receipt. (Def.'s Ans. and Counterclaim ¶ 19; Pl.'s Ans. to Def.'s Counterclaim ¶ 19.)

33. Plaintiff's refund was unrelated to a redetermination of plaintiff's income tax liability for 1998 by the IRS. (Syverson Decl. Ex. 1 at 4; Am. Compl., Ex. C.)

34. The IRS treated plaintiff's refund as creating a balance due in plaintiff's account for his 1998 individual income tax year in the amount of $81,637.64. (Syverson Decl. Ex. 1 at 3-5; Pennoni Decl. Ex. 3 at 2, Ex. 4 at 3.)[2]

35. On November 25, 2002, the IRS sent plaintiff a notice that stated that he had a balance due on his account for his 1998 individual income tax year. (Syverson Decl. Ex. 1 at 9.)

36. On December 30, 2002, the IRS sent plaintiff a statutory notice of intent to levy with respect to his 1998 individual income tax year ("statutory notice of intent to levy"). (*Ibid.*; Pennoni Decl. Ex. 3 at 2.)

37. The statutory notice of intent to levy stated that plaintiff's then current balance due was $83,818.35, including $736.95 in penalties, and $1,443.76 in interest. (Pennoni Decl.

---

[2] "Pennoni Decl." refers to the declaration of plaintiff, Lawrence D. Pennoni, attached to Plaintiff's Response in Opposition to the United States' Motion to Dismiss with Prejudice Plaintiff's Amended Complaint, filed with this Court on August 2, 2007.

Ex. 3 at 2.)

38. On May 29, 2003, the IRS sent plaintiff a Final Notice of Intent to Levy and Notice of Your Right to a Hearing for his 1998 individual income tax year ("final notice"). (Syverson Decl. Ex. 1 at 4; Pennoni Decl. Ex. 4 at 2-3.)

39. The final notice stated that plaintiff had a right to "[a]ppeal the intended levy on [his] property by requesting a Collection Due Process hearing within 30 days from the date of this letter." (Pennoni Decl. Ex. 4 at 2).

40. The final notice stated that plaintiff had a then current total balance of $89,884.06 for his 1998 individual income tax year, including $8,246.42 of statutory additions of penalties and interest. (*Id.* at 3.)

41. Plaintiff received this notice, but he did not exercise his rights under Section 6330 of the Internal Revenue Code to a collection due process hearing. (Syverson Decl. Ex. 1 at 4-5; Pennoni Decl. Ex. 4.)

42. Plaintiff was assessed failure to pay tax penalty and interest with respect to his 1998 individual income tax year on the following dates and in the following amounts:

| **Date of Assessment** | **Type of Assessment** | **Amount of Assessment** |
|---|---|---|
| August 2, 2004 | Failure to Pay Tax Penalty | $114.68 |
| August 9, 2004 | Failure to Pay Tax Penalty | $3,781.12 |
| August 23, 2004 | Failure to Pay Tax Penalty | $3,781.12 |
| September 6, 2004 | Failure to Pay Tax Penalty | $1,416.44 |
| September 6, 2004 | Interest | $2,364.68 |
| September 27, 2004 | Interest | $3,313.37 |

(Syverson Decl. Ex. 1 at 8-10; Am. Compl. ¶ 2.)

43. On August 4, 2003, funds levied by the IRS from plaintiff's accounts with Wells Fargo Bank Texas, N.A., in the amount of $4,167.41 were credited to plaintiff's account for his 1998 individual income tax year. (Syverson Decl. Ex. 1 at 5; Pennoni Decl. Ex. 5 at 2-3).

44. On August 25, 2003, funds levied by the IRS from plaintiff's accounts with Wells Fargo Bank Texas, N.A., in the amount of $2,921.98 were credited to plaintiff's account for his 1998 individual income tax year. (Syverson Decl. Ex. 1 at 5; Pennoni Decl. Ex. 5 at 2-3).

45. The IRS levied plaintiff's wages from Continental Casing Corporation, with levied amounts being applied to plaintiff's account for his 1998 individual income tax liability on the following dates in the following amounts:

| **Date Applied to Account** | **Amount Levied** |
|---|---|
| August 25, 2003 | $3,807.09 |
| September 2, 2003 | $4,167.41 |
| September 17, 2003 | $4,167.41 |
| October 6, 2003 | $4,167.41 |
| October 20, 2003 | $4,167.41 |
| November 3, 2003 | $4,167.41 |
| November 17, 2003 | $4,167.41 |
| December 5, 2003 | $4,167.41 |
| December 22, 2003 | $5,862.58 |
| January 8, 2004 | $4,167.41 |
| January 18, 2004 | $3,781.12 |
| April 5, 2004 | $5,208.14 |
| April 19, 2004 | $3,781.12 |
| May 4, 2004 | $3,781.12 |

| | |
|---|---|
| May 17, 2004 | $3,781.12 |
| June 1, 2004 | $3,781.12 |
| June 18, 2004 | $3,781.12 |
| July 6, 2004 | $3,781.12 |
| July 19, 2004 | $3,781.12 |
| August 2, 2004 | $3,781.12 |
| August 17, 2004 | $3,781.12 |
| September 2, 2004 | $3,781.12 |

(Syverson Decl. Ex. 1 at 5-9).

46. On April 15, 1999, a withholding credit of $75,000.00 was credited to plaintiff's account for his 1998 individual income tax year ("withholding credit"). (*Id.* at 3.)

