IN THE UNITED STATES COURT OF FEDERAL CLAIMS
No. 06-861 T
(Judge Firestone)

LAWRENCE D. PENNONI,

Plaintiff,

v.

THE UNITED STATES,

Defendant

**CROSS-MOTION OF PLAINTIFF FOR SUMMARY JUDGMENT, AND BRIEF IN SUPPORT THEREOF, AND IN OPPOSITION TO THE UNITED STATES' MOTION FOR SUMMARY JUDGMENT**

Jennifer Hunter Walz
Counsel for Plaintiff

P.O. Box 430341
Houston, Texas 77243-0341
(713) 446-7730 – phone
(281) 907-0103 – facsimile

# TABLE OF CONTENTS

Plaintiff's Cross Motion for Summary Judgment and Response to the Motion of the United States for Summary Judgment ........................................1

Brief for Plaintiff in Support of his Cross-Motion for Summary Judgment, and in Opposition to the United States' Motion for Summary Judgment....................2

Questions Presented ........................................2

Statement........................................3

Summary of Argument ........................................7

Argument ........................................10

I. THE ERRONEOUS NON-REBATE REFUND WAS A NON-TAX DEBT NOT ASSESSABLE UNDER THE CODE.................10

A. The erroneous non-rebate refund did not give rise to a "tax" liability but merely resulted in the creation of an ordinary debt owed by Plaintiff to the government .......................10

B. Erroneous non-rebate refunds cannot be assessed under the Code ........................................11

II. NON-TAX DEBTS ARE NOT SUBJECT TO COLLECTION UNDER THE CODE ........................................14

A. Assessment is a prerequisite to all collection actions under the Code ........................................14

B. Effect of final Tax Court decision prevents further assessment of the erroneous non-rebate refund .............................15

C. The erroneous non-rebate refund issued to Plaintiff could not collected on the basis of the previously extinguished tax assessment ........................................17

III. THE IRS WAS LIMITED TO RECOVERING ONLY THE ERRONEOUS NON-REBATE REFUND AMOUNT AND IN A LIMITED MANNER........................................18

A. The IRS was limited to recovering only the erroneous refund amount ........................................18

B. The IRS failed to use proper procedures to recover the erroneous non-rebate refund from Plaintiff ....................................20

IV. ALL OF THE MONIES COLLECTED BY THE IRS FROM PLAINTIFF WERE ILLEGALLY EXACTED IN VIOLATION OF THE LAW AND MUST BE RETURNED TO PLAINTIFF ............21

V. THE SUPREME COURT'S DECISION IN *CLINTWOOD ELKHORN* DOES NOT REQUIRE PLAINTIFF TO FILE A REFUND CLAIM UNDER § 7422 TO RECOVER THE AMOUNT ILLEGALLY EXACTED TO COLLECT A NON-TAX DEBT ....................................22

A. *Clintwood Elkhorn* only applies to refund claims of of "taxpayers" relating to their "taxes" ........................................23

B. The "any sum" analysis of § 7422 in *Clintwood Elkhorn* is limited to whether "facially unconstitutional taxes" are subject to the tax refund provisions of the Code......................25

C. The alleged assessments of penalties and interest were invalid assessments ........................................................................28

D. Plaintiff's informal claim for the return of his money satisfied any administrative exhaustion requirements prior to Plaintiff instituting suit, and assuming *arguendo* that Plaintiff was required to file an administrative request for a refund, it constituted an informal claim that was never rejected...................30

VI. THE GOVERNMENT HAS NO AUTHORITY TO RETAIN OR RECOUP ANY MONEY ILLEGALLY EXACTED FROM PLAINTIFF BY THE IRS ........................................................................................36

A. The government is not entitled to retain the monies illegally exacted from Plaintiff under *Goldstein*........................................37

B. The government has no valid counterclaim to recoup any amounts awarded to Plaintiff in this case .....................................39

1. Limited statutory authorization to recovery erroneous refund ..........................................................................39

2. No equitable modification of § 7405(b)....................................39

Conclusion ........................................................................................................42

## TABLE OF AUTHORITIES

Cases:

*Alexander Proudfoot Co. v. United States*, 454 F.2d 1379 (Cl. Ct. 1972).......18

*American Radiator & Standard Sanitary Corp. v. United States*, 318 F.2d 915 (Ct. Cl. 1963)........................................................31,32,33

*Arch Engineering Co. v. United States*, 783 F.2d 190 (Fed. Cir. 1986)..........31

*Avon Products, Inc. v. United States*, 588 F.2d 342 (1978)............................19

*Bilzerian v. United States*, 78 A.F.T.R.2d 96-5201 (11th Cir. 1996)..............17

*Brookhurst v. United States*, 931 F.2d 554 (9th Cir. 1991) ............................19

*Bull v. United States*, 295 U.S. 247, 262 (1935) ..........................................41

*Clark v. United States*, 63 F.3d 83 (1st Cir. 1995) ...................................17,20

*Clayton v. Commissioner*, T.C. Memo 1997-327 ..........................................10

*Computervision Corp. v. United States*, 445 F.3d 1355 (Fed. Cir. 2006)...................................................................29,31,32

*Dysart v. United States*, 340 F.2d 624 (Ct. Cl. 1965)....................................18

*Eastport S.S. Corp. v. United States*, 372 F.2d 1002 (Ct. Cl. 1967)................22

*Enoch v. Williams Packing & Nav. Co.*, 370 U.S. 1 (1962)...........................25

*Goldstein, Baron & Lewis, Chartered v. United States*, 995 F.3d 34 (4th Cir. 1993), *cert denied*, 510 U.S. 1041 (1994)..............................3,37,38

*Kales v. United States*, 115 F.2d 497 (6th Cir. 1940).....................................33

*Levitsky v. United States*, 27 Fed. Cl. 235 (1992)....................................32,33

*Midland Mortgage Co. v. Commissioner*, 73 T.C. 902 (1980).............12,13,16

*Mildred Cotler Trust v. United States*, 184 F.3rd 168 (2nd Cir. 1999).............18

*Minehan v. United States*, 75 Fed. Cl. 249 (2007)..........................................31

*New England Electric System v. United States*, 32 Fed. Cl. 636 (1995) ....................31,32,33

*New York Life Ins. Co. v. United States*, 118 Fed.3d 1553 (Fed. Cir. 1997) ....................22

*Newton v. United States*, 163 F. Supp. 614 (Ct. Cl. 1958) ....................32

*Night Hawk Leasing Co. v. United States*, 18 F. Supp. 938 (Ct. Cl. 1937) .....32

*Norman v. United States,* 429 F.3d 1081 (Fed. Cir. 2005 ....................22

*O'Bryant v. United States,* 49 F.3d 340, 342 (7th Cir. 1995) ...........17,20,22,37

*Pacific Gas & Electric Co. v. United States,* 417 F.3d 1375 (Fed. Cir. 2005) ....................22

*Pennoni v. United States,* 79 Fed. Cl. 552 (2007) ....................10,24

*Poretto v. Usry,* 295 F.2d 499 (5th Cir. 1961) ....................29

*Porter v. United States,* 919 F.Supp. 927 (E.D.C. Va. 1996) ....................40

*Rothensies v. Electric Storage Battery Co.*, 67 S. Ct. 271 (1946) ....................40

*S-K Liquidating Co. v. Commissioner*, 64 T.C. 713 (1975) ....................13

*Stanley v. United States*, 35 Fed. Cl. 493 (1996), *aff'd,* 140 F.3d 1023 (Fed. Cir. 1998) ....................17,20,22,36,37

*Stelco Holding Co. v. United States*, 42 Fed. Cl. 101 (1998) ....................31

*United States v. A. S. Kreider Co.*, 313 U.S. 443 (1941) ....................23

*United States v. Cabrera*, 73 A.F.T.R.2d 94-822 (5th Cir. 1994) ....................39

*United States v. Clintwood Elkhorn Mining Co.*, 128 S. Ct. 1511 (2008) ....................3,22,23,24,25

*United States v. Dalm,* 494 U.S. 596 (1990) ....................40

*United States v. Janus,* 428 U.S. 433 (1976) ....................28

*United States v. Wilkes,* 946 F.2d 1143 (5th Cir. 1991) ....................17

*United States v. Wurts,* 303 U.S. 414 (1938) ....................39

*W. Co. of N. Am. v. United States*, 323 F.3d 1024 (Fed. Cir. 2003) ................29

*Wall Industries, Inc. v. United States*, 10 Cl. Ct. 82 (1986) .......................31,33

*Webb v. United States*, 66 F.3d 691 (4th Cir. 1995), *aff'g* 850 F.Supp. 489 (E.D. Va. 1994) ........................................................40

Statutes:

28 U.S.C. § 1345 ........................................................................39

31 C.F.R. Part 285 .....................................................................8,20,21

Debt Collection Improvement Act of 1996, P.L. 104-134, 110 Stat. 1321 (1996) ......................................................................................20

Internal Revenue Code of 1986 (26 U.S.C.):

§ 6201(a)(1) ..................................................................11

§ 6204(a) .....................................................................12,13

§ 6211(b)(2) ..................................................................11,12

§ 6212 ..........................................................................12,14,15,28

§ 6213 ..........................................................................11,12,14

§ 6215(a) ......................................................................15,27

§ 6303 ..........................................................................14

§ 6402(d) ......................................................................26

§ 6402(f) .......................................................................26,27

§ 6511 ..........................................................................28,40

§ 6512 ..........................................................................28

§ 6532(b) ......................................................................8,21,22,36,40

§ 6601(e) ......................................................................19

§ 6602 ..........................................................................19

§ 6651(c)(2) .......... 19

§ 7405 .......... *passim*

§ 7421 .......... 25

§ 7422 .......... *passim*

§ 7701(a)(14) .......... 27

Miscellaneous:

IRS Action on Decision 1998-002 .......... 17

IRS Field Service Advice 200004021 .......... 17

IRS Chief Counsel Advice 200014033 .......... 11,20

Revenue Ruling 88-88, 1988-2 C.B. 354 .......... 16

Revenue Procedure 98-54, 1998-2 C.B. 531 .......... 16

Internal Revenue Manual, Section 21.4.5.4.5 (1) .......... 10

Internal Revenue Manual, Section 21.4.5.4.5 (3) .......... 14

Internal Revenue Manual, Section 21.4.5.13 .......... 19

Internal Revenue Manual, Section 21.4.5.14 .......... 11,20

S. Rept. 52, 68th Cong., 1st Sess. (1926), 1939-1 C.B. (Part 2) 332 .......... 16

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
No. 06-861 T
(Judge Firestone)

LAWRENCE D. PENNONI,

Plaintiff,

v.

