No. 06-861 T
(Judge Firestone)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

LAWRENCE D. PENNONI,

Plaintiff

v.

THE UNITED STATES,

Defendant

**REPLY TO PLAINTIFF'S OPPOSITION TO THE MOTION OF THE UNITED STATES FOR SUMMARY JUDGMENT, AND OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

NATHAN J. HOCHMAN
Assistant Attorney General

DAVID GUSTAFSON
MARY M. ABATE
JOSEPH B. SYVERSON
Attorneys
Justice Department (Tax)
Court of Federal Claims Section
P.O. Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6508
(202) 514-9440 (facsimile)

# TABLE OF CONTENTS

**Page(s)**

**Reply to Plaintiff's Opposition to the Motion of the United States for Summary Judgment, and Opposition to Plaintiff's Cross-motion for Summary Judgment**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

1. **Assuming, *arguendo*, that the Court has jurisdiction over the amended complaint, under the principle followed in *Goldstein, Baron & Lewis, Chartered v. United States*, and the unique facts in this case, plaintiff effectively waived any objection he might have had to the IRS's collection of the erroneous refund amount by levy**. . . . . . . . . . . . . . . . . . . . . . . . 2

2. **Plaintiff fails to address the clear import of *Clintwood Elkhorn*'s discussion of the "any sum" language of Section 7422(a)–*i.e.*, that plaintiff was required to file a claim for refund of amounts collected to recoup the erroneous refund prior to bringing suit, regardless of whether his suit is one for refund of a "tax"**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

3. **Plaintiff did not file a claim for refund prior to bringing suit; thus the Court lacks jurisdiction over the subject matter of the complaint**. . . . . . . . . . 9

4. **Defendant is entitled to judgment on its counterclaim if the Court determines that it has jurisdiction and plaintiff prevails on his claim**. . . . . . 11

5. **Plaintiff's contention that the penalty and interest assessments were not made is unsupported by any evidence that would rebut the presumption of correctness of the Certificate of Assessments and Payments**. . . . . . . . . . . . 14

6. **Plaintiff has abandoned his claim for interest**. . . . . . . . . . . . . . . . . . . . . . . . . . 16

**Conclusion**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**Appendix:**

**Supplemental Declaration of Joseph B. Syverson**

| **Exhibit** | **Description** |
|---|---|
| **11.** | Certificate of Assessments, Payments, and Other Specified Matters for Plaintiff's 2000 individual income tax year |

## TABLE OF AUTHORITIES

**Cases:**

*Alexander Proudfoot Co. v. United States*, 454 F.2d 1379 (Ct. Cl. 1972).. . . . . . . . . . . . . . 8

*American Radiator & Stand. Sanitary Corp. v. United States*, 318 F.2d 915 (1963). . . . 10

*Americold Corp. v. United States*, 28 Fed. Cl. 747 (1993). . . . . . . . . . . . . . . . . . . . . 13, 14

*Baral v. United States*, 528 U.S. 431 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Barenfeld v. United States*, 442 F.2d 371 (Ct. Cl. 1971). . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Dysart v. United States*, 340 F.2d 624 (Ct. Cl. 1965). . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1 (1962).. . . . . . . . . . . . . . . . . . . 7

*Goldstein, Baron & Lewis, Chartered v. United States*, 995 F.2d 35
(4th Cir. 1993), *cert. denied*, 510 U.S. 1041 (1994). . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 5

*Helvering v. Taylor*, 293 U.S. 507 (1935). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Irwin v. Department of Veteran Affairs*, 489 U.S. 89 (1990).. . . . . . . . . . . . . . . . . . . 12, 13

*Kuehn v. United States*, 480 F.2d 1319 (Ct. Cl. 1973). . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Mobil Corp. v. United States*, 67 Fed. Cl. 708 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Nick's Cigarette City, Inc. v. United States*, ___ F.3d ___, 2008 WL 2600792
(7th Cir. July 2, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Reiter v. Cooper*, 507 U.S. 258 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Rocovich v. United States*, 933 F.2d 991 (Fed. Cir. 1991).. . . . . . . . . . . . . . . . . . . . . 14, 15

*Stanley v. United States*, 140 F.3d 1023 (Fed. Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . 3

*Union Pac. R. R. v. United States*, 389 F.2d 437 (Ct. Cl. 1968).. . . . . . . . . . . . . . . . . . . . 10

