No. 06-861 T
(Judge Firestone)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

LAWRENCE D. PENNONI,

Plaintiff,

v.

THE UNITED STATES,

Defendant

**PLAINTIFF'S REPLY AND SURREPLY TO THE UNITED STATES' REPLY TO PLAINTIFF'S OPPOSITION TO THE MOTION OF THE UNITED STATES FOR SUMMARY JUDGMENT, AND OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Jennifer Hunter Walz
Counsel for Plaintiff

P.O. Box 430341
Houston, Texas 77243-0341
(713) 446-7730 – phone
(281) 907-0103 – facsimile

## TABLE OF CONTENTS

Plaintiff's Reply and Surreply to the United States' Reply to Plaintiff's Opposition to the Motion of the United States for Summary Judgment, and Opposition to Plaintiff's Cross-Motion for Summary Judgment .......... 1

1. The Government's mischaracterization of Plaintiff's pleadings .......... 2

2. The Government's argument that under *Goldstein*, Plaintiff waived any objection to the illegal exaction is based on distorted or imaginary "facts" and on a false characterization of the discussion of *Goldstein* in *Stanley* .......... 2

3. The Government's assertion that the holding of *Clintwood Elkhorn* extends to a non-tax debt wrongfully collected by the IRS is not correct .......... 8

4. The Government's argument that Plaintiff's demand for the return of his monies did not also meet the requirements of an informal tax refund claim is without merit, as is the Government's "substantial variance" argument .......... 14

5. The Government's recoupment argument is not supported by any authority applicable to the facts of this case .......... 15

6. The Government's argument regarding penalties and interest is misguided .......... 18

Conclusion .......... 20

Supplemental Declaration of Lawrence D. Pennoni

Appendix 1: Unpublished Internal Revenue Service Report, Issues Closed in Calendar Year 2007 Sorted by Subject.

Appendix 2: U.S. Attorneys' Civil Resource Manual, Chapters 65-67.

Appendix 3: Cross-Motion of the U.S. for Summary Judgment in *Stanley,* 35 Fed. Cl. 493 (1996).

## TABLE OF AUTHORITIES

Cases:

*Deluxe Check Printers, Inc. v. United States,* 15 Cl. Ct. 175 (1988), *aff'd in part and rev'd in part,* 885 F.2d 848 (Fed. Cir. 1989)....................19,20

*Enoch v. Williams Packing & Nav. Co.,* 370 U.S. 1 (1962)............................10

*Goldstein, Baron & Lewis, Chartered v. United States,* 995 F.3d 34 (4th Cir. 1993), *cert denied,* 510 U.S. 1041 (1994)..................................2,3,7

*John B. Lambert & Assoc. v. United States,* 212 Ct. Cl. 71 (1976)................19

*Loeb v. United States,* 17 F. Supp. 966 (S.D.N.Y. 1936)...............................19

*New York Life Ins. Co. v. United States,* 118 Fed.3d 1553 (Fed. Cir. 1997)..................................................................................12

*Nick's Cigarette City, Inc. v. United States,* ___ Fed.3d ____, 2008 WL 2600792 (7th Cir. July 2, 2008)..............................................................15

*O'Bryant v. United States,* 49 F.3d 340 (7th Cir. 1995)..................................12

*Ottawa Silica Co. v. United States*, 699 F.2d 1124 (Fed. Cir. 1983)..............15

*Pacific Gas & Electric Co. v. United States,* 417 F.3d 1375 (Fed. Cir. 2005)....................................................................12,17,18

*Pennoni v. United States,* 79 Fed. Cl. 552 (2007)..........................................12

*Stanley v. United States*, 35 Fed. Cl. 493 (1996), *aff'd,* 140 F.3d 1023 (Fed. Cir. 1998).........................................................3,7,12,13,17,18

*Union Pacific Railroad v. United States,* 182 Ct. Cl. 103 (1968)....................15

*United States v. Clintwood Elkhorn Mining Co.,* 128 S. Ct. 1511 (2008)....................................................................8,9,10,11,12,13

*University Med. Ctr. v. Sullivan,* 973 F.2d 1065 (3rd Cir. 1992).....................16

*Usibelli Coal Mine v. United States,* 54 Fed. Cl. 382 (2002)..........................12

Statutes:

Internal Revenue Code of 1986 (26 U.S.C.):

§ 4121 .......... 9,11

§ 4221(a), (b) .......... 9

§ 6330(c)(2)(B) .......... 5

§ 6511 .......... 8,12

§ 6532(b) .......... 16,17,18

§ 6601 .......... 13

§ 6603 .......... 13

§ 7422 .......... 8,10,11,12,13

§ 7426(a), (f) .......... 13

Miscellaneous:

Cross-Motion of the U.S. for Summary Judgment in *Stanley,* 35 Fed. Cl. 493 (1996) .......... 17

IRS Publication 359 .......... 8

IRS Publication 594 .......... 7

IRS Publication 1660 .......... 5,7

IRS Chief Counsel Advice 200240037 .......... 5

IRS Chief Counsel Advice 200014033 .......... 12

Internal Revenue Manual, Section 4.13. .......... 8

Internal Revenue Manual, Section 4.13.1.8.1 F .......... 5

Internal Revenue Manual, Section 5.1.9.3.9.7 .......... 5

Revenue Procedure 2005-18, 2005-13 I.R.B. 798 .......... 13

Treasury Regulations on Income Tax:

§ 48.4221-3 .......... 9

Unpublished Internal Revenue Service Report, Issues Closed in Calendar Year 2007 Sorted by Subject ........................................................ 7

U.S. Attorneys' Civil Resource Manual, Chapters 65-67 .......................... 16,17

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 06-861 T
(Judge Firestone)

LAWRENCE D. PENNONI,

Plaintiff,

v.

