ORIGINAL

A

REPRODUCED AT THE NATIONAL ARCHIVES

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 94-32 T

(The Honorable Lawrence S. Margolis)

FILED
DEC 7 1995
U.S. COURT OF FEDERAL CLAIMS

LEROY P. STANLEY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# CROSS-MOTION OF THE UNITED STATES FOR SUMMARY JUDGMENT, AND BRIEF IN SUPPORT THEREOF, AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

LORETTA C. ARGRETT
Assistant Attorney General

MILDRED L. SEIDMAN
THOMAS D. SYKES
W. C. RAPP
Attorneys
U.S. Department of Justice
Tax Division
Washington, D.C. 20044

REPRODUCED AT THE NATIONAL ARCHIVES

## TABLE OF CONTENTS


CROSS-MOTION OF THE UNITED STATES FOR SUMMARY JUDGMENT . . . 1

BRIEF FOR THE UNITED STATES IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT, AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT . . . . . . . . . . . . . . . . 3

QUESTION PRESENTED . . . . . . . . . . . . . . . . . . . 3

STATUTES AND REGULATIONS INVOLVED . . . . . . . . . . . . 4

STATEMENT . . . . . . . . . . . . . . . . . . . . . . . 4

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . 7

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . 12

THE JUNE 18, 1991, ASSESSMENT MAY BE COLLECTED AT ANY TIME PRIOR TO JUNE 18, 2001 . . . . . . . . 12

A. Introduction . . . . . . . . . . . . . . . . 12

B. The Internal Revenue Service is entitled to collect taxpayer's 1982 tax liability because the original assessment was not extinguished by the amount erroneously refunded to taxpayer . . . . . . . . . . . 16

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . 41

STATUTORY APPENDIX . . . . . . . . . . . . . . . . . . . 42


## TABLE OF AUTHORITIES

**CASES:**


Black Prince Distillery, Inc. v. United States, 586 F. Supp. 1169 (D.N.J. 1984) . . . . . . . . . . . . . . 15

Brookhurst, Inc. v. United States, 931 F.2d 554 (9th Cir. 1991) . . . . . . . 14, 21, 28, 35, 37

Bull v. United States, 295 U.S. 247 (1935) . . . . . . . . . . 26

Clark v. United States, 63 F.3d 83 (1st Cir. 1995) . 10, 29, 33, 37, 39, 40

Cohen v. Mayer, 199 F. Supp. 331 (D.N.J. 1961), aff'd sub nom. Cohen v. Gross, 316 F.2d 521 (3d Cir. 1963) . . . . . . . 26

Cohen v. United States, 995 F.2d 205 (Fed. Cir. 1993) . . . . 17

Commissioner v. Court Holding Co., 324 U.S. 331 (1945) . . . . 23

Davenport v. United States, 91-2 U.S. Tax Cas. ¶ 50,531 (W.D. Ky. 1991) . . . . . . . . . . . . . . . . . . . 24

Ewing v. United States, 914 F.2d 499 (4th Cir. 1990) . . . . 27

REPRODUCED AT THE NATIONAL ARCHIVES


Goldstein, Baron & Lewis, Chartered v. United States, 70 A.F.T.R.2d 92-5207 (D. Md. 1992) . . . . . . . . . . . . 25

Goldstein, Baron & Lewis, Chartered v. United States, 995 F.2d 35, 37 (4th Cir.), cert. denied, 114 S. Ct. 684 (1994) . . . . . . . . . . . . 25

Groetzinger v. Commissioner, 69 T.C. 309 (1977) . . . 18, 22, 23, 29-31, 33

Ideal Realty Co. v. United States, 561 F.2d 1123 (4th Cir. 1977) . . . . . . . . . . . . 15, 35

Karp v. United States, 868 F. Supp. 235 (N.D. Ill. 1994) . . 33

Kelley v. United States, 30 F.2d 193 (9th Cir. 1929) . . . . 32

La Follette v. United States, 176 F. Supp. 192 (S.D. Calif. 1959) . . . . . . . . . . . . . . . . . . . . 24, 25

Lewis v. Reynolds, 284 U.S. 281 (1932) . . . . . . . . . . . . 17

Marshall et ux. v. United States, 158 F. Supp. 793 (E.D. Tex. 1958) . . . . . . . . . . . . . . . . . . . . . . 24

O'Bryant v. United States, 49 F.3d 340 (7th Cir. 1995) . 10, 29, 33, 35, 37-40

Purcella v. United States, 92-1 U.S.T.C. ¶ 50,083 (D. Colo. 1992) . . . . . . . . . . . . . . . . . . . . 24, 25

Rodriguez v. United States, 629 F. Supp. 333 (N.D. Ill. 1986) 24, 25, 33

Sanfellipo v. United States, 90-2 U.S. Tax Cas. ¶ 50,567 (N.D. Calif. 1990) . . . . . . . . . . . . . . . 24

Stanley v. Commissioner, 61 Tax Ct. Mem. (CCH) 1699; T.C. Memo (P-H) 910020 (1991) . . . . . . . . . . . . . . . 5

Stevens v. United States, 49 F.3d 331 (7th Cir. 1995) . . . . 26

United States v. Brown, 782 F. Supp. 321 (N.D. Tex. 1990) . . 25

United States v. C & R Investments, 404 F.2d 314 (10th Cir. 1968) . . . . . . . . . . . . . . 15

United States v. Latham, 754 F.2d 747 (7th Cir. 1985) . . . . 27

United States v. Wilkes, 946 F.2d 1143 (5th Cir. 1991) . 10, 24, 25, 29-33

United States v. Wurtz, 303 U.S. 414 (1938) . . . . . . . . . . 14

United States v. Young, 79-2 U.S. Tax Cas. ¶ 9609 (D. Del. 1979) 24, 25

Warner v. Commissioner, 526 F.2d 1 (9th Cir. 1935) . . . . . . 15


**STATUTES:**


28 U.S.C. § 2415 . . . . . . . . . . . . . . . . . . . . . . . . 40

31 U.S.C. § 3728 . . . . . . . . . . . . . . . . . . . . . . . . 17

Individual Income Tax Act of 1944, ch. 210, § 14(a), 58 Stat. 231 . . . . . . . . . . . . 18, 32

Omnibus Budget Reconciliation Act of 1990, Pub. L. No. 101-508, § 11317(c), 104 Stat. 1388 . . . . 13

Revenue Act of 1926, ch. 27, § 307, 44 Stat. 9 . . . . . . . . 32

Revenue Act of 1928, ch. 852, § 610, 45 Stat. 791 . . 14, 15, 34

REPRODUCED AT THE NATIONAL ARCHIVES

Internal Revenue Code of 1986 (26 U.S.C.):


§ 6151(a) . . . . . 27
§ 6201 . . . . . 42
§ 6201(a) . . . . . 12
§ 6201(a)(1) . . . . . 12
§ 6203 . . . . . 25, 42
§ 6204 . . . . . 13, 14, 37
§ 6204(a) . . . . . 21, 36
§ 6211 . . . . . 13, 15, 18, 19, 39, 42
§ 6211(a) . . . . . 12, 18
§ 6211(b)(2) . . . . . 18, 19, 32
§ 6212(a) . . . . . 12
§ 6213(a) . . . . . 12
§ 6322 . . . . . 28
§ 6325 . . . . . 28
§ 6325(a)(1) . . . . . 28
§ 6325(f) . . . . . 29
§ 6325(f)(2) . . . . . 28
§ 6331 . . . . . 14
§ 6402 . . . . . 17
§ 6501 . . . . . 8, 12, 27, 35, 36, 43
§ 6501(a) . . . . . 7, 16
§ 6502 . . . . . 8, 13, 20, 24, 34, 36, 43
§ 6502(a) . . . . . 7, 13, 16, 17
§ 6503(a) . . . . . 5, 16
§ 6514 . . . . . 14
§ 6532(b) . . . . . 14, 44
§ 6901 . . . . . 22, 23, 31
§ 6901(b) . . . . . 23, 30
§ 7402 . . . . . 14
§ 7403 . . . . . 14
§ 7405 . . . . . 8, 9, 13-16, 34-36, 40, 44
§ 7405(b) . . . . . 14


**MISCELLANEOUS:**

Treasury Regulations on Income Tax:


§ 301.6211-1(f) . . . . . 19
§ 301.6203-1 . . . . . 25
§ 301.6501(a)-1(b) . . . . . 36

G.C.M. 36624 (March 11, 1976), <u>modifying</u> G.C.M. 36263 (May 9, 1975) . . . . . 21
Internal Revenue Manual § 3(17)(79) 12.2:3 . . . . . 21
Rev. Proc. 84-58, 1984-1 Cum. Bull. 501 . . . . . 17
Rule 56, Rules of the United States Court of Federal Claims . . 1
S. Rep. No. 960, 70th Cong., 1st Sess. (1939-1 (Pt. 2) C.B. 409) . . . . . 15, 34
S. Rep. No. 885, 78th Cong., 2d Sess., (1944-2 C.B. 858) . . 18

REPRODUCED AT THE NATIONAL ARCHIVES

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 94-32 T

(The Honorable Lawrence S. Margolis)

LEROY P. STANLEY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

CROSS-MOTION OF THE UNITED STATES FOR SUMMARY JUDGMENT

Defendant, the United States, pursuant to Rule 56 of the Rules of the United States Court of Federal Claims (RCFC), respectfully moves for summary judgment in its favor. As good cause therefor, defendant states that there exists no genuine issue as to any material fact, and that defendant is entitled to judgment as a matter of law. In support of this motion, defendant relies upon the pleadings, the Stipulation of Facts filed October 4, 1995, and the accompanying brief.[1/]

Defendant respectfully requests oral argument on the foregoing motion.