47. Prior to issuance of plaintiff's refund, a total of $3,511.85 was transferred as an overpayment credit from plaintiff's account for his 1998 individual income tax year to plaintiff's account for his 1999 individual income tax year, and $0.78 of interest due was credited to plaintiff's account for his 1998 individual income tax year. (*Ibid.*)

48. On September 27, 2004, plaintiff's account for his 1998 individual income tax year was credited with interest owed to plaintiff in the amount of $0.61. (*Id.* at 9.)

49. On September 27, 2004, plaintiff was issued a refund of $468.36 with respect to his 1998 individual income tax year. (*Ibid.*)

50. Plaintiff's account for his 1998 individual income tax year currently has a zero balance. (*Id.* at 10.)

51. On September 9, 2003, plaintiff sent a facsimile to the IRS. (Am. Compl. Ex. A at 2, 13.)

52. The facsimile was addressed to “IRS Memphis.” (*Id.* at 2.)

53. The facsimile cover sheet indicated that the facsimile was from plaintiff, “Larry Pennoni,” and included plaintiff’s social security number. (*Ibid.*)

54. The facsimile cover sheet stated “Attn: Reconsideration.” (*Ibid.*)

55. The message portion of the facsimile cover sheet contained a two-sentence handwritten note. (*Ibid.*)

56. The message portion of the facsimile cover sheet reads as follows:

> Attached are Tax Court decision documents establishing that there was no deficiency for 1998. Thus, levy on bank and garnishment of wages is wrongful and should be withdrawn ASAP!!

(*Ibid.*)

57. A copy of the docket sheet for proceedings on plaintiff’s petition to the United States Tax Court was attached to the facsimile. (*Id.* at 3.)

58. A copy of the decision entered by the United States Tax Court in proceedings on plaintiff’s petition was attached to the facsimile. (*Id.* at 4.)

59. A copy of the stipulation between plaintiff and the Commissioner entered in the United States Tax Court proceedings on plaintiff’s petition was attached to the facsimile (*Id.* at 5-6.)

60. A letter to plaintiff from the IRS attorney who represented the Commissioner in the United States Tax Court proceedings on plaintiff’s petition, enclosing draft copies of the stipulation and decision for plaintiff’s review and signature, was attached to the facsimile. (*Id.* at 7.)

61. Five sheets of computations related to plaintiff’s 1998 individual income tax that

plaintiff received from the IRS were attached to the facsimile. (*Id.* at 8-12.)

62. The facsimile number to which plaintiff sent the facsimile had a 901 area code, an area code that includes Memphis, Tennessee. (*Id.* at 2.)

63. The facsimile was forwarded from Memphis to the Houston Appeals Office. (Pennoni Decl. Ex. 10 at 2; Am. Compl. Ex. B at 2-3.)

64. Dennis A. Quinn ("Mr. Quinn"), an IRS Appeals Officer, worked on the settlement of the United States Tax Court proceedings on plaintiff's petition. (Am. Compl. Ex. A at 7.)

65. Mr. Quinn sent a letter dated October 14, 2002, to plaintiff in response to the facsimile ("the October 14, 2002, letter"). (Am. Compl. Ex. B at 2-3.)

66. In the October 14, 2002, letter, Mr. Quinn stated that IRS Appeals had received the case as an "audit reconsideration" case. (*Id.* at 2.)

67. In the October 14, 2002, letter, Mr. Quinn stated that neither IRS Appeals nor District Counsel had any jurisdiction over the case as an audit reconsideration case because the amount of plaintiff's individual income tax liability for 1998 had already been finally decided by the decision of the United States Tax Court. (*Ibid.*)

68. In the October 14, 2002, letter, Mr. Quinn stated that "the matter of collection" of plaintiff's unpaid liability for his 1998 individual income tax that resulted from the refund, and "the matter of the October 2002 refund to you," were "items that need to be resolved between you and the Memphis Service Center," which was responsible for the collection of the outstanding liability. (*Id.* at 3.)

69. In the October 14, 2002, letter, Mr. Quinn stated that IRS Appeals had "looked at

[his] file, transcript data, etc.," and concluded that "levy action would not appear to be wrong." (*Id.* at 2-3.)

70. In the October 14, 2002, letter, Mr. Quinn stated that:

> You have said that the Tax Court decision documents show that "there was no deficiency for 1998." That is not correct. There was a statutory tax deficiency (agreed to by the parties) of $72,199.00. However, with the application of the withholding credit amount of $75,000.00 to you, the net amount owed was $2,801.00.

(*Id.* at 2.)

71. Plaintiff was aware that plaintiff's refund was erroneous at the time he received the refund. (Am. Compl. ¶ 7; Am. Compl. Ex. C; Syverson Decl. Ex. 8 at 1-5.)

72. Plaintiff received the refund he was due under the Tax Court decision when the transfer described in ¶ 47 above took place. (Syverson Decl. Ex. 1 at 3; Am. Compl., Ex. C.)

Respectfully submitted,

May 2, 2008

s/ Joseph B. Syverson
JOSEPH B. SYVERSON
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
TELEPHONE (202) 307-6508
FACSIMILE (202) 514-9440
Joseph.B.Syverson@usdoj.gov

NATHAN J. HOCHMAN
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
MARY M. ABATE
Assistant Chief, Court of Federal Claims Section

s/ Mary M. Abate
Of Counsel

May 2, 2008