THE UNITED STATES,

Defendant

**PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO MOTION OF THE UNITED STATES FOR SUMMARY JUDGMENT**

Plaintiff, Lawrence D. Pennoni, respectfully requests that the Court grant summary judgment pursuant to RCFC 56 in favor of Plaintiff and against Defendant. In support of its motion, Plaintiff relies on the attached Brief, Declaration of Lawrence D. Pennoni dated June 2, 2008, Declaration of Paul Mergenhagen dated June 2, 2008, and on Plaintiff's Amended Complaint and the documents attached thereto, the declarations of Plaintiff dated August 2, 2007 and Joseph B. Syverson dated July 2, 2007, filed previously with the Court in this case, and on Plaintiff's Response to Defendant's Proposed Findings of Uncontroverted Fact and Plaintiff's Proposed Findings of Uncontroverted Fact. Plaintiff respectfully requests oral argument on this motion.

Respectfully submitted,
s/ Jennifer Hunter Walz
JENNIFER HUNTER WALZ
P.O. Box 430341
Houston, Texas 77243-0341
(713) 446-7730 – phone
(281) 907-0103 - facsimile
COUNSEL FOR PLAINTIFF

Dated: June 2, 2008

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
No. 06-861 T
(Judge Firestone)

---

LAWRENCE D. PENNONI,

Plaintiff,

v.

THE UNITED STATES,

Defendant

---

**BRIEF FOR PLAINTIFF IN SUPPORT OF HIS CROSS-MOTION FOR SUMMARY JUDGMENT, AND IN OPPOSITION TO UNITED STATES' MOTION FOR SUMMARY JUDGMENT**

---

Plaintiff brings this action to recover an amount equal to the sum of monies illegally exacted from him by the IRS through unauthorized levies in direct violation of federal statutes for recovering an erroneous non-rebate refund which resulted in a non-tax debt.[1]

## QUESTIONS PRESENTED

1. Whether Plaintiff may recover $104,461.04 illegally exacted from him by the IRS without any authority under the Code to levy and in direct violation of federal laws applicable to the recovery of a non-tax debt arising from an erroneous non-rebate refund?

---

[1] "IRC" and "Code" refers to the Internal Revenue Code of 1986 as amended and codified in Title 26 of the United States Code; "§" and "Section" refers to sections of the Internal Revenue Code; "IRS" refers to Internal Revenue Service; "IRM" refers to the Internal Revenue Manuel.

2. Whether the Supreme Court's recent decision in *United States v. Clintwood Elkhorn Mining Co.*, 128 S. Ct. 1511 (2008), has any application to Plaintiff's claim for the recovery of funds illegally exacted from him by the IRS' use of its tax collection powers to collect a non-tax debt, that is, must Plaintiff have filed a tax refund claim under the Code for the return of his monies taken by the IRS to collect a non-tax debt?

3. If this Court grants Plaintiff's claim for the return of his monies, whether the government is entitled to retain it based upon *Goldstein, Baron & Lewis, Chartered v. United States*, 995 F.3d 34 (4th Cir. 1993), *cert denied,* 510 U.S. 1041 (1994)?

4. If this Court grants Plaintiff's claim for the return of his monies, whether the government is entitled to recoup it under its counterclaim?

**STATEMENT**

Plaintiff filed a Federal income tax return (Form 1040) for his 1998 tax year on April 15, 2001. (PRDPF ¶ 12.)[2] As of April 15, 1999, a withholding credit of $75,000 was credited to Plaintiff's account for his 1998 tax year. (PRDPF ¶ 46.) On June 1, 2001, the IRS issued Plaintiff a Notice of Deficiency for his 1998 tax year. (PRDPF ¶ 14.) Plaintiff timely filed a petition for redetermination with the U.S. Tax Court. (PRDPF ¶ 16.) After the petition was filed, Plaintiff worked with IRS Houston Appeals Officer, Dennis Quinn ("Mr. Quinn"), to negotiate a settlement. (PRDPF ¶ 64.). On or about February 14, 2002, Plaintiff and the Commissioner of Internal Revenue ("Commissioner") entered into a settlement stipulation for Plaintiff's 1998 tax year that

---

[2] "PRDPF" refers to Plaintiff's Response to Defendant's Proposed Findings of Uncontroverted Fact. "PPF" refers to Plaintiff's Proposed Findings of Uncontroverted Fact.

established a statutory deficiency in income tax of $72,199, an overpayment of his 1998 income tax of $2,801 after the application of a $75,000 withholding credit, and that no penalties were owed by Plaintiff as set forth in the Notice of Deficiency. (PRDPF ¶¶ 22, 25-26, 28.) On February 15, 2002, the Tax Court entered a decision based on the stipulation between the parties, without alteration. (PRDPF ¶ 29.) On September 11, 2002, Plaintiff was assessed $72,960 (rather than the $72,199 found by the Tax Court) in income tax for his 1998 tax year. (PRDPF ¶ 30.)

On October 14, 2002, the IRS issued Plaintiff a refund in the amount of $80,166.57. (PRDPF ¶ 31.) The refund was a Category D Erroneous Refund under the IRM. (PPF ¶ 3.) Plaintiff received the refund check and cashed it. (PRDPF ¶ 32.) The refund was unrelated to a redetermination of Plaintiff's 1998 income tax liability by the IRS. (PRDPF ¶ 33.) The IRS treated the refund as creating a balance due in Plaintiff's tax account for his 1998 tax year in the amount of the refund check. (PRDPF ¶ 34.) The IRS failed to properly account for the refund in Plaintiff's 1998 tax account in accordance with the IRM. (PPF ¶ 4.) No notices of deficiency or assessment concerning the erroneous refund and any penalties and interest as a result of the erroneous refund were sent to Plaintiff (PPF ¶¶ 5, 6.) The IRS collected through levies on Plaintiff's bank account with Wells Fargo the amount of $2,921.98 (PRDPF ¶ 44.) Pursuant to the Notice of Levy on Wages, Salary, and Other Income (Form 688-W(c)) dated July 22, 2003 (and later Forms 688-W(c), Continental Casing Corporation garnished Plaintiff's wages and remitted to the IRS the following amounts, totaling $101,539.06, to be credited to Plaintiff's 1998 tax year:

| Check Date | Check Number | Check Amount |
|---|---|---|
| July 31, 2003 | 023931 | $4,167.41 |

| | | |
|---|---|---|
| August 15, 2003 | 024055 | $3,807.09 |
| August 29, 2003 | 024206 | $4,167.41 |
| September 15, 2003 | 024353 | $4,167.41 |
| September 30, 2003 | 024453 | $4,167.41 |
| October 17, 2003 | 024573 | $4,167.41 |
| October 31, 2003 | 024695 | $4,167.41 |
| November 14, 2003 | 024797 | $4,167.41 |
| December 1, 2003 | 024941 | $4,167.41 |
| December 15, 2003 | 025146 | $5,862.58 |
| December 31, 2004 | 025182 | $4,167.41 |
| January 15, 2004 | 025251 | $3,781.12 |
| January 30, 2004 | 025421 | $3,781.12 |
| March 31, 2004 | 026067 | $5,208.14 |
| April 15, 2004 | 026190 | $3,781.12 |
| April 30, 2004 | 026341 | $3,781.12 |
| May 14, 2004 | 026541 | $3,781.12 |
| May 28, 2004 | 026622 | $3,781.12 |
| June 15, 2004 | 026805 | $3,781.12 |
| June 30, 2004 | 026948 | $3,781.12 |
| July 15, 2004 | 027083 | $3,781.12 |
| July 30, 2004 | 027207 | $3,781.12 |
| August 13, 2004 | 027353 | $3,781.12 |
| August 31, 2004 | 027524 | $3,781.12 |
| September 15, 2004 | 027652 | $3,781.12 |

(PRDPF ¶ 45.)

Prior to September 3, 2002, Plaintiff had contacted the IRS several times to explain that no tax was due for his 1998 tax year and demanded that the levies cease and his money be returned to him. (PPF ¶ 7.)

On September 9, 2003, Plaintiff sent a facsimile to IRS Memphis stating:

> Attached are Tax Court decision documents establishing that there was no deficiency for 1998, thus, levy on bank and garnishment of wages is wrongful and should be withdrawn ASAP!

(PRDPF ¶¶ 51-56.) This facsimile "was a demand to the IRS to cease its wrongful conduct in levying on my bank account and garnishing my wages and for the return of monies taken from me as a result of the IRS' unlawful activity." (PPF ¶ 9.) As support for his demand for the withdrawal of the levies and return of monies, Plaintiff attached to

this facsimile copies of the following documents relating to his 1998 tax year: (1) Tax Court docket sheet (PRDPF ¶ 57), (2) Tax Court decision (PRDPF ¶ 58), (3) the stipulation between Plaintiff and the Commissioner (PRDPF ¶ 59), and (4) five sheets of computations related to Plaintiff's 1998 tax year (RPDPF ¶ 61.)