*United States v. Brockamp*, 519 U.S. 347 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Clintwood Elkhorn Mining Co.*, 128 S. Ct. 1511 (2008).. . . . . . . . . . 2, 6-9

*United States v. Janis*, 428 U.S. 433 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Western Pacific Railroad Co.*, 352 U.S. 59 (1956). . . . . . . . . . . . . . . . . 12

*Webb v. United States*, 66 F.3d 691 (4th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**Statutes:**

Internal Revenue Codes of 1986 (26 U.S.C.):

§ 6330.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

§ 6402.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

§ 6511.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

§ 6513.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

§ 6532.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

§ 7405.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

§ 7422.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6-9

28 U.S.C. § 1345. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

28 U.S.C. § 1503. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**Miscellaneous:**

BLACK'S LAW DICTIONARY 1525 (8th ed. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Federal Rule of Evidence (FRE):

§ 803(8). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

§ 902(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 06-861 T
(Judge Firestone)

LAWRENCE D. PENNONI,

Plaintiff,

v.

THE UNITED STATES,

Defendant

**REPLY TO PLAINTIFF'S OPPOSITION TO THE MOTION OF THE UNITED STATES FOR SUMMARY JUDGMENT, AND OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Since the inception of this case, plaintiff has reacted to arguments supporting our motions to dismiss the complaint and the amended complaint by regularly changing position and asserting inconsistent factual allegations. For example, the original complaint did not mention a refund claim. After we filed a motion to dismiss on jurisdictional grounds, based on a failure to file a refund claim, plaintiff filed an amended complaint. The amended complaint did not contend that no refund claim was required; rather, it alleged that an informal claim had been filed (Am. Complt. ¶ 4). The amended complaint also alleged that the "informal claim" had been disallowed by the IRS, by letter of November 14, 2003 (*id.* ¶ 4, sentence 6). Thereafter, we demonstrated in our motion to dismiss the amended complaint that the purported informal claim

was not a valid claim under the law in this Court. Plaintiff reacted (in his brief opposing our motion) by asserting (inconsistently with the amended complaint) that no refund claim was required under § 7422.[1]

As discussed below, we continue to take the position that plaintiff was required to file a claim for refund prior to bringing suit, as confirmed by the Supreme Court's opinion in *United States v. Clintwood Elkhorn Mining Co.*, 128 S. Ct. 1511 (2008), and that because he failed to do so, this Court lacks subject matter jurisdiction. In addition to that and the other points discussed below, moreover, if the Court were to conclude that it has jurisdiction, the undisputed facts gleaned from plaintiff's own exhibits filed in this case demonstrate that plaintiff has waived any objection he might otherwise have had to the procedures undertaken by the IRS to recoup the erroneous refund.

**1. Assuming, *arguendo*, that the Court has jurisdiction over the amended complaint, under the principle followed in *Goldstein, Baron & Lewis, Chartered v. United States*, and the unique facts in this case, plaintiff effectively waived any objection he might have had to the IRS's collection of the erroneous refund amount by levy**

As we pointed out in our opening brief (at 30), the Court of Appeals for the Fourth Circuit held (*sua sponte*) in *Goldstein, Baron & Lewis, Chartered v. United States*, 995 F.2d 35 (4th Cir. 1993), *cert. denied*, 510 U.S. 1041 (1994), that the taxpayer had waived any right to object to the fact that the IRS had recouped the erroneous refund in that case not in accordance with statutory procedures, by having acknowledged in writing to the IRS that he was not entitled to retain the funds:

---

[1]Unless otherwise noted, the section symbol ("§") or the word "section" refers to the Internal Revenue Code, codified in Title 26 of the United States Code, as amended and in effect during the relevant period.

> The critical fact that leads us to reverse the district court in this case, however, is the fact that the taxpayer acknowledged in writing that it was not entitled to the refund. Indeed, no one contests the fact that the taxpayer owed the money; the taxpayer's sole contention is that the IRS should be required to follow its established procedures for collecting erroneous refunds. Although we agree with that proposition, the taxpayer's acknowledgement of the legitimate tax debt owed to the IRS waived any objection it may have had to collection of the erroneous refund.

*Id.* at 37. We also noted (at 31) that the Federal Circuit agreed that, "under [the] circumstances [of *Goldstein*], the IRS need not resort to an erroneous refund suit, as so held in *Goldstein*." *Stanley v. United States*, 140 F.3d 1023, 1029 (Fed. Cir. 1998). While *Stanley* factually distinguished *Goldstein*, the point of its approval of *Goldstein* is that, under appropriate facts, this Court should find that a taxpayer such as plaintiff has waived a right to object to the IRS's recovery of an erroneous refund by means that may not strictly conform to prescribed statutory methods.