THE UNITED STATES,

Defendant

**PLAINTIFF'S REPLY AND SURREPLY TO THE UNITED STATES' REPLY TO PLAINTIFF'S OPPOSITION TO THE MOTION OF THE UNITED STATES FOR SUMMARY JUDGMENT, AND OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

The Government's Reply continues to mischaracterize the facts of this case, Plaintiff's Amended Complaint and the applicable law. Further, the Government now implies that this Court should impugn Plaintiff's arguments simply because they are responsive to arguments raised by the Government in response to Plaintiff's claim. Still further, the Government is now asking this Court to make inferences based on inferences and to conclude therefrom that Plaintiff has acted in bad faith and therefore his proposed uncontroverted facts should be given no weight. Most of the Government's assertions in its Reply are supported by neither the facts nor the law. Finally, the Government continues its practice of paraphrasing to mislead this Court, now by paraphrasing out of context prior opinions of this Court and other courts. Thus, once again, Plaintiff is forced to waste time responding to arguments and assertions that are disingenuous at best, and at worst, in bad faith.

**1. The Government's mischaracterization of Plaintiff's pleadings.**

The Government continues to mischaracterize the plain language of Plaintiff's Amended Complaint. Def. Reply Br. at 1-2. Plaintiff filed an amended complaint simply adding language alleging Plaintiff had exhausted administrative remedies, as is required in suits against the Government. The Amended Complaint states that Plaintiff made an informal demand for the return of money illegally exacted by the Government which demand was denied. Am. Compl. ¶ 4. The Amended Complaint does not state that Plaintiff made an informal tax refund claim. Rather, in briefing and in prior oral arguments, in response to the defensive arguments raised by the Government, Plaintiff has (i) analogized to the informal tax refund claim authorities to establish that Plaintiff made an informal administrative demand for the return of money illegally exacted by the IRS[1] because no formal illegal exaction claim administrative demand procedures could be found in IRS (or other) regulations, and (ii) argued in the alternative, in response to the Government's motions to dismiss and for summary judgment, that even if this Court were to reverse long-standing authority that a non-rebate erroneous refund gives rise to a non-tax debt, and concluded that Plaintiff must have filed a tax refund claim as a prerequisite to this suit, Plaintiff's informal demand for return of the illegal exaction also met the requirements of an informal tax refund claim which has never been properly denied. Pl. Br. at 30-36.[2]

**2. The Government's argument that under *Goldstein*, Plaintiff waived any objection to the illegal exaction is based on distorted or imaginary "facts" and on a false characterization of the discussion of *Goldstein* in *Stanley*.**

[1] "IRS" refers to the Internal Revenue Service.

[2] The Government apparently concedes that there are no administrative procedures defining the requirements of a formal claim for the return of an illegal exaction by the IRS -- otherwise the Government certainly would have brought the applicable administrative procedures to the attention of this Court.

The Government argues (Def. Reply Br. at 2-6) that the Federal Circuit adopted *Goldstein*[3] in a way that requires proof of only a single circumstance: a written acknowledgment of the refund amount a person is entitled to that is less than the refund actually received. To support this argument, the Government includes a quote from *Goldstein* followed by a paraphrase from *Stanley*[4] discussing a different part of *Goldstein*. Def. Reply Br. at 2-3, 5-6. However, the Federal Circuit's non-paraphrased discussion of *Goldstein* in *Stanley* is:

> The Government cites Goldstein, Baron & Lewis, Chartered v. Untied States, 995 F.2d 35 (4th Cir. 1993) in support of its position. In Goldstein, as in this case, the IRS made an erroneous refund to the taxpayer. Upon receipt of the refund, the taxpayer "acknowledged in writing that it was not entitled to the refund." Id. at 37. A week later the IRS wrote back demanding return of the refund, which the taxpayer did, albeit "under protest." Id. at 36. *Thus, the taxpayer had actual notice of the erroneous nature of the refund, the IRS made an actual "demand" for its return, and the taxpayer remitted the erroneous refund.* ***Under these circumstances, the IRS need not resort to an erroneous refund suit, as so held in Goldstein.***

*Stanley,* 140 F.3d at 1029 (emphasis added). Clearly the Court cited the presence of two additional required circumstances: (1) actual demand for return of the erroneous refund (rather than a demand for payment of an outstanding tax liability[5]), and (2) voluntary repayment of the erroneous refund. Further, the Government's argument ignores that the acknowledgment in writing that the recipient is not entitled to the refund must occur at the time of the erroneous refund or voluntary repayment thereof. *Ibid.*[6]

In this case, Plaintiff not only did not acknowledge in writing any debt to the Government after receiving the erroneous refund, there was no demand for return of the erroneous refund nor

[3] *Goldstein, Baron & Lewis, Chartered v. United States,* 995 F.2d 35 (4th Cir. 1993).
[4] *Stanley v. United States,* 140 F.3d 1023 (Fed. Cir. 1998).
[5] *See Stanley*, 140 F.3d at 1028.
[6] The Federal Circuit in *Stanley* did not find that the taxpayer's settlement agreement incorporated into the Tax Court decision stating that Stanley was entitled to a refund of $297,118.54 rather than the refund he received five months later in the amount of $637,004.62 constituted acknowledgement in writing that he was not entitled to this refund.