[1/]Pursuant to Rule 56(d)(3) of the Rules of this Court, neither party has submitted Proposed Findings of Uncontroverted Fact.

REPRODUCED AT THE NATIONAL ARCHIVES

WHEREFORE, defendant prays that plaintiff be denied recovery, and that judgment dismissing the Complaint be entered, with all allowable costs assessed against plaintiff.

Respectfully submitted,

W. C. RAPP
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-0503

LORETTA C. ARGRETT
Assistant Attorney General
MILDRED L. SEIDMAN
Chief, Court of Federal Claims Section
THOMAS D. SYKES
Reviewer

Of Counsel

December 7, 1995

REPRODUCED AT THE NATIONAL ARCHIVES

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 94-32 T

(The Honorable Lawrence S. Margolis)

LEROY P. STANLEY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# BRIEF FOR THE UNITED STATES IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT, AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This is a suit in which plaintiff seeks a refund of amounts remitted by plaintiff to the United States which have been retained by the United States in satisfaction of plaintiff's undisputed federal income tax liability for the calendar year 1982.

## QUESTION PRESENTED

Whether the statute of limitation for collection of an assessment of tax, penalty and interest timely made against plaintiff on June 18, 1991, expires on June 17, 2001 (as provided by statute), or at some earlier time.

REPRODUCED AT THE NATIONAL ARCHIVES

## STATUTES AND REGULATIONS INVOLVED

The relevant provisions of the Internal Revenue Code and Treasury Regulations are contained in the Appendix, infra.

## STATEMENT

On or before April 15, 1983, plaintiff Leroy F. Stanley filed his individual income tax return for the calendar year 1982. Stip. ¶ 2.[2] The Internal Revenue Service reviewed the return and issued a notice of deficiency disallowing certain credits and deductions, and determining that Stanley owed additional tax for 1982 in the principal amount of $240,541.37, plus additions to the tax for negligence and overvaluation. Stip. ¶ 3.

Stanley timely filed a petition in the United States Tax Court contesting the determination made by the Commissioner. Stip. ¶ 4. Plaintiff and the Service ultimately reached agreement as to various of the matters at issue in the Tax Court case, while leaving others for decision by that court. Stip. ¶ 5, 6. A stipulation reflecting the agreement was signed in October, 1989, and filed with the Tax Court. Stip. ¶ 6.

On October 11, 1989, Stanley mailed a check to the Internal Revenue Service for $538,276.17 to be applied against the deficiencies in tax, penalties, and interest to be assessed against him for 1982. Stip. ¶ 7. The Service received the check on October 16, 1989, and credited his account. Stip. ¶ 8.

---

[2] "Stip." refers to paragraphs of the Stipulation of Facts filed by the parties on October 4, 1995.

REPRODUCED AT THE NATIONAL ARCHIVES

On January 22, 1991, the Tax Court entered its decision. Stanley v. Commissioner, 61 Tax Ct. Mem. (CCH) 1699; T.C. Memo (P-H) 910020. The decision became final on April 22, 1991, with the expiration of appeal time. Stip. ¶ 9. Pursuant to Section 6503(a) of the Internal Revenue Code of 1986,[3] the statute of limitations for assessing additional tax against Stanley for 1982 had been suspended during the pendency of the Tax Court case, and for 60 days after the decision became final. This 60-day period expired on June 21, 1991. Stip. ¶ 10.

On June 18, 1991, the Internal Revenue Service assessed against Stanley additional tax, penalty, and interest for 1982 in the respective amounts of $194,592.33, $46,565.20 and $274,720.41, a total of $515,877.94. Stip. ¶ 11. There is no dispute that the assessments were timely. Stip. ¶¶ 10, 11. The assessments made on June 18, 1991, however, were not entered into the Internal Revenue Service computer data base for Stanley's 1982 income tax account until more than a month later, some time during the week beginning July 21, 1991, and ending July 27, 1991. Stip. ¶ 13.

Some time in July, 1991, Stanley received a check from the Internal Revenue Service in the amount of $637,004.62. The check was dated July 15, 1991, and indicated on its face that it was a refund of overpaid 1982 income tax, plus interest thereon. The

[3]All statutory references are to the Internal Revenue Code of 1986, as in effect at the applicable time, unless otherwise specifically stated.

REPRODUCED AT THE NATIONAL ARCHIVES

check constituted an erroneous refund.[4/] The refund was recorded in the Internal Revenue Service computer data base for Stanley's 1982 income tax account during the week beginning June 30, 1991, and ending July 6, 1991 -- that is, at least two weeks prior to the time that the assessment would later be recorded in the same computer system. Stip. ¶ 14.

On September 9, 1991, the Internal Revenue Service sent to Stanley a "Reminder of Unpaid Tax," which requested payment from Stanley in the amount of $630,249.68. Stip. ¶ 15. In response, Stanley's counsel wrote a letter to the Service (dated September 20, 1991), and enclosed a check from Stanley in the amount of $630,249.68. The Service negotiated the check, and applied the remittance to the outstanding balance respecting Stanley's 1982 income tax. Stip. ¶ 16. Stip. Ex.[5/] 12. During 1992, plaintiff's counsel corresponded with various officials and employees of the Internal Revenue Service with respect to Stanley's 1982 taxes. Stip. ¶ 17, 18, 19. On July 6, 1993, Stanley's counsel made a demand for the return of the money that had been delivered to the Internal Revenue Service on September 20, 1991, and filed a claim for refund of the same amount. Stip. ¶ 19. On Octo-

---

[4/]The erroneous refund apparently occurred because the assessment (made manually on June 18) was recorded in the computer Master Files record of the Internal Revenue Service no earlier than July 21, at least two weeks after the entries which caused the refund check to be issued some time prior to July 15. Stip. ¶¶ 13, 14. Thus, on the relevant records of the Internal Revenue Service, the assessment had not yet been recorded at the time of the erroneous refund.

[5/]"Stip. Ex." refers to exhibits attached to the Stipulation of Facts filed by the parties on October 4, 1995.

REPRODUCED AT THE NATIONAL ARCHIVES

ber 15, 1993, the Internal Revenue Service sent to Stanley a notice disallowing the claim for refund. Stip. ¶ 19.

SUMMARY OF ARGUMENT

In evaluating this case--and in weighing the merits of the conflicting arguments--the Court should keep in mind one fundamental, undisputed point: Mr. Stanley is not entitled to the substantial sum he seeks to recover. This is not a case where the parties dispute whether a particular tax is owed, nor whether it was properly assessed. The amount owed by plaintiff was determined by agreement with the Government and by the Tax Court of the United States, and was assessed by the Internal Revenue Service within the applicable statutory period. Stanley proposes a strained interpretation of the Internal Revenue Code in order to reduce by eight years (from ten years to two years) the period during which the Government may collect a tax duly owing and timely assessed.

The Commissioner generally has three years from the date an income tax return is filed within which to assess the tax or bring suit for collection without assessment. § 6501(a). The Internal Revenue Code also provides that, once an assessment has been made, the Government has ten additional years within which to collect the tax. § 6502(a). An assessment is the formal recording in the Commissioner's records of the amount of tax the Internal Revenue Service had determined that a taxpayer is responsible for with respect to a given taxable period.

REPRODUCED AT THE NATIONAL ARCHIVES

If the IRS erroneously refunds an amount to a taxpayer, it can reclaim the amounts refunded either (1) by an "erroneous refund" suit under Section 7405 (which must be brought within two years of the date the erroneous refund was made); or (2) where the refund results in an underpayment of taxes, by the usual assessment or collection procedures conducted within the limitations periods specified by Sections 6501 and 6502. Where the tax in question has previously been assessed, the IRS's authority to proceed to collect on the basis of that original assessment depends on whether the erroneous refund was a "rebate" or "non-rebate" refund. A "rebate" refund is a refund made on the basis of a determination by the Commissioner that the taxpayer owes less tax under the provisions of the Code than the amount previously assessed. A "non-rebate" refund is a refund caused by an error (such as a computer or clerical error) in performing some function other than redetermining the taxpayer's tax liability under the substantive provisions of the Internal Revenue Code. Since a rebate refund (unlike the refund at issue here) is based on a redetermination of tax liability by the IRS, the refund results from an abatement of the original assessment. After abatement of the assessment, only the reduced assessment remains. As a result, if the IRS later determines that the redetermination of the taxpayer's tax liability was in error and that taxpayer's tax obligation under the provisions of the Code is in fact greater than the new amount then carried on its books as the assessed amount, the IRS may either seek recovery of the under-

REPRODUCED AT THE NATIONAL ARCHIVES

paid amount by means of an erroneous refund suit under Section 7405 or it may collect the underpaid amount by invoking the procedures allowing it to reassess the additional amount of tax and collect based on that reassessment.