The facsimile and attachments were forwarded from Memphis to Mr. Quinn, the Houston Appeals Officer who worked with Plaintiff to settle his Tax Court case. (PRDPF ¶¶ 63-65.) On November 14, 2003, Mr. Quinn, informed Plaintiff that he had "looked at [his] files, transcript data, etc." and that he had no authority to consider Plaintiff's demand and that only the Memphis Service Center had authority to address his claim, stating:

> Since your case was previously closed with signed decision documents in Tax Court, neither Appeals nor District Counsel really have any jurisdiction over this case. In addition, with decision documents being documents of finality, there are no remaining appeal rights for you.
>
> * * *
>
> In any event, the matter of collection, and the matter of the October 2002 refund to you are items that need to be resolved between you and the Memphis Service Center. The Houston Appeals Office has no jurisdiction or standing on this affair.

(PRDPF ¶¶ 65, 66-69.) Mr. Quinn failed to follow the IRS account actions for the Category D Erroneous Refund. (PPF ¶ 11.)

Plaintiff never received a notice of disallowance from the IRS unequivocally disallowing his claim for the return of his money wrongfully taken by the IRS, nor did the IRS inform him that his only recourse for recovering those monies was to file a civil action for a refund in the U.S. District Court or the U.S. Court of Federal Claims. (PPF ¶ 10.) Plaintiff did not waive his right to receive a notice of disallowance. *(Ibid.)*

On December 15, 2006, Plaintiff filed his original Complaint, and on May 17, 2007, Plaintiff filed his Amended Complaint seeking the return of his funds.

**SUMMARY OF ARGUMENT**

Plaintiff is seeking the return of monies illegally exacted by the IRS through the use of tax collection powers of the Code to collect a non-tax debt arising from a erroneous non-rebate refund issued to him by the IRS. The erroneous refund was not issued to Plaintiff based upon a redetermination of Plaintiff's tax liability but rather due to an error on the part of the IRS. Thus, the erroneous refund was a non-rebate refund that resulted in a non-tax debt that could only be collected by the IRS if the IRS filed suit in a U.S. District Court within two years of the refund date and obtained a judgment.[3] Contrary to the law, the IRS simply treated Plaintiff as having an unpaid balance in his 1998 income taxes, and over Plaintiff's vehement and repeated objections, collected it through levies on Plaintiff's bank account and wages paid by his employer. It is undisputed that Plaintiff's 1998 income taxes were timely paid in full, in fact, overpaid through wage withholdings. The only assessment of his 1998 income taxes was made after a Tax Court decision became final fixing for all time his 1998 tax liability. This assessment was extinguished by his withholding credits. It has long been decided by the courts that an erroneous non-rebate refund may not be collected on the basis of an extinguished tax assessment.

The IRS was prohibited from recovering the erroneous non-rebate refund and any other amounts in excess thereof from Plaintiff using its tax collection powers of the Code

[3] As discussed herein, the IRS could and should have referred the collection of the non-tax debt to the Financial Management Service for collection by the Financial Management Service to the extent allowed by the Debt Collection Improvement Act of 1996.

because the erroneous non-rebate refund did not result in any liability of Plaintiff for any "tax" or "any sum" derived from the Code. Rather, it merely resulted in an ordinary non-tax debt owed by Plaintiff to the government similar to a debt arising from an overpayment by the IRS on a contract with Plaintiff. Because the debt was not related to a tax, no penalties or interest could be assessed and collected from Plaintiff as a result of the erroneous refund, although if the IRS had timely filed a suit in a U.S. District Court for recovery of the debt and the IRS was successful, the IRS would have been able to recover interest as part of its judgment. Further, while there is some dispute, the bulk of authority is that the deficiency, assessment and collection provisions of the Code cannot be used by the IRS to collect an erroneous non-rebate refund. In any event, in this case it is clear that no additional deficiencies or assessments of tax, penalty or interest could be asserted or made by the IRS with respect to Plaintiff's 1998 tax year because it was closed by a final Tax Court decision and the subsequent tax assessment in accordance therewith. Once a tax year is closed in this manner, it can never be reopened by the government for the assessment and collection of taxes, penalties, interest or any other matter, except in the limited situation of fraud. Likewise, a taxpayer is prohibited from making any claims for refund of any taxes, penalties and interest paid for a closed tax year.

The only avenues available to the IRS for it to recover the erroneous non-rebate refund from Plaintiff was instituting suit under § 7405(b) in a U.S. District Court within two years from the issuance of the erroneous non-rebate refund and/or referral of the debt to the Financial Management Service ("FMS"), a bureau of the U.S. Treasury Department authorized to collect delinquent non-tax debts under 31 C.F.R. Part 285. The

government failed to file any suit within the two-year limitation period of § 6532(b) (and obviously did not refer the debt to the FMS) and therefore had no right to recover the erroneous non-rebate refund from Plaintiff. Because the government failed to timely and properly act to recover the erroneous non-rebate refund from Plaintiff, it has no authority to retain the monies collected through levies on Plaintiff's bank account and wages.

Plaintiff's claim for the return on his money is not governed by the refund procedures of the Code because, with respect to wrongfully levied funds, Plaintiff is not acting in the capacity of a taxpayer—rather just as an aggrieved citizen--and Plaintiff is not seeking a refund of taxes, penalties or interest or any sum related thereto. The government's arguments herein are premised upon the theory that simply because it incorrectly treated Plaintiff as owing a tax debt, *ipso facto*, this is a case involving a taxpayer seeking a tax refund. In fact, Plaintiff was barred by law from bringing any refund action under the Code pertaining to his 1998 tax year because it was closed tax year, as clearly recognized by Mr. Quinn of the IRS. The Code has no application whatsoever to Plaintiff's action; the only section of the Code involved in this case is the limitations provision of § 7405(b) which, because the IRS chose not to comply with, barred the only avenue the IRS had to recover the erroneous non-rebate refund.

Plaintiff is entitled to recover $104,461.04 because the IRS illegally exacted that amount from him through unlawful levies rather than instituting suit under § 7405(b) and obtaining a judgment to allow it to thereafter properly recover the erroneous non-rebate refund.

## ARGUMENT

## I.

## THE ERRONEOUS NON-REBATE REFUND WAS A NON-TAX DEBT NOT ASSESSABLE UNDER THE CODE.

### A. The erroneous non-rebate refund did not give rise to a "tax" liability but merely resulted in the creation of an ordinary debt owed by Plaintiff to the government.

The erroneous refund issued to Plaintiff on October 14, 2002 was a non-rebate refund because it was not issued to Plaintiff based upon a redetermination of or an inaccuracy in Plaintiff's tax liability, rather it resulted from an error on the part of the IRS in performing some function other than recomputing the tax liability. IRS Chief Counsel Advice ("CCA") 200014033 (Apr. 7, 2000) citing *O'Bryant v. United States,* 49 F.3d 340, 342 (7th Cir. 1995); *Clayton v. Commissioner,* T.C. Memo 1997-327. In its IRM, the IRS refers to these types of erroneous refunds as Category D Erroneous Refunds.[4] *See* IRM 21.4.5.4.5 (1).

As previously concluded by this Court in *Pennoni v. United States,* 79 Fed. Cl. 552 (2007), the erroneous non-rebate refund issued to Plaintiff by the IRS did not give rise to or constitute an underpayment of "tax;" that is, it did not create a tax liability owed by Plaintiff to the IRS. Further, the government acknowledges in its motion for summary judgment that the present case is not a suit for the refund of "taxes." Even the IRS' own

[4] Category A1 Erroneous Refunds occur when the tax liability has been understated due to an error on either a tax assessment or on an adjustment to the tax liability and the error results in a refund. IRM 21.4.5.4.1(1). Category A2 Erroneous Refunds involve errors on the child tax credit, the credit for certain uses of gasoline and special fuels, and the earned income tax credit. IRM 21.4.5.4.2(1). Category B Erroneous Refunds occur when withholding credits or estimated tax payments are overstated. IRM 21.4.5.4.3 (1). Category C Erroneous Refunds involve employment taxes. IRM 21.4.5.4.4 (1).

IRM clearly acknowledges that it cannot recover an erroneous non-rebate refund as a "tax." IRM 21.4.5.14 (emphasis added) provides, in part:

> 1. Internal Revenue Code (IRC) provides recovery methods and Statute of Limitations for Category D Erroneous Refunds that differ from those used for <u>tax liabilities</u>.

Therefore, Plaintiff owed an ordinary non-tax debt to the government as a result of the erroneous non-rebate refund it received from the IRS. Thus, it is clear that the IRS erred in this case in treating the erroneous non-rebate refund as giving rise to an underpayment of "tax."

**B. Erroneous non-rebate refunds cannot be assessed under the Code.**

Erroneous non-rebate refunds do not affect a tax liability, and therefore, cannot be assessed under the Code. *See* CCA 200014033, *supra.* The assessment process as set forth below provides insight as to the non-assessability of erroneous non-rebate refunds.

The Code provides that income taxes and related assessable penalties and interest can only be assessed in very specific circumstances, only four of which circumstances could be relevant in this case. First, the amount of the tax computed to be due by the taxpayer on the taxpayer's filed tax return may be immediately and summarily assessed under § 6201(a)(1). If the tax paid in by the taxpayer exceeds the assessed tax amount, the IRS may refund the difference to the taxpayer. This refund would be a rebate refund under § 6211(b)(2).

Second, if the IRS determines that there is a mathematical or clerical error appearing on the face of the return, the IRS may summarily assess the amount of the tax increase resulting from the error after giving proper notice to the taxpayer of the error. IRC § 6213(b)(1). If the IRS determines there is a mathematical or clerical error that

resulted in an overstatement of tax, the IRS may refund the amount of the overstatement to the taxpayer. This refund would also be a rebate refund under § 6211(b)(2).

Third, if the IRS conducts an examination of the taxpayer's return (*i.e.*, the taxpayer is audited) and determines that the taxpayer understated the tax liability on the return, after complying with certain administrative requirements, the IRS may issue the taxpayer a statutory notice of deficiency under § 6212(a). This notice must set forth in detail the IRS' calculation of the deficiency and the basis therefore. The term "deficiency" is defined in § 6211(a) to be (1) the amount determined to be the correct tax, minus (2) the tax assessed per the return plus any proper additional assessments minus any rebate refunds. *See Midland Mortgage Co. v. Commissioner,* 73 T.C. 902, 907 (1980) and cases cited therein.