The undisputed facts of this case are just such facts, unquestionably demonstrating that plaintiff has waived whatever objection he may once have had regarding the IRS's manner of collection of the erroneous refund by acknowledging in writing the amount of refund he was owed, and by failing to avail himself of the administrative remedies provided for in the Code:

(1) On *February 14, 2002*, plaintiff entered into a stipulation in Tax Court acknowledging that he was entitled to a refund of exactly $2,801.00. (DPF ¶ 22-26; Syverson Decl. Ex. 8.)[2]

(2) On *October 14, 2002*, plaintiff received a refund of $80,166.57. (DPF ¶ 31; Syverson Decl. Ex. 1.)

---

[2] "DPF" refers to Defendant's Proposed Findings of Uncontroverted Fact, filed with this Court on May 2, 2008, and Defendant's Additional Proposed Findings of Uncontroverted Fact, filed with this Response and Reply. "Syverson Decl." refers to the Declaration of Joseph B. Syverson, filed with this Court on July 2, 2007.

(3) On *November 25, 2002*, plaintiff received notice that the IRS regarded the erroneous refund he received as having created a balance due in his account for his 1998 individual income tax year. (DPF ¶ 35; Syverson Decl. Ex. 1.)

(4) On *December 30, 2002*, plaintiff first received notice from the IRS *Austin* Service Center that the IRS intended to levy to recover the debt created by the erroneous refund. (DPF ¶¶ 36, 75; Pennoni Decl. Ex. 3)[3]

(5) On *May 29, 2003*, plaintiff received final notice from the IRS *Fresno* Service Center that the IRS intended to levy his property to satisfy the debt created by the erroneous refund, and, in the same notice, received notice of his right to request a collection due process hearing under § 6330 if he objected to the proposed collection by levy. (DPF ¶¶ 38, 76; Pennoni Decl. Ex. 4.)

(6) As of *June 30, 2003*, plaintiff had failed to exercise his right to a collection due process hearing within the prescribed 30-day time period. (DPF ¶ 41; Syverson Decl. Ex. 1.)

(7) On or about *July 22, 2003*, plaintiff received from the IRS *Fresno* Service Center the taxpayer's copy of a notice of levy directed to his employer. (DPF ¶¶ 77, 78; Pennoni Decl. Ex. 6.)

(8) On or about *July 22, 2003*, plaintiff completed the bottom portion of the notice, indicating his filing status as head of household, and listing a dependent, resulting in a corresponding decrease in the periodic amount of the levies on his wages. (DPF ¶ 79; Pennoni Decl. Ex. 6.)

(9) On *September 9, 2003*, plaintiff sent a facsimile to the IRS *Memphis* Service Center that stated that the IRS's collection activities were "wrongful." (DPF ¶¶ 51-62; Am. Compl. Ex. A).

As this recitation of the undisputed facts demonstrates, plaintiff: (a) acknowledged in writing the exact amount of the refund to which he was entitled; (b) received notice that the IRS intended to collect by levy the debt that was created when he received a refund in excess of this amount; (c) received notice of his right to a collection due process hearing in which he could

---

[3]"Pennoni Decl." refers to the declaration of plaintiff, Lawrence D. Pennoni, attached to Plaintiff's Response in Opposition to the United States' Motion to Dismiss with Prejudice Plaintiff's Amended Complaint, filed with this Court on August 2, 2007.

challenge the proposed levy; but (d) decided not to exercise this right within the period of time prescribed by law. As we noted in our opening brief (at 4), plaintiff is and was during that period a very experienced tax lawyer, and thus can be presumed to have understood the different functions of the different IRS Service Centers involved, as well as to have understood the consequences of waiving his due process right to contest the proposed levy, before levy action began. But, rather than exercise that right and run the risk that, if actually presented with the reasons plaintiff now asserts in litigation as to why the IRS's collection by levy is wrongful, the IRS would have either reassessed his 1998 income tax liability, or initiated a suit under § 7405, plaintiff chose instead to wait and then send a fax message to the *Memphis* Service Center (which had not previously been involved with his case and presumably was unaware of the erroneous refund) that simply asked to have collection stopped, without (as discussed *infra*) any mention of the legal grounds upon which plaintiff now seeks to recover the levied funds. Given the fact that plaintiff has now filed this suit to recover money collected from him to recover the debt created by the erroneous refund, one can only surmise that plaintiff decided to forego his collection due process rights because he calculated that he would have a better chance of ultimately keeping the errouneous refund amount by doing so.