voluntary repayment thereof. Plaintiff clearly contested the Government's right to the money and expected its return. Am. Compl. Ex. A; Pennoni Decl. Ex. 7.[7]

After deliberately misstating the law, the Government then amazingly attempts to establish "undisputed facts" by inferring "facts" and then inferring further "facts" from the inferred facts, by falsely stating other facts, and by misstating the Government's own Proposed Findings of Uncontroverted Facts. Def. Reply Br. at 3-5. The Government asks this Court to infer from the fact that Plaintiff was an experienced tax lawyer who practiced in the international tax area that he "understood the different functions of the different IRS Service Centers involved" (but does not introduce any evidence relating to these "different functions") and based on that inferred understanding, asks this Court to further infer that Plaintiff engaged in some deception to avoid the erroneous refund being discovered by the IRS. Def. Reply Br. at 5. Apart from being unsupported, the facts the Government wants inferred and many of the cited "uncontroverted facts" are just plain false.

First, prior to the time of the erroneous refund, Plaintiff practiced in the international tax section of a large firm that had several different tax practice sections. His practice did not involve any matters relating to tax collection, levies, collection due process proceedings, the organization of the IRS or the functions of the different IRS Service Centers. Pennoni Supp. Decl. ¶¶ 2-3. [8]

Second, implying that an international tax attorney can be presumed to have the knowledge of an attorney who practices in the tax controversy area (assuming *arguendo* such an

[7] "Pennoni Decl." refers to the declaration attached to Plaintiff's Response in Opposition to United States' Motion to Dismiss with Prejudice Plaintiff's First Amended Complaint filed with this Court on August 2, 2007.

[8] "Pennoni Supp. Decl." refers to the Supplemental Declaration of Lawrence D. Pennoni filed simultaneously with this brief.

attorney might have an understanding of the different functions of the different IRS Service Centers) is as absurd as implying that an attorney who practices in the employee benefits and pension area can be presumed to have the knowledge of an attorney who practices in the tax exempt bond area. This Court should take judicial notice of the complexity of the Code[9], the complexity of the IRS organizational structure and of the Internal Revenue Manual ("IRM"), and the specialization of tax practices to reject the Government's proposed inferences.

Third, the Government's assertion that Plaintiff intentionally avoided asserting his "due process rights" is false. Def. Reply Br. at 3-6. Plaintiff did assert his due process rights in discussions with IRS personnel and when he requested an Audit Reconsideration as instructed by the IRS. Am. Compl. Ex. A (hereafter, "the September 9, 2003 facsimile"). In any event, this argument is a red herring as under the law Plaintiff did not have any right to an Audit Reconsideration nor to the other two administrative appeal alternatives, Collection Due Process ("CDP") or Collection Appeal Program ("CAP"), because of the prior issuance of a statutory notice of deficiency and final Tax Court decision.[10] To argue that the failure by Plaintiff to exercise a legal right <u>that he was not even entitled to</u> allows the inference of a nefarious intent, and that the inferred nefarious intent should result in some sort of "deemed waiver" is absurd.

Fourth, even if it did matter, the reason Plaintiff did not respond in writing within 30 days of the Final Notice of Intent to Levy, dated May 29, 2003 (Pennoni Decl. Ex. 4) was that

---

[9] "Code" and "IRC" refers to the Internal Revenue Code of 1986 as amended and codified in Title 26 of the United States Code; "§" refers to sections of the Code.

[10] *See* Code § 6330(c)(2)(B); IRS Chief Counsel Advice ("CCA") 200240037 (June 27, 2002); IRM Section 5.1.9.3.9.7 (no CDP rights if statutory notice of deficiency previously issued); IRS Publication 1660, <u>Collection Appeal Rights</u> p. 3 (cannot challenge existence or amount of tax liability in CAP); IRM Section 4.13.1.8.1 F (final Tax Court decision bars audit reconsideration); Pennoni Decl. Ex. 11 (Letter from Appeals Officer Quinn advising Plaintiff that no appeals rights were available due to finality of Tax Court decision).

throughout the time period involved he was suffering from a serious and debilitating medical condition and was undergoing extensive and exhaustive testing by various physicians, who were attempting to determine the cause of the condition, and ultimately had a cervical spine fusion operation performed by a neurosurgeon on July 16, 2003, which necessitated several weeks of immobilization thereafter. Pennoni Supp. Decl. ¶¶ 4-5.

Fifth, Plaintiff did not receive from the IRS Fresno Center a copy of the notice of levy to his employer dated July 22, 2003 (Pennoni Decl. Ex. 6) nor did he complete it and return it to the Fresno Service Center as recited by the Government. Def. Reply Br. at 4. Because Plaintiff was immobilized at the time following his surgery, Plaintiff's employer brought the form to him at his residence to fill out and sign so that the employer would not have to levy his full paycheck. Plaintiff did nothing but fill out, sign and return to his employer a form that reduced the amount being illegally exacted by the Government from each paycheck. Pennoni Supp. Decl. ¶ 6.[11] This action can hardly constitute an acknowledgment that he was not entitled to a refund he had received many months prior, nor does it support a waiver argument that he voluntarily repaid the non-tax debt by consenting to the wage levy.