On the other hand, where (as here) an underpayment results from a return of an amount previously assessed and paid because of an error unrelated to a redetermination of liability (a "non-rebate" refund), that refund may be collected either through an erroneous refund suit brought under Section 7405, or the IRS may collect the resulting unpaid tax liability based on the original assessment, since the non-rebate refund did not result from a redetermination of the tax liability and did not cause an abatement, reduction, or modification of the original assessment. The underpayment of tax resulting from the refund may be collected by using normal tax collection procedures (distraint or court suit) as if there had never been a payment made against the liability in the first instance.[6/]

In this case, the IRS made a timely assessment of the amount it (and the Tax Court and the taxpayer) determined to be taxpayer's income tax liability for tax year 1982. Thereafter (but prior to the time the agreed assessment was recorded in the computer records of the Internal Revenue Service), a check in the amount of $637,004.62, was erroneously sent by the Internal

[6/]Indeed, in this instance, where the recorded liability remains the same, the Government may not make a new assessment because the original assessment remains in existence, and there cannot be two valid assessments for the same tax liability.

REPRODUCED AT THE NATIONAL ARCHIVES

Revenue Service Center to plaintiff.[7] Since this refund resulted from some unexplained computer error -- and not from any determination or decision by the Internal Revenue Service -- it constituted a non-rebate refund, and accordingly the underlying assessment was not decreased, abated, extinguished, or disturbed in any way, and remains today available for collection.[8]

In arguing that the erroneous refund "extinguished" the timely subsequent assessment, plaintiff relies on a line of cases led by the Fifth Circuit decision, United States v. Wilkes, 946 F.2d 1143 (5th Cir. 1991), followed by O'Bryant v. United States, 49 F.3d 340 (7th Cir. 1995), and Clark v. United States, 63 F.3d 83 (1st Cir. 1995). This court should decline to follow the flawed reasoning of those decisions, which are grounded in fundamental misunderstandings of what an assessment represents and the consequences of a "rebate" or a "non-rebate" refund on an assessment. Strictly speaking, an assessment cannot be satisfied. Nor can an assessment be not satisfied. The assessment is merely a formal administrative record of a tax liability--paid or unpaid--that the Internal Revenue Service has determined the taxpayer

---

[7]We speculate that this is the amount (including interest) which would have been due to plaintiff if the June 18 assessment had not been made.

[8]Accordingly (as set out supra, n. 4), at the time the assessment was actually entered on the Service's records, the Service was no longer in possession of any of plaintiff's funds with which to satisfy the outstanding obligation. It is difficult to see how the debt can be said to have been paid in any meaningful sense, much less that the underlying assessment had been "extinguished" (Pl. Br. 9) by a payment already erroneously refunded to plaintiff.

REPRODUCED AT THE NATIONAL ARCHIVES

owes. Payment of the amount assessed does not "extinguish" or otherwise affect the assessment; it merely reduces the balance of the unpaid tax liability as recorded on the IRS books. The tax liability itself is created by the Internal Revenue Code and exists prior to and in the absence of an assessment, and may be greater or less than the assessment. Moreover, a credit toward the unpaid portion of the tax liability imposed under the Code does not mean that the tax liability is permanently satisfied. The ultimate obligations of the taxpayer must be viewed in light of all transactions as a whole. Where the totality of the transactions results in a portion of the tax debt as determined under the Code still being owed, the IRS can collect it. How it may collect depends upon whether the amount actually owed under the Code is recorded in the books of the IRS as the assessment. If it is, as was the case here, and if the statute on collection of the tax liability recorded on the books as the original assessment is still open, then the Service may use all of the statutory remedies for collection of that assessment. If, as is not the case at bar, that statute has run, then the IRS must resort to other remedies.

REPRODUCED AT THE NATIONAL ARCHIVES

ARGUMENT

THE JUNE 18, 1991, ASSESSMENT MAY BE COLLECTED AT ANY TIME PRIOR TO JUNE 18, 2001

A. Introduction

Section 6201(a) of the Internal Revenue Code, Appendix, infra, authorizes and requires the Commissioner of Internal Revenue, as the delegate of the Secretary of the Treasury, to make inquiries, determinations, and assessments of all taxes. It also provides that the Commissioner shall assess the tax shown on a return filed by a taxpayer. § 6201(a)(1). Accordingly, a tax liability reported by a taxpayer on a return can be assessed without notice. §§ 6201(a), 6212(a), 6213(a). When, on the other hand, the IRS seeks to assess a deficiency in income tax, i.e., an amount in addition to the amount the taxpayer reported on the return (see § 6211(a)), the Service generally must send a pre-assessment notice of deficiency. § 6212(a). The taxpayer then may petition the Tax Court for a redetermination of that deficiency within 90 days, and the Service may not assess the deficiency within those 90 days or, if a petition is filed (as in the case at bar), until the decision of the Tax Court becomes final. § 6213(a).

The IRS is generally allowed three years from the date that a return is filed to assess the tax or to commence suit to collect the tax without assessment. § 6501, Appendix, infra.

REPRODUCED AT THE NATIONAL ARCHIVES

Section 6502(a) provides a ten-year[9/] period after assessment for collection by levy or court action, unless the IRS and taxpayer agree to a different period. § 6502(a), Appendix, infra. Since the assessment for plaintiff's 1982 liability was made on June 18, 1991, the ten-year period for collection will not expire until June 17, 2001.

In the event of an erroneous refund to a taxpayer, the Service can reclaim the amount refunded in error in at least two ways: (1) by bringing an erroneous refund suit under Section 7405; or (2) through administrative collection procedures. The type of administrative collection procedure depends upon whether the refund is a rebate refund or a non-rebate refund. As will be explained in more detail below, if the erroneous refund results because the IRS has redetermined taxpayer's liability and thus abated the initial assessment, the IRS may collect the amount returned in error only if it first makes a (timely) supplemental assessment for the correct tax liability through the ordinary assessment process (i.e., Section 6204 and, with respect to taxes subject to the deficiency mechanism, Sections 6211 et seq.). Where, however, the erroneous refund does not stem from a redetermination of taxpayer's tax liability and an abatement of the initial assessment by the IRS, but rather results from

---

[9/]Section 6502(a) previously provided for a six-year period for collection, which was extended to the present ten years by Section 11317(c) of the Omnibus Budget Reconciliation Act of 1990, Pub. L. No. 101-508, 104 Stat. 1388, for assessments made after November 5, 1990, or for assessments where the six-year period had not expired by that date.

REPRODUCED AT THE NATIONAL ARCHIVES

computer error or similar types of mistakes, the initial assessment is not abated and the Service may utilize the ordinary enforcement measures under Code Sections 6331, 7402, and 7403, to collect the unpaid liability without additional assessment.

Section 7405(b) expressly provides that "[a]ny portion of a tax imposed by this title which has been erroneously refunded . . . may be recovered by civil action brought in the name of the United States."[10/] Section 6532(b) places a two-year statute of limitations on the Government's right to sue under § 7405. In the instant case, the two-year period of limitation expired in July, 1993. Plaintiff filed the instant suit in January, 1994.

The payment of a duly owing tax, followed by an erroneous refund of that payment, does not result in the extinguishment of the underlying tax liability (which is created by the positive provisions of the Internal Revenue Code), and the United States is not limited to a Section 7405 suit as the only means by which to recover such a mistakenly refunded tax. See, e.g., Brookhurst, Inc. v. United States, 931 F.2d 554 (9th Cir.), cert. denied, 112 S. Ct. 299 (1991) (Government may make supplemental assessment of taxes under Section 6204 in amount of erroneous

---

[10/] No statute is necessary to authorize the United States to recover funds that its agents wrongfully, erroneously, or illegally paid. Section 610 of the Revenue Act of 1928, ch. 852, 45 Stat. 1115, which added the provisions now found in Code §§ 6532(b) and 7405, merely placed a limitation upon the time in which such suits could be brought. United States v. Wurtz, 303 U.S. 414, 416 (1938) ("The Government's right to recover funds, from a person who received them by mistake and without right, is not barred unless Congress has 'clearly manifested its intention' to raise a statutory barrier.").