If the taxpayer does not file suit in the Tax Court within 90 days of the date of the notice of deficiency, the IRS may assess the amount set out in the notice of deficiency. IRC § 6213(a), (c). If, however, the taxpayer timely files suit in the Tax Court, the IRS may not assess any amount until the Tax Court decision becomes final, and then it may only assess the amount of the deficiency redetermined by the Tax Court rather than the amount in the notice of deficiency. IRC § 6213(a).

Fourth, if the IRS has made a prior assessment, but there was an error in the assessment, it may make a supplemental assessment solely to correct the prior error. IRC § 6204(a). For example, in the present case, the IRS could have made a supplemental assessment of ($761) to reduce the inaccurate assessment of $72,960 made on September 11, 2002 to the correct amount of $72,199 as redetermined by the Tax Court. This supplemental assessment power has often been mistakenly referred to by the courts as the

power to make a "reassessment." In fact, there is no provision allowing the IRS to make "reassessments," and in fact the IRS is prohibited from making any further assessments once the IRS has issued a notice of deficiency and the taxpayer has had his tax liability redetermined by the Tax Court and assessment is made in the amount of the redetermined deficiency.

With certain exceptions not relevant to this case, the four assessment provisions described above are the only ones applicable in this case, *i.e.,* allowing the IRS to assess tax against Plaintiff. Had the IRS not ignored Plaintiff's late-filed return, the IRS should have immediately assessed the tax of $71,964.70 shown on the return, and assessed any additional tax resulting from mathematical errors on such return. Further, if after examining the return, the IRS determined the return understated Plaintiff's tax liability, the IRS could have issued a notice of deficiency for only the amount of the alleged understatement. Instead, the IRS ignored the return entirely and elected to proceed solely under the notice of deficiency procedures. Because the IRS issued a statutory notice of deficiency and Plaintiff timely filing a request for redetermination with the Tax Court, the last assessment the IRS could make against Plaintiff (except a supplemental assessment/error correction assessment under § 6204(a)) was the assessment of the amount of the deficiency redetermined by the Tax Court. *See Midland Mortgage,* 73 T.C. at 908-913, *S-K Liquidating Co. v. Commissioner*, 64 T.C. 713, 716 (1975).

## II.

## NON-TAX DEBTS ARE NOT SUBJECT TO COLLECTION UNDER THE CODE.

### A. Assessment is a prerequisite to all collection actions under the Code.

The administrative collection procedures under the Code cannot be undertaken until the IRS first satisfies the deficiency and assessment procedures of §§ 6212, 6213 and 6303. Assuming *arguendo,* that the erroneous refund gave rise to a tax liability, the IRS still had no authority to collect the erroneous refund from Plaintiff under the administrative collection procedures without first assessing the erroneous refund amount as a tax deficiency, *i.e.*, an underpayment of tax. No notice of deficiency concerning the erroneous refund was sent to Plaintiff nor was the erroneous refund assessed as a tax. The only assessment made by the IRS for Plaintiff's 1998 tax year occurred on September 11, 2002, at which time the IRS assessed the statutory tax deficiency determined by the Tax Court.

The IRS acknowledges in its IRM that it cannot collect an erroneous non-rebate refund issued to Plaintiff through administrative collection actions, such as lien or levy. IRM 21.4.5.4.5 (emphasis added) provides, in part:

> 3. ...Administrative collection actions such as the issuance of a lien or levy can not be taken to recover Category D Erroneous Refunds...
>
> Note:
>
> The Erroneous Refund Unit in Accounting, Submission Processing, will input a false credit, a TC 700, on the Category D Erroneous Refunds. This action is taken to remove the erroneous refund amount from Master File and the account is reestablished in Accounting. This is done to prevent notices and administrative collection action (liens or levies) from occurring on the erroneous refund liability.

**B. Effect of final Tax Court decision prevents further assessment of the erroneous non-rebate refund.**

After receiving a notice of deficiency for his 1998 tax year, Plaintiff timely filed a petition with the Tax Court. The Tax Court issued a decision fixing Plaintiff's 1998 income tax liability (deficiency) and held that he was owed a refund because he had withholding credits in excess of the determined deficiency. In accordance with the Tax Court decision, the IRS assessed Plaintiff's 1998 income tax deficiency on September 11, 2002.

Once a Tax Court has redetermined a taxpayer's deficiency, only that deficiency may be assessed under the Code. Section 6215(a) provides:

> If the taxpayer files a petition with the Tax Court, the entire amount redetermined as the deficiency by the decision of the Tax Court which has become final shall be assessed and shall be paid upon notice and demand from the Secretary. No part of the amount determined as a deficiency by the Secretary but disallowed as such by the decision of the Tax Court which has become final shall be assessed or be collected by levy or proceeding in court with or without an assessment.

No further notices of deficiency or further assessments are permitted for a that tax year under the Code except in very limited circumstances (*e.g.* fraud) and supplemental assessments to correct an erroneous assessment. Section 6212(c)(1) provides, in part:

> If the Secretary has mailed to the taxpayer a notice of deficiency as provided in subsection (a), and the taxpayer files a petition with the Tax Court within the time prescribed in section 6213(a), the Secretary shall have no right to determine any additional deficiency of income tax for the same taxable year…

These provisions are designed to bring finality to a taxpayer's tax year and prevent the IRS from conducting multiple examinations and making multiple assessments

against a taxpayer. The Tax Court in *Midland Mortgage* cites the legislative history from 1926 of what are now §§ 6212 and 6213 as providing:

> *But if [the taxpayer] does elect to file a petition with the [Board of Tax Appeals, the predecessor to the US Tax Court] his entire tax liability for the year in question* (except in the case of fraud) *is finally and completely settled by the decision of the board when it has become final...Finality is the end sought to be attained by these provisions* of the bill, and the committee is convinced that *to allow the reopening of the question of tax for the year involved either by the taxpayer or the Commissioner* (save in the sole case of fraud) *would be highly undesirable.*

*Midland Mortgage,* 73 T.C. at 908-09, citing S. Rept. 52, 68th Cong., 1st Sess. (1926), 1939-1 C.B. (Part 2) 332, 351 (emphasis by the court). The IRS has acknowledged the correctness of the analysis and holding of the Tax Court in *Midland Mortgage* regarding the bar of § 6212(c). Rev. Rul 88-88, 1988-2 C.B. 354. *See also,* Rev. Proc. 98-54, 1998-2 C.B. 531, sections 2.02, 2.03, 2.04.

In the present case, the government had its "one bite at the apple" regarding Plaintiff's 1998 tax year when it issued a statutory notice of deficiency to Plaintiff, the Tax Court determined the deficiency and the government made an assessment of the deficiency finally determined by the Tax Court. Thereafter, the IRS was prohibited from asserting any further deficiencies or assessments with respect to Plaintiff's 1998 tax year.

Even assuming *arguendo* that the erroneous refund involved could give rise to a tax liability, § 6212(c) bars the IRS from assessing that liability because the IRS could not issue another statutory notice of deficiency nor make a further assessment for the same year, *i.e.*, 1998.

### C. The erroneous non-rebate refund issued to Plaintiff could not be collected on the basis of the previously extinguished tax assessment.

Plaintiff timely paid, in fact overpaid, his 1998 income taxes through his wage withholdings. The subsequent assessment of Plaintiff's 1998 income tax deficiency was extinguished through his withholding credits. Thereafter, the IRS issued Plaintiff an erroneous non-rebate refund and treated it as unpaid taxes for Plaintiff's 1998 tax year. Apparently based on the original tax assessment (no other tax assessments having been made) for Plaintiff's 1998 tax year, the IRS used its tax collection powers to collect from Plaintiff the erroneous non-rebate refund and an amount significantly in excess of the erroneous non-rebate refund. The IRS levied on Plaintiff's bank account and garnished his wages resulting in the IRS receiving a total of $104,461.04. It has long been decided by the courts and conceded by the IRS that the IRS is prohibited from recovering an erroneous non-rebate refund (and presumably any amount in excess thereof) on the basis of a previously extinguished tax assessment. *See Stanley v. United States,* 140 F.3d 1023, 1027-28 (Fed. Cir. 1998), *aff'g* 35 Fed. Cl. 493, 496 (1996); *Bilzerian v. United States,* 78 A.F.T.R.2d 96-5201, 96-5203 (11th Cir. 1996) ["Acquiescence in result only relating to whether issuance of an erroneous refund following taxpayers payment of the original assessment revives that assessment to permit enforced collection of the amount erroneously refunded" 1998-18 I.R.B. 4.]; *O'Bryant v. United States,* 49 F.3d 340 (7th Cir. 1995); *Clark v. United States,* 63 F.3d 83, 87-88 (1st Cir. 1995); *United States v. Wilkes,* 946 F.2d 1143, 1152 (5th Cir. 1991); IRS Action on Decision 1998-002 (September 2, 1998) ("We acquiesce to the view of the courts that an erroneous refund or an amount paid by the taxpayer in satisfaction of an assessment does not revive that assessment to the extent of the refund"); IRS Field Service Advice 200004021 (Jan. 28,

2000) ("[T]he IRS may not take administrative collection action on a previously paid tax assessment even if the IRS inadvertently refunds a portion of the taxpayer's payment.").

In *Mildred Cotler Trust v. United States*, 184 F.3rd 168 (2nd Cir. 1999), the U.S. District Court had held that the amount of an erroneous refund could be collected based on the original assessment that had been paid. The Second Circuit opinion states:

> On appeal, the government has expressly abandoned its argument below, on which the district court relied, that it was entitled to recover the unpaid taxes based on the September 1984 assessment of income tax. Consistent decisions by six Courts of Appeals have rejected such a theory.