Given these undisputed facts, plaintiff's attempt to distinguish this case from *Goldstein* fails. Plaintiff acknowledges that *Goldstein* is good law, and does not dispute that plaintiff acknowledged in writing that he was entitled only to a refund that is far less than the refund he received. Instead, plaintiff attempts to distinguish *Goldstein* on the sole ground that plaintiff acknowledged in writing the amount of refund he was owed *before* the issuance of the erroneous refund, rather than after. Plt. Br. at 38.

This factual distinction between *Goldstein* and this case is immaterial. As the *Goldstein* court made clear, the crux of the issue is whether anyone "contests the fact that the taxpayer owed the money . . . ." *Goldstein*, 995 F.2d at 37. Plaintiff does not contest this, and indeed cannot contest this, in light of his stipulation in Tax Court that he was only entitled to a refund of $2,801.00–a vastly smaller amount than the refund he actually received. Furthermore, after the erroneous refund was issued, plaintiff failed to exercise his rights to object to the manner in which the IRS proposed to collect this debt. Thus, following *Goldstein*, plaintiff has "acknowledged in writing" that he is not entitled to the refund that he did receive, and has waived his right to object to the manner in which this amount was collected from him, and thus cannot recover here the amount he has admitted he owes.

**2. Plaintiff fails to address the clear import of *Clintwood Elkhorn*'s discussion of the "any sum" language of Section 7422(a)–*i.e.*, that plaintiff was required to file a claim for refund of amounts collected to recoup the erroneous refund prior to bringing suit, regardless of whether his suit is one for refund of a "tax"**

In *United States v. Clintwood Elkhorn Mining Co.*, 128 S. Ct. 1511 (2008), the Supreme Court made clear that the requirement to file a claim for refund prior to bringing suit for refund of "any sum . . . in any manner wrongfully collected" contained in Section 7422(a) of the Internal Revenue Code extends beyond suits for refund of taxes. *Clintwood Elkhorn*, 128 S. Ct. at 1516. In addition, the Court explicitly concluded that the "any sum" language extends to suits for refund of amounts collected "merely in the guise of a tax," *i.e.,* amounts collected by the IRS on the presupposition that the amounts at issue are collected to satisfy a tax liability, even if that is not in fact the case. *Id.* at 1519-20. As we explained in our opening brief, and as plaintiff does not dispute, that is precisely what happened here: the IRS proceeded to use its collection powers

under the Code to collect from plaintiff on the presupposition that it was collecting his 1998 federal income taxes.

Faced with these realities, plaintiff, unsurprisingly, attempts to explain away *Clintwood Elkhorn*. Plaintiff attempts to do so by arguing that the Court's discussion of the "any sum" language is only applicable to "facially unconstitutional taxes." Pl.'s Br. at 25-26. This claim, however, is belied by even a cursory reading of *Clintwood Elkhorn*. There, the respondent coal companies argued, *inter alia*, that they were not required to file claims for refund for amounts paid as coal excise taxes because these amounts were ultimately collected "merely in the guise of a tax" within the meaning of *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1 (1962), and hence not a "tax" for purposes of § 7422(a). *Clintwood Elkhorn*, 128 S. Ct. at 1519. The Supreme Court rejected this argument *because* it concluded that amounts collected "merely in the guise of a tax," fall under the category of "any sum . . . in any manner wrongfully collected." *Id.* at 1519-20. Consequently, the Court did not need to reach the issue of whether the coal excise tax was merely "in the guise of a tax," because, even if this were so, "it would nevertheless clearly fall into the broader category of" the "any sum" language. *Ibid.* Thus, contrary to plaintiff's contention, *Clintwood Elkhorn* concluded that the "any sum" language of § 7422(a) extends to amounts collected "merely in the guise of a tax" within the meaning of *Williams Packing*, not simply to "facially unconstitutional taxes."