Sixth, Plaintiff never received a notice from the IRS that said the IRS had made an erroneous refund, nor a notice that the IRS regarded the erroneous refund as having created a balance due in his account, and the Government points to no such document. Def. Reply Br. at 3-4.

As (i) Plaintiff did not acknowledge in writing any debt to the government after receiving the erroneous refund, (ii) the Government never demanded the return of the erroneous refund,

[11] The Notice of Levy says on its face "For Employer or other Addressee to keep after taxpayer completes." Because the Notice has only been introduced by the Pennoni Decl. Ex. 6, how the Government has determined it was returned to the Fresno Service Center -- and by Plaintiff -- is a mystery.

and (iii) Plaintiff did not thereafter voluntarily remit the erroneous refund to the IRS, *Goldstein* is not applicable. Rather, in Plaintiff's case, as is in *Stanley,* where there has only been a demand for an alleged tax liability--rather than a demand for return of the erroneous refund--and no acknowledgement of a debt to the Government and voluntary repayment contemporaneous with the erroneous refund and the voluntary repayment, *Goldstein* is not applicable.

Finally, the Government is obviously trying to leave this Court with the impression that only the Fresno Service Center could handle Plaintiff's matter and that the Fresno Service Center was somehow aware of the erroneous refund while the Memphis Service Center was not (although the Government introduced no evidence that the Fresno Service Center knew about the erroneous refund or had access to records that the Memphis Service Center did not). Def. Reply Br. at 5. The Government's sole support for these "inferences" is that the Notice of Final Intent to Levy had the Fresno Service Center as the mailing address. This ignores the fact that the Notice has a toll free number for the Automated Collection System ("ACS") and encourages the person being noticed to contact the IRS at that number to try to work out the situation without resorting to CDP, CAP or Audit Reconsideration.[12] When one contacts the toll free number, the IRS routes the caller to any IRS Service Center in the country where an IRS agent is available.[13] Further, when one later calls, the call is again routed to any IRS Center where an agent is available and the caller cannot possibly reach the same IRS agent who the person previously spoke with. *Ibid.* The IRS agents who speak to a caller are supposed to make computer entries

[12] *See* Pennoni Decl. Ex. 4; *see also* IRS Publication 594, the IRS Collection Process and IRS Publication 1660, Collection Appeals Rights (which are enclosures to the IRS Letter 1058, Final Notice of Intent to Levy).

[13] *See* Issues Closed in Calendar Year 2007 Sorted by Subject, p. 2, Unpublished IRS Report attached as Appendix 1; http://www.irs.gov/businesses/small/article/0,,id=180262,00.html#campus.

during each call and the record of each call should reside in the IRS computers for IRS agents to later pull up if the person again contacts the IRS about the same issue. *Ibid.*

The Government also ignores the fact that audit reconsideration requests are handled by several IRS campuses, the specific campus depending on the region that issued an audit examination report.[14] The IRS Service Center that handles audit reconsiderations for residents of Texas (Gulf Coast Region) is the Memphis Service Center ("MSC").[15] Thus, the reconsideration request Plaintiff sent to the MSC pursuant to instructions received from the IRS went to the proper IRS location for an Audit Reconsideration.

Thus, the Government's failure to set out in its brief "the different functions of the different IRS Service Centers involved" that the Government implies Plaintiff "understood" and intentionally ignored is either due to a failure of the Government to understand how its own agency functions or an intentional attempt to mislead this Court. In either event, this Court should give no credence to the Government's misstatements and mischaracterization of the law and the facts involved in this case and refuse to adopt the Government's suggested factual inferences.

**3. The Government's assertion that the holding of *Clintwood Elkhorn* extends to a non-tax debt wrongfully collected by the IRS is not correct.**

The Government attempts to use dicta from *Clintwood Elkhorn* [16], to argue that the Supreme Court held that the "any sum" language of Code § 7422 means that non-tax liabilities illegally collected by the IRS are subject to the tax refund claim requirement of Code § 7422 and the limitations of Code § 6511. This argument ignores the limited holding of *Clintwood Elkhorn*.

[14] *See* IRS Publication 359, Audit Reconsideration Process, p. 6.

[15] *See* IRM Section 4.13 *et. seq.*, Audit Reconsiderations; IRM Section 4.13 Ex. 4.13.7-3.

[16] *United States v. Clintwood Elkhorn Mining Co.*, 128 S. Ct. 1511 (2008).

*Clintwood Elkhorn* involved an excise tax imposed by Subtitle D of the Code (IRC §§ 4001- 5000). Chapter 32 of Subtitle D (IRC §§ 4064 – 4182) imposes various manufacturers excise taxes. The taxpayers in *Clintwood Elkhorn* were producers of coal subject to the coal tax imposed by Code § 4121. The Code provides an exemption from virtually all Chapter 32 taxes for the sale of otherwise taxable items if the items are sold "for export, or for resale by the purchaser to a second purchaser for export." IRC § 4221(a)(2). However, Code § 4221(a) provides that none of the exemptions of Code § 4221(a) -- including the export exemption of Code § 4221(a)(2) -- apply to the coal tax. In order for an export exemption claim to be allowed, a taxpayer has to meet various reporting and recordkeeping requirements.[17] The taxpayers in *Clintwood Elkhorn* sought refunds of voluntarily paid coal taxes only after other taxpayers successfully raised a U.S Constitution Export Clause challenge to the exclusion of coal from the export exemption of Code § 4221(a)(2). Because the taxpayers in *Clintwood Elkhorn* were seeking a refund of a voluntarily paid tax based on the unconstitutionality of the exclusion of coal from the export exemption of Code § 4221(a)(2), clearly they must have first filed a tax refund claim in accordance with the Code. However, the three-year statute of limitations under the Code had expired for claiming refunds for certain years. Thus, the taxpayers then proceeded with tax refund claims under the Tucker Act based upon the unconstitutionality of the coal tax as applied to the amount of coal they had exported. Logically, the Supreme Court concluded that the tax refund scheme under the Code applied to the taxpayers in *Clintwood Elkhorn* because they were seeking a refund of a tax imposed by the Code and voluntarily paid as a tax imposed by the Code.