REPRODUCED AT THE NATIONAL ARCHIVES

refund where original assessment was inaccurate; not limited to erroneous refund suit); Ideal Realty Co. v. United States, 561 F.2d 1123, 1124-25 (4th Cir. 1977) (erroneously refunded interest subsequently assessed and collected through levy); Warner v. Commissioner, 526 F.2d 1 (9th Cir. 1935); United States v. C & R Investments, 404 F.2d 314 (10th Cir. 1968); Black Prince Distillery, Inc. v. United States, 586 F. Supp. 1169 (D.N.J. 1984) (§ 7405 is not exclusive remedy for the Government to recover an erroneous refund as long as the limitations period for other collection procedures has not expired). The legislative history of Section 610 of the Revenue Act of 1928, ch. 852, 45 Stat. 791, in which the provisions now found in Section 7405 were initially enacted, provided that "if the limitation period on the making of assessments has not expired, the erroneous refund may be recovered by assessment in the ordinary manner."[11/] S. Rep. No. 960, 70th Cong., 1st Sess. at 42 (1939-1 (Pt. 2) C.B. 409, 438).

---

[11/]As noted infra at n. 18, until the statutory definition of "deficiency" changed in 1944, all refunds of taxes subject to the deficiency procedures could give rise to a "deficiency," and therefore could result in a determination of a deficiency and, eventually (after notice to taxpayer), an assessment. In other words, both types of refunds, those where the IRS has determined that the obligation is less than the assessment indicates (now called "rebate refunds") and those where the erroneous refund was not a result of a determination that a tax was not owed (now called "non-rebate refunds), if erroneous, required a new assessment because they gave rise to "deficiencies." Now, however, the statute has changed, and "non-rebate refunds" may not be taken into account in calculating deficiencies. § 6211. Since the original assessment itself has not been altered by the issuance of a non-rebate refund, the IRS can recover the erroneous refund by collecting the tax in the amount originally assessed. Congress clearly intended § 7405 to provide the IRS with an additional avenue for recovering amounts erroneously refunded, rather than imposing a restriction on its ability to do so.

REPRODUCED AT THE NATIONAL ARCHIVES

Thus, in addition to the erroneous refund suit under Section 7405, the United States can also assess and collect the tax liability, judicially or administratively, within the usual limitations period.

B. The Internal Revenue Service is entitled to collect taxpayer's 1982 tax liability because the original assessment was not extinguished by the amount erroneously refunded to taxpayer

The Commissioner made an assessment of tax against plaintiff with respect to 1982 on June 18, 1991. That assessment was made within 60 days of April 22, 1991, the date on which the Tax Court's decision became final, and was accordingly made within the time prescribed by Sections 6501(a) and 6503(a). The Government's right to collect that assessment at any time prior to June 18, 2001, is authorized by the plain language of Section 6502(a):

> Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun--
>
> (1) within 10 years after the assessment of the tax * * *.

Accordingly, the Government may collect any unpaid balance on the assessment that remains due and owing after the erroneous refund.[12]

---

[12] In the instant case, plaintiff may be expected to argue that retention by the Internal Revenue Service of plaintiff's September 20, 1991, "deposit" (See Ex. 14) is improper. The Service treated (and continues to treat) that remittance as a payment of the June 18, 1991, deficiency assessment. Plaintiff's expected protests to the contrary notwithstanding, the Service's (continued...)

REPRODUCED AT THE NATIONAL ARCHIVES

Plaintiff argues that he paid the amount assessed for 1982, which action "extinguished" the assessment. He concludes that the IRS may not thereafter collect under that assessment even though it erroneously returned a portion of the taxes he paid.

Payment of an amount that was assessed does not "extinguish" or discharge the assessment, or affect it in any manner. Where the IRS has made a timely assessment, and the taxpayer has made a payment of the underlying tax liability, but the IRS returns the amount paid because of an error not involving a redetermination of the tax liability, the assessment itself is not abated or reduced, but remains on the books of the Internal Revenue Service. This is especially so where the alleged extinguishment happened before the assessment was even recorded. Accordingly, so long as the general (ten-year) period of limitations remains open, the United States may recover the unpaid assessed liability

12/ (...continued) treatment is correct. See, Rev. Proc. 84-58, § 4.01(3), 1984-1 Cum. Bull. 501; see also Cohen v. United States, 995 F.2d 205 (Fed. Cir. 1993)(deposit becomes a payment in the presence of even an invalid assessment). But even if the remittance remained a "deposit", the issue is not whether the IRS's retention of it is improper, but whether the June 18, 1991, assessment may properly be collected, or plaintiff's September 20, 1991, remittance otherwise retained. If the assessment remained valid and may be collected -- as we urge -- then the mechanics of payment might be handled in several ways. The United States could file a counterclaim (i.e., a collection action against plaintiff pursuant to § 6502(a)) and, at the termination of this litigation, simultaneously return plaintiff's "deposit" and require a new payment check from plaintiff in satisfaction of the judgment on defendant's counterclaim. On the other hand, the United States could retain the funds either as an offset to plaintiff's claim (see 31 U.S.C. § 3728; Code § 6402), or even under the doctrine of equitable recoupment. Lewis v. Reynolds, 284 U.S. 281 (1932).

REPRODUCED AT THE NATIONAL ARCHIVES

administratively or file suit to reduce the unpaid portion to judgment.

A detailed explanation of the difference between "rebate" and "non-rebate" refunds is necessary in order to avoid the confusion that has been generated by most of the decided cases.[13/] The term "rebate" comes from the definition of "deficiency" in Code Section 6211.[14/] Section 6211(a), Appendix, infra, defines a deficiency as the amount by which the taxpayer's substantive tax liability exceeds the amount shown on the return, increased by assessments previously made, and reduced by "rebates." Under Section 6211(b)(2), Appendix, infra, a "rebate" is, inter alia, a refund "made on the ground that the tax imposed by [the Code] was less than [amounts shown on the return and previously assessed]." A "rebate" occurs where the amount reported on the return has been assessed and paid and the IRS has then returned any part of the amount because of a redetermination

---

[13/]In the course of this discussion, the words used ("rebate", "deficiency", "assessment" and so forth) are all terms used by the Internal Revenue Code to refer to actions or things mandated by the statute. The term "extinguishment" is not found in the Code, and is a term invented to refer to a concept foreign to the statute.

[14/]This distinction was created in 1944 by a statutory change in the definition of "deficiency" (as now found in § 6211) by Section 14(a) of the Individual Income Tax Act of 1944, ch. 210, 58 Stat. 231. Prior to the definitional change, there was no distinction between "rebate" and "non-rebate" refunds. See S. Rep. No. 885, 78th Cong., 2d Sess., at 37-40 (1944-2 C.B. 858, 887-888). Both types of refunds by definition eliminated any prior assessment to the extent of the refund, and the deficiency procedures had to be utilized in order to collect the refund of any tax subject to those procedures. See Groetzinger v. Commissioner, 69 T.C. 309, 314-315 (1977).

REPRODUCED AT THE NATIONAL ARCHIVES

of liability, i.e., when the tax properly imposed is less than the tax as then recorded on the assessment rolls.[15] For example, a "rebate" could occur where a taxpayer files an amended return reporting a new deduction or some other adjustment to his original return and claims a refund. Thus, a rebate refund occurs when the taxpayer's liability as recorded on the Commissioner's books is reduced or eliminated. In that event, the redetermination of liability partially abates or reduces the assessment, and generates a refund in the amount of the claim. This type of refund is called a "rebate." § 6211(b)(2). As a result, only the reduced assessment remains on the IRS records. And, according to the statutory definitions of "deficiency" and "rebate" in Section 6211, only a "rebate" refund -- one made based on a substantive determination that the taxpayer has been

[15] Treas. Reg. § 301.6211-1(f) gives the following example of a rebate:

> [A]ssume that the amount of income tax shown by the taxpayer upon his return for the taxable year is $600 and the amount claimed as a credit under section 31 for income tax withheld at the source is $900. If the district director determines that the tax imposed by subtitle A is $600 and makes a refund of $300, no part of such refund constitutes a "rebate" since the refund is not made on the ground that the tax imposed by subtitle A is less than the tax shown on the return. If, however, the district director determines that the tax imposed by subtitle A is $500 and refunds $400, the amount of $100 of such refund would constitute a rebate since it is made on the ground that the tax imposed by subtitle A ($500) is less than the tax shown on the return ($600). The amount of such rebate ($100) would be taken into account in arriving at the amount of any deficiency subsequently determined.

REPRODUCED AT THE NATIONAL ARCHIVES

assessed too much tax -- goes into any subsequent calculation of the amount of a "deficiency."

A "non-rebate" refund, on the other hand, is any amount returned to the taxpayer not because of a determination that the tax is not owing, but because of some error, such as where an amount is returned to a taxpayer because of a computer error or because of an incorrect credit to a taxpayer's account. In this case, the taxpayer's underlying tax liability as recorded on the Internal Revenue Service records by an assessment remains unchanged.