184 F. 3rd at 173 (footnote omitted.)

## III.

## THE IRS WAS LIMITED TO RECOVERING ONLY THE ERRONEOUS NON-REBATE REFUND AMOUNT AND IN A LIMITED MANNER.

### A. The IRS was limited to recovering only the erroneous refund amount.

Because Plaintiff's 1998 tax liability was timely paid and the erroneous non-rebate refund did not give rise to a tax liability, the IRS could not have assessed, much less collected, failure to pay penalties and deficiency interest under the Code. A tax deficiency, tax penalty and deficiency interest are all elements of a taxpayer's tax liability. *See Dysart v. United States*, 340 F.2d 624, 626 n.1 (Ct. Cl. 1965) ("[T]he tax penalty...is considered as part of the income tax for the taxable year."); *Alexander Proudfoot Co. v. United States*, 454 F.2d 1379, 1382 (Cl. Ct. 1972) ("[T]he Code's design for such [deficiency] interest is to assimilate it to the tax itself...For a long time, deficiency interest has been so closely braided to principal that it has been deemed an integral part of the tax.").

The imposition of the failure to pay penalty and deficiency interest are dependent upon the existence of a "tax." The failure to pay penalty is calculated based on the amount by which the lesser of the tax shown on the return as filed or the amount of tax required to be shown on the return exceeds tax payments. IRC § 6651(c)(2) (emphasis added). Section 6601(e) treats deficiency interest as a "tax." It states, in part:

> (1) **Interest treated as a tax.** Interest prescribed under this section on any tax shall be paid upon notice and demand, and shall be assessed, collected, and paid in the same manner as taxes. Any reference…to any tax imposed by this title shall be deemed also to refer to interest imposed by this section on such tax.

*See Avon Products, Inc. v. United States*, 588 F.2d 342, 344 (1978) (Interest begins to accumulate "when a tax becomes both due and unpaid.").

Because the "tax" characterization of the erroneous refund was dismissed by this Court and the government has agreed that this suit is not a suit for taxes, it logically follows that the "penalty and interest" labeling must also be disregarded.

Further, in accordance with IRM 21.4.5.13, the failure to pay penalty does not apply to Category D Erroneous Refunds. *See also Brookhurst v. United States,* 931 F.2d 554, 557 (9th Cir. 1991) ("A taxpayer who timely pays his taxes is not penalized when the government erroneously refunds those monies."). Section 6602 permits the government to collect interest on an erroneous refund amount, but only if the government timely files suit under § 7405(b) to recover the erroneous refund and obtains a judgment.

Thus, the government was prohibited under the Code from collecting any amounts exceeding $80,166.57 because the erroneous non-rebate refund was a non-tax debt not subject to the provisions of the Code.

### B. The IRS failed to use proper procedures to recover the erroneous non-rebate refund from Plaintiff.

Because the erroneous non-rebate refund did not constitute a tax, it could not be assessed and collected under the Code. The IRS must collect the erroneous non-rebate refund from Plaintiff as an ordinary non-tax debt. The collection of all non-tax delinquent debts is governed by the Debt Collection Improvement Act of 1996, P.L. 104-134, 110 Stat. 1321 (1996), which centralized the Federal government's non-tax delinquent debt collection programs in the FMS.[5] *See* 31 C.F.R. Part 285; *see generally* www.fms.treas.gov/news/handbook/index.html#debt.

The non-tax debt arising from the erroneous non-rebate refund in this case should have been referred to FMS for collection in accordance with its statutory powers; it was not so referred. The only provision of the Code relevant here is the limitations provision of § 7405 that effectively bars all collection activity to recover an erroneous non-rebate refund unless suit is filed in a U.S. District Court within two years of the date of the erroneous non-rebate refund.

It is plain from the language of § 7405(b), and has long been recognized by the courts and even the IRS, that the government may file suit in a U.S. District Court to recover an erroneous non-rebate refund. *See Stanley,* 140 F.3d at 1027; *O'Bryant,* 49 F.3d at 346; *Clark v. United States,* 63 F.3d at 88; CCA 200014033; IRM 21.4.5.14. In the present case, the government failed to timely bring suit under § 7405 to legally recover the erroneous non-rebate refund from Plaintiff.

---

[5] Even the tax refund offset program previously administered by the IRS has been transferred to FMS. *See* TD 8837, 1999-3 I.R.B. 426.

## IV.

## ALL OF THE MONIES COLLECTED BY THE IRS FROM PLAINTIFF WERE ILLEGALLY EXACTED IN VIOLATION OF THE LAW AND MUST BE RETURNED TO PLAINTIFF.

The IRS illegally exacted $104,461.04 from Plaintiff by using its tax collection powers of levy under the Code to collect a non-tax debt arising from an erroneous non-rebate refund made to Plaintiff by the IRS on October 14, 2002 in the amount of $80,166.57. The IRS failed to utilize the only statutory procedure available to it to legally recover the erroneous non-rebate refund—filing suit in a U.S. District Court within two years of the erroneous refund as provided for in §§ 7405(b) and 6532(b) or referring this matter to FMS for collection under 31 C.F.R. Part 285. Instead, in violation of the laws of the United States and contrary to explicit procedures set out in the its IRM, the IRS treated the erroneous non-rebate refund as creating a balance due in Plaintiff's 1998 tax account and proceeded to use its tax collection powers to collect $104,461.04 through levies on Plaintiff's bank account and wages. The IRS clearly violated the law by: (1) treating the erroneous non-rebate refund as giving rise to an unpaid tax liability for Plaintiff's 1998 tax year, (2) collecting the amount of the erroneous non-rebate refund apparently based on the previously extinguished tax assessment for Plaintiff's 1998 tax year, (3) collecting amounts in excess of the amount of the erroneous non-rebate refund and attempting to retroactively "legitimize" the collections of these amounts by making a series of entries on Plaintiff's tax transcript indicating it was assessing penalties and interest in the amounts collected after the amounts were collected, and (4) utilizing levies under the Code to collect the erroneous non-rebate refund and the additional amounts without basis in law whatsoever to do so.

Therefore, the unlawfully taking of Plaintiff's money, totaling $104,461.04, through administrative collection methods of levy amounted to an illegal exaction of Plaintiff's money. *See New York Life Ins. Co. v. United States,* 118 F.3d 1553, 1556 (Fed. Cir. 1997); *see also Eastport S.S. Corp. v. United States,* 372 F.2d 1002, 1007 (Ct. Cl. 1967). The illegal exaction of Plaintiff's money was directly caused by the IRS' use of unauthorized procedures for recovering an erroneous non-rebate refund. The return of Plaintiff's money is necessarily implied when the IRS violated the law. *See Norman v. United States,* 429 F.3d 1081, 1095-96 (Fed. Cir. 2005). It has long been decided that money taken without authority from a taxpayer by the government must be returned to the taxpayer. *See O'Bryant, supra*; *Stanley supra*; *Pacific Gas & Electric Co. v. United States,* 417 F.3d. 1375 (Fed. Cir. 2005).

As his sole remedy, Plaintiff is entitled to the return of $104,461.04 illegally exacted from him because the IRS acted without any legal authority, and in direct contradiction of § 7405(b) for recovering the erroneous non-rebate refund and is now time-barred from doing so under § 6532(b).

## V.

## THE SUPREME COURT'S DECISION IN *CLINTWOOD ELKHORN* DOES NOT REQUIRE PLAINTIFF TO FILE A REFUND CLAIM UNDER § 7422 TO RECOVER THE AMOUNT ILLEGALLY EXACTED TO COLLECT A NON-TAX DEBT.

In light of the Supreme Court's recent decision in *Clintwood Elkhorn*, the government takes the position that because Plaintiff's claim is based on an "illegal exaction relating to an erroneous refund for taxes," it is governed by the tax refund provisions of the Code. To use the government's own words, the government is trying to "conflate" a non-tax debt to a tax because it is owed to the U.S. tax collection agency, the

IRS. The government's reliance on *Clintwood Elkhorn* is misplaced. The Supreme Court's holding in *Clintwood Elkhorn* is limited to cases involving "taxes." Because Plaintiff's illegal exaction claim involves a non-tax debt, *Clintwood Elkhorn* has no application to Plaintiff's case.

### A. ***Clintwood Elkhorn* only applies to refund claims of "taxpayers" relating to their "taxes."**

The issue before the Supreme Court in *Clintwood Elkhorn* was whether a tax voluntarily paid by a taxpayer under a Code provision later determined to be unconstitutional and in violation of the Export Clause was subject to the tax refund provisions of the Code. The Supreme Court held that "the plain language of 26 U.S.C. §§ 7422(a) and 6511 requires a taxpayer seeking a refund for a tax assessed in violation of the Export Clause, just as for any other unlawfully assessed tax, to file a timely administrative refund claim before bringing suit against the Government." *Clintwood Elkhorn,* 128 S. Ct. at 1520. It was an obvious conclusion to a "tax" refund claim as expressed by the Supreme Court when it acknowledged that "we have all but decided the question presented over six decades ago in *United States v. A. S. Kreider Co.*, 313 U.S. 443 (1941)." *Id.* at 1516.

*Clintwood Elkhorn* did not involve a dispute as to whether the refund sought was a "tax" but whether the alleged "unconstitutionality" of the tax made it unique thereby permitting the taxpayers to bypass the refund scheme of the Code and bring suit for a refund under the Tucker Act. The taxpayers' argued that because they paid a tax found to be in violation of the Export Clause of the Constitution, the Export Clause created a cause of action against the government under the Tucker Act which allowed the taxpayers to

obtain a refund of taxes paid in years outside the Code's three year statute of limitation on refunds. The Supreme Court dismissed this argument with this statement:

> We need not decide this question here, because it does not matter. If the companies' claims are subject to the Code provisions, those claims are barred whatever the source of the cause of action.

*Id.* at 1517.