In addition to this implausibly narrow reading of *Clintwood Elkhorn*, plaintiff argues that if defendant's interpretation of § 7422(a) is correct, then "the IRS could collect any and all non-tax debts owed the federal government with impunity . . . ." Pl.'s Br. at 25. This is simply not the case. Requiring pre-suit filing of a claim for refund for recovery of sums collected by the IRS

using the tax collection mechanisms of the Code, would not, of course, give the IRS the legal right to collect amounts that it is not otherwise permitted to collect.[4]

Plaintiff also contends that § 6402 supports his strained reading of *Clintwood Elkhorn*, when, in fact, this section actually underscores the deficiencies in plaintiff's interpretation. In particular, plaintiff points to § 6402(f) as evidence in favor of his interpretation. Section 6402(f) contains various procedural rules applicable to reductions in the amount of an overpayment authorized by subsections (c), (d), and (e) of § 6402. These subsections authorize the IRS to reduce the amount of an overpayment to a taxpayer to satisfy certain child support obligations, debts owed to the federal government, and state tax debts, respectively. As plaintiff points out, one of the rules applicable to such reductions under § 6402(f) is that "[n]o action brought against the United States to recover the amount of any such reduction shall be considered to be a suit for refund of tax."

Plaintiff, paradoxically, contends that this provision in § 6402(f) supports his interpretation of § 7422(a), because this provision in § 6402(f) supposedly "allow[s] the IRS to legally use its collection powers to collect a non-tax debt." Pl.'s Br. at 27. Even if there is some sense in which that is the case,[5] § 6402(f) in fact tells *against* plaintiff's interpretation of §

---

[4]Plaintiff also suggests that requiring a claim for refund under such circumstances would "add insult to injury" by requiring filing a claim for refund prior to filing suit. Pl.'s Br. at 25-26. Contrary to this assertion, the purpose of the administrative claim requirement of § 7422(a) is not to punish claimants, but to ensure that claims are presented to the IRS prior to litigation to permit the IRS to resolve them prior to litigation, if possible. *See, e.g., Alexander Proudfoot Co. v. United States*, 454 F.2d 1379, 1383 (Ct. Cl. 1972).

[5]Section 6402 does not permit direct use of the collection mechanisms provided for collection of federal taxes in the Code to collect the liabilities described in § 6402(c), (d), and (e)—it merely permits the IRS to reduce the amount of an overpayment that would otherwise be
(continued...)

7422(a). The presence of an express provision excluding reductions under § 6402(c), (d), and (e) from the scope of § 7422(a) suggests that, but for the express exclusion, these overpayment reductions would fall within the scope of § 7422(a). This, in turn, reinforces the conclusion of the *Clintwood Elkhorn* court that Congress intended § 7422(a) to have "expansive reach." *Clintwood Elkhorn*, 128 S. Ct at 1516.

**3. Plaintiff did not file a claim for refund prior to bringing suit; thus the Court lacks jurisdiction over the subject matter of the complaint**

Plaintiff has clearly failed to establish that his purported claim for refund satisfies the informal claim doctrine as developed in the case law of this Circuit. In our opening brief, we demonstrated that plaintiff's purported claim for refund did not satisfy the requirements of the informal claim doctrine because, *inter alia*, it did not give notice to the Service that plaintiff was claiming a right to refund.[6] *See* Def.'s Br. at 23-28. Plaintiff does not dispute that his facsimile (the purported informal claim) did not give actual notice to the IRS that he was claiming a right to refund. Rather, plaintiff contends that the Appeals Officer who received his facsimile "should have known the proper procedures available to the IRS in collecting an erroneous non-rebate refund from a taxpayer." Pl.'s Br. at 35. That is, plaintiff's position is that the IRS should have inferred that plaintiff was "implicitly" claiming a right to refund, notwithstanding that the only

[5](...continued)
refundable to a taxpayer in order to satisfy other specified debts.

[6]We also argued that plaintiff did not file a valid claim for refund because he failed to comply with the regulations governing administrative claims for refund, and the IRS did not waive these requirements in this case, as binding Supreme Court precedent establishes that it must in order to excuse a taxpayer's failure to comply with the applicable regulations. *See* Def.'s Br. at 20-23; *see also Nick's Cigarette City, Inc. v. United States*, ___ F.3d ___, 2008 WL 2600792, at *4 (7th Cir. July 2, 2008) (IRS cannot waive refund claim requirement). Plaintiff's brief offers *no* response whatsoever to this argument.

request in his purported informal claim was that the Service cease its collection activity.