[17] *See* IRC § 4221(b); Treas. Reg. § 48.4221-3, 26 CFR 48.4221-3.

Because the Supreme Court in *Clintwood Elkhorn* concluded the case was quite simply a tax refund case, it need not have addressed the meaning of the "any sum" language of Code § 7422. This is clear from both the Supreme Court's framing of the issue and its holding:

> The Internal Revenue Code provides that taxpayers seeking a refund of taxes unlawfully assessed must comply with tax refund procedures set forth in the Code. Under those procedures, a taxpayer must file an administrative claim with the Internal Revenue Service before filing suit against the Government. Such a claim must be filed within three years of the filing of a return or two years from payment of the tax, whichever is later. The Tucker Act, in contrast, is more forgiving, allowing claims to be brought against the United States within six years of the challenged conduct. The question in this case is whether a taxpayer suing for a refund of taxes collected in violation of the Export Clause of the Constitution may proceed under the Tucker Act, when his suit does not meet the time limits for refund actions in the Internal Revenue Code. The answer is no.

*Clintwood Elkhorn,* 128 S. Ct. at 1514. (emphasis added).

> We therefore hold that the plain language of 26 U. S. C. §§7422(a) and 6511 requires a taxpayer seeking a refund for a tax assessed in violation of the Export Clause, just as for any other unlawfully assessed tax, to file a timely administrative refund claim before bringing suit against the Government.

*Id.* at 1520. (emphasis added). The Court correctly analyzed the case as involving a taxpayer seeking the return of a tax. The Court did not attempt to define or analyze the meaning of the "any sum" language of Code § 7422(a), rather it merely used the term in a hypothetical to quickly dismiss the taxpayers' fallback argument that a facially unconstitutional tax is not subject to the refund scheme of the Code.

The Government argues that "the Court explicitly concluded that the 'any sum' language extends to suits for refund of amounts collected 'merely in the guise of a tax,' i.e., amounts collected by the IRS on the presupposition that the amounts at issue are collected to satisfy a tax liability, even if that is not in fact the case. Id. at 1519-20." Def. Reply Br. at 6. However, this is not the holding of *Clintwood Elkhorn.* The only place where "in the guise of a tax" was referred to was in discussing *Enochs v. Williams Packing & Nav. Co.,* 370 U.S. 1, 7 (1962), a

case dealing with the Anti-Injunction Act not Code § 7422. The Court quoted from *Williams Packing,* stating that "if it is clear that under no circumstances could the Government ultimately prevail,...the attempted collection may be enjoined if equity jurisdiction otherwise exists. In such a situation the exaction is merely in 'the guise of a tax.'"[18] The Court in *Clintwood Elkhorn* did not decide if facially unconstitutional taxes were in the guise of a tax. The Court merely stated in a hypothetical that "[e]ven if we agreed that a facially unconstitutional tax for purposes of the tax refund scheme is 'merely in the 'guise of a tax,''...it would nevertheless clearly fall into the broader category of 'any sum... .'" *Id.* at 1519-20 (emphasis added). It takes a huge stretch of imagination to conclude from this dicta relating to facially unconstitutional taxes that the Supreme Court would conclude that the "any sum" language means that any monies collected by or remitted to the IRS are subject to tax refund procedures, even where they have no connection to a tax or a tax liability.

The monies involved in *Clintwood Elkhorn* originated as a tax under the Code (specifically Code § 4121) and were voluntarily paid by the taxpayers as a tax under the Code. The fact that the coal tax was later determined to be unconstitutional in narrow circumstances, *i.e.,* when imposed on exports, does not change its character as a tax that quite obviously would fall within the "any sum" language.

In Plaintiff's case, the money he seeks the return of did not originate under the Code, much less as a tax, but was money illegally exacted from him by the Government in its collection of a non-tax debt arising from an erroneous non-rebate refund. The assessment of the erroneous refund amount (or of other amounts exacted by the Government) as a tax (or penalties or interest), was not possible because a final Tax Court Decision had forever closed Plaintiff's 1998

[18] *Clintwood Elkhorn,* 128 S. Ct. at 1519.

tax year. The IRS could not make any additional tax assessments, nor could Plaintiff claim any additional tax refunds. Further, the Government has long recognized that an erroneous non-rebate refund can never be assessed as a tax under the Code[19], and in any event the IRS did not assess the erroneous refund as a tax. Regardless of how the IRS internally labeled the monies after they were exacted from Plaintiff or after this suit was filed, the true nature of the monies cannot be ignored. Plaintiff's claim is for the return of monies illegally exacted through the Government's use of tax collection powers to collect an ordinary, non-tax debt. Plaintiff's basis for the return of the illegally exacted monies has nothing to do with any tax or "any sum" in any way related to a tax or a tax liability.