In short, a non-rebate erroneous refund is a refund caused by an error in performing some function other than recomputing tax liability, while a rebate erroneous refund is an erroneous refund made on the basis of a determination that the taxpayer owed less tax than the amount previously assessed. Since a rebate erroneous refund is based on a redetermination of tax liability, the redetermination of the liability results in an abatement of the original assessment (and a rebate refund). Therefore, when the rebate is discovered to be erroneous, a subsequent supplemental assessment (preceded by a determination of a deficiency for taxes, subject to the deficiency procedures) is necessary before the Commissioner can resort to collection procedures that depend upon assessment or can rely on the additional collection period allowed by Section 6502 of the Code.[16]

---

[16] The Code specifically provides that the IRS may make a supplemental assessment where the outstanding assessment is (continued...)

REPRODUCED AT THE NATIONAL ARCHIVES

In the case of a non-rebate erroneous refund, however, there has been no abatement of the original assessment and therefore no need for the tax to be reassessed.[17] Consequently, a non-rebate erroneous refund resulting in an underpayment of tax liability may be recovered by all normal tax collection procedures without further assessment if the Service, in the first instance, timely assessed the tax for the tax period to which the refund relates.

In this case, the erroneous refund of taxes paid for the tax year 1982 was not based on a redetermination of tax liability for that tax. Indeed, in the instant case there appears to be no explanation whatever for the refund, aside from the fact that it was made before the timely assessment had actually been recorded in the computer records of the Internal Revenue Service. It thus appears that the computer "thought" that the account had a balance owing to the taxpayer (since no assessment had been recorded) and accordingly erroneously refunded it. Whatever the actual physical cause, it was not -- and plaintiff does not allege otherwise -- the result of any redetermination and reduc-

---

[16](...continued) "imperfect or incomplete in any material respect." Section 6204(a). Where the IRS determines that more tax is owed than is reflected on the assessment, that assessment is obviously "imperfect or incomplete." See Brookhurst v. United States, 931 F.2d at 555-556.

[17]The differences between rebate refunds and non-rebate refunds, and their differing effects, are discussed in the Internal Revenue Manual, I.R.M. 3(17)(79) 12.2:3, and a General Counsel Memorandum, G.C.M. 36624 (March 11, 1976), modifying G.C.M. 36263 (May 9, 1975).

REPRODUCED AT THE NATIONAL ARCHIVES

tion by the Commissioner of plaintiff's liability for 1982. Thus, it was a non-rebate refund which did not result in an abatement of taxes for 1982 and did not require a new assessment for that year prior to collection.

The Government's position is supported by the Tax Court's decision in Groetzinger v. Commissioner, 69 T.C. 309 (1977). In that case, an estate filed its estate tax return on April 6, 1971, showing a tax liability of $19,668.38. Subsequently, the IRS timely made deficiency assessments in the amounts of $1,643.53 and $2,456. On or before March 31, 1972, the full amount of the taxes assessed was paid. In June of 1972, however, the IRS erroneously posted a payment to the estate's tax account, and, as a result, refunded $19,667.74 to the estate, which was distributed to the beneficiaries of the estate. In March of 1976, the IRS issued notices of liability to the beneficiaries under the transferee liability provisions. The beneficiaries filed petitions in the Tax Court challenging those notices.

The issues in the Tax Court centered on Section 6901 of the Code, which under certain conditions imposes liability on the transferee of an estate as to the amount of tax shown on the estate tax return "or as to any deficiency or underpayment of tax" with respect to such return. The Commissioner argued primarily that the erroneous refund had created a deficiency. 69 T.C. at 314. The Groetzinger court rejected that argument because the refund was a non-rebate refund, and therefore did not fall within the structure of the definition of a deficiency. 69

REPRODUCED AT THE NATIONAL ARCHIVES

T.C. at 314-15. The court did hold, however, that there was an underpayment for which the transferees were liable, explaining (69 T.C. at 315-16 (emphasis added)):

> [T]he erroneous refund did not result in a deficiency.
>
> Nevertheless, there is an underpayment of tax within the meaning of Section 6901(b), upon which the asserted liabilities are based. The estate had filed its Federal estate tax return showing $19,668.38 due as its estate tax. Subsequently, a deficiency of $1,643.53 was assessed. The estate issued its check for $21,311.91, which was negotiated by respondent. A second deficiency of $2,456 was assessed; and the estate issued a second check to respondent in that amount, which was also negotiated. Finally, because of a bookkeeping error, respondent issued a check to the estate for $19,667.74, which the estate negotiated and transferred to petitioners among others. <u>Arguably, the estate taxes were fully paid after respondent negotiated the second check. But when all of the financial transactions are viewed together, there is clearly an underpayment of tax.</u> <u>Cf.</u> <u>Commissioner v. Court Holding Co.</u>, 324 U.S. 331 (1945). The amount of tax due was not fully paid, only a net amount of $4,100.17 was actually paid. Hence there was an underpayment of tax in the amount of $19,667.74. And the liabilities asserted herein are in fact based on that underpayment.

Although <u>Groetzinger</u> dealt with the meaning of the word "underpayment" for purposes of Section 6901, the court's determination is ultimately based upon the same broad principle that governs this case. The Tax Court concluded that an assessment is not eradicated or somehow legally nullified by a payment that is subsequently returned by mistake, unrelated to a determination of the underlying liability. We submit that this principle is equally applicable in the instant case and that, when all the financial transactions are viewed together, the assessment made on June 18, 1991, remained in existence. Though the IRS mistakenly refunded $630,249.68 to taxpayer, that assessment remains

REPRODUCED AT THE NATIONAL ARCHIVES

collectible for the duration of the remaining limitations period on collection under Section 6502 of the Code.

This position is also supported by Davenport v. United States, 91-2 U.S. Tax Cas. ¶ 50,531 (W.D. Ky. 1991). Davenport involved a double credit followed by an erroneous payment by the IRS to the taxpayers. In concluding that payment did not extinguish the assessment and that no new assessment needed to be made, the district court stated that "[a] non-rebate erroneous refund simply gives back to the taxpayer a part of the taxpayer's assessed tax and the assessed balance due may be collected by ordinary collection procedures." Davenport, 91-2 U.S. Tax Cas. at 90,025. See also Sanfellipo v. United States, 90-2 U.S. Tax Cas. ¶ 50,567 at 85,943 (N.D. Calif. 1990) (district court concluded, inter alia, that a taxpayer's payment of assessments "[d]id not extinguish the liabilities or otherwise foreclose the IRS from attempting to collect the erroneous refunds").

In arguing that payment of the tax extinguished the assessment, plaintiff relies primarily on the Fifth Circuit's decision in Wilkes, which held that payment of a tax liability extinguished the assessment to the extent of the payment.[18/] The

[18/]See Rodriguez v. United States, 629 F. Supp. 333, 344 (N.D. Ill. 1986); United States v. Young, 79-2 U.S. Tax Cas. ¶ 9609 (D. Del. 1979). See also Purcella v. United States, 92-1 U.S.T.C. ¶ 50,083 (D. Colo. 1992), appeals dismissed by agreement (10th Cir. Nos. 92-1071, 92-1078, 92-1107); La Follette v. United States, 176 F. Supp. 192 (S.D. Calif. 1959); Marshall et ux. v. United States, 158 F. Supp. 793 (E.D. Tex. 1958) (extinguishment theory). Those courts, like the Wilkes court, failed to understand that a refund does not affect an assessment unless it results in a redetermination of liability and, therefore, an (continued...)

REPRODUCED AT THE NATIONAL ARCHIVES

Wilkes opinion is fundamentally flawed in several respects, and this Court should decline to follow it.

The Fifth Circuit's decision rests upon a fundamental miscomprehension of what an "assessment" represents. An "assessment" is merely a formal administrative record of a tax obligation which is maintained in the Service's files.[19] § 6203. It

---

[18](...continued) adjustment to the assessment, i.e., a rebate refund, and that payment of the tax liability itself does not affect the assessment.

Most of the cases representing the "majority view" are entitled to little or no weight because they did not recognize and address the fundamental distinction between rebate and non-rebate refunds (United States v. Young, 79-2 U.S. Tax Cas. ¶ 9609; La Follette v. United States, 176 F. Supp. 192); Purcella v. United States, 92-1 U.S.T.C. ¶ 50,083); or were actually dealing with rebate refunds (United States v. Brown, 782 F. Supp. 321 (N.D. Tex. 1990) (untimely supplemental assessment); or mistakenly analyzed the case as an erroneous refund issue where the IRS was actually attempting to collect an underpayment of tax for a different year than the year in which the refund was made (Rodriguez v. United States, 629 F. Supp. 333); or followed the Wilkes opinion without any analysis (Goldstein, Baron & Lewis, Chartered v. United States, 70 A.F.T.R.2d 92-5207 (D. Md. 1992)).