The taxpayers' also asserted that Export Clause claims were distinguishable from other constitutional claims because the Export Clause is a prohibition on the tax authority not just a limitation. Again, the Supreme Court rejected taxpayer's argument stating:

> [W]e see no basis for treating taxes collected in violation of its terms differently from taxes challenged on other grounds.

*Id.* at 1518.

The outcome of *Clintwood Elkhorn* has no bearing on Plaintiff's case because in this case he is not taxpayer requesting a refund of an overpaid tax (or sum tantamount to a tax) for his 1998 tax year. Plaintiff's 1998 income tax liability was paid in full on April 15, 1999 and subsequently assessed on September 11, 2002 in accordance with the United States Tax Court decision rendered on February 14, 2002. The erroneous refund Plaintiff received on or about October 14, 2002 created a non-tax debt owed by Plaintiff to the United States as previously concluded by this Court in *Pennoni*. In this case, the United States is attempting to redefine a non-tax debt as a tax debt and a debtor into a taxpayer in order to assert the application of the Code. In *Clintwood Elkhorn*, the taxpayer was trying to redefine an obvious tax amount into a non-tax amount to avoid the application of the Code.

### B. The "any sum" analysis of § 7422 in *Clintwood Elkhorn* is limited to whether "facially unconstitutional taxes" are subject to the tax refund provisions of the Code.

The taxpayers' in *Clintwood Elkhorn* further contended that even if the refund scheme under the Code applies to a tax prohibited by the Export Clause, an exception exists for "facially unconstitutional taxes." Based upon *Enoch v. Williams Packing & Nav. Co.*, 370 U.S. 1 (1962), the taxpayers' argued that the refund scheme did not apply to cases in which "no circumstances" existed under which the tax imposed could be held valid under the Export Clause. However, the Supreme Court distinguished *Williams Packing* because its holding was based on the more narrowly written statute, the anti-injunction provisions of § 7421(a). Unlike § 7421(a), § 7422(a) included the "any sum" language that the Supreme Court in *Clintwood Elkhorn* relied upon in concluding:

> Even if we agreed that a facially unconstitutional tax for purposes of the tax refund scheme is "merely in the 'guise of a tax,'" and therefore not a "tax alleged to have been erroneously or illegally assessed or collected," § 7422(a), it would nevertheless clearly fall into the broader category of "any sum … in any manner wrongfully collected."

*Clintwood Elkhorn,* 128 S. Ct. at 1519-20 (citations omitted).

Although the Supreme Court made it clear that it need not go further than the plain language of § 7422, it offered some analysis of § 7422 to further prove its point that a tax is a tax subject to the Code. As such, the government wrongly interprets *Clintwood Elkhorn* to mean that § 7422 applies to a "broader category" than "taxes," *i.e.*, that simply because it was the IRS that illegally exacted a non-tax debt through its collection powers under the Code, Plaintiff was required to file a refund claim. If the government is correct, then the IRS could collect any and all non-tax debts owed the federal government with impunity and then, to add insult to injury, require debtors to go through the Code tax

refund process before seeking redress of the courts. Certainly, that is not what was intended by the "any sum" language of § 7422.

Collecting a non-tax debt in this manner does not convert the amounts collected into tax amounts or into an amount within the scope of the "any sum" language of § 7422(a). In *Clintwood Elkhorn,* , the Supreme Court was clearly dealing with a suit for the refund of taxes and the applicable statute of limitations. It did not address, explicitly or implicitly, whether a debtor whose non-tax debt is collected using the Code collection procedures is required to first file a tax refund claim with the IRS prior to filing suit in this Court. If the IRS illegally used its levy procedure to collect an amount owed a federal government agency under a contract with a person, it is highly unlikely that the Supreme Court would rule that the person first had to file a refund claim under § 7422(a) prior to filing suit in this Court for the return of his monies.

Significantly, the only provision contained in the Code that authorizes the IRS to collect non-tax debts is § 6402(d). This section authorizes the IRS to collect a non-tax debt owed by a person to any Federal agency by offsetting the amount of any tax refund owed such person and remitting the offset amount to the creditor Federal agency. Where the IRS legally collects a non-tax debt under § 6402(d), § 6402(f) provides (emphasis added):

> No court of the United States shall have jurisdiction to hear any action, whether legal or equitable, brought to restrain or review a reduction authorized by subsection (c), (d), or (e). <u>No such reduction shall be subject to review by the Secretary in an administrative proceeding. No action brought against the United States to recover the amount of any such reduction shall be considered to be a suit for refund of tax.</u> This subsection does not preclude any legal, equitable, or administrative action against the Federal agency or State to which the amount of such reduction was paid or any such action against the Commissioner of Social Security

> which is otherwise available with respect to recoveries of overpayments of benefits under section 204 of the Social Security Act.

Thus, in the only statute allowing the IRS to legally use its collection powers to collect a non-tax debt, from a person, any action brought against the United States to recover the amount collected is not considered to be a suit for refund of tax, and therefore, there is no § 7422 bar making an administrative refund claim. It defies all reason and logic, then, that in the case of a non-tax debt illegally collected by the IRS, there is a § 7422 bar to bringing suit prior to filing an administrative refund claim. It would be absurd to require an administrative refund claim for illegal debt collection activities when none is required for legal debt collection activities. Certainly, § 6402(f) belies the government's implicit argument in this case that the collection of any sum by the IRS invokes § 7422 even when the collection had no connection to a tax, a tax liability or a taxpayer.

Further, Plaintiff could not have filed an administrative refund claim because he was not a taxpayer seeking the return of monies arising from any overpayments of tax, penalties, interest or any other sum related thereto. Section 7701(a)(14) defines a taxpayer as "any person subject to any internal revenue tax." It has already been decided by this Court and the government has acknowledged that Plaintiff's action is not a refund suit for taxes. Section 6511(a) only requires a "taxpayer" to file a claim for a refund of "tax," including penalties and interest related thereto. It is axiomatic that Plaintiff is not required to file a claim for a tax refund under § 7422 when he is not a taxpayer seeking to recover a "tax" or penalties or interest associated with a "tax."

Finally, as previously discussed herein, Plaintiff's 1998 tax year was permanently closed on the date the government assessed the deficiency determined by the Tax Court, which deficiency was simultaneously extinguished by Plaintiff's withholding credits.

Thereafter, there could be no further assertions of tax liability, including penalties and interest, by the government (*see* IRC § 6212(c)(1)) nor any suits for refund by the taxpayer (*see* IRC § 6512(a)).

Therefore, the government's argument that Plaintiff must file a claim for refund prior to bringing this present action under Section 7422(a) must fail because Plaintiff is not a taxpayer claiming a refund of any tax, including the failure to pay penalty and deficiency interest all of which are part of a tax liability.

### C. The alleged assessments of penalties and interest were invalid assessments.

The government argues that some of the amounts levied from Plaintiff's wages were collected to satisfy assessments of penalties and interest assessed between August 2, 2004 and September 27, 2004. The sole basis for asserting penalties and interest were assessed is the Certificate of Assessment,. Implicit in the government's use of the words "to satisfy" is that the collection took place after the assessment. However, the transcript clearly shows that each assessment was made only after an amount equal to the assessment was received by the IRS. Thus, none of the collections were made to satisfy any assessment, rather the assessments were made *ex post facto* in an attempt by the IRS to "legitimize" the prior collection activity.

Further, while the Certificate of Assessment is presumed to be an accurate reflection of assessments contained thereon, a taxpayer may overcome the presumption by showing that the assessments are utterly without foundation. *See United States v. Janus*, 428 U.S. 433, 442 (1976). The alleged assessments are clearly without foundation. Plaintiff owed no tax on which penalties and interest could be imposed. Thus, there was no foundation for any such assessments. Further, as all of the dates of

the alleged assessments are more than three years of the date Plaintiff filed his 1998 tax return, *i.e.*, April 15, 1999, they were clearly invalid assessments. Further, the Certificate of Assessment on its face negates that the IRS on or about each of those dates made a considered determination that Plaintiff was liable as of such dates for the amounts of penalties thereupon assessed. Clearly, if as of August 2, 2004, Plaintiff's accrued failure to pay tax penalty was only $114.68, additional failure to pay tax penalties of $3,781.12 could not have accrued between August 2, 2004 and August 9, 2004 (7 days), nor could an identical amount (*i.e.*, $3,781.12) of additional failure to pay tax penalties have accrued between August 9, 2004 and August 23, 2004 (14 days), yet this is what is reflected on the Certificate of Assessment. Accordingly, because the Certificate of Assessment is on its face clearly incorrect and clearly reflects arbitrary assessments, the Certificate of Assessment should be given no evidentiary weight whatsoever.

Further, Plaintiff never received any notices of deficiency or notices of assessments for penalties and interest and the government has not asserted that any such notices were ever sent by the IRS to Plaintiff.

The government relies on *W. Co. of N. Am. v. United States,* 323 F.3d 1024 (Fed. Cir. 2003), *Poretto v. Usry,* 295 F.2d 499 (5th Cir. 1961), and *Computervision Corp. v. United States,* 445 F.3d 1355, 1364 (Fed. Cir. 2006), as authority that Plaintiff was required under § 7422(a) to file refund claims for alleged assessed penalties and interest. The common thread in these cases is that there was an actual underpayment of "tax" which gave rise to the penalties and interest. As such, these cases are all distinguishable from the present case. There were no unpaid taxes in Plaintiff's 1998 tax year that could

have given rise to any penalty or interest assessment. As previously discussed, tax penalties and deficiency interest are an integral part of a tax liability.

Further, even if the IRS could have made any supplemental assessments to Plaintiff's 1998 tax year, the statute of limitations expired on April 18, 2004 for making any such assessments. Thus, any alleged assessment of penalties and interest after April 18, 2004, as asserted by the government, were unquestionably barred.

Because there is no other evidence supporting the government's assertion that penalties and interest were assessed and then collections were made to satisfy such assessments, this Court should find that all amounts collected were with respect to a non-tax debt and no administrative refund claim was required to be made by Plaintiff for this Court to have jurisdiction over the entire sum Plaintiff is seeking the return of.