The line of cases relied on by plaintiff for the proposition that a reasonably knowledgeable responsible IRS employee can be charged with constructive notice that a taxpayer is seeking a refund stems from the decision of the Court of Claims in *American Radiator & Stand. Sanitary Corp. v. United States*, 318 F.2d 915, 162 Ct. Cl. 106 (1963). In that case, the taxpayer had indicated in writing in three different places on the return that certain amounts were refundable, and the IRS agent who audited the return was intimately knowledgeable of the details. In a subsequent opinion, the Court of Claims explained why *American Radiator* did not dictate the same result in that case. In *Kuehn v. United States*, 480 F.2d 1319, 1322 (Ct. Cl. 1973) (quoting *Barenfeld v. United States*, 442 F.2d 371, 375 (Ct. Cl. 1971), and *Union Pac. R. R. v. United States*, 389 F.2d 437, 445 (Ct. Cl. 1968)), the Court stated:

> The crucial point [in *American Radiator*] was that the 1949 return made it clear, at that time, that the plaintiff was claiming credit for a tax refund. The same is not true in this case. Here, the plaintiff's attempt to take the deduction in 1968 did not provide notice to the defendant that it was also seeking, in the alternative, a refund applicable to 1962 and 1963, although the IRS may have known that this was likely. It has been held on numerous occasions that, simply because the IRS has access to information that could make it think the taxpayer might desire to claim a refund, "the Internal Revenue Service is not required to weigh circumstantial evidence in order to determine whether a taxpayer is asking for a tax refund." . . . "Availability of information is not equivalent to notice that a claim is asserted based on that information. That claim must somehow be communicated to the Service."

At best, plaintiff's facsimile, coupled with the information available to the Service regarding plaintiff's 1998 individual income tax liability, might have given the IRS information "that could make it think" that he might desire a refund of his 1998 individual income taxes. This, however, is not sufficient to satisfy the notice prong of the informal claim doctrine. To the contrary, plaintiff's claim had to "somehow be communicated to the [IRS]," because plaintiff

was not entitled to rely on the mere "availability of information" to the IRS regarding a potential claim for refund that he might have had.

Moreover, plaintiff apparently does not dispute that he failed to set forth in his purported informal claim for refund the legal and factual grounds upon which he relies before this Court. Instead, plaintiff simply contends that his purported informal claim was adequate because Appeals Officer Quinn should have known the factual and legal grounds for his claim, given his prior involvement with plaintiff's 1998 tax year when it was in litigation before the Tax Court. *See* Pl.'s Br. at 33-35. Although a taxpayer may rely upon the knowledge of the taxpayer's case that IRS employees have gained from prior involvement with the case, prior involvement with the taxpayer's case by IRS employees does not relieve the taxpayer of its obligation to "describe the legal and factual basis for the refund" in the taxpayer's claim for refund. *See Mobil Corp. v. United States*, 67 Fed. Cl. 708, 718 (2005). As defendant explained in its opening brief, plaintiff's purported claim for refund fails entirely to describe any legal grounds upon which the purported claim could be based, and fails to adequately describe the factual grounds underpinning the purported claim. Def.'s Br. at 26-27.[7]

**4. Defendant is entitled to judgment on its counterclaim if the Court determines that it has jurisdiction and plaintiff prevails on his claim**

Plaintiff's brief largely ignores the arguments defendant presented in support of its protective counterclaim. Plaintiff first argues that defendant's counterclaim is untimely because it was not filed within the time period prescribed by § 6532(b). Pl.'s Br. at 40-41. Plaintiff's

[7]In our opening brief, we argued, in the alternative, that even if plaintiff had filed a valid informal claim, his suit should be dismissed because the grounds for refund he relies upon in this Court substantially vary from the grounds he stated in his claim for refund with the Service. Def.'s Br. at 27-28. Plaintiff has not responded to this argument.

brief, however, completely ignores the Supreme Court precedent that defendant cited in support of the position that the limitation period prescribed in § 6532(b) does not apply to defendant's *counterclaim*. Def. Br. at 32-37.

Instead of directly addressing this line of binding authority, plaintiff argues that defendant's position amounts to "equitable tolling" of § 6532(b). In the first instance, this characterization of defendant's position is simply mistaken. A statute of limitations is "tolled" when the prescribed limitations period applicable to a claim stops running for some period of time. *See* BLACK'S LAW DICTIONARY 1525 (8th ed. 2004) (defining "toll" as "to stop the running of"). By contrast, defendant, following *United States v. Western Pacific Railroad Co.*, 352 U.S. 59 (1956), and *Reiter v. Cooper*, 507 U.S. 258 (1993), has argued here that its counterclaim is not subject to § 6532(b) in the first place, because it is a claim for recoupment arising out of the same transaction.