The Supreme Court's holding is only directly applicable to claims for tax refunds based upon the plain language of Code §§ 7422 and 6511 and the policy behind the three-year limitations period for filing tax refund claims. The controlling authorities for this Court's previous holding in *Pennoni,* 79 Fed. Cl. 552, __ (2007), that Plaintiff's "action is not subject to the tax refund suit provisions of the Code and cannot be dismissed on that basis," are *Pacific Gas & Electric Co. v. United States,* 417 F.3d 1375 (Fed. Cir. 2005) (hereinafter, "*PG&E*"); *Stanley, supra; New York Life Ins. Co. v. United States,* 118 F.3d 1553 (Fed. Cir. 1997); *Usibelli Coal Mine v. United States,* 54 Fed. Cl. 382 (2002); and the Federal Circuit's endorsement of *O'Bryant v. United States,* 49 F.3d 340 (7th Cir. 1995). *Clintwood Elkhorn* does not have any effect on these authorities.

Further, the Government's expansive reading of *Clintwood Elkhorn* ignores the fact that the Code contains provisions relating to non-tax amounts, and to amounts collected from persons who are not taxpayers, that explicitly do not require formal refund claims as a prerequisite to

---

[19] CCA 200014003 (Apr. 7, 2000)

bringing suit to recover such amounts from the Government. For example, Code § 6603 [which codified the deposit provisions involved in *Stanley*] provides that "A taxpayer may make a cash deposit with the Secretary which may be used by the Secretary to pay any tax imposed...which has not been assessed at the time of the deposit." The purpose of Code § 6603 is to permit taxpayers to make a deposit with the IRS to suspend the running of interest under Code § 6601 on a potential underpayment of tax, that is, a tax that the remains unassessed at the time of the deposit. *See* Rev. Proc. 2005-18, 2005-13 I.R.B. 798, Section 2.01. Revenue Procedure 2005-18, Section 6.01 provides that:

> A deposit made pursuant to section 6603 is not subject to a claim for credit or refund as an overpayment until the deposit is applied by the Service as payment of an assessed tax of the taxpayer. A taxpayer may request the return of all or part of a deposit at any time before the Service has used the deposit for payment of a tax.

Rev. Proc. 2005-18, 2005-13 I.R.B. 798, Section 6.01 (emphasis added). The obvious reasoning of the Revenue Procedure is that if there is no assessed tax that the deposit relates to (*i.e.*, there is no extant tax liability) the amount is not encompassed within the meaning of the "any sum" language of Code § 7422.

Similarly, Code § 7426(a) allows non-taxpayers to bring suit for the return of monies wrongfully collected by the IRS. Code § 7426(f) provides that the non-taxpayer need not file a claim for refund prior to filing suit for the return of the sum wrongfully collected from the non-taxpayer. The obvious rationale behind Code § 7426(f) is that where the wrongful collection had no connection to an extant tax liability of such person there is no tax liability or any sum wrongfully collected that is related to (1) a tax liability (2) of a taxpayer, thus no need for a refund claim.

In this case, Plaintiff had no extant tax liability that the IRS could collect and his standing in this suit is not as a taxpayer. Accordingly, the holding of *Clintwood Elkhorn* is not applicable

and Plaintiff was not required to file a tax refund claim before filing this suit against the Government for illegally exacting from him monies to collect a non-tax debt.

**4. The Government's argument that Plaintiff's demand for the return of his monies did not also meet the requirements of an informal tax refund claim is without merit, as is the Government's "substantial variance" argument.**

The Government continues to argue that assuming Plaintiff was required to file a tax refund claim, the September 9, 2003 facsimile was insufficient to apprise the IRS that Plaintiff wanted his money back and failed to state the reasons. Plaintiff has already briefed this point, and Plaintiff's position is succinctly stated as follows: (i) when Plaintiff demanded that the Government cease its illegal collection activities he was communicating a concomitant demand for the return of monies illegally collected before and after the demand; and (ii) the September 9, 2003 facsimile clearly evidences that Plaintiff was demanding return of his monies on the simple basis, factual and legal, that **he did not have a tax liability for his 1998 tax year** as evidenced by the final Tax Court decision and other supporting documents contained in the facsimile. This is exactly the same basis for this lawsuit: that Plaintiff had no liability for 1998 taxes that the IRS could collect through its levy powers and, thus, such levies were wrongful.

The Government's assertion that Plaintiff does not dispute that he failed to set forth legal and factual grounds is incorrect. *See* Pl. Br. at 30-36. The Government's Reply does not even bother to identify what facts or legal theories were lacking from the September 9, 2003 facsimile; *i.e.*, what else did the IRS needed to determine that Plaintiff had no tax liability for 1998 and that the levies violated the law? And the Government's Reply completely ignores the fact that the Appeals Officer, Dennis Quinn, fully understood the issues Plaintiff was raising in the September 9, 2003 facsimile, as is clear from his letter to Plaintiff. *See* Pennoni Decl. Ex. 11; Am. Compl. Ex. B. There is no variance whatsoever in the facts and law communicated by the

September 9, 2003 facsimile and the facts and the law contained in Plaintiff's Amended Complaint.

The Government completely misses the point of the purposes behind the informal claim doctrine and the substantial variance doctrine, that is, whether the Government had adequate notice of the nature of the claims and the factual basis so that the Government could investigate and correct errors.[20] It is hard to believe that the Government could not have determined from the facts before it that Plaintiff owed no tax liability at the time of the levies and recognized that no penalties and interest could be owed, much less assessed, without a tax liability.