After the district court in Goldstein held that the IRS could recover an erroneous refund only by filing an erroneous refund suit or by making a new assessment, the Government appealed that case to the Fourth Circuit, arguing, as it does here, that the IRS could collect an underpayment resulting from an erroneous non-rebate refund on the basis of its original assessment. The Fourth Circuit did not reach this issue, preferring instead to base its reversal of the district court on the ground that the taxpayer had admitted liability for the erroneous refund and therefore waived any objection to collection of the refund. Goldstein, Baron & Lewis, Chartered v. United States, 995 F.2d 35, 37 (4th Cir.), cert. denied, 114 S. Ct. 684 (1994).

[19]Section 6203 of the Code provides: "The assessment shall be made by recording the liability of the taxpayer in the office of the Secretary in accordance with rules or regulations prescribed by the Secretary." In turn, Treasury Regulations on Income Tax, § 301.6203-1 provides, in pertinent part:

(continued...)

REPRODUCED AT THE NATIONAL ARCHIVES

places the taxpayer's tax liability on the books of the Government. Stevens v. United States, 49 F.3d 331 (7th Cir. 1995) (an assessment is "a notation in an IRS office" that "a taxpayer owes it money"); Cohen v. Mayer, 199 F. Supp. 331, 332 (D.N.J. 1961), aff'd sub nom. Cohen v. Gross, 316 F.2d 521, 522-523 (3d Cir. 1963) ("assessment is a prescribed procedure for officially recording the fact and the amount of a taxpayer's administratively determined tax liability, with consequences somewhat similar to the reduction of a claim of judgment"). An assessment does not represent a taxpayer's unpaid tax liability, but all his tax liability--paid and unpaid--for that taxable period. Although the required pre-assessment procedures serve to give notice to the taxpayer of the Government's claim, and the act of assessment commences the running of the clock for further administrative and judicial enforcement of the taxpayer's liability, the "assessment" is not itself the taxpayer's legal obligation, nor does it create the liability; it merely acts, in effect, as an admin-

---

[19/](...continued)

The assessment shall be made by an assessment officer signing the summary record of assessment. The summary record, through supporting records, shall provide identification of the taxpayer, the character of the liability assessed, the taxable period, if applicable, and the amount of the assessment. The amount of the assessment shall, in the case of tax shown on a return by the taxpayer, be the amount so shown, and in all other cases the amount of the assessment shall be the amount shown on the supporting list or record. The date of the assessment is the date the summary record is signed by an assessment officer. * * *."

REPRODUCED AT THE NATIONAL ARCHIVES

istrative judgment for taxes found by the Commissioner to be due. Bull v. United States, 295 U.S. 247, 259 (1935).

A taxpayer is liable for a tax even though the tax has not been assessed.[20] A taxpayer's obligation to pay taxes stems from the provisions of the Code, and the liability arises on the date the tax is due to be paid. The IRS makes an assessment for each taxpayer of the amount of tax that it determines the taxpayer is liable for under the Code for the taxable period in question. Most of the time, i.e., when the taxpayer has correctly computed the total amount of his tax obligation for the year, the assessment is made in the amount that a taxpayer has reported on his tax return. And most of the time, the taxpayer has paid the full amount of that tax obligation before his return is due (through withholding at his place of employment or quarterly payments if self-employed) or at the time he files the return. An assessment is nonetheless made for the amount of his tax liability for that year, despite the fact that the liability has already been paid in full. Although assessment substantially increases the administrative collection tools available to the IRS, as well as expands the period within which the taxes may be

[20] See 26 U.S.C. § 6151(a) (tax is due at the time fixed for filing a return, without notice of assessment or demand from IRS); § 6501 (court proceeding for collection may be brought absent assessment); United States v. Latham, 754 F.2d 747, 751 (7th Cir. 1985) (rejecting taxpayer's argument that an individual cannot have an income tax liability unless the IRS has made an assessment). Cf. Ewing v. United States, 914 F.2d 499, 502-503 (4th Cir. 1990), cert. denied, 111 S. Ct. 1683 (1991) (rejecting taxpayer's argument that, prior to assessment, there can be no tax liability and therefore no "payment" of taxes).

REPRODUCED AT THE NATIONAL ARCHIVES

collected, assessment is not a prerequisite to the collection of the taxes due and owing under the Code. Section 6501 of the Code specifically provides for the bringing of a suit to collect taxes without assessment so long as it is brought within the period for assessment. The amount of the tax obligation is ultimately subject to judicial determination, based upon the facts and the provisions of the Internal Revenue Code, not based on the Service's "assessment."

The separate existence of the unpaid tax liability itself, on the one hand, and the assessment, on the other, is reflected in numerous Code provisions. Sections 6322 and 6325 reveal that a liability for tax is separate and distinct from an assessment. Section 6322 provides that a lien arises at the time an assessment is made "and shall continue until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time." It is the liability, not the assessment, which may ultimately be satisfied by payment. The liability for tax is not satisfied if the IRS erroneously returns part of the payment. See Brookhurst v. United States, 931 F.2d at 556-557, discussed infra, p. 35 et seq. Similarly, Section 6325(a)(1) requires the Service to release a lien if "the liability for the amount assessed * * * has been fully satisfied." Section 6325(f)(2) provides that the IRS may revoke a release of lien and reinstate the lien under certain circumstances, including where a certificate of release of lien "was issued

REPRODUCED AT THE NATIONAL ARCHIVES

erroneously or improvidently." Section 6325 shows that payment of a tax liability and release of a lien has no effect on the continued existence of the assessment. If release of a lien extinguished an assessment, there could never be a reinstatement of a lien and Section 6325(f) would be a nullity.

A fundamental problem with the opinions in Wilkes, O'Bryant, and Clark, is that they mistakenly view the assessment as a record of the taxpayer's unpaid tax liability, and therefore conclude that, once payment is made, the assessment is "satisfied" and disappears, much like a promissory note or mortgage becomes cancelled when the final payment is made and the debt is paid off. But an assessment is not like a note; it is not a record of an amount owing; it is a record of the total amount of the tax liability, whether paid or unpaid. The assessment itself is not affected by payment or non-payment of the liability. Thus, the decisions that reason that payment of a tax extinguishes the assessment are simply wrong.

Where a taxpayer has a complex series of transactions with the Internal Revenue Service which includes debits and credits and continual corrections and adjustments of account status, it is not ordinarily thought that the intermediate accounting procedures "extinguish" the ultimate obligations of the parties. Freezing the series of transactions at any particular moment would represent an artificial view of the substance of the parties' relations. Instead, as the Tax Court stated in Groetzinger, 69 T.C. at 315, the ultimate obligations of the

REPRODUCED AT THE NATIONAL ARCHIVES

parties are determined by whether, "when all the transactions are viewed together, there [is] an underpayment" by one of the parties. The flaws in the "extinguishment" theory become even more pronounced when applied to the instant case. Here, taxpayer made an advance payment of an amount which he apparently believed (correctly) would be at least enough to cover the deficiency to which he and the Government had already agreed. Presumably this means, under plaintiff's view of things, that the assessment made on June 18, 1991, was instantaneously "extinguished" because of the prior advance payment. Or perhaps in plaintiff's assessment metaphysics the assessment was "extinguished" almost two years before it was made.

The court in Wilkes addressed the rebate versus non-rebate refund distinction only by attempting, unsuccessfully, to distinguish the issue involved in the Groetzinger case from the issue involved here. 946 F.2d at 1150. As discussed supra, p. 22, Groetzinger concerned the liability of "transferees" (who received estate assets) for unpaid estate taxes. Under Section 6901(b), the Tax Court has jurisdiction over transferees only with respect to an "underpayment" of estate tax liability. The Service had erroneously refunded estate taxes, and the Commissioner's premise was that, based on the current accounts between the parties, there was an "underpayment" of the estate tax obligation. The Tax Court concluded that such an "underpayment" existed and could be enforced against the transferees. The court in Wilkes claimed that Groetzinger was distinguishable

REPRODUCED AT THE NATIONAL ARCHIVES

because it concerned the Tax Court's jurisdiction and not the substantive liability of the taxpayer, 946 F.2d at 1150 (emphasis added):

> [T]he court's finding that an underpayment existed, coupled with the court's "financial transactions" analysis in making this finding, served only to show that the jurisdictional requirements of Section 6901 of the Code had been met * * * . <u>The finding of an underpayment had no bearing on the merits of the issue of the beneficiaries' liability.</u>

This statement does not meet the problem. As the Tax Court stated in <u>Groetzinger</u>, "[t]he liabilities asserted herein are in fact based on [the estate's] underpayment." 69 T.C. at 316. The underpayment had to be the basis for liability because the transferee had no liability unless the estate was liable for the tax: the transferee's liability was vicarious. Thus, unless the estate was liable for the underpayment, the transferee would not be liable. And the Tax Court's specific statements were not limited to the jurisdictional issue: in the merits section of the opinion, the court said (69 T.C. at 316)

> [A]s we previously discussed [regarding the jurisdictional issue], there has been an underpayment of tax; the tax has not yet been fully paid. Consequently, * * * petitioners * * * are liable as transferees.