**D. Plaintiff's informal claim for the return of his money satisfied any administrative exhaustion requirements prior to Plaintiff instituting suit, and assuming *arguendo* that Plaintiff was required to file an administrative request for a refund, it constituted an informal claim that was never rejected.**

Plaintiff's facsimile of September 9, 2003 to the IRS constituted an informal claim for the return of his money illegally exacted by the IRS. Although it agrees that Plaintiff's claim is based on an illegal exaction, the government has cited no statute or regulation specifying requirements of a formal claim for the return of illegally exacted amounts that Plaintiff failed to meet. Further, assuming *arguendo* that Plaintiff is seeking a refund within the meaning of § 7422(a), Plaintiff's facsimile constituted an informal refund claim which to this date has not been formally rejected.

The informal claim doctrine has long been recognized and applied by the courts in exercising jurisdiction over cases in which the taxpayer failed to file a formal refund

claim but the facts and circumstances of taxpayer's informal claim, viewed in their totality, evidenced adequate and timely notice to the IRS of taxpayer's claim for a refund. *Stelco Holding Co. v. United States,* 42 Fed. Cl. 101, 109 (1998).

This Court cites *Computervision Corp.* as well settled law that formal compliance with the statute and regulations is excused if the refund claim qualifies under the informal claim doctrine. *See Minehan v. United States,* 75 Fed. Cl. 249 (2007). The Federal Circuit and this Court have not imposed strict guidelines for determining whether a taxpayer has made a valid informal refund claim other than the claim must be in writing submitted to the IRS prior to the expiration of the statute of limitations. *Arch Engineering Co. v. United States,* 783 F.2d 190, 192 (Fed. Cir. 1986); *Stelco Holding*, 42 Fed. Cl. at 109; *see New England Elec. System v. United States*, 32 Fed. Cl. 636, 641 (1995) ("* * * no set rules can be elucidated as to what constitutes an adequate informal claim; rather, each case must be determined based on its own unique set of facts. Of primary importance, however, is the existence of *some* written component."); *see also Wall Industries, Inc. v. United States,* 10 Cl. Ct. 82, 98 (1986) ("[T]he cases in this court emphasize that there is no preconceived set of universal facts and circumstances which otherwise define an efficacious informal claim." "[E]ach case is to be decided on its own merits, paying particular attention to the combined effect of the unique facts and circumstances known to the government at the time the alleged informal claim is made.").

"Various notations and figures" on a timely filed income tax return has constituted a valid informal refund claim. *American Radiator & Standard Sanitary Corp. v. United States,* 318 F.2d 915, 920 (Ct.Cl. 1963). The Claims Court ruled that a

taxpayer's objection written on the back of a check paying the tax qualified as an informal refund claim. The taxpayer stated: "This check is accepted as paid under protest pending final decision of the higher courts." *Night Hawk Leasing Co. v. United States,* 18 F.Supp. 938, 941-42 (Ct.Cl. 1937).

The justification for allowing a claim under the informal claim doctrine can be found when the claim, although informally made, put the IRS on notice as to the taxpayer's argument for the refund. The Federal Circuit in *Computervision,* 445 F.3d at 1364, stated "a timely filed claim with purely formal defects is permissible if it fairly apprises the IRS of the basis for the claim within the limitations period." This Court, in *Levitsky v. United States,* 27 Fed. Cl. 235, 241 (1992), found that an informal claim is valid if "the IRS knew of the facts underlying the claim and understood that a claim was being made based upon them." The court looked beyond the claim and examined other written communication between the taxpayer and the IRS to determine if the IRS had adequate notice. *Id.*; *see also New England Elec. System,* 32 Fed. Cl. at 645 ("A court must examine the facts and circumstances to discern whether the total mix of the written component and the particular facts indicate that the IRS knew or should have known that the taxpayer was asserting a right to a refund."); *see also Newton v. United States,* 163 F. Supp. 614, 619 (Ct. Cl. 1958) ("It made no difference that the informal claim was made prior to the time the tax was actually paid since the Commissioner knew or should have known that the plaintiff was claiming a refund, Crenshaw v. Hrcka, supra."); *see also American Radiator & Standard Sanitary Corp.*, 318 F.2d at 920 ("* * *the writing should not be given a crabbed or literal reading, ignoring all the surrounding circumstances

which give it body and content. The focus is on the claim as a whole, not merely the written component.").

Of particular importance to the courts in determining whether the IRS had sufficient notice of the claim is whether an IRS "agent's knowledge gained in auditing the taxpayer's returns sufficed to inform the I.R.S. of the grounds underlying the claim." *Levitsky,* 27 Fed. Cl. at 242; *Wall Industries, Inc.,* 10 Cl. Ct. at 100; *American Radiator & Standard Sanitary Corp.,* 318 F.2d at 921 ("There can therefore be no doubt that * * * a responsible employee of the IRS had 'notice fairly advising the Commissioner of the nature of the taxpayer's claim.'"). In *New England Elec. System,* the court believed that the IRS Agent "knew that the plaintiff disagreed with that assessment, that the plaintiff expected a refund, why the plaintiff expected a refund, and the exact sum for which the plaintiff desired a refund." *New England Elec. System,* 32 Fed. Cl. at 646. The court held that "[t]he informal claim doctrine was developed for precisely this instance when the entire basis of the plaintiff's refund claim was within the knowledge of the IRS from the very beginning." *Id.* at 647.

This Court in *Levitsky,* 27 Fed. Cl. at 240, also clearly stated its perspective on the "notice" issue, by quoting *Kales v. United States,* 115 F.2d 497, 500 (6th Cir. 1940):

> In the administration of Internal Revenue Laws, we are concerned with substance and not form. The prerequisite refunding statutes requiring claim for refund before suit, should receive a practical construction to effectuate their purpose.

In the present case, after having several telephone conversations with IRS personnel in the Memphis office during which he asked them to withdraw the levy and return the amounts previously levied, Plaintiff, in accordance with instructions received from IRS Memphis, sent a facsimile with the notation "Attn: Reconsideration" to IRS

Memphis on September 9, 2003. Plaintiff's facsimile clearly conveyed to the IRS that he was asserting that there was no extant tax liability for his 1998 tax year as that liability had been resolved by the attached Tax Court decision (and other relevant documents) finding that he had overpaid his taxes and was entitled to a refund.

On November 12, 2003, the Houston Appeals Office acknowledged receipt of Plaintiff's claim and assigned Plaintiff's case to Mr. Quinn, the Appeals Officer who was instrumental in reaching the stipulation between the IRS and Plaintiff, the terms of which culminated in the Tax Court Decision dated February 15, 2002. It is indisputable that Mr. Quinn knew from these documents that Plaintiff was asserting that his tax liability was finally determined by the Tax Court as being in a refund position and thus had no tax liability that could be collected through IRS levies.

Mr. Quinn clearly understood that Plaintiff was making a claim for the return of his monies already seized or to be seized by the IRS in direct violation of the Code. He was intimately familiar with the facts of Plaintiff's case, that is, no tax liability existed for Plaintiff's 1998 tax year and that the tax liability for such year had been paid in full through a preexisting withholding credit. Further, as stated in his letter to Plaintiff on November 14, 2003, Mr. Quinn was aware that Plaintiff had received a refund of approximately $80,166 on October 14, 2002. Had Mr. Quinn (or any of the personnel in IRS Memphis) referred to the IRM, he would have quickly determined that the IRS could not resort to levies of Plaintiff's bank account and wages to collect the erroneous non-rebate refund. From the Tax Court decision he helped to reach, Mr. Quinn knew Plaintiff was entitled to, at most, a refund of $2,801; a far cry from the $80,166 Plaintiff was

was refunded. Thus, Mr. Quinn obviously realized that the money sent to Plaintiff by the IRS on October 14, 2002 constituted an erroneous refund.

By Mr. Quinn's own admissions in his letter to Plaintiff of November 14, 2003, he examined Plaintiff's "file, transcript data, etc." Thus, Mr. Quinn also knew or should have known that no new assessment had been made nor any deficiency notice issued to Plaintiff with respect to the erroneous refund. As an Appeals Officer, Mr. Quinn should have known the proper procedures available to the IRS in collecting an erroneous non-rebate refund from a taxpayer. In fact, Mr. Quinn could easily have rectified the situation by ceasing the unauthorized levies on Plaintiff's bank account and wages and instructed IRS Memphis on the proper procedures for collecting the erroneous non-rebate refund from Plaintiff, prior to the running the statute of limitations on October 14, 2004 for the IRS to file suit to recover the erroneous non-rebate refund.

Without a doubt, Plaintiff's claim of September 9, 2003 more than adequately put the IRS on notice of his basis for the return of his money. In accordance with the above-cited authorities, Plaintiff's written claim must be viewed in light of all the circumstances, including his telephone conversations with IRS Memphis and his prior case with Mr. Quinn. Case law does not require Plaintiff's claim to be more specific than it was. Taken as a whole with the prior phone conversations, the accompanying documents and Mr. Quinn's prior involvement in the case, Plaintiff's claim of September 9, 2003 clearly constituted a claim for the return of Plaintiff's money taken by the IRS in violation of the Code.

As set forth below, Plaintiff's claim of September 9, 2003 for the return of his money unlawfully seized by the IRS met the guidelines established by this Court for a valid claim under the informal claim doctrine:

1. It was in writing;

2. It was submitted to the IRS prior to the running of any applicable statute of limitations; and

3. It constituted more than adequate notice to the IRS of Plaintiff's basis for his claim.

Thus, even if Plaintiff was required by § 7422(a) to submit a claim for refund respecting the amounts levied to collect a non-tax debt from Plaintiff, this Court has subject matter jurisdiction under the informal claim doctrine to hear Plaintiff's claim for the return of his money.