Further, even if plaintiff could overcome this obstacle, the reasons given for disallowing equitable tolling in the authorities cited by plaintiff are inapplicable to the counterclaim, because it is not a suit against the United States. In *Webb v. United States*, 66 F.3d 691 (4th Cir. 1995), the Court held that § 6511, which prescribes the time period in which a *taxpayer* can file an administrative claim for refund of a payment, could not be equitably tolled. *Id.* at 698-702. The starting point for the *Webb* court in reaching this holding was *Irwin v. Department of Veteran Affairs*, 489 U.S. 89 (1990), which held that there was a rebuttable presumption in favor of equitable tolling of statutes of limitations in suits filed *against* the United States. *Webb*, 66 F.3d at 695-96. After examining the issue, the Court concluded that this presumption *was* rebutted in

the case of § 6511.[8] *Id.* at 701-02. Consequently, the Court held that § 6511 cannot be equitably tolled.

Defendant's counterclaim, by contrast, is not a claim *against* the United States, but rather is a claim *by* the United States. Thus, the reasoning of *Webb* is inapplicable to the counterclaim. The question of whether the *Irwin* presumption has been rebutted simply does not arise for a statute of limitations that is not a statute of limitations against the United States, because, by its terms, it applies only to certain claims *against* the United States. *See Irwin*, 489 U.S. at 95-96. Thus, *Webb*'s holding that § 6511 cannot be equitably tolled because the *Irwin* presumption is rebutted is simply not applicable to the issue of whether defendant's counterclaim is timely.[9]

Plaintiff also contends that this Court lacks jurisdiction over defendant's counterclaim. Pl.'s Br. at 40. Plaintiff's contention, however, is squarely at odds with 28 U.S.C. § 1503, which gives this Court "jurisdiction to render judgment upon any set-off or demand by the United States against any plaintiff." Thus, it is settled beyond dispute that this Court has jurisdiction over counterclaims by the United States. *See, e.g., Americold Corp. v. United States*, 28 Fed. Cl. 747,

---

[8]This conclusion was later reached by the Supreme Court in *United States v. Brockamp*, 519 U.S. 347 (1997).

[9]It is also worthy of note that, in making this argument, plaintiff mistakenly describes the cause of action defendant is asserting in its counterclaim as "equitable recoupment." *See* Pl.'s Br. at 39 (asserting that defendant is "arguing the doctrine of equitable recoupment." As this Court's predecessor explained in *Dysart v. United States*, 340 F.2d 624, 627 (Ct. Cl. 1965), the "the defense of recoupment in a refund suit" is "commonly referred to as 'equitable recoupment'," and "involves attempts to set off tax liability from one year against that for another year after the state of limitations has run or where attempts are made to set off the tax liability of one taxpayer against that of a second taxpayer." Here, defendant's protective counterclaim is premised on the assumption that the Court has held that plaintiff's suit is *not* a tax refund suit, so defendant's cause of action for recoupment is not one for "equitable recoupment," as that term is customarily used in tax refund litigation.

750-51 (1993).

Plaintiff's only argument that this Court lacks jurisdiction over the counterclaim is that 28 U.S.C. § 1345 gives the district courts exclusive jurisdiction over claims for erroneous refunds. *See* Pl.'s Br. at 40. This argument is belied by the text of 28 U.S.C. § 1345 itself, which merely gives the district courts "original jurisdiction of all civil actions, suits or proceedings *commenced by the United States*, or by any agency or officer thereof expressly authorized to sue by Act of Congress" (emphasis added). By its terms, this provision does *not* restrict the counterclaim jurisdiction of this Court; rather, it simply gives jurisdiction to the district courts over affirmative actions initiated by the United States. Thus, it does not restrict the jurisdiction of this Court over counterclaims by the United States.[10]

**5. Plaintiff's contention that the penalty and interest assessments were not made is unsupported by any evidence that would rebut the presumption of correctness of the Certificate of Assessments and Payments**

Finally, plaintiff has offered this Court no evidence that the penalty and interest assessments reflected on the certified transcript for plaintiff's 1998 individual income tax year were not in fact made. As is well-settled, a Certificate of Assessments, Payments, and Other Specified Matters is presumptive proof of the matters specified therein, and is a sufficient basis for a Court to make a factual finding in the absence of countervailing evidence. *See Rocovich v.*

[10]In the section of plaintiff's brief addressing this issue, plaintiff also asserts that "the government has no defense to [p]laintiff's claim for the return of monies illegally exacted from him in violation of § 7405(b)." Pl.'s Br. at 41. As demonstrated *infra*, this is not the case, but, assuming *arguendo* that it is, plaintiff says nothing as to why this constitutes a defense to the counterclaim.