The new opinion cited in the Government's Reply, *Nick's Cigarette City*[21], adds nothing to this case. In *Nick's Cigarette City,* the refund claim merely said, in effect, "the taxpayers numbers are right," and contained no explanation of why the taxpayer was entitled to the claimed deductions. In this case, Plaintiff was not disputing items of income, deductions, credits or payments; he simply established by satisfactory documentation that he had no tax liability for 1998. No further documentation needed to be provided by Plaintiff to establish that fact. Once the fact was established that Plaintiff had no tax liability for 1998, the legal conclusion that the IRS could not use it levy powers to collect a nonexistent tax liability automatically follows.

**5. The Government's recoupment argument is not supported by any authority applicable to the facts of this case.**

Although the Government's briefs may have correctly described the general theory of recoupment, none of the authorities cited by the Government are applicable to the facts of this case. The Government cites no authority supporting its assertion that the Government can avoid

---

[20] *See Union Pacific Railroad v. United States,* 182 Ct. Cl. 103, 109 (1968); *Ottawa Silica Co. v. United States*, 699 F.2d 1124, 1138 (Fed. Cir. 1983).

[21] *Nick's Cigarette City, Inc. v. United States,* ___ F.3d ___, 2008 WL 2600792, at *4 (7th Cir. July 2, 2008).

the limitations bar of Code § 6532(b) simply by raising a late recoupment counterclaim. Further, the Government's briefs do not cite any support for the proposition that the erroneous refund and the later illegal exaction through levies on Plaintiff's bank account and wages constitute a single transaction. Instead, the Government simply states without any reasoning or authority "Defendant's counterclaim in this case for recovery of this liability, furthermore, arises out of the same transaction as does Plaintiff's claim, i.e., the erroneous refund of Plaintiff's 1998 individual income tax and the subsequent collection of the resulting liability by tax levy." Def. Br. at 36. Accordingly, Plaintiff should not even be required to address whether there is any authority supporting the contrary position that there is no transaction or there is not a single transaction. The Government's attorneys know or should know that the case law on whether a setoff or recoupment claim involves a single transaction or multiple transactions is, to put it lightly, all over the place.[22] Rather than address the case law on this critical point, the Government simply states the conclusion *ipse dixit*. This is clearly not sufficient in this case to raise a valid summary judgment issue. As the Third Circuit has stated:

> For purposes of recoupment, a mere logical relationship is not enough: the "fact that the same two parties are involved, and that a similar subject matter gave rise to both claims,...does not mean that the two arose from the 'same transaction.'" Rather, both debts must arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of that transaction without meeting its obligations.

*University Med. Ctr. v. Sullivan,* 973 F.2d 1065, 1080-81 (3rd Cir. 1992).

---

[22] *See, e.g.*, U.S. Attorneys' Civil Resource Manual, Chapters 65-67, Setoff and Recoupment in Bankruptcy http://www.usdoj.gov/usao/eousa/foia_reading_room/usam/title4/civ00065.htm (hereafter, "USACRM"). These chapters from USACRM are attached for the Court's convenience at Appendix 2.

Further, the only cases Plaintiff has found addressing situations similar to the present one have rejected the Government's recoupment theory. In *Stanley,* the Government's Brief in Support of its Cross-Motion for Summary Judgment stated:

> The United States could file a counterclaim (i.e., a collection action against plaintiff pursuant to § 6502(a)) and, at the termination of this litigation, simultaneously return plaintiff's "deposit" and require a new payment check from plaintiff in satisfaction of the judgment on defendant's counterclaim. On the other hand, the United States could retain the funds either as an offset to plaintiff's claim (see 31 U.S.C. § 3728; Code § 6402), or even under the doctrine of equitable recoupment. Lewis v. Reynolds, 284 U.S. 281 (1932). [23]

Notwithstanding the Government's setoff and recoupment arguments, both this Court and the Federal Circuit held that the Government could not keep Stanley's bond that it had retained to offset the erroneous refund.[24]

In *PG&E*, the Federal Circuit similarly held that the Government could not offset a tax refund claimed by the taxpayer for a tax year by the amount of an erroneous refund of statutory interest (*i.e.*, interest on a tax overpayment) previously made with respect to the same tax year. The Federal Circuit held that offset was not available to the Government because an erroneous refund of statutory interest creates a non-tax debt. The Federal Circuit concluded that the expiration of the limitations period of Code § 6532(b) precluded the Government's use of offset to collect a non-tax debt stating:

> Like the court's determination in Crocker, we view the offset claimed by the Service here as akin to a cause of action by the government in a suit to recover the erroneous interest. As noted in Crocker, while there is no statute governing the time limit for when such an offset may be made, there is a statute expressly limiting when the government can sue to recover erroneous refunds under 26

[23] Cross-Motion of the U.S. for Summary Judgment at 22, pp. 16-17, ftnt. 12, *Stanley,* 35 Fed. Cl. 493 (1996). A copy of this is attached for the Court's convenience as Appendix 3.

[24] Because setoff applies even where the opposing claims arise out of separate transactions, a court's denial of setoff clearly means the court would also deny recoupment because recoupment requires that the claims arise out of the same transaction. *See, e.g.*, USACRM, Ch. 65 I. A.