Thus, the decision on the merits in <u>Groetzinger</u> rested squarely on the existence of an underpayment. In concluding that the tax obligation of the estate was <u>not</u> "extinguished" by the original payment (which was thereafter erroneously refunded), and that the existing "underpayment" of the tax obligation could be enforced against the transferees, the <u>Groetzinger</u> decision conflicts directly with the decision in <u>Wilkes</u>.

REPRODUCED AT THE NATIONAL ARCHIVES

Wilkes's reliance on Kelley v. United States, 30 F.2d 193 (9th Cir. 1929), is also misplaced. The Kelley case involved a rebate refund of an estate tax and was decided under a previous statutory scheme which did not differentiate between rebate and non-rebate refunds. See supra, n. 14. Under the old scheme, any amount repaid in respect of a tax subject to the deficiency procedures (e.g., income, gift and estate taxes) was taken into account in determining whether there was a deficiency. See Revenue Act of 1926, ch. 27, § 307, 44 Stat. 9. Since the return of a payment (i.e., a refund) created a deficiency, which could then be reassessed, there was a certain logic to treating a payment as if it abated or eliminated the assessment. As discussed supra at n. 14, however, in 1944 the definition of a deficiency was substantially changed, distinguishing for the first time between rebate and non-rebate refunds. Individual Income Tax Act of 1944, ch. 210, § 14(a), 58 Stat. 231. Under the revised statute (which survives in substantially identical form in current Internal Revenue Code Section 6211(b)(2)), in determining whether there is a deficiency, only those refunds made on the ground that the tax imposed was less than the tax shown on the return plus amounts previously assessed (or collected without assessment) as a deficiency are taken into account. Under the current statutory scheme, there are refunds (i.e., non-rebate refunds) that do not create a deficiency and that, as a result, are not subject to reassessment--unlike the situation when Kelley was decided. Accordingly, cases such as Kelley, which were

REPRODUCED AT THE NATIONAL ARCHIVES

decided under the old law, cannot be relied on in the instant case. See Groetzinger, 69 T.C. at 315.

When all is said and done, it is clear that Wilkes, O'Bryant, and Clark, fail either to show that Groetzinger was wrong or to distinguish that decision in any meaningful manner. O'Bryant and Clark rely on Wilkes, and that decision failed to address the crucial "non-rebate refund" distinction relied on by the Tax Court in Groetzinger and by the Government, and failed to understand the significance of an "assessment" as opposed to the tax liability that the assessment reflects. The Wilkes decision is simply incorrect and should not be followed.

In O'Bryant the Seventh Circuit commits all of the errors of Wilkes, and adds a few of its own.[21] In O'Bryant, the IRS mistakenly credited taxpayers' payment of their assessed liability to their 1984 account twice, thus resulting in an apparent overpayment, which the IRS erroneously refunded to taxpayers. When the IRS discovered the error, it notified taxpayers of the error, requested payment of the tax, and filed a Notice of Federal Tax Lien against their property. Taxpayers filed suit to quiet title and sought a refund. The district court held that their payment of the tax extinguished their liability for the

[21] The Seventh Circuit's opinion was authored by the Honorable James B. Moran, Chief Judge of the Northern District of Illinois, sitting by designation on the Seventh Circuit. Judge Moran also authored the erroneous district court decisions in Rodriguez v. United States, 629 F. Supp. 333 (N.D. Ill. 1986), discussed supra, note 18, and Karp v. United States, 868 F. Supp. 235 (N.D. Ill. 1994), which the court relied on in its opinion.

REPRODUCED AT THE NATIONAL ARCHIVES

1984 taxes, and that the subsequent erroneous refund did not revive the liability.

On appeal, the Seventh Circuit agreed with the district court that, once paid, a tax liability could not be revived by a subsequent erroneous refund. But the court's holding is based on its conclusion that there is a "fundamental difference in character between the money that the [taxpayers] now possess (a refund caused by the IRS' error) and the money they originally owed the IRS (their tax liability)." 49 F.3d at 346. It said that the taxpayers now owed money to the IRS because they had been unjustly enriched by the Government's mistake in making the erroneous refund, "not because they have not paid their taxes." Id. Therefore, the court concluded, "the money the [taxpayers] received is not part of the taxpaying transaction as the IRS asserts and therefore cannot be recovered through the § 6502 post-assessment collection procedures." Id.

The Seventh Circuit's reliance on a "fundamental difference" between the collection of a tax and the collection of an amount of tax erroneously refunded (after the taxpayer had initially paid the tax) ignores the fact that in enacting in the Revenue Act of 1928 the erroneous refund suit provisions now found in Code § 7405, Congress specifically recognized that the payment of the tax and erroneous refund thereof did not eliminate the underlying tax liability because such erroneous refund could be collected through the assessment process as well as through an erroneous refund action. S. Rep. No. 960, supra at 42 (1939-1

REPRODUCED AT THE NATIONAL ARCHIVES

(Pt. 2) C.B. at 438). If the payment of the tax, prior to an erroneous refund thereof, extinguished the underlying tax liability, as the Seventh Circuit held in O'Bryant, the assessment procedure would not have been available to collect an erroneous refund because an assessment reflects, and is based upon, an underlying tax liability. Congress recognized the erroneous refund suit under the provisions now found in Section 7405 as an additional remedy, not the exclusive remedy to recover erroneous refunds. See also Ideal Realty v. United States, supra, and cases cited supra, at 15. The court in O'Bryant opined (49 F.3d at 347) that it "agree[d] with the general proposition that § 7405 preserved the other methods of collecting erroneous refunds that were available to the IRS at the time," but did not find that fact "controlling." But the rule apparently set forth in O'Bryant--that, once paid, a tax liability is satisfied and cannot be revived--would apply to bar any additional assessments, including those specifically contemplated in the Senate Report.

Moreover, the Seventh Circuit's holding that the payment of the amount assessed extinguishes the underlying tax liability and that the liability cannot be revived by a return of some of the paid amount is contrary to the Ninth Circuit's decision in Brookhurst v. Commissioner, 931 F.2d 554 (9th Cir.), cert. denied, 502 U.S. 907 (1991).[22] In Brookhurst, 931 F.2d at 556,

---

[22] The O'Bryant court was also clearly in error to question (49 F.3d at 342, n.3) the right of the IRS to bring a suit for collection of a tax without assessment within the three-year period of § 6501. The plain language of § 6501 makes clear that (continued...)

REPRODUCED AT THE NATIONAL ARCHIVES

the Ninth Circuit considered a case in which taxpayer reported <u>and paid</u> the correct amount of employment taxes on its return, but the IRS, through a clerical error, assessed only a fraction of the liability and refunded the bulk of the taxpayer's payment. When the IRS realized its error, it made a supplemental assessment under Section 6204(a), which authorizes the making of a supplemental assessment where the original assessment is "imperfect or incomplete," and attempted to collect. The taxpayer argued that the IRS could not collect the returned funds except by suit under Section 7405 because it owed no taxes in that it had satisfied its tax liability by paying the full amount thereof. 931 F.2d at 556. The court rejected the argument that, once paid, a tax liability is gone, holding that the Government was entitled to make a supplemental assessment to correct an earlier imperfect or incomplete assessment, and that the Government may collect that liability for the time period established by Section 6502. 931 F.2d at 556-557. Thus, the fact that the taxpayer had fully paid (and therefore "satisfied") its tax liability for the period in question did not prevent the Government from collecting the tax again when a portion of the tax paid was returned to the taxpayer. Only because the return of the tax-

---

[22/] (...continued)
the IRS may either assess the amount of tax imposed by the Code within three years, or initiate a proceeding in court to collect the tax "without assessment" within the three years. <u>See also</u> Treas. Reg. § 301.6501(a)-1(b) (26 C.F.R.). Although the IRS very rarely uses this method of collecting a tax (because administrative collection is both easier and less costly than instituting a court proceeding), there can be no doubt that Code § 6501 authorizes such a suit within the three-year time period.

REPRODUCED AT THE NATIONAL ARCHIVES

payer's money had created an underpayment of tax could the IRS utilize the supplemental assessment authority of Section 6204.

The court in O'Bryant missed the significance of Brookhurst, finding that opinion "of little use" because it involved a supplemental assessment.[23] 49 F.3d at 345, n. 8. But the point of Brookhurst for purposes of this case is that, contrary to the Seventh Circuit's holding, the satisfaction of the entire tax liability at one point in time did not render irrelevant all subsequent events, i.e., the fact that the taxpayer had previously satisfied the liability in full did not prevent a supplemental assessment and collection following an erroneous refund. It is of no significance that, in the instant case, we are not dealing with a supplemental assessment, but rather the question of collection on the original assessment. If, as the Seventh Circuit held, payment of a tax liability satisfied that liability for all time and for all purposes, then the method by which the IRS might subsequently attempt to "revive" that liability and collect it again would be irrelevant, and there would be no liability to record in a supplemental assessment.