## VI.

## THE GOVERNMENT HAS NO AUTHORITY TO RETAIN OR RECOUP ANY MONEY ILLEGALLY EXACTED FROM PLAINTIFF BY THE IRS.

The government's argument that it is entitled to retain or recoup on its counterclaim the monies the IRS illegally exacted from Plaintiff is nothing more than an attempt by the government to assert its time-barred affirmative claim for the recovery of the erroneous non-rebate refund. The government forever lost its right to recover the erroneous non-rebate refund once the statute of limitations expired under § 6532(b) to bring suit under § 7405(b). The recoupment doctrine cannot be extended by this Court to give the government a "second chance" to recover the erroneous refund when it had opportunity and notice to do so well within the statutory time period.

It is well settled that the government may not recover from Plaintiff merely because he received an unjust enrichment or a windfall. *See Stanley, supra; O'Bryant, supra.* Just as the government is unjustly entitled to retain a taxpayer's refund when a taxpayer fails to timely file a claim for refund so must a plaintiff be entitled to retain an erroneous refund when the government failed to properly and timely recover it.

The government's counterclaim is, in essence, a wolf in sheep's clothing. It is an affirmative action by the government to retain funds for an independent wrong based upon the illegal exaction of monies from Plaintiff by the IRS to recover an erroneous non-rebate refund.

**A. The government is not entitled to retain the monies illegally exacted from Plaintiff under *Goldstein.***

The government is not entitled to retain the funds it illegally exacted from Plaintiff based upon the Fourth Circuit's decision in *Goldstein.* *Goldstein* is distinguishable from Plaintiff's case. In *Goldstein,* the IRS erroneously refunded employment taxes to the taxpayer. Upon receipt of the refund, the taxpayer notified the IRS in writing that "it did not understand why it was entitled to the refund." *Id.* at 36. Thereafter, the IRS sent notice of the erroneous refund to the taxpayer and demanded its return. The taxpayer complied with the IRS' demand, albeit under protest. In concluding that the IRS was allowed to retain the erroneous refund, the court in *Goldstein* relied on two critical facts not present in Plaintiff's case: (1) neither party contested that the erroneous refund was a legitimate debt owed by the taxpayer to the IRS, and (2) the taxpayer acknowledged, in writing, the erroneous nature of the refund. *Id.* at 37.

Unlike *Goldstein,* the IRS, in Plaintiff's case, never demanded return of the "erroneous refund" nor did the IRS acknowledge the erroneous refund as a legitimate

debt. Rather, the IRS treated the erroneous refund as unpaid income taxes and instituted unlawful collection activity apparently based on the original (albeit previously extinguished) tax assessment to recover alleged unpaid taxes, and additional amounts later "booked" as penalties and interest for Plaintiff's 1998 tax year. Plaintiff protested the levies as wrongful on the basis that no tax deficiency existed for his 1998 tax year.

Although the circumstances in *Goldstein* are quite different from those in the present case, the government claims that Plaintiff also acknowledged in writing that he was not entitled to the erroneous refund. In *Goldstein*, the taxpayer acknowledged the erroneous nature of the refund upon receipt. In the present case, it is the government's argument that Plaintiff acknowledged the erroneous nature of a refund he was issued in October 2002 back in February 2002 when he stipulated, in a Tax Court case, that he overpaid his 1998 income taxes in the amount of $2,801. The government fails to connect these two events and has introduced no evidence that in February 2002, Mr. Pennoni had the power to see the future and know he would be receiving an erroneous refund. In fact, neither party acknowledged the erroneous refund. Rather, the government simply treated Plaintiff as having unpaid taxes and unlawfully collected it as such, and Plaintiff contested the unlawful taking of his property on the basis that his 1998 taxes were previously paid.

*Goldstein* must be interpreted based upon all of the facts. As succinctly stated in *Stanley*, Goldstein "had actual notice of the erroneous nature of the refund, the IRS made an actual 'demand' for its return, and the taxpayer remitted the erroneous refund. Under these circumstances, the IRS need not resort to an erroneous refund suit, as so held in *Goldstein.*" *Stanley,* 140 F.3d at 1029.

As stated previously herein, none of these facts were present in Plaintiff's case. Therefore, the government's reliance on *Goldstein* as authority for it to retain monies illegally exacted from Plaintiff is not applicable to Plaintiff's case.

**B. The Government Has No Valid Counterclaim To Recoup Any Amounts Awarded to Plaintiff In This Case.**

A valid counterclaim does not presently exist in this case for the government because, if established, it will not defeat or qualify any relief to which the Plaintiff is otherwise entitled from the illegal exaction of Plaintiff's money in violation of federal law.

1. Limited Statutory Authorization to Recovery Erroneous Refund.

In *United States v. Wurts,* 303 U.S. 414 (1938), the Supreme Court acknowledged that the government's right to sue for the recovery of an erroneous refund was independent of statute. Since the 1938 decision in *Wurts*, Congress enacted § 7405(b) authorizing the government to bring suit to recovery an erroneous refund. *See United States v. Cabrera*, 73 A.F.T.R.2d 94-822 (5th Cir. 1994).

The statute of limitations for the government to recover the erroneous refund from Plaintiff expired on or about October 2004, two years from the date the erroneous refund was issued to Plaintiff. The Supreme Court in *Wurts*, acknowledged the two-year statute of limitations as a statutory barrier to the government's recovery of an erroneous refund. It held that the statute began to run against the government from the date the erroneous refund was paid to the taxpayer. *Wurts,* 303 U.S. at 418.

2. No Equitable Modification of § 7405(b).

By arguing the doctrine of equitable recoupment, the government is attempting to circumvent the jurisdictional limitations of § 7405(b). Congress unequivocally set forth

the procedure for the IRS to recover erroneous refunds. The IRS must file suit in a U.S. District Court under 28 U.S.C. § 1345 to recover erroneous non-rebate refunds. Because jurisdiction to hear these types of cases is reserved for the U.S. District Court[6], the Court of Federal Claims lacks jurisdiction to allow any recovery of erroneous refunds by the government. The Supreme Court in *United States v. Dalm,* 494 U.S. 596, 608 (1990), stated that the court in which the equitable recoupment claim is brought must have independent jurisdiction to resolve the claim. The Supreme Court also found that because the Tax Court has no jurisdiction to consider recoupment, the availability of the remedy would depend on diverting the litigation to the district courts. *Rothensies v. Electric Storage Battery Co.*, 67 S. Ct. 271 (1946) citing *Gooch Milling and Elevator Co. v. Commissioner,* 320 U.S. 418 (1943).

Further, the government is essentially asserting that the statute of limitations under § 6532(b) should be tolled in accordance with the doctrine of recoupment. However, equitable tolling has been prohibited for § 6511. *Webb v. United States,* 66 F.3d 691, 702 (4th Cir. 1995), *aff'g* 850 F.Supp. 489, 492-93 (E.D. Va. 1994). In *Porter v. United States,* 919 F.Supp. 927 (E.D.C. Va. 1996), the court dismissed the taxpayer's argument by stating that that "it would be unfair not to allow them to make a refund claim stating that it overlooks the apparent source of the inequity: plaintiffs' own decision not to file a return for 1987 until 1993." This rationale applies to the present case when the IRS opted to use unauthorized levies to recover the erroneous refund rather than bring suit in U.S. District Court to properly recover it.

---

[6] In the district court, Plaintiff would be entitled to a trial by jury; no trial by jury is available here.

All of the facts were plainly laid out to put the IRS on notice that it had issued Plaintiff an erroneous non-rebate refund: (1) there was a Tax Court decision reciting Plaintiff's 1998 income tax deficiency as $72,199 and an overpayment of income tax of $2,801; (2) on September 11, 2002, the IRS assessed Plaintiff's 1998 income tax liability; (3) On October 14, 2002, the IRS issued Plaintiff a refund of $80,166.57 rather than the $2,801 recited by the Tax Court; (4) the IRM clearly sets forth detailed procedures for identifying and recovering erroneous refunds; (5) on September 9, 2003, Plaintiff sent a facsimile to the IRS demanding it stop the wrongful levies because no tax deficiency existed for his 1998 tax year; (6) Plaintiff's appeal to stop the levies was reassigned to Mr. Quinn, the IRS Houston Appeals Officer, who worked with Plaintiff to settle his Tax Court case; and (7) in a letter dated November 14, 2003, Mr. Quinn acknowledged reviewing Plaintiff's file and transcript for his 1998 tax year. At the latest, the IRS should have discovered as of this date its error and taken corrective measures to properly recover the erroneous non-rebate refund. The statute of limitations for the IRS to file suit under § 7405(b) and properly recover the erroneous non-rebate refund from Plaintiff did not expire until almost one year later, October 2004.

Further, the government has no defense to Plaintiff's claim for the return of monies illegally exacted from him in violation of § 7405(b). *See Bull v. United States*, 295 U.S. 247, 262 (1935) ("Recoupment is in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded."). Plaintiff's action is not grounded on the merits of whether the government could have recovered the erroneous refund but that the government illegally exacted money from Plaintiff by failing to follow federal law for collecting an erroneous non-rebate refund. The

government allowed the statute of limitations to expire without any fault or inducement on the part of Plaintiff. In fact, it was Plaintiff that put the IRS on notice of its wrongful levies of taxes previously paid. The government has brought forth no evidence of any bad act by Plaintiff to justify equitable recoupment.

If there are exceptions to the statute of limitations, it is for Congress rather than for the Courts to create and limit them. Therefore, the government has no rights to retain the funds after the statute of limitations expired for properly recovering the erroneous non-rebate refund.

## CONCLUSION

For the reasons stated herein, the United States' Motion for Summary Judgment should be denied, and Plaintiff's Cross-Motion for Summary Judgment should be granted and all allowable costs assessed against the United States.

Respectfully submitted,

s/ Jennifer Hunter Walz
JENNIFER HUNTER WALZ
P.O. Box 430341
Houston, Texas 77243-0341
(713) 446-7730 – phone
(281) 907-0103 - facsimile

COUNSEL FOR PLAINTIFF

Dated: June 2, 2008