*United States*, 933 F.2d 991, 994 (Fed. Cir. 1991).[11]

Not to be deterred by his lack of evidence on this point, plaintiff argues that the evidence provided by the certified transcript of the interest and penalty assessments should be disregarded on the authority of *United States v. Janis*, 428 U.S. 433 (1976). Pl.'s Br. at 28. *Janis*, however, is clearly inapposite. In *Janis*, the Supreme Court held that, in the rare situation where a taxpayer offers evidence than an assessment has been made "naked and without any foundation," the assessment itself of a particular amount of tax is not evidence that the taxpayer has a tax liability of that amount, contrary to the ordinary rule that evidence of an assessment is evidence of the underlying liability. *See Janis*, 428 U.S. at 441-42 (citing *Helvering v. Taylor*, 293 U.S. 507, 514-15 (1935)). *Janis*, however, says absolutely nothing about evidence of the *fact of assessment*, which is the sole factual issue in dispute here. Thus, even if, somehow, plaintiff could offer evidence that the assessments of penalties and interest at issue were "naked and without any foundation" within the meaning of *Janis*, this would not establish that these assessments were not made, and consequently would not relieve plaintiff of the obligation to file a claim for refund of the amounts collected to satisfy these assessments.

Finally, plaintiff argues that he was relieved of his obligation to file a claim for refund with respect to the penalty and interest amounts because of the relative timing of the assessments and payments. *See* Pl.'s Br. at 28-29. Plaintiff, however, cites absolutely no authority in support

---

[11] In his response to defendant's Proposed Findings of Uncontroverted Fact, plaintiff argues that the Certificate of Assessments, Payments, and Other Specified Matters for plaintiff's 1998 individual income tax year should be excluded from evidence, because it is purportedly "without foundation." This argument is baseless. Federal Rule of Evidence 902(4) clearly provides that a certified public record does not require "extrinsic evidence of authenticity as a condition precedent to admissibility." Further, FRE 803(8) clearly makes public records admissible notwithstanding the general rule against admission of hearsay.

of this position. *See ibid.* Plaintiff's suggestion to the contrary notwithstanding, there is nothing about pre-assessment payment of a tax liability that somehow renders that payment something other than a payment of that assessment. Indeed, the Internal Revenue Code requires taxpayers to make payments of their tax liabilities prior to the dates their returns are due, through, *inter alia*, wage withholding and estimated tax payments, and treats these amounts as paid on the day the taxpayer's return is due, regardless of whether the taxpayer has received an extension, or even filed a return at all upon which an assessment could be based. *See* § 6513; *Baral v. United States*, 528 U.S. 431, 436-37 (2000) (rejecting taxpayer's argument that he could not be deemed to have paid wages withheld and estimated tax payments made for a taxable year until the taxpayer's liability for that year was assessed, because, *inter alia*, "the Code directly contradicts the notion that payment may not occur before assessment").

**6. Plaintiff has abandoned his claim for interest**

Plaintiff has apparently abandoned his claim for interest. In its opening brief, defendant argued in the alternative that if plaintiff is entitled to recover on his claim, he is not entitled to interest. *See* Def.'s Br. at 31-32. Plaintiff has offered no response to this argument in his brief.

## CONCLUSION

For the reasons stated above, and the reasons stated in defendant's opening brief, defendant respectfully requests that the Court grant its motion for summary judgment, and deny plaintiff's cross-motion for summary judgment.

Respectfully submitted,

July 15, 2008

s/ Joseph B. Syverson
JOSEPH B. SYVERSON
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
TELEPHONE (202) 307-6508
FACSIMILE (202) 514-9440
Joseph.B.Syverson@usdoj.gov

NATHAN J. HOCHMAN
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
MARY M. ABATE
Assistant Chief, Court of Federal Claims Section

s/ Mary M. Abate
Of Counsel

July 15, 2008