> U.S.C. § 7405. Id. at 574 ("There is no limitation statute specifically fixing the time within which such an offset may be made. There is, however, a statute, limiting to two years, the time within which the United States may sue to recover erroneous refunds of taxes or erroneous payments of interest on refunds."). We see no reason why this statute of limitations should not apply equally to the offset in this case. Thus, we hold that the Service's ability to offset erroneously paid statutory interest against a taxpayer's refund claim in the same tax year is subject to the same statute of limitations that applies to suits by the United States to recover erroneous refunds of taxes or erroneous payments of interest on refunds. See 26 U.S.C. §§ 6532(b), 7405.

*PG&E,* 417 F.3d at 1384-85 (emphasis added).

Thus, the controlling authority in this case is that the Government cannot avoid the limitations bar of Code § 6532(b) simply by making a counterclaim for offset, nor by making a counterclaim for the narrower concept of recoupment.

The Federal Circuits opinions in *Stanley* and *PG&E* make clear that Code § 6532(b) bars both affirmative claims and counterclaims. If the Government does not file suit within the two-year limitations period, it is forever barred from collecting an erroneous refund regardless of the method used: by offset against a bond deposit; by offset against a tax refund; or by making an offset counterclaim or a recoupment counterclaim in a case against the Government for wrongful offset or illegal exaction. The Government's briefs do not support overturning these authorities to allow it to avoid liability for illegal exaction. The Government does not succeed simply by saying the magic word "recoupment."

**6. The Government's argument regarding penalties and interest is misguided.**

As already briefed by Plaintiff, Plaintiff had no unpaid tax liability for 1998 and the erroneous refund did not create such a tax liability. Without a tax liability there can be no penalties or interest. Plaintiff received no notices of intent to assess or of assessment of any penalties or interest. The Government is correct that taxes can be paid prior to assessment, but neither taxes nor penalties can be collected involuntarily through levy without first complying

with the deficiency and assessment procedures. As the transcript clearly shows that collections preceded any notation of assessment--and Plaintiff was never notified of any proposed or actual assessments before or after these notations were made--Plaintiff could not be required to file a refund claim prior to filing this suit.

Contrary to the Government's repeated assertion that Plaintiff has offered no evidence that the penalties and interest were not assessed, Plaintiff has previously briefed that neither any additional tax, penalties or interest were ever assessed after the original tax assessment for Plaintiff's 1998 tax year. The only documentation received by Plaintiff from the IRS that referred to penalties and interest were the levy notices. These were not assessments just notices that the IRS intended to collect amounts as taxes, penalties and interest from Plaintiff through levies.

Furthermore, as discussed in Section 4 above, Plaintiff's September 9, 2003 facsimile constituted an informal refund claim, if such was necessary. This refund claim also included any concomitant amounts for penalties and interest related to the tax. A separate claim for penalties and interest is not required when the totality of the facts and circumstances surrounding the refund claim gives the IRS actual or constructive notice of the nature of a taxpayer's claim.[25] Plaintiff's claim for the return of his monies via his September 9, 2003 facsimile was based on

---

[25] *See Deluxe Check Printers, Inc. v. United States,* 15 Cl. Ct. 175 (1988), *aff'd in part and rev'd in part,* 885 F.2d 848 (Fed. Cir. 1989) (deficiency interest was predicated on a self-dealing tax which was actually a penalty, not a tax; interest is generally not assessable against a penalty, otherwise it is in violation of the Code; taxpayer filed a refund for the self-dealing tax and implicitly asserted a refund claim of deficiency interest which constituted a sufficient informal claim for the refund of the deficiency interest); *John B. Lambert & Assoc. v. United States,* 212 Ct. Cl. 71, 87 (1976) (when a taxpayer contested principal tax liability, claim included only the interest "tied entirely to the lawfulness of the principal tax."); *Loeb v. United States,* 17 F. Supp. 966 (S.D.N.Y. 1936) (suit proper under Tucker Act for recovery of interest and penalty on illegally collected income tax after filing tax refund without filing separate claim for refund of penalty and interest).

the Notice of Intent to Levy which set out amounts for unpaid taxes, penalties and interest. When Plaintiff demanded the IRS stop its wrongful levies because he had no tax deficiency for his 1998 tax year, he implicitedly demanded the return of all his monies whether they were mistakenly characterized by the IRS as liabilities for taxes, penalties or interest. The Federal Circuit in *Deluxe Check* held that a tax refund was allowed and automatically included the related interest regardless of whether a separate claim for interest was made.

Finally, the Government stipulated in the United States Tax Court that Plaintiff was not liable for any penalties and that he was entitled to interest on his overpayment. Am. Compl. Ex. A at 5-6. Because it is obvious that the Government's liability for statutory overpayment interest logically precludes the possibility there could be a liability for underpayment interest, the Government effectively stipulated that Plaintiff did not owe any underpayment interest, and the Government should be estopped from now asserting that any amounts collected from Plaintiff through its levies were to collect penalties and interest owed by Plaintiff.

**CONCLUSION**

For the reasons stated above and in Plaintiff's opening brief, the Government's motion for summary judgment should be denied, and Plaintiff's cross-motion for summary judgment should be granted and all allowable costs assessed against the Government.

Respectfully submitted,

s/ Jennifer Hunter Walz
JENNIFER HUNTER WALZ
P.O. Box 430341
Houston, Texas 77243-0341
(713) 446-7730 – phone
(281) 907-0103 - facsimile

Dated: August 22, 2008

COUNSEL FOR PLAINTIFF