---

[23] The court also intimated (49 F.3d at 345, n. 8) that Brookhurst involved a rebate refund, a mistake repeated by the First Circuit in Clark (63 F.3d at 88, n. 7). The error leading to the erroneous refund was a clerical or computer error made in incorrectly recording the amount of the tax liability, and therefore the resulting refund was a non-rebate refund. In any event, the distinction between rebate and non-rebate refunds should make no difference to the O'Bryant rule that a payment satisfies the liability for all time, because the unilateral act of making a supplemental or new assessment (which can only reflect a liability) could no more revive the liability than could the unilateral act of making a refund.

REPRODUCED AT THE NATIONAL ARCHIVES

Although O'Bryant acknowledges the difference between rebate refunds and non-rebate refunds (49 F.3d at 342), one aspect of the decision reveals a fundamental misunderstanding of that difference. In discussing the Government's assertion that an assessment is merely a bookkeeping device that cannot be extinguished by payment, the court stated (49 F.3d at 346) (emphasis in original, footnote deleted):

> [T]he IRS's argument on this point is undercut by its assertion elsewhere that assessments are abated automatically when a rebate refund is issued. If the assessment is abated by a rebate refund, then clearly it is not always the unchanging record of tax liability that the IRS claims, and we fail to see why an assessment should be constant in the nonrebate refund context when it is variable in the rebate refund context.

But the entire point of a rebate refund is, as explained supra, at 18 et seq., that it arises from a redetermination of the amount of the taxpayer's liability, and when that liability is determined to be less than previously assessed, the assessment (which simply reflects the IRS's determination of the liability) is modified, i.e., the IRS's determination of the liability is reduced. The abatement does not take place "automatically," but by affirmative act of the Commissioner. The abatement of the assessment creates a credit balance in the account, and that amount is then refunded. The bookkeeping entries in such a case will show both the original assessment and an entry abating the assessment, thus leaving only the amount reduced by the abatement. The assessment is itself modified in the context of rebate refunds because it must be adjusted to reflect the change in the IRS's determination of the tax liability for that tax year.

REPRODUCED AT THE NATIONAL ARCHIVES

Since non-rebate refunds, on the other hand, are not generated by an abatement or other change in the amount of the assessment, the assessment is unchanged despite the refund. See § 6211.

Another fundamental error committed by the court in O'Bryant was heavily relied upon in Clark (63 F.3d at 87):

> As the Seventh Circuit explained in O'Bryant, 49 F.3d at 346, there is a fundamental difference between money taxpayers possess as the result of an erroneous refund and money they originally owed the IRS (their tax liability): taxpayers who receive erroneous refunds owe the IRS "because they have been unjustly enriched by it, not because they have not paid their taxes." Thus,
>
> > [w]hen a taxpayer mails the IRS a check in the full amount of his assessed tax liability, and the IRS cashes it, the taxpayer's liability is satisfied, and unless a new assessment is made later on, any erroneous, unsolicited refund that the IRS happens to send the taxpayer must be handled on its own terms, not under the rubric of the assessed liability.
>
> Id. at 347.

It is by no means clear what the import of this proposition is. The erroneous refund has not been issued to the taxpayer because he has won the lottery, or because the Government (erroneously) believes that he is due a payment on a government contract. Instead, the refund is issued because of an erroneous action taken by the Internal Revenue Service with respect to its accounts which record the debits and credits of a taxpayer's liability for federal tax. The refund is made because the taxpayer is a taxpayer, and not at random.

If the amount paid to plaintiff was not a refund of tax, it is not at all clear what these courts believe the payment to be,

REPRODUCED AT THE NATIONAL ARCHIVES

or what remedies are appropriate for recovery of the taxpayer's windfall. While both O'Bryant and Clark agree that the payment can be recovered via a suit brought under § 7405 of the Internal Revenue Code, that provision, by its terms, applies only to recovery of "a tax imposed by [the Internal Revenue Code], refund of which is erroneously made . . . ." If the payments to plaintiffs in O'Bryant and Clark (and to Mr. Stanley), are not refunds of their tax, then § 7405 simply does not apply. On the other hand, if the payments are not refunds of taxes (as O'Bryant and Clark hold that they are not), then perhaps the more general six-year statute of limitation provided in 28 U.S.C. § 2415 applies. Under that provision, the United States would have until some time in July, 1997, to recover from plaintiff at bar.

REPRODUCED AT THE NATIONAL ARCHIVES

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment should be denied, defendant's cross-motion for summary judgment granted, the Complaint dismissed, and all allowable costs assessed against plaintiff.

Respectfully submitted,

W. C. RAPP
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-0503

LORETTA C. ARGRETT
Assistant Attorney General
MILDRED L. SEIDMAN
Chief, Court of Federal Claims Section
THOMAS D. SYKES
Reviewer

Of Counsel

DECEMBER, 1995

REPRODUCED AT THE NATIONAL ARCHIVES

STATUTORY APPENDIX

Internal Revenue Code of 1986 (26 U.S.C.):

SEC. 6201. ASSESSMENT AUTHORITY.

(a) Authority of Secretary.--The Secretary is authorized and required to make the inquiries, determinations, and assessments of all taxes (including interest, additional amounts, additions to the tax, and assessable penalties) imposed by this title, or accruing under any former internal revenue law, which have not been duly paid by stamp at the time and in the manner provided by law.

* * * * *

SEC. 6203. METHOD OF ASSESSMENT.

The assessment shall be made by recording the liability of the taxpayer in the office of the Secretary in accordance with rules or regulations prescribed by the Secretary. Upon request of the taxpayer, the Secretary shall furnish the taxpayer a copy of the record of the assessment.

SEC. 6211. DEFINITION OF A DEFICIENCY.

(a) In General.--For purposes of this title in the case of income, estate, and gift taxes, imposed by subtitles A and B, and excise taxes imposed by chapters 41, 42, 43, 44, and 45, the term "deficiency" means the amount by which the tax imposed by subtitles A or B, or chapter 41, 42, 43, 44, or 45, exceeds the excess of--

(1) The sum of

(A) the amount shown as the tax by the taxpayer upon his return, if a return was made by the taxpayer and an amount was shown as the tax by the taxpayer thereon, plus

(B) the amounts previously assessed (or collected without assessment) as a deficiency, over--

(2) the amount of rebates, as defined in subsection (b)(2), made.

(b) Rules for Application of Subsection (a).--For purposes of this section--

* * * *

REPRODUCED AT THE NATIONAL ARCHIVES

(2) The term 'rebate' means so much of an abatement, credit, refund, or other repayment as was made on the ground that the tax imposed by Subtitle A or B or chapter 41, 42, 43, 44, or 45 was less than the excess of the amount specified in subsection (a)(1) over the rebates previously made.

SEC. 6501. LIMITATIONS ON ASSESSMENT AND COLLECTION.

(a) General Rule.--Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) or, if the tax is payable by stamp, at any time after such tax became due and before the expiration of 3 years after the date on which any part of such tax was paid, and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period.

SEC. 6502. COLLECTION AFTER ASSESSMENT

(a) Length of period.--Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun--

(1) within 10 years after the assessment of the tax, or

(2) prior to the expiration of any period for collection agreed upon in writing by the Secretary and the taxpayer before the expiration of such 10-year period (or, if there is a release of levy under section 6343 after such 10-year period, then before such release).

The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon. The period provided by this subsection during which a tax may be collected by levy shall not be extended or curtailed by reason of a judgment against the taxpayer.

REPRODUCED AT THE NATIONAL ARCHIVES

SEC. 6532. PERIODS OF LIMITATION ON SUITS.

* * * * *

(b) Suits by United States for Recovery of Erroneous Refunds.--Recovery of an erroneous refund by suit under section 7405 shall be allowed only if such suit is begun within 2 years after the making of such refund, except that such suit may be brought at any time within 5 years from the making of the refund if it appears that any part of the refund was induced by fraud or misrepresentation of a material fact.

* * * * *

SEC. 7405. ACTION FOR RECOVERY OF ERRONEOUS REFUNDS

(a) Refunds after limitation period.--Any portion of a tax imposed by this title, refund of which is erroneously made, within the meaning of section 6514, may be recovered by civil action brought in the name of the United States.

(b) Refunds otherwise erroneous.--Any portion of a tax imposed by this title which has been erroneously refunded (if such refund would not be considered as erroneous under section 6514) may be recovered by civil action brought in the name of the United States.

(c) Interest.--For provision relating to interest on erroneous refunds, see section 6602.

(d) Periods of limitation.--For periods of limitations on actions under this section, see section 6532(b).

REPRODUCED AT THE NATIONAL ARCHIVES

CERTIFICATE OF SERVICE

I certify that service of the foregoing document has, this 7th day of December, 1995, been made on plaintiff's counsel by mailing a copy thereof, in a postage prepaid envelope, to the following address:

Robert I. White, Esq.
Chamberlain, Hrdlicka, White
Williams & Martin
1400 Citicorp Center
1200 Smith Street
Houston, Texas 77002

Frances Crawley
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6440